# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER, L.L.C.,
doing business as ANTIDOTE COFFEE; PERK YOU LATER, L.L.C.,
*Plaintiffs-Appellants*,

v.

HARRIS COUNTY DISTRICT ATTORNEY KIM OGG; COUNTY SHERIFF ED GONZALEZ;
WEBSTER ACTING CHIEF PETE BACON; CHIEF OF HOUSTON POLICE DEPARTMENT
TROY FINNER; CITY OF WEBSTER,
*Defendants-Appellees.*

On Appeal from the United States District Court
For the Southern District of Texas (Werlein, J.)

## PLAINTIFFS-APPELLANTS' OPENING BRIEF

Alla Lefkowitz
Andrew Nellis
Everytown Law
P.O. Box 14780
Washington, D.C. 20044
(202) 545-3257
aleftowitz@everytown.org

Ryan Gerber
Laura Keeley
Everytown Law
450 Lexington Ave.
P.O. Box 4184
New York, NY 10017
(646) 324-8198
rgerber@everytown.org

Charlotte H. Taylor
  *Counsel of Record*
Jones Day
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3872
ctaylor@jonesday.com

William R. Taylor
Jones Day
717 Texas Street, Suite 3300
Houston, TX 77002
(832) 239-3860
wrtaylor@jonesday.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

**No. 23-20165,** *Bay Area Unitarian Universalist Church, et al. v. Harris County District Attorney Kim Ogg, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Plaintiffs-Appellants **Bay Area Unitarian Universalist Church; Drink Houston Better, L.L.C., d/b/a/ Antidote Coffee; Perk You Later, L.L.C.**

2. Defendants-Appellees **Harris County District Attorney Kim Ogg; Harris County Sheriff Ed Gonzalez; Chief of Webster Police Department Pete Bacon; Chief of Houston Police Department Troy Finner.**

3. The following law firms and counsel have participated in the case, either in the district court or on appeal:

| **Plaintiff-Appellant** | **Counsel** |
|---|---|
| Bay Area Unitarian Universalist Church; Drink Houston Better, L.L.C., d/b/a Antidote Coffee; Perk You Later, L.L.C | Alla Lefkowitz Andrew Nellis EVERYTOWN LAW P.O. Box 14780 Washington, D.C. 20001 |
| | Ryan Gerber Laura Keeley EVERYTOWN LAW 450 Lexington Avenue P.O. Box 4184 New York, NY 10017 |
| | Charlotte H. Taylor Lesley Roe JONES DAY 51 Louisiana Avenue, N.W. Washington, D.C. 20001 |
| | William R. Taylor JONES DAY 717 Texas Street, Suite 3300 Houston, TX 77002 |

| Defendants-Appellees | Counsel |
|---|---|
| Harris County District Attorney Kim Ogg Harris County Sheriff Ed Gonzalez | Heena Kepadia Moustapha Gassama Matthew P. Miller HARRIS COUNTY ATTORNEY'S OFFICE 1019 Congress Plaza, 15th Floor Houston, TX 77002 |
| Chief of Webster Police Department Pete Bacon | William S. Helfand Justin C. Pfeiffer Norman Ray Giles LEWIS BRISBOIS BISGAARD & SMITH 24 Greenway Plaza, Suite 1400 Houston, TX 77046 |
| | Sean Braun WILSON ELSER MOSKOWITZ EDELMAN & DICKER 909 Fannin Street Suite 3300, Suite 1400 Houston, TX 77098 |
| Chief of Houston Police Department Troy Finner | Donald B. Hightower Melissa Azadeh Tiffany Sue Bingham Charles H. Houston, III CITY OF HOUSTON LEGAL DEPARTMENT 900 Bagby Street, 4th Floor Houston, TX 77002 |

Respectfully Submitted,

/s/ Charlotte H. Taylor

Charlotte H. Taylor
*Counsel of Record for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs respectfully request oral argument. The district court improperly held that Plaintiffs lack standing to challenge statutory requirements that burden Plaintiffs' freedom of speech and association. The district court's ruling raises important questions regarding standing in First Amendment and unconstitutional conditions cases. Plaintiffs believe oral argument would materially assist the Court in resolving these questions.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...........................................................i

STATEMENT REGARDING ORAL ARGUMENT .............................................iv

TABLE OF AUTHORITIES ................................................................................ viii

INTRODUCTION ...................................................................................................1

JURISDICTIONAL STATEMENT .......................................................................4

STATEMENT OF THE ISSUES.............................................................................5

STATEMENT OF THE CASE.................................................................................6

I.      Texas's Trespass Code Imposes Asymmetrical, Content-Based Notice
        Requirements ...............................................................................................6

II.     Plaintiffs Are Burdened by the Texas Trespass Scheme and Filed Suit
        to Challenge It...............................................................................................9

III.    The District Court First Holds That Plaintiffs Have Standing, Then
        Reverses Course and Dismisses Plaintiffs' Claims for Lack of
        Standing .....................................................................................................12

        A.      Defendants file initial Rule 12 motions, and the district
                court holds Plaintiffs have Article III standing ...................................12

        B.      The case is reassigned and Houston files a Rule 12(c) motion,
                which the district court grants, vacating its prior standing ruling.......13

        C.      Plaintiffs move to amend and the Parties file dispositive
                motions .............................................................................14

D.     Discovery confirmed Plaintiffs' allegations: They must post the required signage to receive the benefit of Texas's trespass law ........................................................................15

E.     The district court dismissed the action for lack of standing ..............19

SUMMARY OF THE ARGUMENT ....................................................20

STANDARD OF REVIEW ................................................................23

ARGUMENT .....................................................................................25

I.    The Church and Antidote Have Standing........................................25

    A.     The record establishes that Plaintiffs are suffering multiple cognizable injuries.................................................................26

         1.    The district court applied the wrong standard to Webster's and Harris County's Motions....................................26

         2.    The scheme injures the Church and Antidote by unevenly burdening their right to exclude guns. ......................................27

         3.    Being subjected to an unconstitutional conditions scheme immediately works a cognizable harm .......................30

         4.    In unconstitutional-conditions cases, giving up a constitutional right or government benefit establishes injury. ...............................................................................30

            (a)    The signage scheme forces plaintiffs to choose between two core rights.................................................32

            (b)    Plaintiffs have sacrificed their rights and thereby suffered injury....................................................34

            (c)    The district court's contrary reasoning was error ..........38

         5.    The Church's and Antidote's injuries are fairly traceable to Defendants, who enforce Texas's scheme ............44

         6.    A favorable judicial decree would redress the Church's and Antidote's injuries............................................................47

     B.     The District Court Erred When It Granted Houston's
            Rule 12(c) Motion .................................................................49

II.    The District Court Erred in Denying Plaintiffs' Motion for
     Leave to Amend............................................................................51

CONCLUSION.....................................................................................55

CERTIFICATE OF SERVICE ............................................................56

CERTIFICATE OF COMPLIANCE....................................................57

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013) .................................................................40, 41

*Air Evac EMS, Inc. v. Texas, Dept. of Ins., Div. of Workers' Comp.*,
  851 F.3d 507 (5th Cir. 2017) ....................................................44, 46

*Allen v. Wright*,
  468 U.S. 737 (1984), *abrogated on other grounds by Lexmark*
  *Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)..................47

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) ........................................................................51

*Auster Oil & Gas, Inc. v. Stream*,
  764 F.2d 381 (5th Cir. 1985) ..............................................................54

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007) ...............................................................27

*Barrett Comput. Servs., Inc. v. PDA, Inc.*,
  884 F.2d 214 (5th Cir. 1989) ..............................................................24

*Block v. Meese*,
  793 F.2d 1303 (D.C. Cir. 1986) .................................................3, 44

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984).........................................................................32

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000).........................................................................38

*Butowsky v. Folkenflik*,
No. 4:18CV442, 2020 WL 9936143 (E.D. Tex. Sept. 1, 2020),
*report and recommendation adopted,*
2020 WL 9936140 (E.D. Tex. Sept. 21, 2020)...................................................54

*California v. Texas*,
141 S. Ct. 2104 (2021)..................................................................................29, 31

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021)..................................................................................34, 39

*City of Clinton v. Pilgrim's Pride Corp.*,
632 F.3d 148 (5th Cir. 2010) .......................................................................25, 53

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000).............................................................................................36

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).............................................................................................40

*Cressman v. Thompson*,
719 F.3d 1139 (10th Cir. 2013) ....................................................................33, 35

*Davis v. FEC*,
554 U.S. 724 (2008).......................................................................................*passim*

*Dep't of Com. v. New York*,
139 S. Ct. 2551 (2019)...............................................................................3, 44, 45

*Dolan v. City of Tigard*,
512 U.S. 374 (1994).............................................................................................43

*E.T. v. Paxton*,
41 F.4th 709 (5th Cir. 2022) ...............................................................................47

*Edionwe v. Bailey*,
860 F.3d 287 (5th Cir. 2017) ...............................................................................23

*FAIR v. Rumsfeld*,
 390 F.3d 219 (3d Cir. 2004) ............................................................32

*FAIR, Inc. v. Rumsfeld*,
 291 F. Supp. 2d 269 (D.N.J. 2003) ...................................................31

*Foretich v. United States*,
 351 F.3d 1198 (D.C. Cir. 2003) ........................................................36

*Heckler v. Mathews*,
 465 U.S. 728 (1984).........................................................................27

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
 143 F.3d 1006 (5th Cir. 1998) ..........................................................24

*In re Abbott*,
 956 F.3d 696 (5th Cir. 2020), *cert. granted, judgment vacated on
 other grounds sub nom., Planned Parenthood Ctr. For Choice v.
 Abbott*, 141 S. Ct. 1261 (2021) .......................................................45

*In re Taxotere (Docetaxel) Prod. Liab. Litig.*,
 994 F.3d 704 (5th Cir. 2021) ............................................................25

*Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*,
 601 F.2d 809 (5th Cir. 1979) ............................................................36

*Jackson Mun. Airport Auth. v. Harkins*,
 67 F.4th 678 (5th Cir. 2023) .............................................................47

*Jacobs v. Clark Cnty. Sch. Dist.*,
 526 F.3d 419 (9th Cir. 2008) .......................................................33, 36

*K.P. v. LeBlanc*,
 627 F.3d 115 (5th Cir. 2010) .......................................................46, 48

*Koontz v. St. Johns River Water Mgmt. Dist.*,
 570 U.S. 595 (2013).....................................................................34, 37

*Lefebure v. D'Aquilla*,
    15 F.4th 650 (5th Cir. 2021) ...............................................................40

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973)...............................................................................40

*Loretto v. Teleprompter Manhattan CATV Corp.,*
    458 U.S. 419(1982)................................................................................34

