No. 23–20165

# In the United States Court of Appeals for the Fifth Circuit

BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER, L.L.C., doing business as Antidote Coffee; PERK YOU LATER, L.L.C.,

*Plaintiffs-Appellants*

v.

HARRIS COUNTY DISTRICT ATTORNEY KIM OGG; COUNTY SHERIFF ED GONZALEZ; WEBSTER ACTING CHIEF PETE BACON; CHIEF OF HOUSTON POLICE DEPARTMENT TROY FINNER,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Southern District of Texas Houston Division
(Case Nos. 4:20-cv-3081)
The Honorable Ewing Werlein, Jr., Presiding.

## PRINCIPAL BRIEF OF APPELLEE WEBSTER CHIEF OF POLICE PETE BACON

WILLIAM S. HELFAND
JUSTIN CARL PFEIFFER
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
[Tel.] (713) 659-6767
[Fax] (713) 759-6830

ATTORNEYS FOR APPELLEE WEBSTER POLICE CHIEF PETE BACON

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

A.   Parties:

|  | Plaintiffs/Appellants: | Bay Area Unitarian Universalist Church |
|---|---|---|

Plaintiffs/Appellants:     Bay Area Unitarian Universalist Church

Drink Houston Better, L.L.C., doing business as Antidote Coffee

Perk You Later, L.L.C.

Defendant/Appellee:     Harris County District Attorney Kim Ogg

County Sheriff Ed González

Webster Police Chief Pete Bacon

B.   Attorneys:

Plaintiffs/Appellants:     Charlotte Taylor, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001
Email: ctaylor@jonesday.com
Direct: 202-879-3872
Fax: 202-626-1700

William Roquemore Taylor
Jones Day
Suite 3300
717 Texas Street
Houston, TX 77002
Email: wrtaylor@jonesday.com
Direct: 832-239-3860
Fax: 832-239-3600

Ryan Gerber
Email: rgerber@everytown.org
Direct: 646-324-8198
Laura Keeley
Email: lkeeley@everytown.org
Direct: 724-816-7401
Everytown Law
450 Lexington Avenue
New York, NY 10017

Alla Lefkowitz
Email: alefkowitz@everytown.org
Direct: 202-545-3257
Andrew Lieb Nellis
Email: anellis@everytown.org
Direct: 202-517-6621
Everytown Law
P.O. Box 14780
Washington, DC 20044

Defendant/Appellee:    Harris County District Attorney Kim Ogg and
                       County Sheriff Ed González

                       Heena Kepadia
                       Email: heena.kepadia@harriscountytx.gov
                       Direct: 713-274-5390
                       Moustapha Gassama
                       Email: moustapha.gassama@harriscountytx.gov
                       Direct: 713-274-5101
                       Harris County Attorney's Office
                       15th Floor
                       1019 Congress Street
                       Houston, TX 77002

Defendant/Appellee:    Chief of Houston Police Department Troy Finner

                       Donald B. Hightower
                       Senior Assistant City Attorney
                       City of Houston Legal Department
                       900 Bagby, 4th Floor
                       Houston, Texas 77002
                       donald.hightower@houstontx.gov
                       Tel:   (832) 393-6429
                       Fax:   (832) 393-6259

Defendant/Appellee:    Webster Police Chief Pete Bacon

                       William S. Helfand
                       bill.helfand@lewisbrisbois.com
                       Justin C. Pfeiffer
                       justin.pfeiffer@lewisbrisbois.com
                       LEWIS BRISBOIS BISGAARD & SMITH, LLP
                       24 Greenway Plaza, Suite 1400
                       Houston, Texas 77046
                       Tel:  (713) 659-6767
                       Fax: (713) 759-6830


DATED:      SEPTEMBER 25, 2023          /s/ William S. Helfand
                                        WILLIAM S. HELFAND

iv

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary.

This case raises no legal issues of first impression. To the contrary, longstanding and well-settled Supreme Court and Fifth Circuit precedent readily resolve all issues Appellants present.

# **TABLE OF CONTENTS**

Certificate Of Interested Persons ............................................................. ii

Statement Regarding Oral Argument ........................................................ v

Table Of Authorities ................................................................................ viii

Jurisdictional Statement ........................................................................... 1

Statement Of The Issues .......................................................................... 1

Statement Of The Case ............................................................................. 2

   I. Basic Facts ......................................................................................... 3

      A.  Statutory Background ................................................................. 3

      B.  The Webster Police Department provides the Church the same
         police protection as everyone else ............................................. 4

   II.  Relevant Procedural History ........................................................... 8

Standard of Review ................................................................................... 11

Summary of the Argument ....................................................................... 14

Argument .................................................................................................... 16

   I. The District Court did not error in concluding the Church lacked
      standing to assert the Church's Claims against Webster Police
      Chief Bacon ....................................................................................... 16

      A.  The District Court correctly held the Church lacks standing ..... 17

         1.  Because the Webster Police Department provides police
            protection regardless of whether the Church chooses to
            comply with the Acts' option for written notice, the Church
            cannot establish the injury-in-fact element of standing. ..... 18

         2.  Even if the Church could somehow concoct an injury on these
            facts, it is not attributable to Webster Police Chief Bacon. ..... 22

         3.  Because a favorable decision would not alter the Webster
            Police Department's treatment of the Church, the Church
            cannot demonstrate the redressability element of standing. ..... 23

      B.  The Court should affirm the district court's dismissal of the
         Church's claims against Webster Police Chief Bacon because the
         Church merely seeks an impermissible advisory opinion ............. 25

II. The District Court did not error in denying the Church's motion
for leave to amend Appellants filed literally on the eve of the
dispositive motion deadline ........................................................... 26

A. The Church's proposed amendment is futile. ...................................... 26

B. The Church cannot establish good cause to file an amended
complaint nearly a full year after the scheduling order's deadline
on the eve of the dispositive motions' deadline. ................................. 28

Conclusion ................................................................................................. 31

Certificate of Electronic Compliance ....................................................... 32

Certificate of Compliance with the Type-Volume Limit ......................... 33

Certificate of Service ................................................................................ 34

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Allen v. Wright,*
    468 U.S. 737 (1984)......................................................................17

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler,*
    178 F.3d 350 (5th Cir. 1999) .......................................................17

*Bennett v. Spear,*
    520 U.S. 154 (1997)......................................................................23

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)......................................................................17

*Daniel v. Ferguson,*
    839 F.2d 1124 (5th Cir. 1988) .....................................................12

*Dep't of Commerce v. New York,*
    139 S. Ct. 2551 (2019)..................................................................17

