# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 9, 2025

Lyle W. Cayce
Clerk

———————

No. 23-20165

———————

BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER, L.L.C., *doing business as* ANTIDOTE COFFEE; PERK YOU LATER, L.L.C.,

*Plaintiffs—Appellants,*

*versus*

HARRIS COUNTY DISTRICT ATTORNEY KIM OGG; COUNTY SHERIFF ED GONZALEZ; WEBSTER ACTING CHIEF PETE BACON; CHIEF OF HOUSTON POLICE DEPARTMENT TROY FINNER,

*Defendants—Appellees.*

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3081

———————————————————

Before JONES, DENNIS, and DOUGLAS, *Circuit Judges.*

JAMES L. DENNIS, *Circuit Judge*:[*]

     This lawsuit arises from a First Amendment challenge to Texas Penal Code §§ 30.06 and 30.07, but this appeal only addresses whether a church

———————————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-20165

and a coffee shop have standing to press their claims. Because we hold that they do, we REVERSE the district court's dismissals, VACATE the district court's order denying leave to amend, and REMAND for further proceedings.

I

Plaintiffs Bay Area Unitarian Universalist Church (the "Church") and Antidote Coffee/Perk You Later, LLC ("Antidote") are property owners who wish to exclude all guns from their church and coffee shop. The Church is a unitarian universalist church located in Webster, Texas. Antidote is a small coffee shop in Houston that also serves alcohol.

Plaintiffs complain about Texas's trespass laws, so we explain the schema. Under Texas's General Trespass Law, "[a] person commits an offense if the person enters or remains on or in property of another . . . without effective consent" and if the person "(1) had notice that the entry was forbidden" or "(2) received notice to depart but failed to do so." Tex. Penal Code § 30.05(a). Section 30.05 affords property owners many ways to provide notice, including by oral or written communication, an enclosure that is obviously designed to exclude, or a sign that is reasonably likely to come to the attention of the intruders. *See id.* § 30.05(b)(2).

In 2003, the Texas legislature carved out an exception to the General Trespass Law in § 30.05(f). Specifically, § 30.05(f) states that it is a defense to prosecution for trespassing if a person is forbidden from entering the property because entry with a handgun was forbidden without adequate notice. *Id.* § 30.05(f). In 2003, this exception applied only to those who carried a concealed handgun with a permit but was later expanded to any person openly carrying a handgun "in a holster." *Id.* § 30.05(f)(2)(B)(ii). Following these exceptions, §§ 30.06 and 30.07 were enacted to create trespass crimes for those exempted under § 30.05(f). Section 30.06

No. 23-20165

("Concealed Carry Trespass Law") covers concealed handgun license holders and Section 30.07 ("Open Carry Trespass Law") covers open-carry handgun license holders.

Under the Concealed Carry Trespass Law, a person commits an offense if the person carries a concealed handgun on the property of another without consent and receives notice by oral or written communication that the concealed handgun was forbidden. *Id.* § 30.06. "Written communication" means:

> (A) a card or other document on which is written language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"; or
>
> (B) a sign posted on the property that:
>
>> (i) includes the language described by Paragraph (A) in both English and Spanish;
>>
>> (ii) appears in contrasting colors with block letters at least one inch in height; and
>>
>> (iii) is displayed in a conspicuous manner clearly visible to the public.

*Id.* § 30.06(c)(3).

The Open Carry Trespass Law defines "written communication" in the same way, except the sign posted on the property also must be "displayed . . . at each entrance to the property." *Id.* § 30.07(c). These statutes only encompass handguns. Therefore, if property owners want to exclude other types of guns too, they must post a third sign under the General Trespass Law, § 30.05.

No. 23-20165

The Church's official policy forbids carrying firearms onto church property. However, the Church currently displays only the open carry signs in English and Spanish in accordance with the Open Carry Trespass Law. The Church alleges with supporting evidence that posting the requisite signs under both §§ 30.06 and 30.07 would (1) degrade the church experience; (2) inhibit guests' safety and obstruct the Church's inclusivity aims; and (3) detract from the Church's religious principles. The signs are displayed at the front and side entrances to the church building, each measure eighteen inches by twenty-four inches, and both cost $118.80.

