## No. 23-20165

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER, L.L.C., D/B/A ANTIDOTE COFFEE; AND PERK YOU LATER, L.L.C.,

*Plaintiffs - Appellants,*

v.

HARRIS COUNTY DISTRICT ATTORNEY KIM OGG; COUNTY SHERIFF ED GONZALEZ; WEBSTER ACTING CHIEF PETE BACON; CHIEF OF HOUSTON POLICE DEPARTMENT TROY FINNER,

*Defendants - Appellees.*

On Appeal from Civil Action Number 4:20-cv-03081, in the United States District Court for the Southern District of Texas, Houston Division

## PETITION FOR REHEARING EN BANC

ARTURO G. MICHEL
City Attorney

SUZANNE R. CHAUVIN
Chief, General Litigation Section

Donald B. Hightower
Senior Assistant City Attorney
SBN: 24062780
CITY OF HOUSTON LEGAL DEPT.
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone: 832.393.6429
Facsimile: 832.393.6259
donald.hightower@houstontx.gov

*Attorneys for Appellee Chief of Houston Police Department J. Noe Diaz*

## No. 23-20165

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

———————

BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER, L.L.C., D/B/A ANTIDOTE COFFEE; AND PERK YOU LATER, L.L.C.,

*Plaintiffs - Appellants*,

v.

HARRIS COUNTY DISTRICT ATTORNEY KIM OGG; COUNTY SHERIFF ED GONZALEZ; WEBSTER ACTING CHIEF PETE BACON; CHIEF OF HOUSTON POLICE DEPARTMENT TROY FINNER,

*Defendants - Appellees*.

———————

On Appeal from Civil Action Number 4:20-cv-03081, in the United States District Court for the Southern District of Texas, Houston Division

———————

### CERTIFICATE OF INTERESTED PERSONS

———————

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal. The judge below was the Honorable Ewing Werlein, Jr.

| | |
|---|---|
| Appellants: | Bay Area Unitarian Universalist Church<br>Drink Houston Better, L.L.C., doing business as Antidote Coffee<br>Perk You Later, L.L.C. |
| Trial and Appellate Counsel for Appellants: | Alla Lefkowitz<br>Andrew Nellis<br>Ryan Gerber<br>Laura Keeley<br>Everytown Law<br>Charlotte H. Taylor<br>Lesley Roe<br>William R. Taylor<br>Jones Day |
| Appellees: | Harris County District Attorney Kim Ogg<br>County Sheriff Ed Gonzalez<br>Webster Acting Chief Pete Bacon<br>Chief of Houston Police Department Troy Finner (now J. Noe Diaz) |
| Trial and Appellate Counsel for Appellees Kim Ogg and Ed Gonzalez: | Heena Kepadia<br>Moustapha Gassama<br>Harris County Attorney's Office |
| Trial and Appellate Counsel for Appellee Pete Bacon: | William S. Helfand<br>Justin C. Pfeiffer<br>Lewis Brisbois Bisgaard & Smith, LLP |
| Trial Counsel for Appellee Troy Finner (now J. Noe Diaz): | Melissa Azadeh<br>City of Houston Legal Department |
| Appellate Counsel for Appellee Troy Finner (now J. Noe Diaz): | Donald B. Hightower<br>City of Houston Legal Department |

_/s / Donald B. Hightower_
Donald B. Hightower

_Attorneys for Appellee Chief of Houston_
_Police Department J. Noe Diaz_

# TABLE OF CONTENTS

**Page**

**Contents**

CERTIFICATE OF INTERESTED PERSONS ............................................ii

TABLE OF CONTENTS .......................................................................... v

TABLE OF AUTHORITIES ...................................................................... vi

STATEMENT OF THE ISSUES ................................................................ 1

COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE ........ 2

STATEMENT OF FACTS ......................................................................... 4

ARGUMENT AND AUTHORITIES ......................................................... 5

    I.    The Panel Opinion Conflicts with Supreme Court, Fifth Circuit, and Other Circuits' Precedent on Standing to Seek Prospective Relief, But the Dissent Got It Right. ......................... 6

        A.    The Panel Improperly found "asymmetrical" treatment demonstrating injury. ......................................................... 6

        B.    The Panel Improperly found "compelled speech" ............. 14

    II.    The Panel Opinion Conflicts with Supreme Court and Fifth Circuit Precedent By Holding that Appellants' Alleged Injuries Are "Fairly Traceable" to the Houston Police Chief, Sufficient to Support Standing, But the Dissent Got It Right. ...... 16

CONCLUSION ........................................................................................ 19

CERTIFICATE OF SERVICE ................................................................. 21

CERTIFICATE OF COMPLIANCE ......................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A & R Eng'g & Testing, Inc. v. Scott,*
  72 F.4th 685, 690 (5th Cir. 2023) ............................................................ 14

*Allen v. Wright,*
  468 U.S. 737 (1984) ................................................................................. 10

*Bailey v. Patterson,*
  369 U.S. 31 (1962) ................................................................................... 10

*Bay Area Unitarian Universalist Church v. Ogg,*
  No. 23-20165, 2025 WL 1066187, at *6 (5th Cir. Apr. 9, 2025) .......... passim

*Book People, Inc. v. Wong,*
  91 F.4th 318, 329–32 (5th Cir. 2024) ...................................................... 15

*Cedar Point Nursery v. Hassid,*
  594 U.S. 139, 149–50 (2021) ................................................................... 10

*Davis v. Federal Election Commission,*
  554 U.S. 724 (2008) ......................................................................... 6, 7, 14

*Diamond v. Charles,*
  476 U.S. 54 (1986) ............................................................................... 9, 13

*Dolan v. City of Tigard,*
  512 U.S. 374, 384, 393 (1994) ................................................................. 11

*Echols v. Parker,*
  909 F.2d 795 (5th Cir. 1990) ................................................................... 13

*Free Speech Coalition, Inc. v. Paxton,*
  95 F.4th 263, 267–69 (5th Cir. 2024) ...................................................... 15

*Glass v. Paxton,*
  900 F.3d 233, 239 (5th Cir. 2018) ........................................................... 14

*Henderson v. Stalder*,
   287 F.3d 374, 379 (5th Cir.2002) ............................................................ 16

*In re Gee*,
   941 F.3d 153, 164–65 (5th Cir. 2019)..................................................... 14

*Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*,
   601 F.2d 809 (5th Cir. 1979) .................................................................. 18

*Justice v. Hosemann*,
   771 F.3d 285 (5th Cir. 2014) .................................................................. 18

*K.P. v. LeBlanc*,
   627 F.3d 115 (5th Cir. 2010) .................................................................. 16

*Kaiser Aetna v. United States*,
   444 U.S. 164, 176, 179–180 (1979) ......................................................... 11

*Leeke v. Timmerman*,
   454 U.S. 83 (1981)................................................................................... 10

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973)................................................................................... 9

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419, 435 (1982) ....................................................................... 10

*Nollan v. California Coastal Comm'n*,
   483 U.S. 825, 831 (1987) ......................................................................... 11

*Pool v. City of Houston*,
   978 F.3d 307 (5th Cir. 2020) .................................................................... 3

*Reno v. ACLU*,
   521 U.S. 844, 872 (1997) ............................................................. 8, 11, 12

*Stringer v. Whitley*,
   942 F.3d 715 (5th Cir. 2019) .................................................................. 18

*Sure-Tan, Inc. v. NLRB*,
   467 U.S. 883 (1984)................................................................................ 10

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ..................................................................... 18

**Statutes**

TEX. PENAL CODE § 30.05(a). Section 30.05 ........................................ 4, 8, 15

Tex. Penal Code § 30.06-.07 ....................................................... 8, 10, 13, 15

## STATEMENT OF THE ISSUES

This proceeding involves two questions of exceptional importance because the panel's Opinion, if not reheard and corrected, will remain in irreconcilable conflict on these issues with existing Supreme Court, Fifth Circuit, and other circuit courts' precedent:

1)      Whether the panel ignored governing law in determining that Appellants have suffered an injury capable of supporting standing?