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992)........................................................................25, 46

*McDonald v. Longley*,
    4 F.4th 229 (5th Cir. 2021) ...................................................................38

*Meese v. Keene*,
    481 U.S. 465 (1987)...............................................................................37

*Montez v. Dep't of Navy*,
    392 F.3d 147 (5th Cir. 2004) ...........................................................24, 26

*Morris v. Livingston*,
    739 F.3d 740 (5th Cir. 2014) .................................................................45

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) .................................................................13

*Ne. Fla. Chapter of the Associated Gen. Contractors of America v.*
    *City of Jacksonville,*
    508 U.S. 656 (1993)...............................................................................27

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) .................................................................43

*Parks v. Watson*,
    716 F.2d 646 (9th Cir. 1983) .................................................................41

*Perry v. Sindermann*,
    408 U.S. 593 (1972)...............................................................................34

*Peter Henderson Oil Co. v. City of Port Arthur*,
  806 F.2d 1273 (5th Cir. 1987) .................................................2, 21, 30

*Pickett v. Texas Tech Univ. Health Scis. Ctr.*,
  37 F.4th 1013 (5th Cir. 2022) ......................................................24, 26

*Quinones v. City of Evanston, Ill.*,
  58 F.3d 275 (7th Cir. 1995) ................................................................45

*R.A.V. v. City of St. Paul, Minn.*,
  505 U.S. 377 (1992)............................................................................28

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)............................................................................28

*Reno v. ACLU*,
  521 U.S. 844 (1997)..............................................................................3

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
  487 U.S. 781 (1988)............................................................................36

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984)......................................................................33, 38

*Rowe v. Shake*,
  196 F.3d 778 (7th Cir. 1999) .............................................................33

*Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*,
  547 U.S. 47 (2006).................................................................. 2, 31-32

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976)..............................................................................25

*Speiser v. Randall*,
  357 U.S. 513 (1958)............................................................................31

*Texas Cable & Telecomms. Ass'n v. Hudson*,
  265 F. App'x 210 (5th Cir. 2008) .................................................27, 29

*Texas v. Yellen*,
No. 2:21-cv-079-Z, 2022 WL 989733 (N.D. Tex. Mar. 4, 2022) .....................37

*Time Warner Cable, Inc. v. Hudson*,
667 F.3d 630 (5th Cir. 2012) ........................................................................2, 27

*United States ex rel. Branch Consultants v. Allstate Ins. Co.*,
560 F.3d 371 (5th Cir. 2009) ...............................................................................24

*W. & S. Life Ins. Co. v. State Bd. of Equalization of California*,
451 U.S. 648 (1981)..............................................................................................31

*W. Va. State Bd. of Ed. v. Barnette*,
319 U.S. 624 (1943)..............................................................................................32

*Walker v. City of Mesquite*,
129 F.3d 831 (5th Cir. 1997) ...............................................................................36

*Wooley v. Maynard*,
430 U.S. 705 (1977)........................................................................................33, 35

*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018) ...............................................................................40

RULES

Fed. R. App. P. 4(a)(1)(B) ...................................................................5

Fed. R. Civ. P. 12 ...................................................................*passim*

Fed. R. Civ. P. 56 .................................................................22, 24, 26, 27

STATUTES

28 U.S.C.
    § 1291.............................................................................................5
    § 1331.............................................................................................4
    § 1343.............................................................................................4
    § 2201.............................................................................................4
    § 2202.............................................................................................4

Tex. Penal Code
    § 30.05......................................................................................*passim*
    § 30.06...................................................................................... *passim*
    § 30.07......................................................................................*passim*

OTHER AUTHORITIES

*Openly Carrying A Gun Is Scaring People*, LEWISTON TRIBUNE,
    bit.ly/3XJ9e6g (Sept. 24, 2019) ...........................................................17

Texas House Bill 1927 ..........................................................................8

Texas House Research Organization, Bill Analysis, HB 910 (Apr. 17,
    2015), available at
    https://hro.house.texas.gov/pdf/ba84R/HB0910.PDF ..........................................8

Texas House Research Organization, Bill Analysis, HB 2909 (May
    13, 1997), available at
    https://hro.house.texas.gov/pdf/ba75R/HB2909.PDF ..........................................8

Thomas W. Merrill, *Property and the Right to Exclude*, 77 NEB. L.
    REV. 730, 730 (1998) ......................................................................34

1 William Blackstone,
    *Commentaries on the Laws of England* 140 (3d ed. 1884) ...............................33

Wright & Miller, Fed. Prac. & Proc. § 1367 .........................................................27

**INTRODUCTION**

Plaintiffs-Appellants, a church and a coffee shop ("Plaintiffs"), face a choice: they can exercise their government-backed right to exclude others from their property or they can exercise their First Amendment right to speak in the manner they choose. The Texas legislature has forced this choice by imposing detailed, burdensome notice requirements on property owners who wish to exclude firearms. To provide legally sufficient notice of an intent to exclude firearms, posted signs must reproduce a lengthy, government-scripted message in contrasting colors with block letters at least one inch in height, in both English and Spanish. If an owner posts a simple "no guns" sign, entrants bringing firearms onto the property do not commit criminal trespass. In contrast, property owners who exercise their right to exclude for any other legally permissible reason—such as not wearing a shirt—can vindicate their property rights simply by posting a sign that is "reasonably likely to come to the attention of intruders." Tex. Penal Code § 30.05(b)(2)(C).

Plaintiffs wish to exercise their core property right to exclude firearms from their premises. But they object to the signs on expressive grounds. The church feels the signs are in tension with the messages of non-violence and inclusivity it wants to convey to those attending its services. The coffee shop feels the signs undermine the family-friendly, welcoming aesthetic it cultivates for its storefront. Both would prefer to provide notice of their decision to exclude in a less obtrusive manner. But

1

Plaintiffs cannot enjoy government protection of their property rights unless they post the unduly burdensome signs. So Plaintiffs both sacrificed their speech rights. The church also sacrificed more. Finding the expressive burden too great, it posted only signs excluding openly carried firearms, meaning that it does not exclude concealed firearms from its services. That means it is also giving up its right to exclude all firearms from its place of worship.

Having submitted to the scheme, Plaintiffs came to court to challenge the signage requirements, naming as defendants the police chiefs and prosecutors charged with enforcing the trespass law. But the district court held that Plaintiffs lack Article III standing to sue—starting by finding that, even though they have posted signs to which they object, they are *not even injured*. That was error.

*First*, Plaintiffs established multiple injuries-in-fact. Discriminatory treatment of speech under a statutory scheme is, itself, a cognizable injury. *See Davis v. FEC*, 554 U.S. 724, 734-35 (2008); *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 635-37 (5th Cir. 2012). This Court has also held that being subjected to an unconstitutional-conditions scheme immediately confers standing. *Peter Henderson Oil Co. v. City of Port Arthur, Tex.*, 806 F.2d 1273, 1275 (5th Cir. 1987). In addition a plaintiff forced to choose between exercising a constitutional right and receiving a government benefit is injured when it foregoes the constitutionally protected conduct. *Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 59 (2006)

("*FAIR*"). Both Plaintiffs have sacrificed their right to choose the manner in which they express their prohibition on firearms. The Church has also sacrificed its freedom of association and its right to exclude concealed handguns. These injuries are concrete, actualized, and more than sufficient to confer Article III standing on Plaintiffs. The district court concluded otherwise only by ignoring the common-sense reality that criminal trespass law has a real deterrent effect. *See Reno v. ACLU*, 521 U.S. 844, 872 (1997) (recognizing the deterrence that flows from "[t]he severity of criminal sanctions"). That is how it protects the right to exclude.

*Second*, these injuries are traceable to Defendants because their enforcement of the trespass law creates its protective deterrent effect. And they enforce the scheme's heightened notice requirements as written, meaning that unless Plaintiffs comply with the notice requirements, firearm-carriers will not be deterred from entry by the threat of criminal sanctions. Plaintiffs' posting of the required signs is "*de facto* caus[ed]" by Defendants' enforcement, which is enough for traceability. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019) (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.)).

*Third*, for the same reasons, Plaintiffs' injuries are redressable by a favorable decision. Plaintiffs have requested (1) a declaratory judgment that the heightened notice requirements are unconstitutional and (2) an injunction against Defendants' enforcement of them. If the relevant provisions were enjoined, property owners

would simply be required to give notice to license holders that entry with a handgun is forbidden by "oral or written communication." Tex. Penal Code §§ 30.06(b), 30.07(b). This would redress Plaintiffs' injuries.

This appeal is not about the merits of Plaintiffs' First Amendment claims. It is not about the wisdom or folly of Texas's statutory scheme. Rather, it is about whether Plaintiffs can get in the courthouse door. If the district court's ruling is affirmed, then a state could require all churches to include the phrase "This Is a House of God" in their no-trespassing signs for notice to be legally sufficient, and no church that objected would be able to sue to challenge the law. That cannot be, and is not, the law. This Court should reverse the judgment of the district court.

## JURISDICTIONAL STATEMENT

Plaintiffs Bay Area Unitarian Universalist Church (the "Church"), Drink Houston Better LLC d/b/a Antidote Coffee, and Perk You Later, LLC (hereinafter "Antidote") sued the Harris County District Attorney, Harris County Sheriff, City of Webster Chief of Police, and City of Houston Chief of Police, all in their official capacities. The Church and Antidote sought a declaratory judgment that the heightened notice requirements imposed by Texas Penal Code §§ 30.06 and 30.07 are unconstitutional and an injunction against their enforcement pursuant to 28 U.S.C. §§ 2201 and 2202. The district court had subject-matter jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

The district court's final opinion and order dismissing Plaintiffs' action for lack of subject-matter jurisdiction was entered on March 16, 2023.  Plaintiffs filed a notice of appeal on April 14, 2023.  *See* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    Texas's trespass scheme imposes burdensome signage requirements for prohibiting firearms that force Plaintiffs to choose between their right to exclude entrants and their right to free expression. The complaint pleads, and record evidence substantiates, that Plaintiffs have posted government-scripted signs, that the Church has  sacrificed its right to exclude concealed firearms from its premises, and that Defendants enforce the laws as written.  Did the district court err in holding that Plaintiffs lack standing to sue Defendants?

II.    Facts adduced during discovery substantiated Plaintiffs' claim that they are concretely injured by the statutory scheme and Defendants' enforcement of the scheme as written.  But the district court denied on futility grounds Plaintiffs' motion to amend the complaint to add the discovered facts.  Was this error?