*Equal Emp. Opportunity Comm'n v. Serv. Temps Inc.,*
    679 F.3d 323 (5th Cir. 2012) ................................................13, 29

*Evans v. Tubbe,*
    657 F.2d 661 (5th Cir. 1981) .......................................................12

*Fahim v. Marriott Hotel Servs., Inc.,*
    551 F.3d 344 (5th Cir. 2008) ................................................13, 29

*Fighting Finest, Inc. v. Bratton,*
    95 F.3d 224 (2d Cir. 1996) ..........................................................21

*Filgueira v. US Bank Nat'l Ass'n,*
    734 F.3d 420 (5th Cir. 2013) ................................................13, 30

*Flast v. Cohen,*
    392 U.S. 83 (1968)........................................................................25

*FW/PBS, Inc. v. City of Dall.,*
    493 U.S. 215 (1990)......................................................................16

*In re Gee*,
    941 F.3d 153 (5th Cir. 2019) ............................................................17

*Gunn v. Minton*,
    568 U.S. 251 (2013).........................................................................16

*Hafer v. Melo*,
    502 U.S. 21 (1991)..............................................................................2

*Hill v. City of Houston, Tex.*,
    789 F.2d 1103 (5th Cir. 1986), *aff'd,* 482 U.S. 451 (1987)...............24

*Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*,
    946 F.3d 649 (5th Cir. 2019) ......................................................23, 24

*Irwin v. Veterans Admin.*,
    874 F.2d 1092 (5th Cir. 1989) (*accord Cell Sci. Sys. Corp. v. La.*
    *Health Serv.*, 804 F. App'x 260 (5th Cir. 2020))...............................12

*King Ranch, Inc. v. United States*,
    946 F.2d 35 (5th Cir. 1991) ..............................................................24

*Layfield v. Bill Heard Chevrolet Co.*,
    607 F.2d 1097 (5th Cir. 1979), *cert. denied*, 446 U.S. 939 (1980) ...................29

*Lewis v. Tex. Instruments*,
    No. 3:12-cv-4577-L-BN, 2014 U.S. Dist. LEXIS 96152
    (N.D. Tex. Jun. 23, 2014) ..................................................................30

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).....................................................................23, 24

*Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement*
    *Workers of Am., UAW*,
    485 U.S. 360 (1988).........................................................................21

*McLaughlin v. Lindemann*,
    853 F.2d 1307 (5th Cir. 1988) ..........................................................24

*Moran v. Kingdom of Saudi Arabia*,
    27 F.3d 169 (5th Cir. 1994) ..............................................................15

*N.A.A.C.P. v. City of Kyle*,
  626 F.3d 233 (5th Cir. 2014) ................................................................17

*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ................................................................17

*Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trustees*,
  235 F.3d 1243 (10th Cir. 2000) ............................................................21

*Planned Parenthood Gulf Coast Inc. v. Phillips*,
  5 F.4th 568 (5th Cir. 2021) ...................................................................16

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009)...............................................................................18

*Raines v. Byrd*,
  521 U.S. 811 (1997)...............................................................................25

*Raj v. La. State Univ.*,
  714 F.3d 322 (5th Cir. 2013) ................................................................11

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ................................................................11

*Robinson v. TCI/US W. Commc'ns.*,
  117 F.3d 900 (5th Cir. 1997) ................................................................12

*S. Recycling, L.L.C. v. Aguilar (In re S. Recycling, L.L.C.)*,
  982 F.3d 374 (5th Cir. 2020) ................................................................11

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*,
  315 F.3d 533 (5th Cir. 2003) ................................................................13

*Sheldon v. Sill*,
  49 U.S. (8 How.) 441 (1850) .................................................................16

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976).................................................................................22

*Smith v. EMC Corp.*,
  393 F.3d 590 (5th Cir. 2004) ..........................................................15, 28

*In re Southmark Corp.*,
  88 F.3d 311 (5th Cir. 1996) ..................................................................26

x

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ...................................................................18

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .....................................................................22

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ....................................................20

*Tenth St. Residential Ass'n v. City of Dall.*,
    968 F.3d 492 (5th Cir. 2020) ....................................................17

*Tex. Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) ....................................................26

*Thomas v. State*,
    855 S.W.2d 212 (Tex. App.—Corpus Christi 1993, no writ) ...........................28

*Universal Amusement Co. v. Vance*,
    587 F.2d 159 (5th Cir. 1978), *aff'd,* 445 U.S. 308 (1980)........................24

*Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*,
    429 U.S. 252 (1977).....................................................................23

*Waller v. Hanlon*,
    922 F.3d 590 (5th Cir. 2019) ....................................................19

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir.), cert. denied, 454 U.S. 897 (1981)................12

*Wimm v. Jack Eckerd Corp.*,
    3 F.3d 137 (5th Cir. 1993) ..................................................26, 30

*Wolcott v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ....................................................11

## CONSTITUTIONS

U.S. Const. amend. I .................................................................18, 21, 25

U.S. Const. amend. XI ..................................................................8

xi

## STATUTES

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 1331 .................................................................................1

TEX. PEN. CODE § 30.05 ......................................................................4

TEX. PEN. CODE § 30.06 ..........................................................2, 3, 4, 28

TEX. PEN. CODE § 30.06(a) ..................................................................3

TEX. PEN. CODE § 30.06(c)(3)(A) .........................................................4

TEX. PEN. CODE § 30.06(c)(3)(B) ...........................................6, 14, 20

TEX. PEN. CODE § 30.07 ...............................................................2, 3, 4

TEX. PEN. CODE § 30.07(a) ..................................................................3

TEX. PEN. CODE § 30.07(c)(3)(A) .........................................................4

TEX. PEN. CODE ANN. § 1.07(a)(11) (Vernon Supp. 2004–05) ............27

TEX. PEN. CODE ANN. § 30.05(a) (Vernon Supp. 2004–05)..................27

TEX. PEN. CODE ANN. 30.05(b)(2)(A) (Vernon Supp. 2004–05) ..........27

## RULES

FEDERAL RULE OF CIVIL PROCEDURE 12..............................................11

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) ..............................8, 10, 11

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) .....................................8

FEDERAL RULE OF CIVIL PROCEDURE 12(c) ...............................9, 10, 29

FEDERAL RULE OF CIVIL PROCEDURE 15(a) ....................................13, 30

FEDERAL RULE OF CIVIL PROCEDURE 15(a)(1)......................................13

FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)................................15, 28

FEDERAL RULE OF CIVIL PROCEDURE 16(b) .........................................13

FEDERAL RULE OF CIVIL PROCEDURE 16(b)(4) ................................................*passim*

FEDERAL RULE OF APPELLATE PROCEDURE 25(d)(3) ..............................................34

FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(5) ..............................................33

FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(6) ..............................................33

FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(2)(b)..........................................33

FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)(B) .........................................33

FEDERAL RULE OF APPELLATE PROCEDURE 32(f)....................................................33

FEDERAL RULE OF APPELLATE PROCEDURE 32(g)...................................................33

FIFTH CIRCUIT RULE 25.2.1 .....................................................................................32

FIFTH CIRCUIT RULE 25.2.13 ...................................................................................34

FIFTH CIRCUIT RULE 25.2.5 .....................................................................................32

FIFTH CIRCUIT RULES 32.2 ......................................................................................33

FIFTH CIRCUIT RULES 32.3 ......................................................................................33

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction over this case under 28 U.S.C. § 1331. [ROA.29 at ¶ 1].