Antidote objects to guns being on its property because it believes the presence of guns creates an unsafe environment for its guests, which include children and pets. Prior to 2016, Antidote displayed a pictograph sign of a gun enclosed in a red circle with a red diagonal line through it, which measured three inches by three inches and cost $0. Since 2016, to comply with the signage requirements, Antidote has posted both sets of signs required by §§ 30.06 and 30.07, accruing $260 in costs to do so. The signs cover a large portion of the windowpane next to the front door—measuring, altogether, approximately ten square feet—and frustrate Antidote's desired "neighborhood coffee shop" aesthetic.

## II

In 2020, Plaintiffs filed this lawsuit for declaratory and injunctive relief against the District Attorney and County Sheriff for Harris County (collectively the "Harris County Defendants"); the Chief of the Webster Police Department; and the Chief of the Houston Police Department. Plaintiffs asserted First Amendment speech and association claims.[1]

---

[1] Plaintiffs brought a federal due process claim too, which the district court dismissed for lack of standing. Plaintiffs only mention the due process claim once on appeal. It is forfeited due to inadequate briefing. *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397

No. 23-20165

Plaintiffs also brought a parallel Texas Constitution § 8 claim. The Harris County District Attorney prosecutes violations of Texas Law, including §§ 30.06 and 30.07. Likewise, the Harris County Sheriff's Office, the Webster Police Department, and the Houston Police Department enforce §§ 30.06 and 30.07 as written in their respective jurisdictions. Officers and prosecutors employed by Defendants are specifically trained on the nuances of the signage requirements under §§ 30.05, 30.06, and 30.07.

Relevant to this appeal, the Houston Police Chief filed a Rule 12(c) motion for judgment on the pleadings, arguing that Plaintiffs lacked Article III standing. The district court granted the Houston Police Chief's Rule 12(c) motion, ruling that Plaintiffs failed to allege facts establishing an injury. Following that ruling, Plaintiffs filed a motion for leave to file an amended complaint to incorporate evidence unearthed during discovery. Meanwhile, the Harris County Defendants filed a Rule 12(c) motion for judgment on the pleadings also on the ground that Plaintiffs lacked standing, and the Webster Police Chief filed a Rule 12(b)(1) motion to dismiss for the same reason. The district court granted the 12(c) and 12(b)(1) motions, dismissed Plaintiffs' claims without prejudice for lack of standing, denied Plaintiffs' motion for leave to file an amended complaint as futile, and entered final judgment. Plaintiffs timely appealed.

## III

A district court's Rule 12(b)(1) dismissal is reviewed de novo.[2] *Ctr. for*

---

(5th Cir. 2021); *see also Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 349 (5th Cir. 2024) ("[S]tanding is not dispensed in gross; rather plaintiffs must demonstrate standing for each claim that they press . . . .").

[2] We treat the Webster Police Chief's and the Harris County Defendants' Rule 12(c) motions attacking standing as Rule 12(b)(1) motions. 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 & n.23 (3d ed. 2020) ("[I]f a party raises an issue as to the court's subject matter jurisdiction on a motion

No. 23-20165

*Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013). A "district court . . . has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981).

The district court based its review of the Houston Police Chief's motion to dismiss on the complaint, and its review of the Webster Police Chief's and Harris County Defendants' motions on the complaint supplemented by undisputed facts evidenced in the record. In neither of the district court's two rulings on standing did it resolve factual disputes. "Where, as here, 'the district court rules on jurisdiction without resolving factual disputes . . . we consider the allegations in the plaintiff's complaint as true and review whether the district court's application of the law is correct.'" *Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021) (quoting *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271–72 (5th Cir. 2021)).