2)      Whether the panel ignored governing law in finding that Appellants' alleged injuries are "fairly traceable" to Chief of Houston Police Department J. Noe Diaz and, therefore, sufficient to support standing?

**COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE**

Appellants Bay Area Unitarian Universalist Church; Drink Houston Better, L.L.C., doing business as Antidote Coffee; and Perk You Later, L.L.C. (collectively "Appellants") filed this civil rights lawsuit in September 2020 seeking declaratory and injunctive relief based upon alleged violations of Article I, Section 8 of the Texas Constitution and the First, Fifth, and Fourteenth Amendments to the Constitution of the United States. ROA.52–55.

On September 29, 2022, the District Court—the Honorable Ewing Werlien, Jr., presiding—entered a Corrected Memorandum and Order[1] granting the Houston Police Chief's Rule 12(c) motion for judgment on the pleadings, dismissing all of Appellants' claims against him. ROA.870–82. In so doing, the Court stated that Appellants failed to meet their burden to allege injury in fact connected to the Houston Police Chief. ROA.878–81. Judge Werlein concluded, "nothing in the statutes themselves compel Appellants to provide the statutory notice to exclude patrons with handguns or suggest that police protection will only be afforded to those who provide statutory notice." ROA.879–80. The Court also noted Appellants have not "pled facts to show that

---

[1] The District Court issued a Corrected Memorandum & Order to correct an error in the original Memorandum and Order, which did not include the full caption of the case. ROA.857–69 (original Memorandum & Order), 870–82 (Corrected Memorandum & Order). No other changes were made to the original Memorandum and Order. ROA.871.

their decision to post the §§ 30.06 and 30.07 signs was in any way coerced or compelled." ROA.880. Rather, "Plaintiffs have failed to meet their burden to allege a plausible set of facts establishing 'a concrete and particularized,' and 'actual or imminent,' injury for which the" police chiefs are responsible. ROA.881.

On appeal, a panel of this Court reversed and remanded because it found Appellants had Article III standing to seek declaratory and injunctive relief against Appellee Houston Police Chief based upon alleged violations of the First Amendments to the Constitution of the United States, having sufficiently alleged with supporting evidence (1) an injury-in-fact that is both (2) traceable to Defendants' enforcement of §§ 30.06 and 30.07 and (3) redressable by a favorable judicial decision. *See Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, 2025 WL 1066187, at *6 (5th Cir. Apr. 9, 2025) (attached).

Circuit Judge Edith H. Jones attached a dissenting opinion in which she pointedly denied the existence of an asymmetrical injury; denied the possibility of adverse effects on Appellants resulting from their failure to post conforming signage; denied the existence of compelled speech; and disputed Appellants' other theories of injury. *See id.*, pp. 6–8.

Appellee Chief of Houston Police Department J. Noe Diaz ("Houston Police Chief")[2] filed this petition for rehearing en banc.

## STATEMENT OF FACTS

Appellants Bay Area Unitarian Universalist Church (the "Church"), Antidote Coffee ("Antidote"), and Perk You Later, LLC ("Perk You Later") are property owners who wish to exclude all guns from their church and coffee shop. Op. at 1. The Church is a unitarian universalist church located in Webster, Texas. *Id.* Antidote and Perk You Later are small coffee shops in the Houston/Webster area. *See Ogg*, 2025 WL 1066187, at *1.

Appellants complain about Texas's criminal trespass statutes under the Texas Penal Code. Under Texas's general criminal trespass law, "[a] person commits an offense if the person enters or remains on or in property of another ... without effective consent" and if the person "(1) had notice that the entry was forbidden" or "(2) received notice to depart but failed to do so." TEX. PENAL CODE § 30.05(a). Section 30.05 affords property owners many ways to provide

---

[2] Appellants originally sued Art Acevedo, in his official capacity as Chief of the Houston Police Department. ROA.27, 31. Chief Acevedo resigned as Chief of the Houston Police Department in 2021, and was replaced by Chief Finner, who stepped into Chief Acevedo's role as a party to this litigation. ROA.875. Subsequent to the filing of this appeal, Chief Finner resigned as Chief of the Houston Police Department in May 2024, and was replaced by Chief Diaz, who stepped into Chief Finner's role as a party to this litigation. *See* https://www.houstontx.gov/police/chief/index.htm.

notice, including by oral or written communication, an enclosure that is obviously designed to exclude, or a sign that is reasonably likely to come to the attention of the intruders. *See id.* § 30.05(b)(2).

## ARGUMENT AND AUTHORITIES

This is a lawsuit with no justiciable controversy against the City of Houston or any Houston official. Specifically, Appellants do not have standing to pursue the relief they seek against Appellee Houston Police Chief. Unfortunately, the panel purported to resolve these issues by creating conflicts with Supreme Court and this Circuit's precedent, and precedent in other circuits. In fact, that is precisely what Judge Jones, in her dissent, concluded.

Appellants challenge the constitutionality of two Texas criminal trespass statutes—Texas Penal Code sections 30.06 and 30.07 (the "Acts"), which they allege violate their First Amendment rights. Appellants seek a declaratory judgment on the constitutionality of the Acts and an injunction against any enforcement of the Acts by Houston Police Chief—despite failing to allege that Houston Police Chief previously enforced or threatened to enforce the Acts against them or any other property owner.

The fundamental failure of the Opinion's reasoning is that it repeatedly, and in violation of governing law, conflates the Texas Penal Code's creation of a criminal offense *against gun-possessing trespassers* with some imagined violation

of Appellant's rights. The Opinion completely ignores the reality that, under Texas law, a private property owner *always* retains the right to remove unwanted guests and may obtain the assistance of law enforcement to do so when necessary. The relevant sections of the Penal Code do nothing to restrict or otherwise affect this right in any way. The only thing that the Penal Code does is restrict law enforcement's ability to prosecute gun-possessing trespassers— something to which Appellants undeniably have *no right* whatsoever.

For these and the reasons that follow, this Court should grant rehearing en banc.

## I. THE PANEL OPINION CONFLICTS WITH SUPREME COURT, FIFTH CIRCUIT, AND OTHER CIRCUITS' PRECEDENT ON STANDING TO SEEK PROSPECTIVE RELIEF, BUT THE DISSENT GOT IT RIGHT.

### A. The Panel Improperly found "asymmetrical" treatment demonstrating injury.

Fundamental to the panel's Opinion is the presumption that Appellants receive "asymmetrical treatment" under the Acts.