**STATEMENT OF THE CASE**

**I.    Texas's Trespass Code Imposes Asymmetrical, Content-Based Notice Requirements.**

Texas's General Criminal Trespass Statute provides that "a person commits an offense if the person enters or remains on or in [the] property of another … without effective consent and the person … had notice that the entry was forbidden."  Tex. Penal Code § 30.05(a).  Notice is broadly defined to include, among other things, "oral or written communication by the owner or someone with apparent authority" and  "a sign or signs posted on the property or at the entrance to the building, *reasonably likely to come to the attention of intruders*, indicating that entry is forbidden."  *Id.* § 30.05(b)(2) (emphasis added).  When a property owner seeks to exclude on the basis that the entrant is carrying a firearm, however, the straightforward notice requirements of the General Criminal Trespass Statute do not apply.  Instead, the property owner must comply with a series of burdensome notice requirements.

Under Texas Penal Code § 30.05(f), it is a defense to prosecution that "the basis on which entry … was forbidden is that entry with a handgun was forbidden," and the person "possessed a license to carry a handgun in a concealed manner or openly in a holster."  So, notice under § 30.05(b)(2) alone is insufficient to exclude licensed handguns.  Instead, a property owner must provide notice compliant with two statutory provisions: § 30.06, Trespass by License Holder with a Concealed

6

Handgun, and § 30.07, Trespass by License Holder with an Openly Carried Handgun.

Under both statutes, "a person receives notice if the owner of the property or someone with apparent authority to act for the owner provides notice to the person by oral or written communication." Tex. Penal Code §§ 30.06(b), 30.07(b). "Written communication," in turn, is defined with respect to open-carry license holders as:

> (A) a card or other document on which is written language identical to the following: "Pursuant to Section 30.07, Penal Code (trespass by license holder with an openly carried handgun), a person licensed under Subsection H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a handgun that is carried openly"; or
>
> (B) a sign posted on the property that: (i) includes the language described in Paragraph (A) in both English and Spanish; (ii) appears in contrasting colors with block letters at least one inch in height; and (iii) is displayed in a conspicuous manner clearly visible to the public at each entrance to the property.

Tex. Penal Code § 30.07(c)(3). Section 30.06(c)(3) provides a nearly identical definition of "written notice" applicable to concealed-carry license holders, except that the 30.06 sign need not be re-posted at each entrance.

All this signage—two separate sets posted conspicuously at the entrance in both English and Spanish—is sufficient to provide notice only to *licensed handgun* carriers. To exclude other types of firearms, including long guns and unlicensed handguns, § 30.05(c) requires yet more signage, subject to its own set of specific

statutory requirements.[1]  The § 30.05(c) sign must: (1) be posted "at each entrance to the property"; (2) include language "identical to or substantially similar to the following: 'Pursuant to Section 30.05, Penal Code (criminal trespass), a person may not enter this property with a firearm"; (3) include this language in both English and Spanish; (4) appear in contrasting colors; (5) be written in block letters at least one inch in height; and (6) be displayed in a conspicuous manner clearly visible to the public.

The end result of this statutory scheme is that property owners who wish to exclude *all* firearms from their property must post at least *three* separate signs, two of which must appear at each entrance to the property.  There are no legislative findings indicating why ordinary "reasonable" notice will not suffice in this context.[2] Indeed, simpler, pictographic signs (like those commonly used in other states) would be both less burdensome and more effective at providing notice.  Property owners must bear the cost of producing, installing, and displaying the signs themselves.

---

[1] The relevant provisions of § 30.05(c) were added via Texas House Bill 1927, which took effect on September 1, 2021—more than a year after this litigation began. In the interest of judicial economy and to avoid prejudice to Defendants, Plaintiffs did not seek to amend their complaint to additionally challenge the triplicate burden imposed by the new statute.  The new section is, however, relevant context.

[2] *See* Texas House Research Organization, Bill Analysis, HB 910 (Apr. 17, 2015), available at https://hro.house.texas.gov/pdf/ba84R/HB0910.PDF; Texas House Research Organization, Bill Analysis, HB 2909 (May 13, 1997), available at https://hro.house.texas.gov/pdf/ba75R/HB2909.PDF

## II. Plaintiffs Are Burdened by the Texas Trespass Scheme and Filed Suit to Challenge It.

Plaintiffs wish to exercise their right to exclude firearms, but they object to conveying notice in the burdensome format the statute requires. On September 2, 2020, they filed this lawsuit challenging the statutory scheme. Their complaint alleges as follows:

The Church, which sits on the border between Houston and Webster, does not wish to permit guns on its property. ROA.43-45 ¶¶ 56, 64. It espouses the religious belief that conflict should be resolved through "conversation, non-violence, love, and compassion"; and it wants its building "to be a refuge for peace and tranquility." ROA.45 ¶¶ 65-66. It believes that posting "ugly and intimidating" signs compliant with §§ 30.06 and 30.07 detracts from the religious principles it wishes to convey because they remind visitors of guns and violence and obscure the glass doors of the church building—which are "meant to convey the Church's commitment to openness and inclusion." ROA.44-45 ¶¶ 61-63, 65-67. It would prefer to use simpler, smaller, and more understandable signage. ROA.45 ¶ 69. But it reluctantly displays on its front and side entrances the signs required under § 30.07 to prohibit openly carried handguns. ROA.44 ¶¶ 59, 61.

The Church would like to prohibit *all* firearms and its official internal policy does so. ROA.44-45 ¶ 64. But it believes posting any further signs would detract too much from its religious message, and it does not post § 30.06 concealed-handgun

signs. ROA.44-45 ¶¶ 61-66. So at present, the Church's signage is inconsistent with its official policy. ROA.44-45 ¶ 64. The Church believes that individually notifying each churchgoer would be burdensome and require members to engage in potentially dangerous one-on-one confrontations. ROA.40 ¶ 42.

Antidote is a small Houston coffee shop that sells coffee, wine, ice cream, and related goods. ROA.45 ¶ 70. Antidote believes guns are unsafe in a family atmosphere where patrons bring pets and children and alcohol is served. ROA.46 ¶ 71. Antidote used to display a three inch by three inch pictographic sign prohibiting guns. ROA.46 ¶ 71. But since 2016, at its own expense, Antidote has posted the new, intrusive signs required by Texas law. ROA.46 ¶ 72. These signs cover more than 10 square feet of its facade and are detrimental to Antidote's desired aesthetic; they also force Antidote to make what it considers a "bold political statement" regarding guns. ROA.46-47 ¶¶ 45, 73. The signs function as a political "Scarlet Letter," causing passersby to deem Antidote anti-gun. ROA.41 ¶ 48. Antidote's staff have encountered customers bothered by the large signs, and have been forced to confront patrons regarding Antidote's no-gun policy. ROA.47 ¶ 77, 80.

In general, posting signs is the safest and most practical option for property owners to effectively exclude guns from their property. ROA.40 ¶ 42-43. It is not possible to identify entrants carrying concealed firearms to provide individual notice,

and it would be exceedingly burdensome to provide separate oral or written (on a card) notice to *every* person who enters. ROA.40 ¶¶ 42-43. Further, Plaintiffs do not wish to "risk confrontation with an armed or potentially armed person," and are "sensitive to the personal safety risk that a policy of providing oral notice might entail." *See* ROA.45, 47 ¶¶ 68, 79.

Members of the public monitor signage to assess compliance with §§ 30.06 and 30.07. There is a website—www.texas3006.com—where individuals post about non-complaint signs. ROA.41 ¶ 49. If a business's sign does not "precisely comply with the requirements" of §§ 30.06 and 30.07, "some users see it as an opportunity to bring guns into those places anyway because they face no criminal consequences for doing so." *Id.* & n.7 (user posted "I walked right past a sign yesterday that said 'No firearms allowed'. I thought it was cute"). Both Plaintiffs wish to have government protection in the event someone attempts to carry a gun onto the premises, as that is the only effective backstop against gun-carrying trespassers. ROA.43, 47 ¶¶ 55, 81.

Plaintiffs named as defendants the officials charged with enforcing the notice regime in their localities: the City of Webster and its acting Police Chief Pete Bacon ("Webster"); Harris County District Attorney Kim Ogg and Harris County Sheriff Ed Gonzalez (collectively, "Harris County"); and City of Houston Police Chief Art Acevedo (and later, his successor, Chief Troy Finner) ("Houston"). ROA.31 ¶¶ 8,

11

10-12.[3]  They asserted First Amendment speech and association claims , as well as a state constitutional claim and a federal due process claim, ROA.52-55 ¶¶ 99-126, and sought declaratory and injunctive relief, ROA.55-56.

## III. The District Court First Holds That Plaintiffs Have Standing, then Reverses Course and Dismisses Plaintiffs' Claims for Lack of Standing.

The procedural history of the case from that point forward is complicated, but detailed review is necessary to understand the issues presented and standards of review on appeal.

### A. Defendants file initial Rule 12 motions, and the district court holds Plaintiffs have Article III standing.

After Plaintiffs filed their complaint, each Defendant filed a motion to dismiss. *See* ROA.122, 176, 197, 241.  On August 27, 2021, the district court (Judge Gilmore presiding) addressed these motions in an omnibus order.  ROA.401-28.  The court denied Houston's and Webster's motions to dismiss, including their arguments that Plaintiffs lacked standing.  It reasoned that "Plaintiffs' alleged injury is the deprivation of their free speech right as a result of the Acts' heightened notice requirements," and "the Government may not deny a benefit to a person on a basis that infringes the person's constitutionally protected rights."  ROA.413-14.[4]

---

[3] Plaintiffs also sued Texas Attorney General Ken Paxton, Presiding Officer Kim Lemaux, and County Attorney Vince Ryan (and later, his successor, Christian Menefee).  Later Plaintiffs voluntarily dismissed these defendants.  *Infra* n.4.

[4] Defendants Lemaux and Paxton (the "Texas Officials") also argued that Plaintiff lacked standing to assert a facial First Amendment challenge to the trespass

**B.** **The case is reassigned and Houston files a Rule 12(c) motion, which the district court grants, vacating its prior standing ruling.**

On December 7, 2021, the district court entered a scheduling order under which discovery closed on September 1, 2022. ROA.616-17. Judge Gilmore then retired, and on December 9, 2021, the case was reassigned to Judge Werlein. ROA.618.[5]

On December 23, 2021, Houston filed a Rule 12(c) Motion for Judgment on the Pleadings that, as relevant here, reiterated its previously rejected argument that Plaintiffs lacked Article III standing. ROA.626-42.

---

scheme. ROA.140, 329. The district court granted the Texas Officials' motion to dismiss Plaintiffs' facial challenge only—even as it denied the Houston and Webster motions to dismiss in their entirety. *See* ROA.412-13, 417. This decision was erroneous, for two reasons: (1) Whether a party can assert a facial challenge is separate from the threshold question of Article III standing. *See, e.g., Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011) (distinguishing between "prudential" limitations on facial challenges and "the distinct and independent requirement[s] of Article III"). (2) Plaintiffs' facial First Amendment challenge is meritorious, because there is no application of this unconstitutional conditions scheme that is valid. *See* ROA.307.