This Court has jurisdiction under 28 U.S.C. § 1291 over Appellants' appeal of the district court's final judgment and all other orders and rulings.

The district court entered final judgment on March 16, 2023, [ROA.2149-2151], and Appellants timely filed their notice of appeal on April 14, 2023, [ROA.2175-2176].

## STATEMENT OF THE ISSUES

Webster Police Chief Pete Bacon disagrees with Appellants' Statement of the Issues and offers the following:

1.  The district court granted Chief Bacon's motion to dismiss for lack of standing because the evidence demonstrates the Appellant which sued the City of Webster has received and will continue to receive the same police protection afforded all residents and businesses regardless of their voluntary adoption or use of the challenged legislation's notice posting option and, thus, there is no potential injury, let alone a ripe dispute. Was this error?

2.  The district court denied Appellants leave to amend their complaint two years after filing Appellants original complaint and shortly after the district court

issued a dispositive ruling against Appellants and on the eve of the long-established deadline for dispositive motions. Was this error?

## STATEMENT OF THE CASE

On September 2, 2020, Plaintiffs-Appellants Bay Area Unitarian Universalist Church ("the Church"), Drink Houston Better, LLC d/b/a Antidote Coffee, and Perk You Later, LLC, filed suit against Texas Attorney General Ken Paxton, [ROA.30 at ¶ 7], Texas Commission on Law Enforcement Presiding Officer Kim Lemaux, [ROA.31 at ¶ 13], Harris County District Attorney Kim Ogg, [ROA.31 at ¶ 8], County Attorney for Harris County Vince Ryan, [ROA.31 at ¶ 9], Harris County Sheriff Ed González, [ROA.31 at ¶ 10], Webster Police Chief Pete Bacon, [ROA.31 ¶ 11], and Houston Police Chief Art Acevedo, [ROA.31 at ¶ 12], seeking declaratory and injunctive relief challenging the constitutionality and alleged "enforcement"[1] of certain aspects of Texas Penal Code § 30.06 ("Concealed Carry Trespass Law") and § 30.07 ("Open Carry Trespass Law"). [ROA.27-57].[2]

Appellant Church's "building is located at the border between the City of Houston and the City of Webster." [ROA.30 at ¶ 5]. Appellants Antidote Coffee and

---

[1] The evidence show Appellants challenge a section of Texas trespass law that *allows* a property owner an alternative means of providing a trespass warning. Since nothing in the statute *requires* use of the warning, the warning language Appellants contest is not the subject of "enforcement." Rather, Appellants construct a straw-man argument of "enforcement" solely to attack the statute.

[2] Because Plaintiffs-Appellants sued all the officials in their official capacity, Plaintiffs-Appellants' claims are in reality a suit against the local governmental entity – the City of Webster for Chief Bacon. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Perk You Later are located wholly within the City of Houston. [ROA.30 at ¶ 6]. Accordingly, any request for police protection emanating from Antidote Coffee or Perk You Later's property would not be directed to or addressed by the Webster Police Department. Thus, Chief Bacon confines his arguments to the Church's lack of standing.

## I.  BASIC FACTS

### A.  Statutory Background

The Church contends Texas Penal Code §§ 30.06 and 30.07 (collectively, the "Acts"), "discourage property owners from excluding individuals carrying guns," [ROA.28], by allegedly *requiring* property owners "to post several square feet of government-scripted signage on their property to communicate that they object to handguns on their property." [ROA.28]. In fact, nothing in the statute "requires" such posting.

Under Texas Penal Code §§ 30.06 and 30.07, a person licensed to carry a handgun commits criminal trespass if the license holder "carries a handgun…on property of another without effective consent…and [the license holder] received notice that entry on the property by a license holder with a…handgun was forbidden." TEX. PEN. CODE §§ 30.06(a), 30.07(a).[3]

---

[3] Section 30.06 applies to trespass by a license holder with a concealed handgun. Section 30.07 applies to trespass by a license holder with an openly carried handgun.

A person licensed to carry a handgun commits an offense under the penal code if the person carries a concealed handgun (or an openly carried handgun) on the property of another without consent and receives notice by oral **or** written communication that the concealed (or open-carried) handgun was forbidden. The Church displays the signs required by § 30.07 of the Texas Penal Code to prevent a license holder from openly carrying a handgun onto the Church's property. [ROA.44 at ¶ 61]. The Church does not display the § 30.06 sign to prohibit license holders from concealed carry. [ROA.44 at ¶ 61].

The Church's argument simply ignores the oral-communication method of warning a trespasser and argues the *option* to provide a written communication in the form of either "a card or other document,"[4] or a "sign posted on the property" is somehow mandatory – even though nothing in the statute can be read as mandatory – and thus, the Church posits, unconstitutional.[5]

### B.    The Webster Police Department provides the Church the same police protection as everyone else.

Throughout this suit, the City of Webster has made clear the Webster Police

---

[4] TEX. PEN. CODE §§ 30.06(c)(3)(A), 30.07(c)(3)(A).

[5] The Church also complains of the provision that a third sign *may* be posted under the General Trespass Law, TEX. PEN. CODE § 30.05, to prohibit firearms aside from handguns. [ROA.35 at ¶ 26]. The Church, however, does not seek injunctive or declaratory relief as to this provision of the Texas Penal Code. [*See* ROA.55, at ¶ b].

Department does not read the law to *require* and, accordingly, the Department itself does not require a landowner or occupant have a posted sign in order to be provided the same police protection for any trespasser, including one possessing a firearm. Contrary to Appellant's pure *theoretical* argument, the evidence shows undisputedly that the Webster Police Department does and will enforce any trespass, provided the elements of the trespass statute are present. Despite extensive discovery opportunities, including the deposition of Chief Bacon, the Church has presented no evidence even suggesting otherwise. Thus, the Church presents a straw-man argument based on a hypothetical theory contrary to the undisputed facts.