The denial of leave to amend as futile is reviewed de novo. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir. 2021).

IV

A

The requirement that a plaintiff have standing is an essential Article III restriction. *Davis v. FEC*, 554 U.S. 724, 732 (2008). To have standing, a plaintiff must establish they (1) suffer an injury; (2) that is fairly traceable to

---

for a judgment on the pleadings, the district judge will treat the [Rule 12(c)] motion as if it had been brought under Rule 12(b)(1).").

No. 23-20165

the defendant's conduct; and (3) that is likely to be redressed by a favorable ruling. *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 635 (5th Cir. 2012).

*1. Injury*

First, we find Plaintiffs suffer an ongoing injury because they are subject to a statutory scheme that treats varying types of similar speech differently.[3] *Davis*, 554 U.S. at 734–35 (recognizing that "asymmetrical" treatment in the First Amendment context is alone sufficient to constitute Article III injury); *see also Time Warner Cable, Inc.*, 667 F.3d at 636 (holding in the First Amendment context that "[d]iscriminatory treatment at the hands of the government is an injury long recognized as judicially cognizable" (quoting *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 218 (5th Cir. 2008))). Specifically, property owners who wish to express a prohibition on firearms are treated differently from property owners who wish to express a prohibition on virtually any other item or entrant. *Compare, e.g.*, Tex. Penal Code § 30.06 (providing that property owners who exercise their right to exclude firearms can vindicate their property rights by posting a sign with language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"), *with id.* § 30.05(b)(2)(C) (providing that property owners who exercise their right to exclude for other legally permissible reasons—such as not wearing shoes—can vindicate their property rights simply by posting a sign that is "reasonably likely to come to the attention of intruders"); *see also* ROA.28 n.1 ("[Sections 30.06 and 30.07 were intentionally designed to be]

---

[3] We therefore do not reach Plaintiffs' alternative injury theories, and we express no opinion on the dissenting opinion's analysis of them. *See post*, at 5–6.

No. 23-20165

cumbersome so as to discourage businesses from prohibiting entry to customers carrying guns."). Plaintiffs allege this asymmetrical scheme limits their ability to exercise their First Amendment rights to communicate their desire to exclude firearms relative to other property owners who desire to exclude other items via signage. *Davis*, 596 U.S. at 298 ("For standing purposes, we accept as valid the merits of [Plaintiffs]' legal claims, so we must assume that the [Texas statutory scheme] unconstitutionally burdens speech.").

Defendants counter that Plaintiffs' asymmetrical treatment injury is self-inflicted because they are not *required* to post compliant signage—*i.e.*, Plaintiffs are not subject to prosecution if they choose to post non-conforming signs, and the Texas statutory scheme contemplates that Plaintiffs can alternatively give oral notice that guns are forbidden. Defendants' argument is too clever by half. While it is true that "standing cannot be conferred by a self-inflicted injury," *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018), it is equally true that an injury is not self-inflicted when a plaintiff faces a dilemma, the horns of which entail different harms. *See, e.g.*, *Evers v. Dwyer*, 358 U.S. 202, 203–04 (1958) (per curiam); *Book People, Inc. v. Wong*, 91 F.4th 318, 331–32 (5th Cir. 2024) (finding an injury not self-inflicted when a plaintiff "will be harmed if they comply with [the law] and harmed if they don't").

Either choice here results in harm. If Plaintiffs do post compliant signs, they suffer an "asymmetrical treatment" injury. If Plaintiffs do not post compliant signs, their right to exclude is limited because property rights are protected by the deterrent value of the criminal laws.[4] *See Reno v. ACLU*,

_____

[4] The dissenting opinion makes much of the fact that police come when called regardless of whether compliant signage is posted. *Post*, at 2–3. But this ignores that the right to exclude is already injured by the time the police come. The inherent deterrent value