In *Davis v. Federal Election Commission*, 554 U.S. 724 (2008), the Supreme Court explored this issue, holding that "asymmetrical limits" on a candidate's campaign contribution limits, created by the so-called "Millionaire's Amendment" of the Bipartisan Campaign Reform Act of 2002, violated the candidate's First Amendment right to free speech. *See id.*, at 744. The Court

determined that the statute—which permitted *the opponent* of a candidate who spent over $350,000 of his personal funds to collect *triple the normal contribution amount*, while the candidate who spent the personal funds remained subject to the original contribution cap—unconstitutionally forced a candidate "to choose between the First Amendment right to engage in unfettered political speech and subjection to discriminatory fundraising limitations." *Id.*, at 739. According to the Supreme Court, such "asymmetrical" regulation "impose[d] a substantial burden on the exercise of the First Amendment right to use personal funds for campaign speech[.]"*Id.*, at 739–740.

Here, the panel's Opinion found that Appellants suffer from similar "asymmetrical" treatment under the Acts, sufficient to constitute an injury for purposes of standing. *See Ogg*, 2025 WL 1066187, at *3. According to the Opinion, "Plaintiffs suffer an ongoing injury because they are subject to a statutory scheme that treats varying types of similar speech differently." *Id.* (citing *Davis*, 554 U.S. at 734–35). The Opinion describes it this way:

> If Plaintiffs do post compliant signs, they suffer an "asymmetrical treatment" injury. If Plaintiffs do not post compliant signs, their right to exclude [persons possessing guns] is limited because property rights are protected by the deterrent value of the criminal laws.

*Id.*, at *4.

The panel is wrong. As argued in the Appellees' briefing and at oral argument, the Appellants suffer *no disparate treatment* despite choosing to use alternative signage—and continue to enjoy service and protection from the relevant law enforcement agencies.

In the Opinion, the panel finds that "[Appellants] suffer an ongoing injury because they are subject to a statutory scheme that treats varying types of similar speech differently." *Ogg*, 2025 WL 1066187, at *7. The Opinion then states that "property owners who wish to express a prohibition on firearms are treated differently from property owners who wish to express a prohibition on virtually any other item or entrant." *Id.* (*comparing* Tex. Penal Code § 30.06, *with id.* § 30.05(b)(2)(C). However, the Opinion's subsequent analysis of Appellants' "treatment" under the statutory scheme is completely at odds with the evidence provided to the Court.

The Opinion asserts that if Appellants do not post compliant signs, their right to exclude is limited because property rights are protected by the deterrent value of the criminal laws. *Ogg*, 2025 WL 1066187, at *4 (citing *Reno v. ACLU*, 521 U.S. 844, 872 (1997). This assertion means that if property owners fail to post signage conforming to the specifications of the Acts, that trespassing gun owners face no consequences for violating Appellants' wishes. There is nothing in the record, or in Texas law, that supports this proposition.

First, the Acts allow for oral notice of the property owner's wishes to gun owners. *See* TEX. PEN. CODE §§ 30.06(b), 30.07(b). The panel claims that this option creates dangerous circumstances for Appellants' employees while also limiting Appellants' "expression preferences." *Ogg*, 2025 WL 1066187, at *4. But as Judge Jones pointed out during oral argument, nothing prevents Appellants' employees from calling law enforcement—either HPD or the Webster Police Department—and asking the responding officers to deliver the oral notice specified by the Penal Code. Thus, Appellants are not "worse off."

As Judge Jones observed in her dissent:

> The majority opinion here abstracts asymmetry to meaninglessness, in stating that the challenged no-guns signage scheme "limits [Plaintiffs'] ability to exercise their First Amendment rights to communicate their desire to exclude firearms relative to other property owners who desire to exclude other items via signage." Here, there is no direct prospective injury or consequence to the plaintiffs as there was in *Davis*: posting a less obtrusive sign on the premises for other reasons (e.g., no shirt, no shoes, no service, or No Dogs) causes no comparative injury vis a vis the no-guns posters.

*Id.*, at *7 (Jones, J., dissenting).[3]

Second, the panel's assertion ignores the well-settled rule that "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution

---

[3] As Judge Jones further points out, "the majority opinion cites no cases, articles or anything that supports their illogical finding of 'asymmetrical injury' in this situation." Ogg, 2025 WL 1066187, at *7 (Jones, J., dissenting).

of another." *Diamond v. Charles*, 476 U.S. 54, 56 (1986) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981); *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984); *Younger v. Harris*, 401 U.S. 37, 42 (1971); *Bailey v. Patterson*, 369 U.S. 31, 33 (1962). *Cf. Allen v. Wright*, 468 U.S. 737, 754 (1984) ("[An] asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."). Consequently, any failure to *prosecute* a handgun possessor under the Acts resulting from Appellants' conduct can never qualify as a lost "benefit" that would create standing.[4] *See id*.

Ultimately, Appellants' complaint boils down to an issue faced by every property owner that opens its premises to the public—how to remove unwanted guests. Appellants' fundamental desire is that they "want to be able to call the police to remove individuals who enter the property carrying a gun despite [their] no-guns signs." ROA.47. As the Supreme Court has observed, "[t]he right to exclude is 'one of the most treasured' rights of property ownership." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149–50 (2021) (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)). "According to

---

[4] The panel also claims that oral notice is impractical since Appellants' employees would have no knowledge of gun owners practicing concealed carry of their firearms. Op., at 9. But if that is the case, the violative gun owners would be safe from prosecution under either any scheme, since no one would have any basis for reporting them to law enforcement.

Blackstone, the very idea of property entails 'that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right *150 of any other individual in the universe.'" *Id*. (quoting 2 W. Blackstone, Commentaries on the Laws of England 2 (1766)). The Supreme Court has repeatedly held that the right to exclude is "universally held to be a fundamental element of the property right," and is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Id*. (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 179–180 (1979)); *see Dolan v. City of Tigard*, 512 U.S. 374, 384, 393 (1994); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831 (1987). Notably, there is nothing in the Acts that expressly prevents this from happening. *See* TEX. PENAL CODE §§ 30.06-.07.

The Opinion further asserts that Appellants are injured by the loss of the "deterrent effect" provided by the Acts. *See Ogg*, 2025 WL 1066187, at *4. The Opinion relies upon *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997)— a case concerning enforcement of the Communications Decency Act, aimed at protecting minors from the transmission of materials considered obscene or indecent. *See Ogg*, 2025 WL 1066187, at *4. While *Reno* involved a similar First Amendment challenge, the relevant issue was the purported overbreadth of the CDA. *See Reno*, 521 U.S. at 880. Standing was not an issue considered by the

Supreme Court in its opinion. *See id.*, *generally*. This is especially relevant to the *Reno* opinion's application to the case at bar where the panel cites *Reno* as authority for its finding of "asymmetrical treatment" injury. *See Ogg*, 2025 WL 1066187, at *4. Specifically, the Opinion asserts that Appellants, who choose not to post the statutorily-complaint signage are "injured" by the resulting loss of criminal prosecution of gun-possessing trespassers, because—as the Opinion states—"property rights are protected by the deterrent value of the criminal laws." *Id.* (citing *Reno*, at 872). Specifically, the Opinion relies upon the *Reno* holding as authority for the proposition that "deterrence flows from criminal sanctions". But *Reno* provides no such authority or reasoning.