In any event, the Texas Officials filed an interlocutory appeal of the district court's denial of the other aspects of motion to dismiss, including their claim of sovereign immunity. ROA.454-55. In the interest of efficiency, Plaintiffs then voluntarily dismissed the Texas Officials. ROA.456. Plaintiffs' facial challenge to the statute survives with respect to the remaining Defendants, who—correctly— have never argued that the distinction matters for standing purposes. So the distinction between a facial and an as-applied challenge is not relevant to this appeal.

[5] On January 3, 2022, the district court granted Plaintiffs' voluntary stipulation of dismissal of their claims against Defendant Menefee, the Harris County Attorney. ROA.652.

While the motion was pending, the parties proceeded with discovery. Discovery closed on September 1, 2022. On September 29, 2022—approximately one month before the dispositive motions deadline—the district court granted Houston's Rule 12(c) motion. It held that Plaintiffs failed to allege facts establishing an Article III injury because (1) Plaintiffs are not coerced or compelled to post signs, and (2) Plaintiffs failed to allege that by declining to post signs, they must forego police protection. ROA.878-80. The district court dismissed Plaintiffs' claims against Houston without prejudice. ROA.882.

**C. Plaintiffs move to amend and the parties file dispositive motions.**

Although discovery had been completed, the district court did not consider any evidence when it granted Houston's Rule 12(c) motion. Plaintiffs wished to seek leave to file an amended complaint incorporating that evidence. Meanwhile, the remaining Parties were due to file dispositive motions. To streamline proceedings and avoid successive rounds of dispositive motions, Plaintiffs sought to hold the dispositive motions deadline in abeyance while they sought leave to amend. ROA.883-87. The district court did not rule on this motion, so Plaintiffs filed a motion for leave to amend their complaint on October 31, 2022. ROA.896-911.

All the parties then filed dispositive motions on November 1, 2022. Specifically, Harris County filed a Rule 12(c) motion for judgment on the pleadings on the ground that Plaintiffs lacked standing—which did not engage with record

evidence.  ROA.954-65.  Webster filed a Rule 12(b)(1) motion to dismiss for lack of jurisdiction or, alternatively, for summary judgment.  ROA.1427.  Meanwhile, Plaintiffs filed their own affirmative motion for summary judgment, setting forth the extensive record evidence supporting their standing as well as their claims on the merits.  ROA.972-1003.

### D.  Discovery confirmed Plaintiffs' allegations:  They must post the required signage to receive the benefit of Texas's trespass law.

As set forth in Plaintiffs' dispositive-motions briefing, discovery not only confirmed the allegations in Plaintiffs' complaint, it unearthed additional important evidence going directly to standing.[6]

***Defendants Enforce the Statutes as Written.***  The Harris County Sheriff's Office, through Sheriff Ed Gonzalez, the Webster Police Department, through Chief Pete Bacon, and the Houston Police Department, through Chief Troy Finner, enforce Texas law, including §§ 30.06 and 30.07, in their respective jurisdictions. ROA.1022-23, 1028-32, 1139-42.  The Harris County District Attorney's Office, through District Attorney Kim Ogg, prosecutes violations of Texas Law, including §§ 30.06 and 30.07, in Harris County.  ROA.1066, 1071-72, 1285.

Officers and prosecutors employed by Defendants are specifically trained on the nuances of the signage requirements under §§ 30.05, 30.06, and 30.07.

---

[6] For record citations confirming the allegations in the Complaint summarized *supra* in Part III.D, *see* Plaintiffs' Motion for Summary Judgment, ROA.980-86.

ROA.1302-12, 1317, 1355-58, 1366-68, 1401-23, 1101-04. In particular, officers and prosecutors are trained that property owners must post separate signs compliant with each of the three statutes—§§ 30.05(c), 30.06, and 30.07—to provide notice that all guns are prohibited. ROA.1317 (Texas Commission on Law Enforcement training material stating that "[i]mportantly, … the owners must have the applicable (*i.e.*, separate) signage for each type of carriage they wish to prohibit."); ROA.1412-23 (Harris County Prosecutor's Office training materials delineating three separate types of required signage).

Plaintiffs also obtained evidence showing that officers employed by Defendants put this training into practice. For example, on June 4, 2017, the Webster Police Department responded to a call for service at "Cheddar's" restaurant, involving a person carrying a weapon. ROA.1425-26, 1166-68. Chief Bacon testified that "[a]t some point, the weapon was observed, apparently by management, resulting in a call [to] the police department." ROA.1166. The resulting event report states that Cheddars "DOES HAVE 30.07 POSTED," indicating that officers reviewed the posted signage for open carry and determined it compliant when evaluating how to respond at the scene. ROA.1425.

Chief Bacon testified that "based on [the Event Report], I do not believe … that Cheddars has a 30.06 sign posted." ROA.1167. And "[i]n the absence of a 30.06 sign, I do not believe that the officer would have the right to

remove the gentleman from the premises, unless Cheddars, again, insisted." ROA.1167-68. Chief Bacon further testified that the incident "was cleared without an arrest," and the event report indicates that the patron was not removed from Cheddars. ROA.1166.

**Second Amendment Auditors.** Discovery revealed that law-enforcement officers are also trained to be aware of and responsive to the presence of "Second Amendment Auditors"—people who openly carry guns in an effort to engage the public or law enforcement. ROA.1277-80.[7]

**The Signs Are Sources of Controversy and Reputational Harm.** The record also shows that members of the public view the "big ugly sign[s]" required by §§ 30.06 and 30.07 to be "social[]" and "political[]" statements made by the institutions that post them. ROA.1234; *see also* ROA.1226 (Antidote owner believes by posting the signs she is "making a bold political statement"). The political valence of the signs has caused passers-by to deem Antidote anti-gun. For example, Antidote received a one-star rating from one Google user who explained the low rating with a single sentence: "The coffee shop posts 30.06 and 30.07

---

[7] Further record evidence regarding Second Amendment Auditors was filed under seal in the district court. Plaintiffs' motion requesting that the district court provide sealed documents to this Court is forthcoming. *Cf., e.g.*, *Openly Carrying A Gun Is Scaring People*, LEWISTON TRIBUNE, bit.ly/3XJ9e6g (Sept. 24, 2019) (describing "Second Amendment audits" whereby individuals "walk into a public place carrying an openly visible firearm and gauge the public and police response").

signage." ROA.1777. On one occasion, while she was replacing the §§ 30.06 and 30.07 signs outside Antidote, a man confronted Ms. Callaway regarding the signage, forcing her into an unwanted conversation regarding the precise statutory requirements. ROA.1269-70. In another case, an individual with a gun initially departed the premises but later returned with a sword, in an apparent reaction to being prohibited from carrying a firearm in the coffee shop. ROA.1259-61. And in yet another case, a gun-bearing patron asserted he was an off-duty police officer and so was permitted to have his gun in the coffee shop. ROA.1250-52. This assertion was undercut by the patron's companion, who clarified that he worked security. ROA.1252. The signs have also caused Antidote customers to confront staff—an effect Antidote's smaller pictographic signs never had. ROA.1228 ¶ 13.

*The Scheme's Design.* The record further confirms that exposing property owners to reputational harm, unwanted political controversy, and unpleasant encounters is the whole point of the statutory scheme. In the years since enactment, State lawmakers have stated that the signage regime is "intentionally … cumbersome" to discourage property owners from excluding guns. ROA.1014. Those who train law enforcement have opined that the purpose of the scheme is to pressure property owners to relinquish their right to exclude firearms. *See* ROA.1120 (training materials provided to Harris County District Attorney's Office opining that Texas's criminal trespass law, including "Sections 30.06 and

30.07," is a result of "the Legislature's continuing crusade to regulate (or eliminate) public and private property owners' rights to determine who can carry firearms on their property"); ROA.1410 (training materials provided to Harris County District Attorney's Office stating that "the triumph of individual gun rights over private property rights in the Penal Code is now almost complete").

### E. The district court dismissed the action for lack of standing.

Notwithstanding this extensive evidence, on March 16, 2023, the district court dismissed all of their claims for lack of standing, denied Plaintiffs' motion to file an amended complaint, and denied "[a]ll other pending motions" as moot. ROA.2148. The district court reasoned Plaintiffs failed to establish an Article III injury because Plaintiffs are not the subject of an actual or threatened enforcement action; because §§ 30.06 and 30.07 do not compel Plaintiffs to post statutorily compliant signs or prohibit them from posting noncompliant signs; and because Plaintiffs lack a cognizable interest in the arrest or prosecution of others. ROA.2136-38. The court rejected Plaintiffs' unconstitutional conditions argument on the basis that the government benefit of deterrence of trespassers, achieved through enforcement of the criminal law, is too "hypothetical and conjectural" to support standing. ROA.2141.

The district court further reasoned that any injury was not traceable to Defendants, because Defendants "have no control over the state statutory scheme"

and because Texas's trespass statutes are enforced against third parties, rather than Plaintiffs. ROA.2137, 2143. Finally, the district court held that Plaintiffs' alleged injury was not redressable by a favorable decision because Plaintiffs already have the relief they seek—the ability to post "no-guns" signs in their own words. ROA.2144. Further, the court held it could not "order Defendants to revise § 30.06 and § 30.07 to make them like Plaintiffs would want them to be." ROA.2145.

The district court concluded, "[h]ere, whether reviewing the Complaint alone, the facts alleged in Plaintiffs' proposed First Amended complaint, or the Complaint supplemented by the undisputed facts of record, the result is the same: Plaintiffs lack standing to proceed." ROA.2146.

Plaintiffs timely appealed. ROA.2151, 2180-82.

## SUMMARY OF THE ARGUMENT

**I.** Plaintiffs are concretely injured by §§ 30.06(c)(3) and 30.07(c)(3), Plaintiffs' injuries are traceable to Defendants who enforce the scheme as written, and Plaintiffs' injuries are redressable by an injunction and declaratory judgment. Sections 30.06 and 30.07 impose heightened notice requirements to exclude firearms and unevenly burden Plaintiffs' right to exclude guns compared with property owners seeking to exclude for other reasons. Plaintiffs are further injured by being put to an unconstitutional choice: either forego the right to speak in the manner of their choosing or forgo the deterrent effect of the criminal trespass law to protect

20

their property rights.  This choice works an immediate injury, *Peter Henderson*, 806 F.2d at 1275; and when a plaintiff foregoes arguably constitutionally protected behavior to retain a government benefit, that injury further confirms Article III standing, *FAIR*, 547 U.S. at 59.