The testimony of the Church's administrator, Sharlene Rochen, [ROA.1454-1460], and declaration of Chief Bacon, [ROA.1461-1463], both demonstrate that neither the Church nor the Church's members must make the falsely-presented choice Appellant's posit to obtain the very same police protection as everyone else in Webster. Ms. Rochen testified the Webster Police Department have always responded whenever Rochen has called the Webster Police Department and Rochen further admitted that all Webster employees have always behaved professionally. [ROA.1455 ll.2–9]. Over the five years immediately preceding Rochen's deposition, Rochen called the Webster Police Department around ten times, [ROA.1455 l.25 – 1456 l.5], and the Webster Police Department's response time to Rochen's request for service have averaged under nine minutes. [ROA.1456 ll.6–13]. Further, Rochen

could not identify anything from any of those interactions which Rochen wished the responding Webster police officer(s) had done but did not do. [ROA.1455 ll.10–12]. In other words, Rochen admitted she could not identify a single action for a federal court to compel the City of Webster or its police department – through Chief Bacon – to do or refrain from doing.

And there is more, because the Church's interactions with the Webster Police Department have included incidents of trespass. Ms. Rochen testified to a specific incident that occurred on August 7, 2020, during which Rochen felt unsafe because of the presence of a suspicious person on the Church's land which caused Rochen to call the Webster Police Department. [ROA.1457 l.1 – 1458 l.3]. Despite the Church admittedly not displaying the sign permitted – but not required - under§ 30.06, [ROA.44 at ¶ 61], Rochen testified she would have called the Webster Police Department if she had observed the suspicious person possessing a concealed firearm. [ROA.1460]. Ms. Rochen further acknowledged Rochen had no reason to believe the Webster Police Department would not have responded to a call of an individual possessing a firearm on the Church's premises regardless of the Church's decision not to exercise the Church's option to provide a trespass notice by utilizing one of the signs permitted under TEX. PEN. CODE §§ 30.06(c)(3)(B) or 30.07(c)(3)(B). [ROA.1460 ll.4–6].

Consistent with the Rochen's testimony on behalf of the Church, Chief Bacon testified the Webster Police Department responds to and investigates reports of trespass and all other calls in the same manner completely without consideration of or regard for whether the property owner chooses to utilize the Acts' written notice provisions. [ROA.1463 at ¶ 7]. Chief Bacon confirmed Rochen's testimony, that the Webster Police Department has not withheld police protection to the Church in the past, [ROA.1463 at ¶ 8], is accurate and unrelated to whether the Church chooses to post what are essentially "no trespassing" signs. Chief Bacon further testified that the Webster Police Department and would not alter the Department's even-handed response to all calls for service in the future regardless of the Church's *choice* of whether to utilize the available signage. [ROA.1463 at ¶ 9].

All evidence presented, from both m the Church and Webster Police Department demonstrate the police department does not even consider whether a landowner or occupier chooses to use the *optional* signage permitted under the Acts to warn perpetrators. Rather, Webster officers have always responded promptly and professionally to every situation any member of the public, including the Church's members and staff, encountered. [ROA.1455-1463]. More important to the question of declaratory and injunctive relief, *all* evidence shows the police Department *will not* withhold police protection in the future based on the Church's election not to use the Acts' written notice requirements. [ROA.1455-1463].

7

## II.    RELEVANT PROCEDURAL HISTORY

After Appellants initiated suit on September 20, 2020, [ROA.27-57], Webster Police Chief Bacon filed a motion to dismiss, asserting both a "facial attack" to the Appellant Church's standing under Rule 12(b)(1) as well as asserting the Church could not state a claim upon which relief may be granted under Rule 12(b)(6). [ROA.241-268].

All other defendants then in the suit – Ken Paxton (Texas Attorney General), Kim Lemaux (Presiding Officer of the Texas Commission on Law Enforcement), Kim Ogg (Harris County District Attorney), Ed González (Harris County Sheriff), Vince Ryan (Harris County Attorney), and Art Acevedo (City of Houston Chief of Police) – filed similar motions to dismiss. [ROA.122-148, 176-189, 197-212].

The district court, the Honorable Vanessa D. Gilmore, presiding, granted the initial motions to dismiss in part and denied them in part. [ROA.401-428].

The State Defendants – Texas Attorney General Ken Paxton and Texas Commission on Law Enforcement Presiding Officer Kim Lemaux – filed an interlocutory appeal asserting Eleventh Amendment immunity. [ROA.446-448].

Instead of allowing the appeal to address the threshold question, which would have likely ended the suit as to all Defendants, Appellants voluntarily dismissed their suit against the State Defendants, the only Defendants with actual authority to take any of the actions Plaintiffs requested regarding the state statutes. [ROA.456-458].

Having mooted the appeal and thereby precluding early appellate review, this Court dismissed the State defendants' interlocutory appeal. [ROA.493-495].

On December 7, 2021, the district court entered an agreed scheduling order. [ROA.616-617]. The order set December 15, 2021, as the deadline to amend pleadings. [ROA.616]. Appellants did not attempt to submit an amended complaint by that date or to request an extension of that deadline by the deadline.

Also, on December 7, 2021, the district clerk reassigned this matter to the Honorable Ewing Werlein, Jr., due to Judge Gilmore's retirement. [ROA.618].

Houston Police Chief Acevedo (later substituted for Houston's present chief of police Troy Finner) filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), asserting the district court could not fashion any relief by enjoining the remaining municipal defendants. [ROA.626-642].

After the non-State and remaining parties exchanged and engaged in discovery, the district court, Judge Werlein, presiding, granted Houston Police Chief Finner's FED. R. CIV. P. 12(c) motion, vacating Judge Gilmore's earlier order in part. [ROA.870-882].[6]

---

[6] The district court rightly revised Judge Gilmore's ruling given the Article III jurisdictional limitation's uniquely important role in checking federal judicial overreach. [ROA.867]. The district court wrote: "[t]he law of the case doctrine is not, however, a barrier to correction of judicial error….If the facts presented to [the successor judge] truly showed a lack of jurisdiction, it would have been sheer waste for him to permit a trial in Texas and await reversal by this court for want of jurisdiction." [ROA.867 (quoting *Loumar, Inc. v. Smith*, 698 F.2d 759, 762–63 (5th Cir. 1983))].

Because there is no pleaded or evidentiary basis to treat Webster Police Chief Bacon different from Houston Police Chief Finner, Chief Bacon filed a similar dispositive motion on November 1, 2022. [ROA.1427-1466]. Rather than a FED. R. CIV. P. 12(c) motion, Chief Bacon filed fact-based FED. R. CIV. P. 12(b)(1) to dismiss for the Church's lack of standing, or in the alternative, motion for summary judgment. [ROA.1427-1466]. Chief Bacon also filed a motion to exclude, or alternatively limit, testimony of Appellants' purported expert witness Dawn Jourdan. [ROA.1467-1510].