No. 23-20165

521 U.S. 844, 872 (1997) (recognizing that deterrence flows from criminal sanctions); *see also* ROA.41 ¶ 49 (noting that if a business's sign does not precisely comply with §§ 30.06 and 30.07, some individuals take that opportunity to bring guns onto properties because they face no criminal consequence for doing so). Oral notice is an inadequate alternative to signage according to Plaintiffs' allegations and record evidence because, *inter alia*, (1) oral notice is impractical, *see* ROA.40 ¶ 42; ROA.1212 ¶ 14 ("For one thing, there is no way for our greeters or anyone else at the Church to know whether someone is carrying a concealed handgun[.]"); (2) oral notice limits Plaintiffs' expressive preferences, *see* ROA.1212 at ¶¶ 15–16; and (3) oral notice can lead to danger for guests and employees, ROA.40 ¶ 42 ("Giving individual notice . . . risks physical confrontation."); ROA.1259 (discussing an incident where a person with a gun was asked to leave the Antidote coffee shop; person "came back with a sword"). *See also Skyline Wesleyan Church v. Calif. Dep't of Managed Health Care*, 968 F.3d 738, 748–49 (9th Cir. 2020)

---

flowing from the criminal law and the attendant threat of penalties protects the right to exclude from the get-go. The record (and common sense) bears out that the law will have its intended effect: handgun owners will carry handguns where legally permissible and not where criminally prohibited. *See, e.g.*, ROA.41 ¶ 49 & n.7 (person posted online "I walked right past a sign yesterday that said 'No firearms allowed.' I thought it was cute."); ROA.1250–64, 1269–70 (passerby challenged sufficiency of Antidote's signs to exclude handguns); ROA.2216–18 ¶¶ 42–44 (alleging that people bring guns onto properties lacking compliant signage "because they face no criminal consequences for doing so"). What's more, even when police do arrive, the right to exclude continues to be deprived for a period because the record also shows that police sit on their hands in the absence of compliant signage or oral notice to a trespasser coupled with a subsequent refusal to leave. As to the dissent's concern about traceability, for the reasons just stated, it is predictable that handgun owners will be affected by Defendants' strict enforcement of the allegedly unconstitutional signage requirements, so Plaintiffs' "theory of standing . . . does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019); *post*, at 4 (arguing a trespasser's "audacity is not attributable to the Texas statute or to" the Defendants).

No. 23-20165

(rejecting an argument that an injury was "self-inflicted" when resorting to alternatives would lead the plaintiff to be "worse off than it had been before the" challenged conduct). Thus, whichever path Plaintiffs choose—to post the compliant signage or to not—harm lies ahead, which means their injuries are not "self-inflicted."

Nor does it matter that §§ 30.06 and 30.07 are directly enforced against trespassers rather than the Plaintiffs. A plaintiff challenging the constitutionality of a statute need not face the threat of direct enforcement to have standing; they need only show that their rights are adversely affected by operation of the challenged laws, which, here, is the entire basis of Plaintiffs' lawsuit. *See generally Gange Lumber Co. v. Rowley*, 326 U.S. 295 (1945) (holding that to challenge the constitutionality of a statute, a plaintiff must show that the alleged unconstitutional feature of the statute injured him, and so operates as to deprive him of a constitutional right). Plaintiffs' asymmetrical treatment injury is therefore cognizable.

## 2. Traceability

Second, Plaintiffs' asymmetrical treatment injury fairly traces to the Defendants' enforcement of §§ 30.06 and 30.07. When an injury flows from an allegedly unconstitutional law, the individuals charged with the enforcement of that law are at least part of the cause of the injuries, satisfying the minimal traceability requirement. *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010). As noted, it is undisputed that Defendants follow the law and apply the heightened notice requirements of §§ 30.06 and 30.07. *K.P.* dictates that Defendants' enforcement of §§ 30.06 and 30.07 is at least a cause of Plaintiffs' asymmetrical treatment injury. *Id.*

## 3. Redressability

Third, Plaintiffs' asymmetrical treatment injury is redressable by a favorable judicial decision. Plaintiffs seek a declaration that the heightened