In *Reno*, Justice Stevens was considering how the "vagueness" of the CDA created an "obvious chilling effect on free speech" based upon the opprobrium and stigma of a criminal conviction" as well as the "potential penalties of up to two years in prison for each violation. *Reno*, at 872. But the CDA, unlike the Penal Code sections at issue in the case at bar, was to be enforced against the ACLU's clients—not third parties against whom the ACLU would prefer to see prosecuted. *See id.* Again, the Opinion confuses the Texas Penal Code's treatment of third parties with some imagined injury to Appellants. *Reno* provides no support for such logical gymnastics.

Under Texas's general trespass laws, Appellants may exclude whomever they wish, and those persons are subject to prosecution for trespass. *See id.*, § 30.05. The only thing denied by the Acts is the ability to prosecute possessors of handguns who remain on the property—against the owner's wishes—in the absence of the required oral or written notice. *See id.*, §§ 30.06-.07. The Houston Police Chief does not prosecute anyone. *See Diamond*, 476 U.S. at 64-65 ("the power to create and enforce a legal code, both civil and criminal" is one of the quintessential functions of a State…. And "only the State has the kind of 'direct stake' necessary in defending the standards embodied in that code."); *Echols v. Parker*, 909 F.2d 795, 799 (5th Cir. 1990). As Judge Jones states in her dissent, "whether Plaintiffs post the prescribed sign, a modified sign, or no sign at all, makes no difference to their right to protection as landowners or occupants of the property." *Ogg*, 2025 WL 1066187, at *7 (Jones, J., dissenting).

The Opinion also states—*without any citation to the record*—that, "even when police do arrive, the right to exclude continues to be deprived for a period because the record shows that police sit on their hands in the absence of compliant signage or oral notice coupled with a subsequent refusal to leave." *Ogg*, 2025 WL 1066187, at *4, n. 4. This assertion is curious since *there is nothing in the record* to support it.

By contrast, Judge Jones observed that:

> *The record shows*, as a matter of fact … that even if the Plaintiffs refuse to post the statutory wording on their signs, *the police will still come when they call*. The Plaintiffs are not deprived of access to law enforcement to help them exclude trespassers carrying guns. Importantly, the Church's administrator, Sharlene Rochen, testified that the Webster Police Department has always responded when she calls. Over the last five years, she called the police ten times and they always responded within nine minutes. Likewise, Webster PD Chief Bacon affirmed that the Department investigates and responds to trespass and other calls in the same manner regardless whether the property owner elects to use the Acts' written signage option.

*Ogg*, 2025 WL 1066187, at *7 (Jones, J., dissenting).

As the District Court correctly held, "[Appellants] have failed to meet their burden to allege a plausible set of facts establishing 'a concrete and particularized,' and 'actual or imminent,' injury in fact for which the Houston [Police] Chief is responsible." ROA.881. Consequently, Appellants failed to satisfy the injury-in-fact element of standing, and the District Court's judgment should have been affirmed. *See A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023); *In re Gee*, 941 F.3d 153, 164–65 (5th Cir. 2019); *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018).

## B.     The Panel Improperly found "compelled speech".

The panel's Opinion incorrectly finds that the Texas Penal Code creates a scenario of "compelled speech" by Appellants. But this is simply not the case.

Curiously, in reaching its conclusion, the Opinion relies upon *Davis v. Federal Election Commission*, discussed above. *See Ogg*, 2025 WL 1066187, at *3. But *Davis*—which concerned asymmetrical contribution limits imposed against the plaintiff candidate—has no application to the case at bar, where Sections 30.05 and 30.06 of the Texas Penal Code would only be enforced *against criminal trespassers*—not Appellants. As Judge Jones points out in her dissent, "this fact pattern is completely distinct from actual state-mandated speech cases. Here, not only is nothing 'compelled,' but there is no penalty attached to Plaintiffs' refusals to post the statutory language." *Ogg*, 2025 WL 1066187, at *6–8 (Jones, J., dissenting) (citing *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 267–69 (5th Cir. 2024) (plaintiff pornographic websites had standing to bring a First Amendment challenge to a Texas law requiring the websites to display "health warnings" on their webpages or pay a fine); *Book People, Inc. v. Wong*, 91 F.4th 318, 329–32 (5th Cir. 2024) (booksellers had standing to bring a First Amendment challenge to a Texas law requiring warnings of sexual content on books sold to Texas schools—or they couldn't sell the books)).

Neither the cited authorities nor the appellate record supports a holding that finds Appellants have suffered an injury-in-fact. Accordingly, the Opinion should be withdrawn and the District Court judgment should be affirmed.

II.    **THE PANEL OPINION CONFLICTS WITH SUPREME COURT AND FIFTH CIRCUIT PRECEDENT BY HOLDING THAT APPELLANTS' ALLEGED INJURIES ARE "FAIRLY TRACEABLE" TO THE HOUSTON POLICE CHIEF, SUFFICIENT TO SUPPORT STANDING, BUT THE DISSENT GOT IT RIGHT.**

The Opinion devotes just four sentences to its conclusion that, "[Appellees'] enforcement of [Texas Penal Code] §§ 30.06 and 30.07 is at least a cause of Plaintiffs' asymmetrical treatment injury." Op. at 10. The Opinion's conclusion relies entirely upon this Court's Opinion in *K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010). *See* Op. at 10.

*K.P.* concerned a suit brought by physicians enrolled in Louisiana's Patient's Compensation Fund (the "Compensation Fund") to challenge the constitutionality of a Louisiana statute defining the tort liability of physicians who perform abortions. *See K.P.*, 627 F.3d at 119–20. The physicians sued the Compensation Fund's oversight board, after the board cited the Louisiana statute as its basis for denying Fund coverage to the physician's claims. *See id.* In addressing the physicians' standing, this Court held that "being denied these and other protections of the Med-Mal Act is a "direct pecuniary injury" that generally is sufficient to establish injury-in-fact. *Id.*, at 122 (citing *Henderson v. Stalder*, 287 F.3d 374, 379 (5th Cir.2002)). The Court went on to hold that, since the Compensation Fund's oversight board "can unilaterally preclude the Plaintiffs from claiming the benefits" of the Med-Mal Act, members of the oversight board "significantly contributed to the Plaintiffs' alleged injuries …

16

[and] satified the requirement of traceability." *Id*., at 123. In his concurrence, Judge Dennis—the author of the panel's Opinion in this appeal—reviewed the injuries alleged by the K.P. plaintiffs, before concluding that, "the injuries are obviously directly caused by the Board's decisions, and could be redressed by an injunction requiring the Board to treat abortion-related malpractice claims the same way it treats other malpractice claims." *Id*., at 127 (Dennis, J., concurring).

The *K.P.* holding and concurrence are not remotely analogous to the facts before the Court in this appeal. Here, Appellants seek only prospective relief. Most importantly, neither Chief Diaz—nor any of his predecessors—has or will make a decision that will deny the full protection under law to any of the Appellants.

But most glaringly, the panel completely overlooks the fact that Appellants failed to allege sufficient facts concerning *any* concrete or particularized injury caused by Houston Police Chief—specifically through his purported enforcement of the Acts. In fact, Appellants' thirty-page Complaint mentions Houston Police Chief *only twice*—in the case caption and in the "Parties" section where Houston Police Chief is simply identified as a Defendant "responsible for enforcing criminal violations of the Acts in the City of Houston." ROA.31. Otherwise, Appellants failed to allege that Houston Police Chief had any role in authoring or enacting the allegedly unconstitutional

State Acts. Furthermore, Appellants failed to allege that Houston Police Chief has taken any action to enforce the Acts against Appellants. ROA.30–55.