Plaintiffs have engaged in compelled speech to which they object.  The injury analysis can end there.  But the Church has also sacrificed its right to exclude openly carried handguns and, as a result, its associational freedom to congregate for religious services without handguns present.

Plaintiffs' injuries are directly traceable to Defendants—local police chiefs and prosecutors—who enforce the trespass law as written and train their staffs accordingly.  Their adherence to the letter of the statute means that the deterrent effect of the criminal law fully protects Plaintiffs' property rights only if they post conforming signs.  For the same reason, Plaintiffs' injuries are redressable by an injunction preventing enforcement of §§ 30.06(c)(3) and 30.07(c)(3).  Plaintiffs could then choose how to communicate "oral or written" notice.  Tex. Penal Code §§ 30.06(b), 30.07(b).

The district court committed multiple errors in holding that Plaintiffs lack standing.  *First*, the district court reasoned that Plaintiffs need not comply the signage requirements because they could simply provide oral notice.  But the record establishes that providing individualized oral notice conflicts with Plaintiffs'

21

expressive preferences and is more burdensome than posting signs. *Second*, the district court held that Plaintiffs lacked standing because they claimed entitlement to arrest or prosecution of another. But Plaintiffs made no such claim. Plaintiffs asserted—and provided evidence showing—that absent the *threat* of prosecution, they are robbed of the deterrent effect of the criminal trespass laws. *Third*, the district court accepted Defendants' arguments that law enforcement would provide protection to businesses that did not have §§ 30.06 and 30.07 compliant signs. But record evidence shows the contrary to be true; Defendants follow the law as written and confirm whether a business has compliant signs when making arrest decisions about criminal trespass.

Throughout, the district court also failed to apply the correct Rule 56 standard to fact questions in a case where jurisdictional and merits questions overlapped. The district court's fact findings also fail review under a clear error standard.

When it granted Houston's Rule 12(c) motion for judgment on the pleadings on the ground that Plaintiffs failed to allege injury, the district court made many of the same legal errors. It also failed. to fairly construe the complaint and draw all permissible inferences in Plaintiffs' favor.

The district court's orders dismissing Plaintiffs' claims for lack of jurisdiction were erroneous.

**II.**   Discovery produced extensive material relevant to standing.   After the district court reversed its prior standing ruling and granted Houston's Rule 12(c) motion, Plaintiffs sought leave to file an amended complaint incorporating this evidence.   The district court denied this motion as futile.   In so holding, the district court relied on the same flawed legal analysis set forth above; and it also improperly failed to apply the Rule 12(b)(6) standard to draw inferences in Plaintiffs' favor. This was separate error.

This Court should reverse the judgment and remand.

## STANDARD OF REVIEW

The rulings under review from the final judgment are: (1) the district court's September 29, 2022 order granting of Houston's Rule 12(c) motion for judgment on the pleadings; and (2) the district court's March 16, 2023 order, which (i) granted Harris County's Rule 12(c) motion for judgment on the pleadings; (ii) granted Webster's Rule 12(b)(1) motion to dismiss for lack of jurisdiction; and (iii) denied, on futility grounds, Plaintiffs' motion for leave to amend their complaint.[8]

**1.**   "A district court's grant of a Rule 12(c) motion for judgment on the pleadings is reviewed de novo."   *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017).

---

[8] The district court denied all other pending motions, including Plaintiffs' motion for summary judgment, as moot.   ROA.2148.   Plaintiffs do not separately challenge this mootness ruling.

**2.** When reviewing a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), this Court reviews the district court's application of law de novo. *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009); *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

Ordinarily, in reviewing a 12(b)(1) dismissal, this Court reviews factual findings of the district court for clear error. *United States ex rel. Branch Consultants*, 560 F.3d at 376. In this case, however, the district court was not entitled to resolve disputed issues of fact. Where, on a 12(b)(1) motion, "issues of fact are central both to subject matter jurisdiction and the claim on the merits," *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004), "the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at trial," *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1029 (5th Cir. 2022) (citation omitted); *see also Barrett Comput. Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 219 (5th Cir. 1989) (noting that "challenges to standing [under such circumstances] are frequently resolved in summary judgment proceedings—where the nonmovant is granted all reasonable factual inferences and the movant cannot succeed unless the court finds that no genuine issue of material fact exists—or at a trial on the merits"). Here, Defendants' fact arguments overlapped with, and were central to, issues on the merits, so the Rule 56 standard applied. *See infra* at 26-27.

In turn, this Court should not apply a clear error standard to the district court's factual conclusions. Rather, it should conduct its own de novo review of the fact record, "view[ing] all facts, and the inferences to be drawn from them, in the light most favorable to the non-movant." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 707 (5th Cir. 2021).

**3.** Where the district court's denial of leave to amend is based solely on futility, this Court applies "a de novo standard of review identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6)." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010)).

## ARGUMENT

### I.     The Church and Antidote Have Standing.

Article III standing has three requirements. *First*, the plaintiff must have suffered "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). *Second*, the injury must be "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party." *Id.* (alterations in original) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)). *Third*, the plaintiff must show that her injury "will likely be redressed by a favorable decision." *Id.* at 561 (quoting *Simon*, 426 U.S. at 41-42). The district

25

court erred in granting both Webster's and Harris County's Rule 12 motions on the developed record and Houston's Rule 12(c) motion for judgment on the pleadings.

## A. The record establishes that Plaintiffs are suffering multiple cognizable injuries.

The record establishes that the challenged notice requirements work multiple concrete and particularized injuries.

### 1. The district court applied the wrong standard to Webster's and Harris County's Motions.

As an initial matter, in granting Webster's Rule 12(b)(1) motion and Harris County's Rule 12(c) motion, the district court failed to apply the correct standard to fact questions. On a Rule 12(b)(1) motion where merits and jurisdictional fact questions overlap, the court should not resolve disputed fact issues but should apply the Rule 56 standard, viewing all facts and evidence in the light most favorable to the non-moving party. *E.g.*, *Pickett*, 37 F.4th at 1029–30; *Montez*, 392 F.3d at 150; *supra* at 24-25. That was the case here.

For example, Webster's lead factual contention on both standing and the merits was that it would provide the same response to trespass complaints irrespective of whether the Church posted conforming §§ 30.06 and 30.07 signs, so the Church is not put to an unconstitutional choice. *Compare* ROA.1446 (making this argument to challenge standing), *with* ROA.1451 (making this argument in support of summary judgment on the merits). Accordingly, Webster's motion

should have been decided under the Rule 56 standard.  The district court, instead, impermissibly drew inferences on material fact questions in Webster's and Harris County's favor.  In any case, the district court ignored key facts in the record, and its findings do not survive clear error review.[9]

### 2.     The scheme injures the Church and Antidote by unevenly burdening their right to exclude guns.

"Discriminatory treatment at the hands of the government is an injury 'long recognized as judicially cognizable.'"  *Time Warner*, 667 F.3d at 636 (quoting *Texas Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 218 (5th Cir. 2008) (citing *Heckler v. Mathews*, 465 U.S. 728, 738 (1984)).  "And such injury is recognizable for standing irrespective of whether the plaintiff will sustain an actual or more palpable injury as a result of the unequal treatment under law or regulation."  *Texas Cable*, 265 F. App'x at 218 (citing *Ne. Fla. Chapter of the Associated Gen. Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993)).

---

[9] The district court did not clarify the standard it applied to Harris County's Rule 12(c) motion for judgment on the pleadings, which did not initially marshal any record evidence, *see* ROA.954-66.  "A motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  District courts therefore convert motions for judgment on the pleadings that raise only jurisdictional issues to Rule 12(b)(1) motions.  *See* Wright & Miller, Fed. Prac. & Proc. § 1367 & n.23.  Assuming the district court did so and reviewed the evidence in the record, it was also obligated to apply the Rule 56 standard.

In *Davis v. Federal Election Commission*, the Supreme Court similarly recognized that "asymmetrical" treatment works an injury in the First Amendment context. 554 U.S. 724, 734-35 (2008). There, Davis challenged the "Millionaire's Amendment" to federal campaign finance laws. *Id.* at 729. Under it, once a candidate's expenditure of personal funds exceeded a certain amount, an "asymmetrical regulatory scheme [came] into play" under which the candidate's opponent benefited from far more generous contribution and coordinated-party-expenditure rules. *Id.* at 729. Davis had self-funded his campaign, thereby triggering the favorable rules for his opponent. *Id.* at 732. But because the opponent never took advantage of the favorable rules, the FEC challenged Davis's standing. *Id.* at 734. The Court disagreed. It did not matter that in the end, the statute did not ultimately cause the expected harm; that the statute *allowed* the burden and caused a likelihood of an unfair burden on Davis was sufficient to support standing. *Id.* at 734.

Here, the Texas statutory scheme similarly imposes differential burdens on different speakers. Indeed, it turns on content, which is an inherently suspect basis for government regulation of speech. *See Reed v. Town of Gilbert*, 576 U.S. 155, 168–69 (2015) (town ordinance that singled out a specific subject-matter for differential treatment violated First Amendment); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992) (laws that target speech based on its communicative content are

presumptively unconstitutional). Property owners who wish to express a prohibition on firearms are treated differently from property owners who wish to express a prohibition on virtually any other item or entrant.

The district court, however, rejected this argument and specifically held that *Davis* does not support Plaintiffs' standing. This was incorrect. The district court simply misread *Davis*. It focused on the Supreme Court's analysis of Davis's standing to challenge the Millionaire's Amendment's *disclosure* requirements, which were backed by FEC enforcement and penalties. ROA.2135. And it held that because Plaintiffs could not point to a similar threat of direct enforcement, they lacked standing. ROA.2136. But *Davis*'s standing analysis expressly (and necessarily) treated the disclosure and contribution-limit issues separately. *See Davis*, 554 U.S. at 733-34 (standing "is not dispensed in gross" and must be analyzed separately for each claim). Plaintiffs rely on the Supreme Court's analysis of Davis's standing to challenge the *contribution* limits, which the district court did not address. *Id.* at 734.

Relying on its selective reading of *Davis* and *California v. Texas*, 141 S. Ct. 2104, 2114 (2021), the district court held that Plaintiffs suffered no harm because no one had yet threatened or directed any action against them. ROA.2136. But that is contrary to *Texas Cable* and the relevant holding of *Davis*.

### 3. Being subjected to an unconstitutional conditions scheme immediately works a cognizable harm.

Similarly, under this Court's precedents, a plaintiff has Article III standing if a recognized right is subject to an allegedly unconstitutional condition. In *Peter Henderson Oil Co.*, 806 F.2d at 1274-75, the city granted an oil company a permit to rework a well on the condition that the company obtain local property owners' consent. The company argued that this condition required it to accede to an unconstitutional delegation of government authority. This Court held that the company had standing to assert its unconstitutional conditions claim as soon as the city issued the permit. *Id.* This was because the city's action "*immediately interfered*" with the company's property right by "condition[ing] their use of the property … upon an allegedly unconstitutional requirement." *Id.* at 1275 (emphasis added). This means Plaintiffs had standing to sue the moment the trespass laws went into effect.