On November 1, 2022, Harris County Sheriff Ed González and Harris County District Attorney Kim Ogg filed a FED. R. CIV. P. 12(c) motion for judgment on the pleadings similar to that previously filed by Houston Police Chief Finner. [ROA.954-966].

To reduce the voluminous briefing in the district court, Webster Police Chief Bacon, Harris County Sheriff González, and Harris DA Ogg replied jointly in support of their respective dispositive motions, [ROA.2103-2114], and jointly opposed Appellants' motion for leave to file an amended complaint and summary judgment, [ROA.1713, 1805-1816].

On March 16, 2023, the district court denied Appellants' motion for leave to amended; granted the dispositive motions filed by Webster Police Chief Bacon, Harris County Sheriff González, and Harris County DA Ogg; and denied all other

motions as moot. [ROA.2126-2148]. The district court also entered final judgment on March 16, 2023. [ROA.2149-2151].

Appellants timely filed their notice of appeal on April 14, 2023. [ROA.2175-2176]. On July 12, 2023, Appellants timely filed their principal brief on appeal.

### STANDARD OF REVIEW

**Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdiction attack before addressing any attack on the merits." *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Raj v. La. State Univ.*, 714 F.3d 322, 327 (5th Cir. 2013); *Ramming*, 281 F.3d at 161. Thus, the burden fell upon the Church to demonstrate the Church's standing to sue.

Webster Police Chief Bacon presented a factual attack on subject matter jurisdiction in the district court. "A 'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *S. Recycling, L.L.C. v. Aguilar, (In re S. Recycling, L.L.C.)*, 982 F.3d 374, 386 (5th Cir. 2020) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "[T]he trial court may proceed as it never

could under 12(b)(6) or 56." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), cert. denied, 454 U.S. 897 (1981) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Because "a 'factual attack' challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings…matters outside the pleadings, such as testimony and affidavits, are considered." *Daniel v. Ferguson*, 839 F.2d 1124, 1127 n.5 (5th Cir. 1988). And, in deciding the question of subject matter jurisdiction the trial court may resolve disputed jurisdictional facts by making findings of fact. *Robinson v. TCI/US W. Commc'ns.*, 117 F.3d 900, 904 (5th Cir. 1997). "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint…when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). Webster Police Chief Bacon may – and did – "submit[] affidavits, testimony, or other evidentiary materials." *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (*accord Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 264 (5th Cir. 2020)).

**Motion to Amend**

Ordinarily, Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings. *Filgueira v. US Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013). Where the district court must grant permission for leave to amend because the amendment is not a matter of course, FED. R. CIV. P. 15(a)(1), leave should be "freely given when justice so requires." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). This more lenient standard "does not apply if an amendment would require the modification of a previously entered scheduling order." *Filgueira*, 734 F.3d at 422. Rather, Rule 16(b) governs the amendment of pleadings "after a scheduling order's deadline to amend has expired." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

As is the case here, once the scheduling order's deadline passed, that scheduling order may be modified "only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). This Court considers the following four factors relevant to a good-cause determination under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Equal Emp. Opportunity Comm'n v. Serv. Temps Inc.*, 679 F.3d 323, 333 (5th Cir. 2012).

13

## SUMMARY OF THE ARGUMENT

The district court correctly concluded the Church lacks standing to sue Webster Police Chief Bacon, observing, "*nothing in the statutes mandates* that any property owner post the statutory language," [ROA.2138-2139] (emphasis added), and the Church "may also engage the police to aid [the Church] in excluding trespassers," [ROA.2139], **regardless** of whether the Church exercises the Church's **option** to provide a trespass notice by utilizing one of the signs permitted under TEX. PEN. CODE §§ 30.06(c)(3)(B) or 30.07(c)(3)(B). Thus, the district court found "the question of Plaintiffs' standing to challenge the constitutionality of these two penal statutes looms large from the start." [ROA.2127].

The Church's evidence fails to show a single instance where the Webster Police Chief Bacon even considered whether the Church elected to utilize the statutory language, let alone any instance where a Webster police or failed or refused to provide the Church or any Church member with any governmental service or any consideration or intent by the City of Webster to do so. To very contrary, the Church's administrator admitted making numerous calls for service to the Webster Police Department, all of which resulted in a prompt and professional response. Further, the Church's administrator testified she had no reason to doubt the Church will receive the same treatment in the future. Chief Bacon's consistent and uncontroverted testimony demonstrates that an entity's or owner's election to utilize

14

the Acts' written notice option is not required for *any* complainant to receive the very same police protection from trespass or any other service call every other Webster resident or business receives; the statutes in question are simply not a factor at all.

Thus, the Church fails to explain how any *actually intended* action by Chief Bacon could cause any purported injury or how a federal court could fashion, let alone issue, any injunction upon Chief Bacon that would change the Church's treatment by the Police Department. Accordingly, at best the Church requests an impermissible advisory opinion from this court,[7] although one premised on a hypothetical refuted by the only facts. The Court should affirm the district court's dismissal of the Church's causes of action against Chief Bacon for lack of Article III standing.

Because the Church lacks standing to sue Chief Bacon, the Court should also affirm the district court's conclusion that Appellant's proposed complaint amendment is futile, [ROA.2147 n.18], and therefore properly denied. Of course, futility is only a factor under the more lenient Rule 15(a)(2) rather than the stricter 16(b)(4) standard. *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Rule

---

[7] The Church's assertion that these threshold mandatory subject matter determinations are intertwined with the merits is a meaningless assertion because, "[t]he court must find jurisdiction **before** determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (cleaned up).

16(b)(4) governs here because the parties all agreed to December 15, 2021, as the deadline for pleading amendments. [ROA.616]. The Church cannot establish good cause under Rule 16(b)(4) by seeking leave to amend a year after the scheduling order's deadline, after the completion of discovery, and on the eve of this matter's dispositive motions deadline in a manner extremely prejudicial to Chief Bacon. The district court properly denied the Church leave to amend.

## ARGUMENT

## I.    THE DISTRICT COURT DID NOT ERROR IN CONCLUDING THE CHURCH LACKED STANDING TO ASSERT THE CHURCH'S CLAIMS AGAINST WEBSTER POLICE CHIEF BACON

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). "Courts created by statute can have no jurisdiction but such as the statute confers." *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850).