No. 23-20165

notice requirements imposed by §§ 30.06(c)(3) and 30.07(c)(3) are unconstitutional and an injunction against their enforcement. If this relief is granted, Plaintiffs can provide "notice" as that word is defined in § 30.05(b)—the General Trespass Law—rather than as defined in §§ 30.06 and 30.07. The relief would remove the asymmetrical treatment at the hands of the government as Plaintiffs would be on equal footing with property owners who exclude other items via the less burdensome § 30.05 compliant signage. *See, e.g.*, *Heckler v. Mathews*, 465 U.S. 728, 738–39 (1984) (equal treatment is a remedy).

\*     \*     \*

At bottom, Plaintiffs have alleged with supporting evidence (1) an injury-in-fact that is both (2) traceable to Defendants' enforcement of §§ 30.06 and 30.07 and (3) redressable by a favorable judicial decision. They have established their Article III standing to press their First Amendment claims. *Time Warner Cable, Inc.*, 667 F.3d at 635. The parties (and the district court) treat Plaintiffs' First Amendment and Texas Constitution § 8 claims as coterminous. Because "we analyze [the] First Amendment and § 8 claims together[] [and] apply[] federal law," *Crampton v. Weizenbaum*, 757 F. App'x 357, 369 n.9 (5th Cir. 2018) (per curiam), Plaintiffs also have standing to press their Texas Constitution § 8 claim.[5]

We caution that this appeal does not reach the merits of Plaintiffs'

_____

[5] Defendants raise two additional justiciability issues, and one merits argument. *First*, Defendants re-urge their standing arguments to say that Plaintiffs' claims are not ripe because they have not alleged any injury traceable to Defendants. For the reasons already stated, we disagree. *Second*, the Houston Police Chief claims the *Ex Parte Young* exception to sovereign immunity does not apply to him because he is a city official, "not a state official or an arm of the state." That's a non-starter because Eleventh Amendment immunity "does not extend" to cities in the first place. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001). And *third*, the Houston Police Chief argues that "a municipality such as Houston is not subject to suit" unless Plaintiffs allege a "policy or custom." This is an

No. 23-20165

claims, and we express no opinion on them. *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").[6]

## B

Finally, the district court denied as futile Plaintiffs' motion for leave to file an amended complaint because it ruled Plaintiffs lacked standing. Given our disposition, we vacate the denial of leave to amend. *See Jim S. Adler, P.C.*, 10 F.4th at 430.

## V

For the foregoing reasons, we REVERSE the district court's dismissals, VACATE the district court's order denying leave to amend, and REMAND for further proceedings not inconsistent with this opinion.

---

attack on the merits of Plaintiffs' claims, which the district court did not reach. Neither do we. *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022) ("As a well-established general rule, this court 'will not reach the merits of an issue not considered by the district court.'" (quoting *Baker v. Bell*, 630 F.2d 1046, 1055 (5th Cir. 1980))).

[6] *But see post*, at 3–4 (the dissenting opinion first arguing that there is no "compelled speech" and then arguing that Plaintiffs' unconstitutional condition theory fails).

Edith H. Jones, *Circuit Judge*, dissenting:

The majority opinion relies primarily on one "injury" pled by the plaintiffs: an "asymmetric treatment" injury allegedly founded on *Davis v. Federal Election Com'n*, 554 U.S. 724, 128 S. Ct. 2759 (2008). That "injury" does not exist, and *Davis* is wholly inapposite. Moreover, all of the plaintiffs' other injury theories are equally unfounded. I would affirm the district court's judgment, which found that plaintiffs lack Art. III standing to sue.