To establish standing to seek *prospective* injunctive relief, *Appellants* had the burden to allege facts demonstrating that the "threatened injury is 'certainly impending'" or that there is a "'*substantial risk' that the harm will occur.*" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 414, n.5); *Lujan*, 504 U.S. at 565 n.2; *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019); *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014) (quoting *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 815 (5th Cir. 1979))). To the contrary, Appellants alleged only that they "want to be able to call the police to remove individuals who enter the property carrying a gun despite [their] no-guns signs." ROA.47. Appellants fail to allege that Houston Police Chief took any action or made any threat to enforce the Acts against them. Further, Appellants plead no facts that Houston Police Chief chilled or otherwise impacted their freedom of speech. ROA.30–55.

It was exactly this failure which the District Court highlighted in granting Houston Police Chief's Motion. ROA.878–79. On this basis the District Court concluded that Appellants failed to allege *any facts* capable of demonstrating the denial of any government benefit as a result of the exercise of such rights. ROA.879. In concluding that Appellants had wholly failed to satisfy the

requirement to demonstrate standing, the District Court stated, "Plaintiffs' claims are based on conjectural and hypothetical imaginings of what the police might do or might not do and what the prosecutors might do and might not do under various scenarios." ROA.881.

Neither the cited authorities nor the appellate record supports a holding that finds Appellants' alleged injuries to be fairly traceable to the Houston Police Chief. Accordingly, the Opinion should be withdrawn and the District Court judgment should be affirmed.

## CONCLUSION

Houston respectfully requests that this Court grant rehearing *en banc*, issue a new opinion affirming the decision of the District Court, and award to Houston such other relief as to which this Court finds it entitled.

Respectfully submitted,

ARTURO G. MICHEL
City Attorney
SUZANNE R. CHAUVIN
Chief, General Litigation Section

By:   _/s / Donald B. Hightower_
      Donald B. Hightower
      Senior Assistant City Attorney
      SBN: 24062780
      donald.hightower@houstontx.gov
      CITY OF HOUSTON LEGAL DEPARTMENT
      900 Bagby, 4th Floor
      Houston, Texas 77002
      Telephone:   832.393.6429
      Facsimile:    832.393.6259

*Attorneys for Defendant-Appellee Chief of*
*Houston Police Department Troy Finner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on May 13, 2025 on all counsel of record.

*/s/ Donald B. Hightower*
Donald B. Hightower

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) in that it contains 3,538 words, excluding the parts of the petition exempted by FED. R. APP. P. 32(a)(7)(B)(iii). It also complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Calisto MT 14 point font.

*/s/ Donald B. Hightower*
Donald B. Hightower

# Appendix

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 9, 2025

Lyle W. Cayce
Clerk

————————

No. 23-20165

————————

Bay Area Unitarian Universalist Church; Drink Houston Better, L.L.C., *doing business as* Antidote Coffee; Perk You Later, L.L.C.,

*Plaintiffs—Appellants,*

*versus*

Harris County District Attorney Kim Ogg; County Sheriff Ed Gonzalez; Webster Acting Chief Pete Bacon; Chief of Houston Police Department Troy Finner,

*Defendants—Appellees.*

————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3081

————————————————————

Before Jones, Dennis, and Douglas, *Circuit Judges.*

James L. Dennis, *Circuit Judge:*[*]

This lawsuit arises from a First Amendment challenge to Texas Penal Code §§ 30.06 and 30.07, but this appeal only addresses whether a church

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

and a coffee shop have standing to press their claims. Because we hold that they do, we REVERSE the district court's dismissals, VACATE the district court's order denying leave to amend, and REMAND for further proceedings.

I

Plaintiffs Bay Area Unitarian Universalist Church (the "Church") and Antidote Coffee/Perk You Later, LLC ("Antidote") are property owners who wish to exclude all guns from their church and coffee shop. The Church is a unitarian universalist church located in Webster, Texas. Antidote is a small coffee shop in Houston that also serves alcohol.

Plaintiffs complain about Texas's trespass laws, so we explain the schema. Under Texas's General Trespass Law, "[a] person commits an offense if the person enters or remains on or in property of another . . . without effective consent" and if the person "(1) had notice that the entry was forbidden" or "(2) received notice to depart but failed to do so." TEX. PENAL CODE § 30.05(a). Section 30.05 affords property owners many ways to provide notice, including by oral or written communication, an enclosure that is obviously designed to exclude, or a sign that is reasonably likely to come to the attention of the intruders. *See id.* § 30.05(b)(2).

In 2003, the Texas legislature carved out an exception to the General Trespass Law in § 30.05(f). Specifically, § 30.05(f) states that it is a defense to prosecution for trespassing if a person is forbidden from entering the property because entry with a handgun was forbidden without adequate notice. *Id.* § 30.05(f). In 2003, this exception applied only to those who carried a concealed handgun with a permit but was later expanded to any person openly carrying a handgun "in a holster." *Id.* § 30.05(f)(2)(B)(ii). Following these exceptions, §§ 30.06 and 30.07 were enacted to create trespass crimes for those exempted under § 30.05(f). Section 30.06

No. 23-20165

("Concealed Carry Trespass Law") covers concealed handgun license holders and Section 30.07 ("Open Carry Trespass Law") covers open-carry handgun license holders.

Under the Concealed Carry Trespass Law, a person commits an offense if the person carries a concealed handgun on the property of another without consent and receives notice by oral or written communication that the concealed handgun was forbidden. *Id.* § 30.06. "Written communication" means:

> (A) a card or other document on which is written language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"; or
>
> (B) a sign posted on the property that:
>
>> (i) includes the language described by Paragraph (A) in both English and Spanish;
>>
>> (ii) appears in contrasting colors with block letters at least one inch in height; and
>>
>> (iii) is displayed in a conspicuous manner clearly visible to the public.

*Id.* § 30.06(c)(3).

The Open Carry Trespass Law defines "written communication" in the same way, except the sign posted on the property also must be "displayed . . . at each entrance to the property." *Id.* § 30.07(c). These statutes only encompass handguns. Therefore, if property owners want to exclude other types of guns too, they must post a third sign under the General Trespass Law, § 30.05.

The Church's official policy forbids carrying firearms onto church property. However, the Church currently displays only the open carry signs in English and Spanish in accordance with the Open Carry Trespass Law. The Church alleges with supporting evidence that posting the requisite signs under both §§ 30.06 and 30.07 would (1) degrade the church experience; (2) inhibit guests' safety and obstruct the Church's inclusivity aims; and (3) detract from the Church's religious principles. The signs are displayed at the front and side entrances to the church building, each measure eighteen inches by twenty-four inches, and both cost $118.80.

Antidote objects to guns being on its property because it believes the presence of guns creates an unsafe environment for its guests, which include children and pets. Prior to 2016, Antidote displayed a pictograph sign of a gun enclosed in a red circle with a red diagonal line through it, which measured three inches by three inches and cost $0. Since 2016, to comply with the signage requirements, Antidote has posted both sets of signs required by §§ 30.06 and 30.07, accruing $260 in costs to do so. The signs cover a large portion of the windowpane next to the front door—measuring, altogether, approximately ten square feet—and frustrate Antidote's desired "neighborhood coffee shop" aesthetic.