### 4. In unconstitutional-conditions cases, giving up a constitutional right *or* a government benefit establishes injury.

In any case, Plaintiffs have shown more than that they are subject to discriminatory treatment; they have given up numerous rights. That establishes their Article III injury.

Sometimes, in an unconstitutional conditions case, the plaintiff will have acceded to the condition, accepting the burden on her constitutional right in order to

have the government benefit. *See, e.g.*, *W. & S. Life Ins. Co. v. State Bd. of Equalization of California*, 451 U.S. 648, 655-68 (1981) (claimant gave up right to equal protection as condition of doing business in state). Other times, the plaintiff will have rejected the condition and lost the benefit. *See, e.g.*, *Speiser v. Randall*, 357 U.S. 513, 158-19, 1529 (1958) (finding unconstitutional requirement that veterans, as condition of receiving property tax exemption, declare they do not advocate the forcible overthrow of the government even where appellants had not applied for exemption). Either way, there is injury.

This was a holding of the Supreme Court in *FAIR*, 547 U.S. 47. There, the plaintiff was an association of law schools that challenged a federal statute that denied federal funding to educational institutions that declined to allow military recruiters on campus. *Id.* at 55. The United States argued that because none of the law schools in the association had actually lost federal funding, the law schools— and in turn FAIR—lacked Article III standing. *See FAIR, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 286 (D.N.J. 2003). The district court rejected this argument that only one type of injury—loss of a government benefit—suffices in an unconstitutional conditions case:

> It is true that FAIR members have not as of yet suffered an actual loss of funding pursuant to enforcement of the Solomon Amendment. But law school members of FAIR have a sufficient stake in this controversy insofar as the allegations demonstrate that the schools have capitulated to government threats of losing federal funding…. The

> relevant injury for standing purposes is the government-induced abandonment of the schools' non-discrimination policies and not, as the Government urges, an actual loss of funding.

*Id.* Its reasoning on this point was expressly adopted by the Third Circuit, *see FAIR v. Rumsfeld*, 390 F.3d 219, 228 n.7 (3d Cir. 2004) (affirming the district court's holding that FAIR's standing was proper "for the reasons it provided"), and then by the Supreme Court, *see Rumsfeld*, 547 U.S. at 52 n.2 (citing district court and Third Circuit decisions and "agree[ing] that FAIR had standing"). It is enough to choose one of the two coercive options.

(a)  **The signage scheme forces plaintiffs to choose between two core rights.**

Here, the choice to which Plaintiffs have been put is particularly stark, because a core right will be infringed whichever choice they make. On the one hand, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, [or] … religion … or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943). "[T]he freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also essential to the common quest for truth and the vitality of society as a whole." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503-04 (1984). Likewise, the Supreme Court has recognized that the right to associate for purpose of engaging in

activities protected by the First Amendment—including the exercise of religion—is an "indispensable means of preserving other individual liberties." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).

It follows from these principles that for standing, "[a] deprivation of First Amendment rights standing alone is a cognizable injury." *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999); *see also, e.g.*, *Cooksey v. Futrell*, 721 F.3d 226, 235–36 (4th Cir. 2013) ("[T]o demonstrate injury in fact, it is sufficient to show that one's First Amendment activities have been chilled."). Compelled speech is a deprivation of First Amendment rights sufficient for standing. *See, e.g.*, *Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (finding First Amendment violation where "a state measure … forces an individual, as part of his daily life … to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable"); *Cressman v. Thompson*, 719 F.3d 1139, 1145 (10th Cir. 2013) (compelled speech is an injury in fact sufficient to confer standing); *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 426–27 (9th Cir. 2008) (similar).

On the other hand, as Blackstone teaches, a private property owner's right to exclusive control over his or her property is a "sacred and inviolable right." 1 William Blackstone, *Commentaries on the Laws of England* 140 (3d ed. 1884). "[T]he right to exclude others is more than just one of the most essential constituents of property—it is the *sine qua non*. Give someone the right to exclude … and you

give them property. Deny someone the exclusion right and they do not have property." Thomas W. Merrill, *Property and the Right to Exclude*, 77 NEB. L. REV. 730, 730 (1998) (citation omitted)). As the Supreme Court recently held, a "regulation [that] appropriates for the enjoyment of third parties the owners' right to exclude" can constitute a *per se* physical taking. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights.").

Here, the trespass scheme forces Plaintiffs to sacrifice one or the other of these rights. Unless Plaintiffs accede to state-mandated speech in a form they find objectionable, they cannot benefit from the protection of Texas's criminal trespass laws.

**(b)      Plaintiffs have sacrificed their rights and thereby suffered injury.**

Plaintiffs have made their choices—as the scheme compels them to do—and sacrificed core rights. These sacrifices constitute cognizable injuries. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[I]f the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited."); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013) (holding that a Florida

scheme amounted to an unconstitutional condition where it conditioned a grant of a permit on the requirement to provide a conservation easement in violation of the Takings Clause).

***Harms to Freedom of Speech.*** The signage scheme intrudes on Plaintiffs' desired method of expression by forcing them to express their intent to exclude guns in a specific and burdensome way. Absent by-the-book compliance with the statutorily prescribed language, individuals carrying firearms can enter Plaintiffs' properties and they will not have committed a trespass. In turn, police offers cannot arrest them, and district attorneys cannot prosecute them, for this conduct. ROA.1022-23, 1028-31, 1139-40, 1066, 1071-72, 1285, 1317, 1412-23, 1425, 1677-68. In order to be protected by Texas's trespass laws, then, Plaintiffs have posted signs that conform with the statutory requirements. Antidote has posted statute-conforming signs to exclude entrants who concealed-carry and who open-carry. ROA.1225 ¶ 5. The Church has posted conforming signs to exclude entrants who open-carry. ROA.1209-11. By posting conforming signs, Plaintiffs have engaged in objectionable, government-scripted speech. ROA.1211 ¶¶ 7-12; ROA.1226-27 ¶¶ 6-11. For standing purposes, that is a First Amendment injury. *See Wooley*, 430 U.S. at 714-15; *Cressman*, 719 F.3d at 1145.

It does not matter whether Plaintiffs agree with the message the signs convey. "[T]he government, even with the purest of motives, may not substitute its judgment

as to *how* best to speak for that of speakers and listeners; free and robust debate cannot thrive if directed by the government." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 791 (1988) (emphasis added). And the difference between one's desired manner of expression and the government-mandated manner need not be vast for an injury to exist. A small intrusion is enough. *See, e.g.*, *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (desire to dance nude, rather than in a g-string, is expressive interest triggering First Amendment scrutiny); *Riley*, 487 U.S. at 791 ("[W]e presume that speakers, not the government, know best both what they want to say and how to say it."); *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 820 (5th Cir. 1979) (religious adherents had standing to challenge ordinance requiring public solicitations to be made from designated booths because that restricted the "aggressive[]" manner in which plaintiffs ordinarily make solicitations); *Jacobs*, 526 F.3d at 425–27 (students had standing to challenge a mandatory dress code as injuring First Amendment rights to free expression).

    ***Reputational Harm.*** The record further establishes that Plaintiffs are suffering reputational harms because they have posted the signs. "[I]njury to reputation can constitute a cognizable injury sufficient for Article III standing." *Foretich v. United States*, 351 F.3d 1198, 1211 (D.C. Cir. 2003); *see also Walker v. City of Mesquite*, 129 F.3d 831, 832–33 (5th Cir. 1997). In particular, Antidote has suffered negative public commentary because of posting the signs. *See* ROA.1777

(one-star Google review of Antidote stating "The coffee shop posts 30.06 and 30.0 signage."); ROA.1780 (texas3006.com "Wall of Shame" post listing Antidote and commenting "I guess I have to go somewhere else for coffee.").

*Harms to Property Interests.* The Church is also suffering an ongoing harm because the scheme has caused it to sacrifice its right to exclude. ROA.1209-11. As the record establishes, the Church decided not to post the concealed-carry signs, or to provide individual notice to entrants, out of concern that doing so would jeopardize the Church's safety, accessibility, and messages of non-violence and inclusivity. *See* ROA.982-83, 1211, 1231-38; *Meese v. Keene*, 481 U.S. 465, 475 (1987) ("[T]he need to take … affirmative steps to avoid the risk of harm to [one's] reputation constitutes a cognizable injury."). The Church is thus holding its property open to those carrying concealed handguns. And, as the record establishes, certain entrants take note of signage and actively test the boundaries of their right to carry firearms. ROA.1777-80, 1231-38. This compelled sacrifice of a property right "is a constitutionally cognizable injury." *Koontz*, 570 U.S. at 607; *accord Texas v. Yellen*, 2022 WL 989733, at \*5 (N.D. Tex. Mar. 4, 2022) (applying *Koontz* in the standing context to an unconstitutional-conditions claim).

*Harm to Associational Freedom.* In addition to the viewpoint-and speech-based injuries discussed above, the scheme has also caused the Church a freedom-of-association injury. The Church wants to exclude weapons for both expressive

and associational reasons. ROA.1209-11. But Defendants' strict enforcement of the statutory notice requirements emboldens members of the public to flout what they perceive to be inadequate signage on no-gun premises, ROA.1233, 1250-63, 1278-79, which compromises the Church's ability to exclude firearms. This injury is particularized to the Church, which believes that weapons run counter to fundamental religious tenets like exercising compassion and love for others. ROA.1211, 1215. The Texas scheme thus harms the Church's freedom of association. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 650 (2000); *McDonald v. Longley*, 4 F.4th 229, 245 (5th Cir. 2021) ("For groups that engage in expressive association, the 'freedom of association … plainly presupposes a freedom not to associate.") (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984)) (alterations in original).

**(c)**     **The district court's contrary reasoning was error.**

In all of these ways, then, Plaintiffs are suffering ongoing Article III harms as a direct result of Texas's statutory scheme. The district court avoided this conclusion only by embracing legal fallacies and ignoring record evidence.

*Oral Notice.* The district court reasoned that Plaintiffs need not post §§ 30.06 and 30.07 signage because they can simply provide oral notice. ROA.2137. But the record shows that providing individualized notice—either by card or orally— conflicts with Plaintiffs' expressive preferences and is *more* burdensome than

posting the government-scripted signage. ROA.1212 ¶¶ 13-16, 1228 ¶ 14; *see also* ROA.1228 ¶ 15 (describing concern of Antidote owner that requiring staff to engage in oral notice could risk staff safety). The district court ignored this evidence, which would satisfy the clear error even if it applied; its holding on this point also necessarily falls short under the Rule 56 standard that does govern. ROA.2137, 2139.