"[F]ederal courts are under an independent obligation to examine their own jurisdiction and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "[T]he district court [must] carefully consider each jurisdictional challenge – including whether and how they impact each of the plaintiffs and each of the claims – before proceeding to the merits." *Planned Parenthood Gulf Coast Inc. v. Phillips*, 5 F.4th 568, 582 (5th Cir. 2021).

## A.     The District Court correctly held the Church lacks standing.

"[P]laintiffs can seek judicial review of state laws and regulations only insofar as they show a plaintiff was (or imminently will be) actually injured by a particular legal provision." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019). "To have standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; **and** likely to be redressed by a favorable ruling." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (internal quotation marks omitted) (emphasis added).[8]

"[T]he standing inquiry must be answered by reference to the Art. III notion that federal courts may exercise power only 'in the last resort, and as a necessity.'" *Allen v. Wright*, 468 U.S. 737, 752 (1984) (quoting *Chi. & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892)). "The law of Article III standing…serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

---

[8] Because the Church is an organization, it may establish injury-in-fact standing under either a theory of "associational standing" or a theory of "organizational standing." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). Under an associational theory, the association's "injuries must be sufficient to confer standing to the individual members to sue in their own right." *Tenth St. Residential Ass'n v. City of Dall.*, 968 F.3d 492, 500 (5th Cir. 2020). Under an organizational theory, the organization can establish standing in its own name if "it meets the same standing test that applies to individuals." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999). These concepts are interrelated and often confused. *See N.A.A.C.P. v. City of Kyle*, 626 F.3d 233, 236 (5th Cir. 2014) (organization abandoning associational standing theory at oral argument to instead rely upon organizational standing theory). The Church's allegations – coupled with the evidence adduced by Chief Bacon – make clear the Church cannot establish standing under either associational or organizational standing.

1.    Because the Webster Police Department provides police protection regardless of whether the Church chooses to comply with the Acts' option for written notice, the Church cannot establish the injury-in-fact element of standing.

For an injury to be concrete, the injury "must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Based on the pleadings alone, Judge Gilmore mistakenly read the statutes as mandatory, compelled speech and concluded the Church stated a claim for an intangible injury to its First Amendment free speech rights based upon being forced to choose between that right and police protection. [ROA.410-414]. Judge Werlein properly revised this opinion. [ROA.867]. Webster Police Chief Bacon then presented an even stronger evidence-based motion to refute completely the Church's standing. [ROA.1427-1466].

In some cases, an injury can be intangible and still concrete. *Spokeo*, 578 U.S. at 340. Infringement of rights under the Free Speech Clause of the First Amendment is the archetypical example of an intangible concrete injury, *Pleasant Grove City v. Summum*, 555 U.S. 460, 467–70 (2009).

Here, however, *evidence* adduced by the Church does not demonstrate a concrete injury. The testimony of the Church's administrator, Sharlene Rochen demonstrates that the Church does not have to choose between rights under the Free Speech Clause and police protection. [ROA.1455 ll.2–12, ROA.1455 l.25 – ROA.1456 l.14, ROA.1460, ll.4–6, ll.18–25]. The Declaration of Chief Bacon demonstrates the same. [ROA.1461-1463].

18

Although the injury-in-fact analysis for injunctive or declaratory relief is a substantial likelihood of future injury, *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019), past is prologue. Ms. Rochen testified that the Webster Police Department always responded whenever Rochen called and always behaved professionally. [ROA.1455 ll.2–6]. Over the last five years, Rochen called the Webster Police Department around ten times, [ROA.1456 l.3]. Ms. Rochen also agreed based on official records that the Webster Police Department responded within nine minutes to such calls. [ROA.1456 ll.6–13].

Ms. Rochen's testimony concerning a concrete incident involving a trespass is particularly illustrative of the Church's inability to demonstrate the likelihood of any future injury – a prerequisite to the Church's standing. Shortly after Noon on August 7, 2020, Rochen called the Webster Police Department. [ROA.1457 ll.1–6]. Shortly before services began at the adjoining Islamic Center, a woman who claimed to have been sexually assaulted, became belligerent with Rochen and others. [ROA.1457 ll.9–25]. Despite Rochen having provided the woman a grocery gift card on behalf of the Church, Rochen did not feel safe going to her car with the woman still on the premises. [ROA.1458 ll.2–3, ll. 13–15]. Notably, Rochen testified Rochen would have called the Webster Police Department if the woman had a firearm and that Rochen had no reason to believe the Webster Police Department would not have responded to a call of an individual possessing a firearm on the

19

Church's premises dependent upon whether the Church elected to exercise its *option* to provide a trespass notice by utilizing one of the signs permitted under TEX. PEN. CODE §§ 30.06(c)(3)(B) or 30.07(c)(3)(B). [ROA.1460 ll.4–6]. Accordingly, Rochen testified that, if someone had a gun at the Church, Rochen would call the Webster Police Department and Rochen believes the Webster Police Department would show up and handle the situation regardless of whether the Church had posted signs. [ROA.1460 ll.18–25].

"[T]here must be a 'substantial risk that the [future] injury will occur," *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019), but Rochen's testimony proves the opposite, The Church cannot demonstrate injury-in-fact standing. Chief Bacon only confirms Rochen's undisputed testimony. Chief Bacon testified the Webster Police Department investigates and responds to trespass and other calls in the same manner regardless of whether the property owner elects to use the Acts' written signage option. [ROA.1463 ¶ 7]. Chief Bacon confirmed Rochen's undisputed testimony that the Webster Police Department has not withheld police protection to the Church in the past, [ROA.1463 ¶ 8], and that the Webster Police Department would not withhold police protection in the future based on the Church's election not to use the Acts' written signage option. [ROA.1463 ¶ 9]. Indeed, the Church's briefing does not challenge the overwhelming undisputed evidence that Webester officers have responded to calls for service and will continue to respond

to calls for service regardless of any individual's or entity's election on whether to use the Acts' written signage option for notice.

Instead of addressing the actual evidence, the Church posits a *theory,* wholly and equally unsupported by any evidence: that prosecution of a trespasser could be more difficult. This argument fails as well. Even if the Church somehow had a constitutional right to a suspect's arrest – they do not – such a (only) claimed right is far too insubstantial to state a cognizable injury under the First Amendment. For an associational rights claim, the interference must be "direct and substantial" or "significant." *See*, *e.g.*, *Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW*, 485 U.S. 360, 367, n.5 (1988); *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996). "A discouragement that is 'minimal' and 'wholly subjective' does not…impermissibly deter the exercise of free speech rights." *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1247–48 (10th Cir. 2000) (quoting *United States v. Ramsey*, 431 U.S. 606, 623–24 (1977)). Because the Church will receive police protection regardless of choosing whether to use the Acts' written signage option for notice, the Church cannot demonstrate the injury-in-fact required to maintain this suit for injunctive and declaratory relief, particularly against Webster's chief of police.