1. Asymmetrical injury. Plaintiffs claim to suffer an "ongoing injury because they are subject to a statutory scheme that treats varying types of similar speech differently." The majority opinion agrees with the "asymmetrical injury" theory because plaintiffs are supposed to post a certain size and type of poster on their property to repel gun-carrying patrons, Tex. Penal Code § 30.06, while any attention-drawing sign may be used by landowners for other types of discouraged entry. Tex. Penal Code § 30.05(b)(2)(C). "Asymmetrical" implies the opposite of something "symmetrical." But plaintiffs' signs and other statutorily prescribed signs cover entirely different subjects. Dissimilar signs are apples and oranges, because there is no content symmetry arising from the legislature's differing choices. Plaintiffs' factual underpinning for this "injury" makes no sense.

Legally, *Davis* has nothing to do with signage outside entities open to the public. *Davis*'s recognition of "'asymmetrical' treatment" in the First Amendment context was based on the comparative status of two candidates for the same public office. The campaign finance law expressly disadvantaged a self-financed candidate, because his opponent was allowed to receive far more individual contributions and party expenditures up to the self-financed amount. *See* Bipartisan Campaign Reform Act (BCRA), § 319(a); *Davis*, 554 U.S. at 729, 128 S. Ct. at 2766. The Federal Election

No. 23-20165

Commission (FEC) argued that, because the opponent had not yet qualified for or taken advantage of the asymmetrical limits, the self-financed plaintiff Davis lacked standing to challenge the provision. *Id.* at 734, 128 S. Ct. at 2769. Recognizing this prescribed disparity in campaign finance limits, the Supreme Court held that Davis had standing to challenge the provision's "asymmetrical contribution scheme." *Id.* at 735, 128 S. Ct. at 2679.

In *Davis*, the "asymmetry" affected direct adversaries. The consequences of plaintiff Davis's decisions were either (1) limit your protected right to political speech, or (2) be directly disadvantaged if you don't. The majority opinion here abstracts asymmetry to meaninglessness, in stating that the challenged no-guns signage scheme "limits [Plaintiffs'] ability to exercise their First Amendment rights to communicate their desire to exclude firearms relative to other property owners who desire to exclude other items via signage." Here, there is no direct prospective injury or consequence to the plaintiffs as there was in *Davis*: posting a less obtrusive sign on the premises for other reasons (e.g., no shirt, no shoes, no service, or No Dogs) causes no comparative injury vis a vis the no-guns posters.

In any event, the majority opinion cites no cases, articles or anything that supports their illogical finding of "asymmetrical injury" in this situation. I now turn to plaintiffs' other theories of injury.

2. Adverse effect of failure to post signs. The record shows, as a matter of fact and on the face of the statute, that even if the Plaintiffs refuse to post the statutory wording on their signs, the police will still come when they call. The Plaintiffs are not deprived of access to law enforcement to help them exclude trespassers carrying guns. Importantly, the Church's administrator, Sharlene Rochen, testified that the Webster Police Department has always responded when she calls. Over the last five years, she called the police ten times and they always responded within nine

No. 23-20165

minutes.  Likewise, Webster PD Chief Bacon affirmed that the Department investigates and responds to trespass and other calls in the same manner regardless whether the property owner elects to use the Acts' written signage option.

What is true as a matter of proof for the Church, which was dismissed based on factual development in Defendant Chief Bacon's motion to dismiss, is also true for the coffee shop Plaintiffs whose case was dismissed on pleadings alone pursuant to Rule 12(c).  On its face, the statute states that a trespasser is anyone carrying a gun who refuses to leave the premises after being verbally warned.  Tex. Penal Code §§ 30.06(b), 30.07(b).  That means that if the coffee shop or the Church sees someone trespass under those circumstances, either Plaintiff may call the police—which they'd have to do for official protection—and the police would arrive to eject the person. No posters need be published to accomplish the person's ouster, nor posters that exactly conform to the statutory warning.  A verbal command or request activates the statute.  *See id.*  Thus, whether Plaintiffs post the prescribed sign, a modified sign, or no sign at all, makes no difference to their right to protection as landowners or occupants of the property.  They are not injured. Nor are they subject to a dilemma about whether to comply with the prescribed signage.