## II

In 2020, Plaintiffs filed this lawsuit for declaratory and injunctive relief against the District Attorney and County Sheriff for Harris County (collectively the "Harris County Defendants"); the Chief of the Webster Police Department; and the Chief of the Houston Police Department. Plaintiffs asserted First Amendment speech and association claims.[1]

---

[1] Plaintiffs brought a federal due process claim too, which the district court dismissed for lack of standing. Plaintiffs only mention the due process claim once on appeal. It is forfeited due to inadequate briefing. *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397

No. 23-20165

Plaintiffs also brought a parallel Texas Constitution § 8 claim. The Harris County District Attorney prosecutes violations of Texas Law, including §§ 30.06 and 30.07. Likewise, the Harris County Sheriff's Office, the Webster Police Department, and the Houston Police Department enforce §§ 30.06 and 30.07 as written in their respective jurisdictions. Officers and prosecutors employed by Defendants are specifically trained on the nuances of the signage requirements under §§ 30.05, 30.06, and 30.07.

Relevant to this appeal, the Houston Police Chief filed a Rule 12(c) motion for judgment on the pleadings, arguing that Plaintiffs lacked Article III standing. The district court granted the Houston Police Chief's Rule 12(c) motion, ruling that Plaintiffs failed to allege facts establishing an injury. Following that ruling, Plaintiffs filed a motion for leave to file an amended complaint to incorporate evidence unearthed during discovery. Meanwhile, the Harris County Defendants filed a Rule 12(c) motion for judgment on the pleadings also on the ground that Plaintiffs lacked standing, and the Webster Police Chief filed a Rule 12(b)(1) motion to dismiss for the same reason. The district court granted the 12(c) and 12(b)(1) motions, dismissed Plaintiffs' claims without prejudice for lack of standing, denied Plaintiffs' motion for leave to file an amended complaint as futile, and entered final judgment. Plaintiffs timely appealed.

## III

A district court's Rule 12(b)(1) dismissal is reviewed de novo.[2] *Ctr. for*

---

(5th Cir. 2021); *see also Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 349 (5th Cir. 2024) ("[S]tanding is not dispensed in gross; rather plaintiffs must demonstrate standing for each claim that they press . . . .").

[2] We treat the Webster Police Chief's and the Harris County Defendants' Rule 12(c) motions attacking standing as Rule 12(b)(1) motions. 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 & n.23 (3d ed. 2020) ("[I]f a party raises an issue as to the court's subject matter jurisdiction on a motion

No. 23-20165

*Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013). A "district court . . . has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981).

The district court based its review of the Houston Police Chief's motion to dismiss on the complaint, and its review of the Webster Police Chief's and Harris County Defendants' motions on the complaint supplemented by undisputed facts evidenced in the record. In neither of the district court's two rulings on standing did it resolve factual disputes. "Where, as here, 'the district court rules on jurisdiction without resolving factual disputes . . . we consider the allegations in the plaintiff's complaint as true and review whether the district court's application of the law is correct.'" *Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021) (quoting *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271–72 (5th Cir. 2021)).

The denial of leave to amend as futile is reviewed de novo. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir. 2021).

IV

A

The requirement that a plaintiff have standing is an essential Article III restriction. *Davis v. FEC*, 554 U.S. 724, 732 (2008). To have standing, a plaintiff must establish they (1) suffer an injury; (2) that is fairly traceable to

---

for a judgment on the pleadings, the district judge will treat the [Rule 12(c)] motion as if it had been brought under Rule 12(b)(1).").

No. 23-20165

the defendant's conduct; and (3) that is likely to be redressed by a favorable ruling. *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 635 (5th Cir. 2012).

*1. Injury*

First, we find Plaintiffs suffer an ongoing injury because they are subject to a statutory scheme that treats varying types of similar speech differently.[3] *Davis*, 554 U.S. at 734–35 (recognizing that "asymmetrical" treatment in the First Amendment context is alone sufficient to constitute Article III injury); *see also Time Warner Cable, Inc.*, 667 F.3d at 636 (holding in the First Amendment context that "[d]iscriminatory treatment at the hands of the government is an injury long recognized as judicially cognizable" (quoting *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 218 (5th Cir. 2008))). Specifically, property owners who wish to express a prohibition on firearms are treated differently from property owners who wish to express a prohibition on virtually any other item or entrant. *Compare, e.g.*, Tex. Penal Code § 30.06 (providing that property owners who exercise their right to exclude firearms can vindicate their property rights by posting a sign with language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"), *with id.* § 30.05(b)(2)(C) (providing that property owners who exercise their right to exclude for other legally permissible reasons—such as not wearing shoes—can vindicate their property rights simply by posting a sign that is "reasonably likely to come to the attention of intruders"); *see also* ROA.28 n.1 ("[Sections 30.06 and 30.07 were intentionally designed to be]

---

[3] We therefore do not reach Plaintiffs' alternative injury theories, and we express no opinion on the dissenting opinion's analysis of them. *See post*, at 5–6.

cumbersome so as to discourage businesses from prohibiting entry to customers carrying guns."). Plaintiffs allege this asymmetrical scheme limits their ability to exercise their First Amendment rights to communicate their desire to exclude firearms relative to other property owners who desire to exclude other items via signage. *Davis*, 596 U.S. at 298 ("For standing purposes, we accept as valid the merits of [Plaintiffs'] legal claims, so we must assume that the [Texas statutory scheme] unconstitutionally burdens speech.").

Defendants counter that Plaintiffs' asymmetrical treatment injury is self-inflicted because they are not *required* to post compliant signage—*i.e.*, Plaintiffs are not subject to prosecution if they choose to post non-conforming signs, and the Texas statutory scheme contemplates that Plaintiffs can alternatively give oral notice that guns are forbidden. Defendants' argument is too clever by half. While it is true that "standing cannot be conferred by a self-inflicted injury," *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018), it is equally true that an injury is not self-inflicted when a plaintiff faces a dilemma, the horns of which entail different harms. *See, e.g.*, *Evers v. Dwyer*, 358 U.S. 202, 203–04 (1958) (per curiam); *Book People, Inc. v. Wong*, 91 F.4th 318, 331–32 (5th Cir. 2024) (finding an injury not self-inflicted when a plaintiff "will be harmed if they comply with [the law] and harmed if they don't").

Either choice here results in harm. If Plaintiffs do post compliant signs, they suffer an "asymmetrical treatment" injury. If Plaintiffs do not post compliant signs, their right to exclude is limited because property rights are protected by the deterrent value of the criminal laws.[4] *See Reno v. ACLU*,

---

[4] The dissenting opinion makes much of the fact that police come when called regardless of whether compliant signage is posted. *Post*, at 2–3. But this ignores that the right to exclude is already injured by the time the police come. The inherent deterrent value

No. 23-20165

521 U.S. 844, 872 (1997) (recognizing that deterrence flows from criminal sanctions); *see also* ROA.41 ¶ 49 (noting that if a business's sign does not precisely comply with §§ 30.06 and 30.07, some individuals take that opportunity to bring guns onto properties because they face no criminal consequence for doing so). Oral notice is an inadequate alternative to signage according to Plaintiffs' allegations and record evidence because, *inter alia*, (1) oral notice is impractical, *see* ROA.40 ¶ 42; ROA.1212 ¶ 14 ("For one thing, there is no way for our greeters or anyone else at the Church to know whether someone is carrying a concealed handgun[.]"); (2) oral notice limits Plaintiffs' expressive preferences, *see* ROA.1212 at ¶¶ 15–16; and (3) oral notice can lead to danger for guests and employees, ROA.40 ¶ 42 ("Giving individual notice . . . risks physical confrontation."); ROA.1259 (discussing an incident where a person with a gun was asked to leave the Antidote coffee shop; person "came back with a sword"). *See also Skyline Wesleyan Church v. Calif. Dep't of Managed Health Care*, 968 F.3d 738, 748–49 (9th Cir. 2020)