Moreover, the idea that one's property rights are unaffected when the government takes away the most expedient means of providing notice to trespassers defies common sense. Imagine that a state passed a law providing that homeowners could no longer provide notice to would-be trespassers by posting signs; instead, they had to give individual oral notice to everyone attempting to enter the property. No one would dispute that the state had burdened the homeowner's right to exclude or that they had suffered a cognizable injury.

This problem is particularly glaring if one posits, as the district court did, that Plaintiffs are uninjured because they can simply "ask[] anyone carrying a handgun to leave their premises" *after they have entered*. ROA.2139. Again, the right to exclude is perhaps the most important stick in the property owner's bundle. *See supra* at 33-34. It is no answer to a property owner who has been denied that right to say the intrusion will only last a little while. The property owner wants to exclude completely and is unable to. That is enough. *Cf., e.g.*, *Cedar Point Nursery*, 141 S.

Ct. at 2073-74 (collecting cases where temporary invasions of property constituted takings).

**Entitlement to Prosecution.** Citing *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973), and *Lefebure v. D'Aquilla*, 15 F.4th 650, 663 (5th Cir. 2021), the district court concluded that Plaintiffs lacked standing because there can be no "cognizable interest in whether *another* person is arrested or prosecuted." ROA.2137. But that is a non-sequitur. A party need not have an entitlement to a government benefit to make out an unconstitutional conditions claim. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). And in any event, Plaintiffs have never asserted an interest in the prosecution of any particular third party. Rather, they assert that absent the threat of prosecution, they will be robbed of the *deterrent effect* of the trespass laws, a fact that the record below abundantly supports. ROA.983, 1233, 1269-70, 1425, 1167-68. Plaintiffs are interested only in their ability to exclude and the impact that the statutory requirements have on that ability. *Linda R.S.* and *Lefebure* are inapposite.

**Self-Inflicted Injury.** The district court further held that Plaintiffs' injuries are self-inflicted because they have chosen to post the signs. That is wrong. It is true that "standing cannot be conferred by a self-inflicted injury." *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). But Plaintiffs' injuries are not self-inflicted,

40

because they cannot opt out of the asymmetrical Texas scheme. The only options available to them to express their no-guns viewpoint are burdensome and objectionable. ROA.1209-11, 1226-28. The only way to avoid the burdensome expression is to forgo their right to exclude. In an unconstitutional conditions case like this, a plaintiff that engages in unwanted speech to obtain a governmental benefit has not inflicted her own injury. *See, e.g.*, *Agency for Int'l Dev.*, 570 U.S. at 219 (rejecting as "[in]sufficient" the government's suggestion that funding recipients who object to a program's conditions may decline the funds and thereby avoid being subject to the condition); *Parks v. Watson*, 716 F.2d 646, 651-52 (9th Cir. 1983) (in unconstitutional conditions case, rejecting argument that plaintiff "was free to reject the terms" of the choice as "specious," because the scheme forced him into one of two options).

Nor does it matter that the Church and Antidote could post *non-conforming* signs of their choosing. ROA.2139. That would not cure their injury, because in that case—as the record establishes—they would no longer benefit from the deterrent effects of the criminal law. ROA.1052, 1061-63, 1082, 1084, 1143, 1152. This is another point on which the district court improperly ignored record evidence and resolved factual disputes in Defendants' favor. Discovery showed that Defendants are trained to enforce, and do enforce, the statutes as written, including the "written communication" provisions of §§ 30.06 and 30.07. ROA.1018-1193,

1282-1426. And discovery showed an example of Webster putting this training into practice. An event report from a disturbance at Cheddar's Restaurant states that Cheddars had a 30.07 sign posted. ROA.1425. Deposition testimony from Chief Bacon established that because Cheddars had no 30.06 sign, officers would have no right to remove a "trespasser" with a license to carry a concealed firearm, unless the property owner voiced a new objection. ROA. 1167-68. And indeed, responding police officers spoke to the gun-bearing patron during the course of the Cheddars incident, but did not remove him. *Id.* Nonetheless, on this disputed issue of material fact, the district court dismissed the significance of the Cheddars report and accepted Defendants' arguments that law enforcement would provide protection to businesses that did not have §§ 30.06 and 30.07 compliant signs. *See* ROA.2139-30 & n.11-12 (finding Plaintiffs are not compelled to post signage because they may "engage the police to aid Plaintiffs in excluding trespassers" and that gun-bearing entrants may be removed, even if not arrested, under such circumstances). This was contrary to the Rule 56 standard and also clear error.

Similarly, the district court ignored record evidence regarding whether non-conforming signs deter trespassers. Plaintiffs provided evidence that the public is watchful of which businesses are §§ 30.06 and 30.07-compliant, and are deterred by compliant signs. ROA.1778-80 (excerpts from texas3006.com demonstrating the public's careful parsing of 30.06 and 30.07 signage requirements); ROA.1278-79

(noting presence of Second Amendment Auditors); ROA.1269-70 (testimony of Antidote owner describing confrontation with man who told her "those signs d[o]n't actually mean anything, and he teaches a concealed handgun course so he knows."). Again without acknowledging this record evidence, the district court found that Plaintiffs could effectively enforce their right to exclude by posting signs of their choosing. ROA.2139-30 & n.11-12. Again, this was both contrary to the Rule 56 standard and clear error.

*Tangible Injury.* The district court also concluded that Plaintiffs failed to show they are denied a "specific tangible benefit." ROA.2139-41 (citing *Dolan v. City of Tigard*, 512 U.S. 374 (1994)). According to the district court, the "deterrent effect" of arrest and/or prosecution on firearm trespassers is too hypothetical and conjectural to support standing under an unconstitutional conditions theory. This contention is, again, belied by the record. ROA.1167-68 (in the absence of compliant signage, officers may not remove trespasser absent oral notice); ROA.1231-38 (discussing businesses with §§ 30.06 and 30.07 compliant signage); ROA.1778-80 (excerpts from texas3006.com demonstrating the public's careful parsing of 30.06 and 30.07 signage requirements); ROA.1278-79 (noting presence of Second Amendment Auditors).

**5. The Church's and Antidote's injuries are fairly traceable to Defendants, who enforce Texas's scheme.**

Traceability requires showing only "a causal connection between the injury and the conduct complained of." *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc). "Article III 'requires no more than *de facto* causality.'" *Dep't of Com.*, 139 S. Ct. at 2566 (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.)). Traceability is satisfied so long as the defendants are "among those who cause" the plaintiff's injury—they need not be the "proximate cause" of it. *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 514 (5th Cir. 2017). This low bar is indisputably met here.

Imagine a law providing that it is not a crime for to paint graffiti on the outsides of Episcopalian churches. A church challenged this law as discrimination on the basis of religious affiliation. Even if vandals were the ones to directly inflict the actual damage, the church's injury would be *traceable* to the police and prosecutors who followed the state law and declined to arrest and prosecute only graffiti artists that targeted this one denomination. The same holds here. The evidence shows that Defendants enforce the notice regime as written, which means gun carriers cannot be arrested for trespass unless the precise signage required by statute is posted. ROA.1425-26, 1166-68, 1425. In turn, non-parties (like so-called "Second Amendment Auditors") disregard signage that fails to adhere to the state's preferred script—*i.e.*, the signage that the Church and Antidote prefer. ROA.1233

("I walked right past a sign yesterday that said 'No firearms allowed'. I thought it was cute."). But for the fact that defendants apply the law as written, the Church and Antidote could enjoy the protection of Texas trespass law while posting their preferred signage. That shows that Plaintiffs' injuries are traceable to Defendants. The district court made at least two significant errors when it held otherwise.

*First*, it reasoned that because Defendants "are not the promulgators of" Texas's scheme, the Church's and Antidote's injuries cannot be "fairly traceable to any *conduct*" of Defendants. ROA.2143 (emphasis in original). But that is wrong. A plaintiff "aggrieved by application of a legal rule does not sue the rule *maker* … [h]e sues the person whose acts hurt him." *Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995) (emphasis in original); *see also In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) ("The power to promulgate law is not the power to enforce it."), *cert. granted, judgment vacated on other grounds sub nom. Planned Parenthood Ctr. For Choice v. Abbott*, 141 S. Ct. 1261 (2021); *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (similar).

*Second*, the district court observed that Defendants lack authority to "enforce" the notice regime by levying penalties directly "against plaintiffs." ROA.2143. That does not matter, either. While direct enforcement is generally sufficient for standing, Article III does not *require* that. *See, e.g.*, *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2556 (2019) (New York had standing to challenge citizenship-census question

45

because "evidence at trial established that" "third parties will likely react in predictable ways to the citizenship question" that harm New York).

This Court's holdings in *Air Evac EMS, Inc. v. Texas* and *K.P. v. LeBlanc* illustrate the point. In *Air Evac*, the defendants applied state law as they oversaw the insurance reimbursement process; this Court held that Air Evac's injury was traceable and redressable by an injunction against the defendants—even though insurers, and not the state, were the ones who had to pay its charges. 851 F.3d at 513, 515. Likewise in *K.P.*, this Court held that plaintiff-physicians had standing to challenge the constitutionality of statute that created a private cause of action to sue doctors who performed abortions and provided that laws limiting medical malpractice liability did not apply. 627 F.3d 115, 123-24 (5th Cir. 2010). Plaintiff-physicians' alleged injuries were traceable to an oversight board that determined whether doctors could receive compensation from a malpractice fund. Even though the board's recommendations could be overridden and it could not "prevent a private litigant from pursuing relief in Louisiana court," traceability was satisfied because the board had "definite responsibilities" in applying the statute. *Id*. at 123-24. So too here, Plaintiffs have presented evidence showing that Defendants' have "definite responsibilities" in applying the trespass signage requirements. That suffices for traceability.

**6.    A favorable judicial decree would redress the Church's and Antidote's injuries.**

Traceability and redressability are closely related concepts. *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Plaintiffs' injuries are traceable to Defendants' by-the-book enforcement of the heightened notice regime, and a favorable decision enjoining such enforcement would redress those injuries. That is so even if the injuries are not *completely* remedied—since redressability "does not require a remedy that covers every conceivable injury." *Jackson Mun. Airport Auth. v. Harkins*, 67 F.4th 678, 686 (5th Cir. 2023). Take, again, the hypothetical example of a state law decriminalizing graffiti on Episcopalian churches. If an Episcopalian church brought suit complaining of religious discrimination, its injury would be redressable by an injunction precluding police and prosecutors from enforcing the denomination-based carveout in the state's vandalism law. The same holds here.