21

2.     Even if the Church could somehow concoct an injury on these facts, it is not attributable to Webster Police Chief Bacon.

Any question of prosecution is not related to the decisions or conduct of the Webster chief of police. The traceability element of standing requires "a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). Here, the void of a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998), provides yet another reason to affirm the district court's conclusion the Church cannot demonstrate standing as to Webster Police Chief Bacon.

Because the Webster Police Department treats the Church's service calls the same regardless of the Church's election not to use the Acts' written signage option for notice, [ROA.1463 at ¶¶ 7–9], whatever injury the Church *imagines possible* related to prosecution is not traceable to Chief Bacon. As Chief Bacon testified – and the Church did not contradict – the Webster Police Department's standard procedure, regardless of the presence of the signs in question, is to advise "the suspect the owner requests the suspect depart the property, and that the suspect must leave the property or the suspect may be arrested." [ROA.1463 at ¶ 7].

22

A "plaintiff must show that he himself is injured by the challenged action of the defendants." *Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977). Even if the Church's hypothetical prosecution *theory* could give rise to a cognizable injury the Church it would be "…the result of the independent action of some third party….," *Bennett v. Spear*, 520 U.S. 154, 167 (1997), and thus the district court correctly concluded the Church cannot trace any of its purely hypothetical injury under this tenuous scenario to Webster Police Chief Bacon.

3. Because a favorable decision would not alter the Webster Police Department's treatment of the Church, the Church cannot demonstrate the redressability element of standing.

The redressability element requires that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon*, 426 U.S. 38, 43). To satisfy redressability, a plaintiff must show "it is likely, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision." *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

Because any cognizable injury the Church *might* have in the future would be "the result of the independent action of some third party not before the court," *Bennett*, 520 U.S. at 167, no remedy against Chief Bacon would be "redressed by a

favorable decision." *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. 38, 43). Here, since the Webster Police Department provides police protection regardless of a complainant's choosing to use the Acts' written signage option for notice, [ROA.1455 ll.2–12, ROA.1455 l.25 – ROA.1456 l.14, ROA.1460, ll.4–6, ll.18–25; ROA.1463 at ¶¶ 7–9], an injunction against the Acts' enforcement will not alter any action by the Webster Police Department with respect to the Church. *Inclusive Cmtys. Project*, 946 F.3d at 655.

Second, the Church requests legally impermissible remedies against Chief Bacon. Federal courts cannot rewrite state penal statutes to the Church's liking. *See, e.g.*, *King Ranch, Inc. v. United States*, 946 F.2d 35, 37 (5th Cir. 1991); *Hill v. City of Houston, Tex.*, 789 F.2d 1103, 1112 (5th Cir. 1986), *aff'd,* 482 U.S. 451 (1987); *McLaughlin v. Lindemann*, 853 F.2d 1307, 1310 (5th Cir. 1988); *Universal Amusement Co. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978), *aff'd,* 445 U.S. 308 (1980). Because police cannot arrest a suspect without probable cause and prosecutors cannot prosecute unless the prosecutor can establish all elements of the offense beyond a reasonable doubt, the Church's sought injunction would not relieve the Church's asserted injury of not being able to have gun-carrying individuals arrested and prosecuted regardless of a property owner's display of signage compliant with the Acts or not.

**B.    The Court should affirm the district court's dismissal of the Church's claims against Webster Police Chief Bacon because the Church merely seeks an impermissible advisory opinion.**

"[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96 (1968).[9] "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The Church pled the Acts required "relay[ing] a government-drafted script in a highly burdensome manner in order to avail themselves of the protection of criminal law." [ROA.52-53 at ¶ 104].

As detailed above, the Church's self-serving contention that the Church must comply with the Act's written notice option to receive protection from the Webster Police Department is just that, a mere contention – apparently fabricated somewhere other than at the Church in light of Rochen's testimony – but flatly rebutted by the undisputed evidence all the same.

The Church asked the district court to render an opinion on whether Webster Police Chief Bacon would *in the future* be denying the Church's and the Church's members' First Amendment rights *if* the Webster Police Department at some

---

[9] "The rule against advisory opinions was established as early as 1793…and has been adhered to without deviation." *Id.* at 97 n. 14.

indeterminate point in the future denied Bay Area police protection because the Church does not desire to use the Acts' option for written notice, despite both the Church's and the police Chief's consistent testimony that no real threat of that occurring exists.

The Church's dismissal of the Attorney General, whose duties include defending acts of the Texas Legislature, *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020) (citing *City of Austin v. Abbott*, 385 F. Supp. 3d 537, 544 (W.D. Tex. 2019)), left the Church's suit as no more than a request for an advisory opinion.

## II. THE DISTRICT COURT DID NOT ERROR IN DENYING THE CHURCH'S MOTION FOR LEAVE TO AMEND APPELLANTS FILED LITERALLY ON THE EVE OF THE DISPOSITIVE MOTION DEADLINE

The district court appropriately summarily denied the Church's eve-of-summary-judgment-deadline motion to amend because of the Church's lack of standing to sue any of the Defendants-Appellees. [ROA.2146-2147].

### A.     The Church's proposed amendment is futile.

Because the Church cannot establish standing to sue Webster Police Chief Bacon, the district court properly denied the Church's motion to amend the complaint on futility grounds. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996).

Nothing in the proposed amended complaint establishes the Church's standing to sue Chief Bacon. Instead, it appears the amended complaint was proposed solely in a baseless attempt to delay the eventual dismissal for lack of standing the district court ultimately found. In the Church's proposed first amended complaint, the Church pointed to an incident in which one Webster police officer *noted* that a restaurant – the Cheddar's in Webster – had a 30.07 sign posted but may not have had a 30.06 sign posted. [ROA.1425-1426]. However, the Church failed to present any evidence that, beyond *noting* this fact, the police department gave it any effect. In addressing this red-herring argument, the district court aptly explained why this allegation and Chief Bacon's testimony concerning this incident are insufficient to confer standing: "Chief Bacon did not testify that an individual could not be removed but testified that an individual could not be *arrested*." [ROA.2140 n.12 (emphasis in original)]. Rather Chief Bacon testified that someone who did not have notice of being in violation of the trespass laws related to firearm possession could not be removed unless the owner insisted the person leave the premises. [ROA.2140 n.12; *see also* ROA.1167-1168]. This has always been the law of trespass, even at common law.[10] A person who fully cooperated with both the property owner's and

---

[10] A person commits criminal trespass if he enters or remains on property of another without effective consent and he had notice that the entry was forbidden. TEX. PEN. CODE ANN. § 30.05(a) (Vernon Supp. 2004–05). "Consent" means assent in fact, whether express or apparent. TEX. PEN. CODE ANN. § 1.07(a)(11) (Vernon Supp. 2004–05). "Notice" is an oral or written communication by the owner or someone with apparent authority to act for the owner. TEX. PEN. CODE

police officer's directives that the person leave or refrain from the objected action, [ROA.1168, 1425-1426], regardless of how communicated, is not a trespasser and thus not subject to arrest.