3.  Compelled speech.  There is no "compelled speech" for two reasons.  First, Plaintiffs aren't saying they disagree with the "message" on the posters, they simply contend that the posters are so big as to be "unwelcoming" or "non-inclusive."  One wonders, "unwelcoming" to whom?  To patrons who don't carry guns, or only to those who might do so? Plaintiffs can't be "injured" if the regulation-size posters deter the gun carriers, which is the effect they say they want.  But they claim injury from disagreements spawned by Second Amendment supporters who quarrel with them about the signs.  Would such people be less quarrelsome if the no-carry

No. 23-20165

signs were pretty little pistols with a red slash inside a red circle? Who knows? It is not the content of the signs that "injures" Plaintiffs, but the appearance of the signs that reflects the Plaintiffs' own views. Plaintiffs cannot suffer a First Amendment "injury" by posting their own views at their places of worship/business. Their objection to the prescribed signage is thus purely aesthetic. To this extent, it is like an objection to any aesthetically-based zoning ordinance, but it is not a "free speech" objection.

Second, as to "compelled speech," this fact pattern is completely distinct from actual state-mandated speech cases. Here, not only is nothing "compelled," but there is no penalty attached to Plaintiffs' refusals to post the statutory language. *Cf. Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 267–69 (5th Cir. 2024) (plaintiff pornographic websites had standing to bring a First Amendment challenge to a Texas law requiring the websites to display "health warnings" on their webpages or pay a fine); *see also Book People, Inc. v. Wong*, 91 F.4th 318, 329–32 (5th Cir. 2024) (booksellers had standing to bring a First Amendment challenge to a Texas law requiring warnings of sexual content on books sold to Texas schools—or they couldn't sell the books).

A more comparable case is *California v. Texas*. 593 U.S. 659, 666, 141 S. Ct. 2104, 2112 (2021) (no standing by individual plaintiffs to challenge the minimum "commanded" essential coverage requirement of the Affordable Care Act, which Congress had reduced to zero). In other words, no harm, no foul for standing purposes. Here, if the Plaintiffs fail to post any or non-compliant signage, they allege they are deprived of the "deterrent value" of the criminal law. But as noted above, the Plaintiffs can still order anyone off their property and call the police to enforce the law. If any would-be trespassers remain undeterred, their audacity is not attributable to the Texas statute or to any actions taken by Defendants to enforce it.

No. 23-20165

4. Other theories of injury.  Plaintiffs seemed to back off the idea that injury would result if the Defendants not only fail to enforce, but also fail to prosecute gun-carrying trespassers.  These Plaintiffs have no constitutional right to force the criminal prosecution of others.  In any event, the statute offers a complete defense to a trespassing charge if the trespasser voluntarily leaves the premises.

The Plaintiffs also contend that they have acceded to an "unconstitutional condition" by posting the signs.  But the doctrine of "unconstitutional conditions" provides that "the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit." *Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S. Ct. 2309, 2317 (1994).  As explained above, the Plaintiffs have given up no right, they are not forced to post any sign or any compliant sign, and they are deprived of no benefit.

Finally, the Plaintiffs argue they have suffered reputational harm, because third parties have posted negative Google reviews drawing attention to their posting of the signs.  But to constitute an injury in fact, reputational harm must "bear[] a 'close relationship' to . . . the reputational harm associated with the tort of defamation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432, 141 S. Ct. 2190, 2209 (2021).  Here, the alleged Google reviews wholly fail to line up with the common law of defamation: the Google reviews state true facts and perhaps matters of opinion.  But even if bad reviews constitute an injury in fact, it is traceable only to the third party posts on Google, not to the Defendants.

For these reasons, I see no way in which the Plaintiffs are actually injured by the existence of the statutory language that prescribes the contents and form in which notices may be posted to warn gun carriers against

No. 23-20165

trespass.  Plaintiffs lack standing, and the district court's judgment should be affirmed.  I respectfully dissent.