---

flowing from the criminal law and the attendant threat of penalties protects the right to exclude from the get-go. The record (and common sense) bears out that the law will have its intended effect: handgun owners will carry handguns where legally permissible and not where criminally prohibited. *See, e.g.*, ROA.41 ¶ 49 & n.7 (person posted online "I walked right past a sign yesterday that said 'No firearms allowed.' I thought it was cute."); ROA.1250–64, 1269–70 (passerby challenged sufficiency of Antidote's signs to exclude handguns); ROA.2216–18 ¶¶ 42–44 (alleging that people bring guns onto properties lacking compliant signage "because they face no criminal consequences for doing so"). What's more, even when police do arrive, the right to exclude continues to be deprived for a period because the record also shows that police sit on their hands in the absence of compliant signage or oral notice to a trespasser coupled with a subsequent refusal to leave. As to the dissent's concern about traceability, for the reasons just stated, it is predictable that handgun owners will be affected by Defendants' strict enforcement of the allegedly unconstitutional signage requirements, so Plaintiffs' "theory of standing . . . does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019); *post*, at 4 (arguing a trespasser's "audacity is not attributable to the Texas statute or to" the Defendants).

(rejecting an argument that an injury was "self-inflicted" when resorting to alternatives would lead the plaintiff to be "worse off than it had been before the" challenged conduct). Thus, whichever path Plaintiffs choose—to post the compliant signage or to not—harm lies ahead, which means their injuries are not "self-inflicted."

Nor does it matter that §§ 30.06 and 30.07 are directly enforced against trespassers rather than the Plaintiffs. A plaintiff challenging the constitutionality of a statute need not face the threat of direct enforcement to have standing; they need only show that their rights are adversely affected by operation of the challenged laws, which, here, is the entire basis of Plaintiffs' lawsuit. *See generally Gange Lumber Co. v. Rowley*, 326 U.S. 295 (1945) (holding that to challenge the constitutionality of a statute, a plaintiff must show that the alleged unconstitutional feature of the statute injured him, and so operates as to deprive him of a constitutional right). Plaintiffs' asymmetrical treatment injury is therefore cognizable.

### 2. Traceability

Second, Plaintiffs' asymmetrical treatment injury fairly traces to the Defendants' enforcement of §§ 30.06 and 30.07. When an injury flows from an allegedly unconstitutional law, the individuals charged with the enforcement of that law are at least part of the cause of the injuries, satisfying the minimal traceability requirement. *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010). As noted, it is undisputed that Defendants follow the law and apply the heightened notice requirements of §§ 30.06 and 30.07. *K.P.* dictates that Defendants' enforcement of §§ 30.06 and 30.07 is at least a cause of Plaintiffs' asymmetrical treatment injury. *Id.*

### 3. Redressability

Third, Plaintiffs' asymmetrical treatment injury is redressable by a favorable judicial decision. Plaintiffs seek a declaration that the heightened

notice requirements imposed by §§ 30.06(c)(3) and 30.07(c)(3) are unconstitutional and an injunction against their enforcement. If this relief is granted, Plaintiffs can provide "notice" as that word is defined in § 30.05(b)—the General Trespass Law—rather than as defined in §§ 30.06 and 30.07. The relief would remove the asymmetrical treatment at the hands of the government as Plaintiffs would be on equal footing with property owners who exclude other items via the less burdensome § 30.05 compliant signage. *See, e.g.*, *Heckler v. Mathews*, 465 U.S. 728, 738–39 (1984) (equal treatment is a remedy).

\*        \*        \*

At bottom, Plaintiffs have alleged with supporting evidence (1) an injury-in-fact that is both (2) traceable to Defendants' enforcement of §§ 30.06 and 30.07 and (3) redressable by a favorable judicial decision. They have established their Article III standing to press their First Amendment claims. *Time Warner Cable, Inc.*, 667 F.3d at 635. The parties (and the district court) treat Plaintiffs' First Amendment and Texas Constitution § 8 claims as coterminous. Because "we analyze [the] First Amendment and § 8 claims together[] [and] apply[] federal law," *Crampton v. Weizenbaum*, 757 F. App'x 357, 369 n.9 (5th Cir. 2018) (per curiam), Plaintiffs also have standing to press their Texas Constitution § 8 claim.[5]

We caution that this appeal does not reach the merits of Plaintiffs'

---

[5] Defendants raise two additional justiciability issues, and one merits argument. *First*, Defendants re-urge their standing arguments to say that Plaintiffs' claims are not ripe because they have not alleged any injury traceable to Defendants. For the reasons already stated, we disagree. *Second*, the Houston Police Chief claims the *Ex Parte Young* exception to sovereign immunity does not apply to him because he is a city official, "not a state official or an arm of the state." That's a non-starter because Eleventh Amendment immunity "does not extend" to cities in the first place. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001). And *third*, the Houston Police Chief argues that "a municipality such as Houston is not subject to suit" unless Plaintiffs allege a "policy or custom." This is an

No. 23-20165

claims, and we express no opinion on them. *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").[6]

## B

Finally, the district court denied as futile Plaintiffs' motion for leave to file an amended complaint because it ruled Plaintiffs lacked standing. Given our disposition, we vacate the denial of leave to amend. *See Jim S. Adler, P.C.*, 10 F.4th at 430.

## V

For the foregoing reasons, we REVERSE the district court's dismissals, VACATE the district court's order denying leave to amend, and REMAND for further proceedings not inconsistent with this opinion.

---

attack on the merits of Plaintiffs' claims, which the district court did not reach. Neither do we. *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022) ("As a well-established general rule, this court 'will not reach the merits of an issue not considered by the district court.'" (quoting *Baker v. Bell*, 630 F.2d 1046, 1055 (5th Cir. 1980))).

[6] *But see post*, at 3–4 (the dissenting opinion first arguing that there is no "compelled speech" and then arguing that Plaintiffs' unconstitutional condition theory fails).

EDITH H. JONES, *Circuit Judge*, dissenting:

The majority opinion relies primarily on one "injury" pled by the plaintiffs: an "asymmetric treatment" injury allegedly founded on *Davis v. Federal Election Com'n*, 554 U.S. 724, 128 S. Ct. 2759 (2008). That "injury" does not exist, and *Davis* is wholly inapposite. Moreover, all of the plaintiffs' other injury theories are equally unfounded. I would affirm the district court's judgment, which found that plaintiffs lack Art. III standing to sue.

1. Asymmetrical injury. Plaintiffs claim to suffer an "ongoing injury because they are subject to a statutory scheme that treats varying types of similar speech differently." The majority opinion agrees with the "asymmetrical injury" theory because plaintiffs are supposed to post a certain size and type of poster on their property to repel gun-carrying patrons, TEX. PENAL CODE § 30.06, while any attention-drawing sign may be used by landowners for other types of discouraged entry. TEX. PENAL CODE § 30.05(b)(2)(C). "Asymmetrical" implies the opposite of something "symmetrical." But plaintiffs' signs and other statutorily prescribed signs cover entirely different subjects. Dissimilar signs are apples and oranges, because there is no content symmetry arising from the legislature's differing choices. Plaintiffs' factual underpinning for this "injury" makes no sense.