In concluding that Plaintiffs' injuries are not redressable by the declaratory and injunctive relief they seek, the district court made two key errors. *First*, the court reasoned that it was "wholly speculative" whether handgun-carriers would obey the signs that Plaintiffs plan to post—those third parties may just ignore the signs, thus still injuring Plaintiffs by trespass. ROA.2145 (citing *E.T. v. Paxton*, 41 F.4th 709, 720–21 (5th Cir. 2022)). But if that occurred, and if an injunction and

declaratory judgment were in place, the trespasser would be subject to arrest, whereas under the current scheme, it is not a crime for an entrant to ignore a simple "no guns" sign. The constitutional injury would be redressed, because Plaintiffs would no longer be forced to abandon their speech rights to obtain the benefit of trespass law. *See K.P.*, 627 F.3d at 123 (noting redressability is met where "a favorable decision will relieve a discrete injury," which does not require relief of plaintiff's "*every* injury"). Of course, the deterrent effect of trespass law may not be perfect protection against all individuals; but it is perverse to suggest that responsible firearm owners, as a class, would be inclined ignore the expressed will of property owners prohibiting handguns.

*Second*, the district court held itself unable to "order Defendants to revise" the challenged statutes. ROA.2145. But the district court did not have to invent an alternative notice regime. Plaintiffs seek only to strike the onerous definition of "written communication" set out at §§ 30.06(c)(3) and 30.07(c)(3). Section 30.06(a) provides that a license holder commits an offense if he or she "carries a concealed handgun … on the property of another without effective consent" and "received notice that entry on the property by a license holder with a concealed handgun was forbidden." "A person receives notice if the owner of the property or someone with apparent authority to act for the owner provides notice to the person by oral or written communication." Tex. Penal Code § 30.06(c). The onerous signage

requirements to which Plaintiffs object are contained within § 30.06(c)(3), defining "written notice." By striking § 30.06(c)(3), Plaintiffs could thus provide notice to license holders by simple "oral or written communication," similar to the flexible notice requirements under Texas's General Trespass statute. *See* Tex. Penal Code § 30.05(b)(2). Section 30.07 mirrors this structure, and may be remedied in the same way.

**B. The District Court Erred When It Granted Houston's Rule 12(c) Motion.**

The foregoing establishes that, on the factual record, Plaintiffs have standing. The district court, of course, granted Houston's Rule 12(c) motion on the pleadings alone. That was error. The complaint pleaded all facts necessary to establish standing in accordance with the legal principles set forth above: it alleged Plaintiffs do post some or all of the required signage, and that posting a sign is the only practicable way to exclude guns because individual notice is unworkable, burdensome, and potentially dangerous. ROA.40, 44, 46 ¶¶ 42-43, 59, 72. It further alleged that the Houston Police Department enforces the challenged statutes in the City of Houston, where Antidote is located, ROA.30-31 ¶¶ 6, 12, and Plaintiffs had to post signs "in order to avail themselves of the protection of the criminal law to exclude others from their property." ROA.52-53 ¶ 104. And they alleged that an injunction against the heightened notice requirements of §§ 30.06 and 30.07 would permit Plaintiffs to exclude guns from their properties through straightforward,

uncomplicated written notice. ROA.56; *see also* ROA.45 ¶ 69; ROA.48 ¶ 82 (noting Plaintiffs' preference to post smaller, simpler no-guns signs).

Analyzing only injury-in-fact, the court erroneously found that Plaintiffs' claimed injuries are self-inflicted, because the challenged statutes do not compel Plaintiffs to post signs. ROA.880. The court further held that Plaintiffs failed to allege an injury because Plaintiffs lack a cognizable interest in the prosecution of others. ROA.881. For the reasons stated above, those legal conclusions were error. *Supra* at 38-43.

The district court also failed to apply the appropriate standard for a Rule 12(c) motion; it ignored favorable facts in the complaint and failed to draw inferences in Plaintiffs' favor. For example, the court found Plaintiffs had not adequately alleged they would forfeit police protection by declining to provide statutorily compliant "no-guns" notice. ROA.878-80. But the complaint plausibly alleged the opposite. *See* ROA.39 ¶ 40 (alleging that "property owners can take advantage of Texas criminal trespass law" and "exclude guns from their property" only by complying with the "onerous notice requirements imposed by the Acts"); ROA.40 ¶ 44 (similar); ROA.43 ¶ 55 ("The only effective way for property owners to exclude guns from their property is through the criminal law of trespass. … [T]he Acts make it impossible to exclude armed entrants without engaging in needlessly burdensome, government-scripted speech.").

Of course, this court has an independent obligation to examine subject matter jurisdiction and can consider record evidence in making that determination. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). But the record *further* demonstrates Plaintiffs' standing. *See supra* Part I.A. The district court committed reversible error when it granted Houston's Rule 12(c) motion. And, as set forth below, it was also reversible error to deny Plaintiffs leave to amend their complaint to incorporate the ample evidence of standing. *See infra* Part II.

## II. The District Court Erred in Denying Plaintiffs' Motion for Leave to Amend.

Plaintiffs sought leave to file an amended complaint in response to the district court's September 29, 2022, order granting Houston's motion for judgment on the pleadings. ROA.896-965. In that order, the district court vacated its prior holding and found that the Church and Antidote had not adequately pleaded standing, after all. ROA.880. The court's order came nearly a month after discovery had closed and on the eve of dispositive-motion briefing. *See supra* at 13-14.

As set forth above, discovery yielded extensive evidence relevant to standing and to the merits of the Church's and Antidote's claims. For example, Defendants produced training materials showing that officers and prosecutors are specifically instructed on the nuances of the complicated signage scheme. ROA.1302-1423. They also produced evidence of officers' actual response to a service call involving armed patrons when a business has not posted all signs necessary to exclude all guns.

51

ROA.1425-26. Discovery also produced specific evidence about the backlash Antidote has received for posting no-guns signs compliant with §§ 30.06 and 30.07, including a one-star rating, negative commentary on online message boards, and at least one unwanted verbal exchange at Antidote directly prompted by the signs. ROA.982-83, 1269-70, 1231-38. These facts further demonstrate that the police enforce the signs as written and that the signs generate politically-tinged controversy that Plaintiffs do not want to endure. And these facts and others were incorporated into Plaintiffs' proposed amended complaint. ROA.914-50.

The district court, however, held in a footnote that leave to amend would be futile because, even given all of the new facts in Plaintiffs' proposed amended complaint, Plaintiffs could not demonstrate standing. ROA.2147 n.18 (denying the motion to amend and stating "Plaintiffs lack standing whether or not the proposed amended pleading is considered"). The court expressly *disclaimed* relying on any other basis for its denial of leave to amend, even though Defendants had pressed arguments of delay and prejudice. *Id.*

Although the district court did not state the standard of review it applied in reaching its futility holding, a plaintiff's request for leave to amend should be denied as futile only if, drawing all plausible inferences in the plaintiff's favor, the complaint fails to make out a cause of action as a matter of law. *Collins v. Morgan Stanley Dean Witter*, 243 F.3d 496, 498 (5th Cir. 2000) (in determining

determination that leave to amend would be futile, the question is "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief"); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (futility is assessed by using the same standard employed under Rule 12(b)(6) and the court may not deny leave to amend "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). This Court reviews that decision *de novo*. *City of Clinton*, 632 F.3d at 152.

For all of the reasons stated above, Plaintiffs' proposed amended complaint—which incorporated the record as allegations—adequately pleaded standing, especially considering they must be reviewed under the Rule 12(b)(6) standard. The district court erred in denying the motion to amend.

While the district court did not reach them, Defendants' further arguments for denial of the motion—delay, improper motive, and prejudice—are similarly unmeritorious. ROA.1525-34, 1721-22. *First*, there was no undue delay. ROA.1231. Rather, Plaintiffs sought leave to amend promptly after the district court reversed its prior decision as to standing. Successor judges ordinarily do not overrule prior decisions. ROA.880 n.4. Plaintiffs thus had no reason to anticipate a need to file an amended complaint; as soon as the need for an amended complaint became evident, they moved swiftly, beginning discussions with Defendants about

that possibility approximately ten days later and informing the district court of their intention. *See, e.g.*, *Butowsky v. Folkenflik*, 2020 WL 9936143, at *25 (E.D. Tex. Sept. 1, 2020) ("Because the amendment was prompted by the January 2020 Rule 11 motion for sanctions, the September 19, 2019 deadline for amendment could not be met despite the diligence of the party seeking the extension."), *report and recommendation adopted*, 2020 WL 9936140 (E.D. Tex. Sept. 21, 2020).

*Second,* Plaintiffs' motive in moving to amend was to address the pleading deficiencies identified by the district court. There is no suggestion of bad faith. Plaintiffs sought to place the record evidence before the Court as to all Defendants, given the irregular posture of the case.

*Finally*, granting the motion would not have unduly prejudiced any party. Plaintiffs did not seek to add any new parties or causes of action. Nor did they add any new legal theories to the complaint. ROA.914-950; *see Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 391 (5th Cir. 1985) ("That [plaintiff] endeavored chiefly to correct any flaws in its original statement of its claims and did not seek to allege new causes of action also cuts in favor of holding that justice requires allowing the amendment."). Their amendments simply conformed the complaint to the evidence already in the record. The district court's denial of Plaintiffs' request to amend was separate, reversible error.

# CONCLUSION

For the foregoing reasons, the judgment should be reversed and the action remanded for further proceedings.

July 12, 2023                                    Respectfully submitted,

      Alla Lefkowitz
      Andrew Nellis
      EVERYTOWN LAW
      P.O. Box 1478
      Washington, D.C. 20044
      (646) 324-8365
      alefkowitz@everytown.org

      Ryan Gerber
      Laura Keeley
      EVERYTOWN LAW
      450 Lexington Ave.
      P.O. Box 4148
      New York, NY 10017
      (646) 324-81998
      rgerber@everytown.org

*/s/ Charlotte H. Taylor*
Charlotte H. Taylor
 *Counsel of Record*
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3872
ctaylor@jonesday.com

William R. Taylor
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
(832) 239-3939
wrtaylor@jonesday.com

*Counsel for Plaintiffs-Appellants.*

## CERTIFICATE OF SERVICE

I certify that on July 12, 2023, I served a copy of the foregoing on all counsel of record by CM/ECF.

*/s/ Charlotte H. Taylor*
Charlotte H. Taylor
*Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) & (7)(B), and Fifth Circuit Rule 32.1 & 32.2. The brief contains 12,915 words and was prepared using Microsoft Word and produced in Times New Roman 14-point font.

Dated: July 12, 2023

/s/ Charlotte H. Taylor
Charlotte H. Taylor
*Counsel for Plaintiffs-Appellants*