Even if the Church could be injured by a non-arrest, which it cannot be, this *theory* does not suggest any different response if the restaurant did or did not have the § 30.06 sign posted. [ROA.1425].  Most importantly, as the district court aptly observed, "the statutes provide these entrants are subject to arrest and prosecution if the property owner asks them to leave, and they refuse." [ROA.2137].  This allegation – the only new piece of information the Church proposed to include against Chief Bacon in the Church's proposed first amended complaint – is insufficient to confer standing.  The district court properly concluded the Church's proposed amendment was futile. [ROA.2147 n.18].

### B.   The Church cannot establish good cause to file an amended complaint nearly a full year after the scheduling order's deadline on the eve of the dispositive motions' deadline.

Of course, futility is but one factor under the more lenient Rule 15(a)(2) rather than the stricter 16(b)(4) standard applicable here. *See EMC Corp.*, 393 F.3d 590, 595. Rule 16(b)(4) governs here because the parties agreed to – and the district court ordered – December 15, 2021 as the deadline for pleading amendments. [ROA.616].

---

ANN.  30.05(b)(2)(A) (Vernon Supp. 2004–05). See, *e.g., Thomas v. State,* 855 S.W.2d 212, 213 (Tex. App.—Corpus Christi 1993, no writ).

Under Rule 16(b)(4), this Court considers: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Serv. Temps Inc.*, 679 F.3d 323 at 333. Even if the Church's proposed first amended complaint actually stated a claim for which the Church plausibly had standing, which it does not, the Church cannot establish good cause.

Good cause requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Fahim*, 551 F.3d at 348. The Church mistakenly asserts the Church's and other Appellants' diligence should be measured from the district court's grant of City of Houston Police Chief Finner's Rule 12(c) motion. [Appellant's Br. 53]. But Chief Finner, whose counsel filed Chief Finner's motion shortly after the pleadings' amendment deadline back in December 2021, based Chief Finner's motion on the State Defendants' dismissal from the suit. [ROA.626-642]. Appellants voluntarily dismissed the State Defendants on September 24, 2021. [ROA.456-458]. A movant lacks diligence where, as here, "all of the facts relevant to the proposed amendment were known to the [movant] at the time she filed her original complaint," *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979), *cert. denied*, 446 U.S. 939 (1980).

The factor of the importance of the Church's amendment weighs heavily in favor of affirmance. An amendment unlikely to change a motion's outcome is unimportant. *Filgueira*, 734 F.3d at 423. The Church's proposed amendment is futile for the reasons discussed *supra*.

Even if the proposed amendment was not futile, prejudice to Chief Bacon should be dispositive. A significant delay to the resolution of the dispute is sufficiently prejudicial because "Defendants would be required to expend additional resources [to] prepare yet more dispositive motions." *Lewis v. Tex. Instruments*, No. 3:12-cv-4577-L-BN, 2014 U.S. Dist. LEXIS 96152, at *12 (N.D. Tex. Jun. 23, 2014) (citing *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994) (review under Rule 15(a) standard)). Chief Bacon filed dispositive motions on time – just *one day* after Appellants sought leave to file a first amended complaint. [ROA.954-966, 1427-1466]. This Court, in circumstances very analogous to those here (and under the more lenient Rule 15(a) standard to boot rather than the governing Rule 16(b)(4) standard applicable here), affirmed a district court's finding of bad faith and dilatory motive where "[t]he motion is obviously interposed by plaintiffs in an attempt to avoid summary judgment," *Jack Eckerd Corp.*, 3 F.3d at 139.

Here, because the Church did not establish good cause, the district court acted within its considerable discretion in denying the Church's motion to amend. This Court should affirm the district court's decision in full.

## CONCLUSION

The district court here wrote two thoughtful, thorough yet brief, and correct opinions dismissing the claims against Webster Police Chief Bacon for the Church's inability to demonstrate standing. The district court also appropriately refused Appellants' literal eve-of-dispositive-motion-deadline amendment request, which was both futile as well as highly prejudicial to Chief Bacon.

For the foregoing reasons, this Court should affirm in all respects the district court's dismissal of the Church's lawsuit against Webster Police Chief Pete Bacon.

DATED:  SEPTEMBER 25, 2023     RESPECTFULLY SUBMITTED,

LEWIS BRISBOIS BISGAARD & SMITH, LLP

/s/ William S. Helfand

WILLIAM S. HELFAND
JUSTIN CARL PFEIFFER
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
[Tel.] (713) 659-6767
[Fax] (713) 759-6830

ATTORNEYS FOR APPELLEE WEBSTER POLICE
CHIEF PETE BACON

31

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I certify that (1) the required privacy redactions have been made, 5th. Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses. I will mail the correct number of paper copies of the foregoing document to the Clerk of the Court when requested.

DATED:     SEPTEMBER 25, 2022          */s/ William S. Helfand*
                                                                       WILLIAM S. HELFAND

## CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME LIMIT

In compliance with Federal Rule of Appellate Procedure 32(g) and Fifth Circuit Rules 32.2 and 32.3, I certify that the foregoing brief of plaintiff-appellant complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.    This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(2)(b) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f):

   X    this brief contains *exactly* 7,234 words, or

   ___    this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

   X    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 point, or

   ___    this brief has been prepared in a monospaced typeface using

   _____ with _____.

DATED:    SEPTEMBER 25, 2023          */s/ William S. Helfand* _____
                                      WILLIAM S. HELFAND

**CERTIFICATE OF SERVICE**

In compliance with Federal Rule of Appellate Procedure 25(d)(3) and Fifth

Circuit Rule 25.2.5, I hereby that on September 25, 2023, I electronically filed the

**PRINCIPAL BRIEF OF APPELLEE WEBSTER POLICE CHIEF PETE BACON**

with the Clerk of the United States Court of Appeals for the Fifth Circuit by

using the appellate CM/ECF system.


DATED:        SEPTEMBER 25, 2023        */s/ William S. Helfand*
                                        WILLIAM S. HELFAND