Legally, *Davis* has nothing to do with signage outside entities open to the public. *Davis*'s recognition of "'asymmetrical' treatment" in the First Amendment context was based on the comparative status of two candidates for the same public office. The campaign finance law expressly disadvantaged a self-financed candidate, because his opponent was allowed to receive far more individual contributions and party expenditures up to the self-financed amount. *See* Bipartisan Campaign Reform Act (BCRA), § 319(a); *Davis*, 554 U.S. at 729, 128 S. Ct. at 2766. The Federal Election

Commission (FEC) argued that, because the opponent had not yet qualified for or taken advantage of the asymmetrical limits, the self-financed plaintiff Davis lacked standing to challenge the provision. *Id.* at 734, 128 S. Ct. at 2769. Recognizing this prescribed disparity in campaign finance limits, the Supreme Court held that Davis had standing to challenge the provision's "asymmetrical contribution scheme." *Id.* at 735, 128 S. Ct. at 2679.

In *Davis*, the "asymmetry" affected direct adversaries. The consequences of plaintiff Davis's decisions were either (1) limit your protected right to political speech, or (2) be directly disadvantaged if you don't. The majority opinion here abstracts asymmetry to meaninglessness, in stating that the challenged no-guns signage scheme "limits [Plaintiffs'] ability to exercise their First Amendment rights to communicate their desire to exclude firearms relative to other property owners who desire to exclude other items via signage." Here, there is no direct prospective injury or consequence to the plaintiffs as there was in *Davis*: posting a less obtrusive sign on the premises for other reasons (e.g., no shirt, no shoes, no service, or No Dogs) causes no comparative injury vis a vis the no-guns posters.

In any event, the majority opinion cites no cases, articles or anything that supports their illogical finding of "asymmetrical injury" in this situation. I now turn to plaintiffs' other theories of injury.

2. Adverse effect of failure to post signs. The record shows, as a matter of fact and on the face of the statute, that even if the Plaintiffs refuse to post the statutory wording on their signs, the police will still come when they call. The Plaintiffs are not deprived of access to law enforcement to help them exclude trespassers carrying guns. Importantly, the Church's administrator, Sharlene Rochen, testified that the Webster Police Department has always responded when she calls. Over the last five years, she called the police ten times and they always responded within nine

minutes. Likewise, Webster PD Chief Bacon affirmed that the Department investigates and responds to trespass and other calls in the same manner regardless whether the property owner elects to use the Acts' written signage option.

What is true as a matter of proof for the Church, which was dismissed based on factual development in Defendant Chief Bacon's motion to dismiss, is also true for the coffee shop Plaintiffs whose case was dismissed on pleadings alone pursuant to Rule 12(c). On its face, the statute states that a trespasser is anyone carrying a gun who refuses to leave the premises after being verbally warned. TEX. PENAL CODE §§ 30.06(b), 30.07(b). That means that if the coffee shop or the Church sees someone trespass under those circumstances, either Plaintiff may call the police—which they'd have to do for official protection—and the police would arrive to eject the person. No posters need be published to accomplish the person's ouster, nor posters that exactly conform to the statutory warning. A verbal command or request activates the statute. *See id.* Thus, whether Plaintiffs post the prescribed sign, a modified sign, or no sign at all, makes no difference to their right to protection as landowners or occupants of the property. They are not injured. Nor are they subject to a dilemma about whether to comply with the prescribed signage.

3. Compelled speech. There is no "compelled speech" for two reasons. First, Plaintiffs aren't saying they disagree with the "message" on the posters, they simply contend that the posters are so big as to be "unwelcoming" or "non-inclusive." One wonders, "unwelcoming" to whom? To patrons who don't carry guns, or only to those who might do so? Plaintiffs can't be "injured" if the regulation-size posters deter the gun carriers, which is the effect they say they want. But they claim injury from disagreements spawned by Second Amendment supporters who quarrel with them about the signs. Would such people be less quarrelsome if the no-carry

signs were pretty little pistols with a red slash inside a red circle? Who knows? It is not the content of the signs that "injures" Plaintiffs, but the appearance of the signs that reflects the Plaintiffs' own views. Plaintiffs cannot suffer a First Amendment "injury" by posting their own views at their places of worship/business. Their objection to the prescribed signage is thus purely aesthetic. To this extent, it is like an objection to any aesthetically-based zoning ordinance, but it is not a "free speech" objection.

Second, as to "compelled speech," this fact pattern is completely distinct from actual state-mandated speech cases. Here, not only is nothing "compelled," but there is no penalty attached to Plaintiffs' refusals to post the statutory language. *Cf. Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 267–69 (5th Cir. 2024) (plaintiff pornographic websites had standing to bring a First Amendment challenge to a Texas law requiring the websites to display "health warnings" on their webpages or pay a fine); *see also Book People, Inc. v. Wong*, 91 F.4th 318, 329–32 (5th Cir. 2024) (booksellers had standing to bring a First Amendment challenge to a Texas law requiring warnings of sexual content on books sold to Texas schools—or they couldn't sell the books).

A more comparable case is *California v. Texas*. 593 U.S. 659, 666, 141 S. Ct. 2104, 2112 (2021) (no standing by individual plaintiffs to challenge the minimum "commanded" essential coverage requirement of the Affordable Care Act, which Congress had reduced to zero). In other words, no harm, no foul for standing purposes. Here, if the Plaintiffs fail to post any or non-compliant signage, they allege they are deprived of the "deterrent value" of the criminal law. But as noted above, the Plaintiffs can still order anyone off their property and call the police to enforce the law. If any would-be trespassers remain undeterred, their audacity is not attributable to the Texas statute or to any actions taken by Defendants to enforce it.

4. Other theories of injury.  Plaintiffs seemed to back off the idea that injury would result if the Defendants not only fail to enforce, but also fail to prosecute gun-carrying trespassers.  These Plaintiffs have no constitutional right to force the criminal prosecution of others.  In any event, the statute offers a complete defense to a trespassing charge if the trespasser voluntarily leaves the premises.

The Plaintiffs also contend that they have acceded to an "unconstitutional condition" by posting the signs.  But the doctrine of "unconstitutional conditions" provides that "the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit." *Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S. Ct. 2309, 2317 (1994).  As explained above, the Plaintiffs have given up no right, they are not forced to post any sign or any compliant sign, and they are deprived of no benefit.

Finally, the Plaintiffs argue they have suffered reputational harm, because third parties have posted negative Google reviews drawing attention to their posting of the signs.  But to constitute an injury in fact, reputational harm must "bear[] a 'close relationship' to . . . the reputational harm associated with the tort of defamation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432, 141 S. Ct. 2190, 2209 (2021).  Here, the alleged Google reviews wholly fail to line up with the common law of defamation: the Google reviews state true facts and perhaps matters of opinion.  But even if bad reviews constitute an injury in fact, it is traceable only to the third party posts on Google, not to the Defendants.

For these reasons, I see no way in which the Plaintiffs are actually injured by the existence of the statutory language that prescribes the contents and form in which notices may be posted to warn gun carriers against

trespass.  Plaintiffs lack standing, and the district court's judgment should be affirmed.  I respectfully dissent.