No. 23-20165

# *In the United States Court of Appeals for the Fifth Circuit*

_____

*Bay Area Unitarian Universalist Church; Drink Houston Better, L.L.C., doing business as Antidote Coffee; Perk You Later, L.L.C.,*

*Plaintiffs - Appellants*

v.

*Harris County District Attorney Kim Ogg; County Sheriff Ed Gonzalez; Webster Acting Chief Pete Bacon; Chief of Houston Police Department Troy Finner; City of Webster,*

*Defendants - Appellees.*

_____

On Appeal from the United States District Court for the
Southern District of Texas Houston Division
(Case Nos. 4:20-cv-3081)
The Honorable Ewing Werlein, Jr., Presiding.

_____

**APPELLEE WEBSTER ACTING POLICE CHIEF PETE BACON'S
PETITION FOR REHEARING EN BANC**

_____

William S. Helfand
Sean M. Higgins
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Bill.Helfand@lewisbrisbois.com
Sean.Higgins@lewisbrisbois.com
[Tel.] (713) 659-6767
[Fax] (713) 759-6830

**Attorneys for Appellee Webster Acting Police Chief Pete Bacon**

157597004.3

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

A.    Parties:

    Plaintiffs/Appellants:  Bay Area Unitarian Universalist Church

                                  Drink Houston Better, L.L.C., doing business as Antidote Coffee

                                  Perk You Later, L.L.C.

    Defendant/Appellee:  Harris County District Attorney Kim Ogg

                                  County Sheriff Ed González

                                  Webster Police Chief Pete Bacon

B.    Attorneys:

    Plaintiffs/Appellants:  Charlotte Taylor, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001
Email: ctaylor@jonesday.com
Direct: 202-879-3872
Fax: 202-626-1700

William Roquemore Taylor
Jones Day
Suite 3300
717 Texas Street
Houston, TX 77002
Email: wrtaylor@jonesday.com
Direct: 832-239-3860
Fax: 832-239-3600

Ryan Gerber
Email: rgerber@everytown.org
Direct: 646-324-8198
Laura Keeley
Email: lkeeley@everytown.org
Direct: 724-816-7401
Everytown Law
450 Lexington Avenue
New York, NY 10017

Alla Lefkowitz
Email: alefkowitz@everytown.org
Direct: 202-545-3257
Andrew Lieb Nellis
Email: anellis@everytown.org
Direct: 202-517-6621
Everytown Law
P.O. Box 14780
Washington, DC 20044

Defendant/Appellee:    Harris County District Attorney Kim Ogg
and County Sheriff Ed González

Heena Kepadia
Email: heena.kepadia@harriscountytx.gov
Direct: 713-274-5390
Moustapha Gassama
Email:
moustapha.gassama@harriscountytx.gov

Direct: 713-274-5101
Harris County Attorney's Office
15th Floor
1019 Congress Street
Houston, TX 77002

Defendant/Appellee:     Chief of Houston Police Department
Troy Finner

Donald B. Hightower
Senior Assistant City Attorney
City of Houston Legal Department
900 Bagby, 4th Floor
Houston, Texas 77002
donald.hightower@houstontx.gov
Tel:  (832) 393-6429
Fax:  (832) 393-6259

Defendant/Appellee:     Webster Police Chief Pete Bacon

William S. Helfand
bill.helfand@lewisbrisbois.com
Sean M. Higgins
sean.higgins@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Tel:  (713) 659-6767
Fax: (713) 759-6830

DATED:     MAY 27, 2025               */s/ Sean M. Higgins*
SEAN M. HIGGINS

## STATEMENT UNDER FED. R. APP. P. 35(b)

This Petition presents issues of exceptional importance concerning the requirements a Plaintiff must meet to possess standing. The majority held Plaintiffs have standing to sue for declaratory and injunctive relief nullifying statutory elements of two criminal offenses—criminal trespass arising by having a concealed hand gun on private property, and criminal trespass by having an unconcealed holstered hand gun on private property.

Plaintiffs are property owners who have not been charged, arrested for, or accused of criminal trespass. Despite this, the majority found Plaintiffs have a concrete injury and standing because the criminal offense elements adopted by the Legislature somehow deprive Plaintiffs of "the deterrent value of criminal laws." *Bay Area Unitarian Universalist Church v. Ogg,* 2025 WL 1066187 *4 (5th Cir. April 9, 2025). In this respect and others, the majority's opinion departs from United States Supreme Court and Fifth Circuit precedent governing standing. *See, e.g., Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) (holding, *Lefebure v. D'Aquilla,* 15 F.4th 650, 652 (5th Cir. 2021). The *en banc* Court should correct the error to prevent it from being repeated.

iv

# TABLE OF CONTENTS

Certificate of Interested Parties ................................................................i

Statement Under Fed. R. App. P. 35(b) ...................................................iv

Table of Contents ......................................................................................v

Table of Authorities...................................................................................vi

Issues Presented for En Banc Reconsideration .......................................ix

Statement of the Case ...............................................................................1

    A.   Statement of relevant facts.............................................................1

      1.  The trespass statute..................................................................1

      2.  Plaintiffs' allegations. ..............................................................2

      3.  The Webster Police Department does not treat the Church differently based on the Church's decision not to display a sign under Section 30.07. ...........................................................3

    B.   The course of proceedings. ............................................................4

Argument.....................................................................................................7

    A.   The Church does not have a redressable injury............................7

    B.   The Church does not have an injury in fact. ...............................10

    C.   The Church fails to show a traceable injury. ..............................15

Conclusion ...............................................................................................16

Certificate of Service ...............................................................................17

Certificate of Compliance ........................................................................18

# TABLE OF AUTHORITIES

## Federal Cases

*Bay Area Unitarian Universalist Church v. Ogg,*
  2025 WL 1066187 (5th Cir. April 9, 2025) ...... iv, 5, 6, 7, 10, 11, 13, 15

*Beltran v. City of El Paso,*
  367 F.3d 299 (5th Cir. 2004) ............................................................. 12

*Davis v. FEC,*
  554 U.S. 724 (2008) ................................................................. 5, 6, 13

*DeShaney v. Winnebago County Dep't of Soc. Servs.,*
  489 U.S. 189 (1989) ........................................................................ 12

*Friends of the Earth, Inc. v, Laidlaw Envtl. Servs. (TOC),
  Inc.,*
  528 U.S. 167 (2000) .......................................................................... 8

*Inclusive Cmtys. Project, Inc. v. Dep't of Treasury,*
  946 F.3d 649 (5th Cir. 2019) .............................................................. 8

*Leeke v. Timmerman*
  454 U.S. 83 (1981) ......................................................................... 12

*Lefebure v. D'Aquilla,*
  15 F.4th 650 (5th Cir. 2021) ...................................................... iv, x, 12

*Linda R.S. v. Richard D.,*
  410 U.S. 614 (1973) .................................................................. iv, x, 12

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ..................................................................... 7, 10

*McKee v. City of Rockwall,*
  877 F.2d 409 (5th Cir. 1989) ............................................................ 12

*McKinney v. Irving Independent School Dist.,*
  309 F.3df 308 (5th Cir. 2002) ........................................................... 12

*Perkins v. Cabana*,
  794 F.2d 168 (5ᵗʰ Cir), cert. denied, 479 U.S. 936 (1986) ........ ix, 10, 13

*Schall v. Martin*,
  467 US 253 (1984) ................................................................... ix, 10, 13

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ............................................................................. 15

*Smallwood v. Johnson*,
  73 F.3d 1343 (5ᵗʰ Cir. 1996) .................................................... ix, 10, 13

*Time Warner Cable, Inc. v. Hudson*,
  667 F.3d 630 (5th Cir. 2012) ............................................................. 5

## Constitutions

U.S. Const. amend. I ........................................................................ 5, 11

U.S. Const. amend V ............................................................................ 3

U.S. Const. amend XI ........................................................................... 4

U.S. Const. amend XIV ......................................................................... 3

## Statutes

Government Code Chapter 411 ............................................................. 2

Tex. Penal Code § 30.05 .................................................................... 1, 6

Tex. Penal Code § 30.05 et seq. ............................................................ 1

Tex. Penal Code § 30.06 ............................................................... 1, 2, 3, 4

Tex. Penal Code §§ 30.06, 30.07 ........................... 1, 2, 8, 9, 14, 15

Tex. Penal Code § 30.07 ............................................................... 1, 2, 3

## Court Rules

Fed. R. Civ. P. 12(b)(1) ........................................................................ 4

Fed. R. App. P. 25(d)(3) ................................................................ 17

Fed. R. App. P. 35(b) ................................................................... iv

Fed. R. App. P. 35(b)(2)(a) ......................................................... 18

Fed. R. App. P. 35.5 ................................................................... 18

5th Cir. R. 25.2.5, I ................................................................... 17

5th Cir. R. 32.1 .......................................................................... 18

5th Cir. R. 32(a)(5) .................................................................... 18

5th Cir. R. 32(a)(6) .................................................................... 18

5th Cir. R. 32.2.7(b)(3) .............................................................. 18

5th Cir. R. 32(f) ......................................................................... 18

5th Cir. R. 35.5 .......................................................................... 18

## ISSUES PRESENTED FOR EN BANC RECONSIDERATION

The district court dismissed Plaintiffs' claims for lack of standing. A divided panel of this Court reversed. The majority held Plaintiffs satisfied each element of standing. By so holding, the majority committed a significant legal error by departing from settled Supreme and Fifth Circuit precedent in the following respects:

A.    The Church does not have a redressable injury. The Church's alleged injury arises from the language in two penal statutes enacted by the Texas Legislature. The relief requested by Plaintiffs would require the district court to rewrite each statute by removing elements of the offenses enacted by the Legislature, which U.S. Supreme Court and Fifth Circuit precedent holds that courts may not grant such relief. *See, Schall v. Martin,* 467 US 253, 268 n. 18 (1984); *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996); *Perkins v. Cabana,* 794 F.2d 168, 169 (5th Cir), cert. denied, 479 U.S. 936 (1986).

B.    The Church does not have an injury in fact because the penal statutes do not contain requirements applicable to or enforceable against the Church, and because the undisputed evidence establishes the Webster Police does not and will not treat the Church differently based

on the Church's decision not to post both statutory signs. Despite this, the majority held the Church and the other Plaintiffs have an injury in fact because the penal statutes, as drafted by the Legislature, deprive Plaintiffs of the "deterrent value" of the trespass statutes. The majority departs from U.S. Supreme Court and Fifth Circuit precedent holding that "private citizens lack a judicially cognizable legal interest in the prosecution or nonprosecution of another." *Linda R.S.,* 410 U.S. at 619; *Lefebure,* 15 F.4th 650, 652 (5th Cir. 2021).

C.    The Church's injury, even if one existed, is not traceable to Chief Bacon. The Church is not complaining about Chief Bacon's enforcement of the statutes against the Church. Rather, the Church complains that the Language of the two penal statutes enacted by the Legislature prevents Chief Bacon from enforcing the statutes against members of the public. Such an injury is traceable only to the Legislature, and not to Chief Bacon.

## STATEMENT OF THE CASE

### A.     Statement of relevant facts.

### 1.     The trespass statute.

Trespass is a crime under the Texas Penal Code. Tex. Penal Code §30.05 et seq. The Legislature created three separate trespass offenses. Notice to the accused trespasser is an element of each offense.

Criminal trespass occurs under the general criminal trespass statute when a "person enters or remains on or in property of another . . . without effective consent," and "(1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so." Tex. Penal Code §30.05.

Two other provisions create a crime of trespass when a person has a concealed handgun, Tex. Penal Code §30.06, or an unconcealed but holstered handgun, Tex. Penal Code §30.07, on property without the effective consent of the property owner. As with the general trespass statute, notice by the landowner to the accused is an element of each of these crimes. Tex. Penal Code §§30.06, 30.07. The notice elements may be satisfied either orally or in writing. *Id.*

A property owner may provide written notice that concealed carry is forbidden by stating:

> Pursuant to Section 30.06, Penal Code (trespass by license
> holder with a concealed handgun), a person licensed under
> Subchapter H, Chapter 411, Government Code (hand gun
> licensing law), may not enter this property with a concealed
> handgun.

Tex. Penal Code §30.06. A property owner may provide written

notice that open carry is forbidden by stating:

> Pursuant to Section 30.07, Penal Code (trespass by license
> holder with an openly carried handgun), a person licensed
> under Subchapter H, Chapter 411, Government Code (hand
> gun licensing law), may not enter this property with a
> handgun that is carried openly.

Tex. Penal Code §§30.07.

## 2.    Plaintiffs' allegations.

The Plaintiffs, a Church and two coffee shops, do not wish to post

both of the signs specified in §§30.06 and 30.07. They sued the Texas

Attorney General, the presiding officer of the Texas Commission on Law

Enforcement, the City of Webster Police Chief, the County Attorney,

Sheriff and District Attorney of Harris County, and the Houston Police

Chief, seeking a declaration that the signage elements in §§30.06 and

30.07 are unconstitutional and an injunction forbidding Defendants from

enforcing "the heightened notice requirements imposed by the Acts."

ROA.55-ROA.56. Plaintiffs allege the signage provisions violate their

freedom of speech under the United States and Texas Constitutions and their rights to due process under the Fifth and Fourteenth Amendments. ROA.52-ROA.55.

The Church is the only Plaintiff located within the City of Webster's geographic jurisdiction. The Church displays the open carry sign specified in §30.07, but it does not post the concealed carry sign under §30.06. ROA.44.

### 3. The Webster Police Department does not treat the Church differently based on the Church's decision not to display a sign under Section 30.07.

The undisputed evidence demonstrates that the Church's choice not to display a sign under §30.06 has no effect on the Webster Police Department's response to the Church's trespass complaints. The Police Department responds to calls and investigates all trespass reports in the same manner irrespective of whether the complaining property owner posts signs under §§30.06 or 30.07. ROA.1463. When the Webster Police receive a call for trespass, the officer dispatched to the site will confirm the identity of the trespass suspect with the owner and notify the suspect he or she must leave the property or face arrest. *Id.* By doing so, the Webster Police fulfills the notice element under both statutes. The Police

Department does not limit or withhold police protection from property owners who choose not to post notices under §§30.06 or 30.07. *Id.*

The Church admits that its own experience is consistent with the Police Department's practice. During the five years preceding the lawsuit, Church Director Sharlen Rochen called the Webster Police on ten different occasions. ROA.1455. The Webster Police responded on each occasion, ROA.1455, doing so in less than nine minutes on average. ROA.1456. Rochen had absolutely no complaints about or criticisms of the Police response on any occasion. ROA.1455. Rochen testified that the Church anticipates continuing to receive the same response from the Police Department whether or not the Church chooses to post both signs. ROA.1460.

## B.    The course of proceedings.

Chief Bacon moved to dismiss the Church's claim under Fed. R. Civ. P. 12(b)(1) based on a lack of standing. ROA.241-ROA.268. The other Defendants also filed motions to dismiss. ROA.122-ROA.148, ROA.176-ROA.179, ROA.197-ROA.212. The district court denied Attorney General Paxton's and TCLE Presiding Officer Lemeiux's motion to dismiss, ROA.401-ROA.428, and both appealed citing Eleventh Amendment

Immunity.ROA.446-ROA.448. In response, Plaintiffs voluntarily dismissed their claims against the State Defendants and mooted the appeal. ROA.456-ROA.458. Following discovery, the district court granted Defendants' motions to dismiss for lack of standing. ROA.2126-ROA.2148.

Plaintiffs appealed. The case was submitted following oral argument to a panel of Judge Jones, Judge Dennis, and Judge Douglas. A divided panel reversed in a nonunanimous opinion written by Judge Dennis. Judge Jones dissented.

Despite the fact that the statute does not require the Church to post the signs, the majority held the statutes work a cognizable asymmetrical First Amendment injury on Plaintiffs. *Ogg,* 2025 WL 1066187 at *3 (citing *Davis v. FEC,* 554 U.S. 724, 732 (2008) and *Time Warner Cable, Inc. v. Hudson,* 667 F.3d 630, 635 (5th Cir. 2012)). The majority reasoned that the statutes injure Plaintiffs by depriving them of "the deterrent value of the criminal laws" if they choose not to post the signage. *Id.* at *4. The majority found Plaintiffs' injury fairly traceable to Defendants because Defendants are "the individuals charged with enforcement" of the statute. *Id.* at *5. The majority found Plaintiffs' injury redressable

because a declaratory judgment and injunction would "remove the asymmetrical treatment at the hands of the government as Plaintiffs would be on equal footing with property owners who exclude other items via the less burdensome §30.05 compliant signage." *Id.*

In her dissent, Judge Jones rejected the majority's finding of an asymmetrical injury because "plaintiffs' signs and other statutorily prescribed signs cover entirely different subjects." *Id.* at *6 (Jones, J., dissenting). Judge Jones criticized the majority's extension of *Davis* to this case. Whereas the regulation in *Davis* placed the plaintiff at a direct disadvantage for exercising the right to political speech, the statute in this case poses no "direct prospective injury or consequence . . .: posting a less obtrusive sign on the premises for other reasons (e,g., no shirt, no shoes, or no service, or No Dogs) causes no comparative injury vis a vis the no-guns posters." *Id.* at *7.

Judge Jones explained, further, that Plaintiffs did not suffer an adverse effect from choosing not to post the signs because "Plaintiffs are not deprived of access to law enforcement to help them exclude trespassers carrying guns." *Id.* at 7. With respect to the Church's claims against Chief Bacon, Judge Jones cited the undisputed evidence showing

the Webster Police have responded to the Church's calls and did not treat the Church differently because the Church chose not to post one of the statutory signs. *Id.* But even apart from this evidence, Judge Jones explained, the signage requirement has no effect on Plaintiffs because a "verbal command or request [also] activates the statute," and the police make the command or request when called. *Id.*

Judge Jones found further that there is no compelled speech. *Id.* at *8. "[N]ot only is nothing compelled, but there is no penalty attached to Plaintiffs' refusals to post the statutory language." *Id.*

## ARGUMENT

This appeal concerns the single, threshold issue of standing. Standing requires (1) existence of an injury in fact to the plaintiff, (2) that is traceable to the defendant's challenged action, and (3) will "likely" be redressed by a judgment against the defendants. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). The plaintiff "bears the burden of establishing each of these elements." *Id.* The majority erred because all elements of standing are lacking.

### A.    The Church does not have a redressable injury.

Redressability is discussed first because Plaintiffs can have no

injury—real or imagined—that a judgment against Chief Bacon could conceivably redress. Standing exists only if it is "likely, as opposed to merely speculative, that the injury will be redressed by a final decision." *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury,* 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Friends of the Earth, Inc. v, Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000)). The majority confined its discussion of redressability to a single, short paragraph. The majority's finding does not withstand analysis of the relief Plaintiffs seek.

Begin with Plaintiffs' request for a declaration that the signage provisions and affirmative defenses in §§30.06 and 30.07 are unconstitutional. ROA.55. Both as a matter of statutory language and the undisputed evidence, a judgment against Chief Bacon declaring the challenged provisions unconstitutional will have no effect whatsoever. A declaratory judgment will not bind the state of Texas.[1] The elements of an offense under §§30.06 and 30.07 will remain the same, the statutory defenses will remain in place, and the requirements for probable cause to make an arrest for criminal trespass under §§30.06 and 30.07 will be the

_____

[1] Notably, while Plaintiffs  voluntarily dismissed their claims against the State Defendants.

same. Any declaratory judgment for Plaintiffs will be an advisory opinion, at best.

Plaintiffs' demand for injunctive relief fares no better. Plaintiffs seek to enjoin Defendants from   enforcing "the heightened notice requirements imposed by the Acts and requiring that property owners seeking to exclude guns from their properties need only comply with the notice requirements of the general trespass law." ROA.56. Such an injunction, were the court to issue one, cannot possibly remedy Plaintiffs' (imagined) injuries.

In the first place, the injunction Plaintiffs seek is illusory because the statute does not impose "heightened notice requirements" on Plaintiffs. The provisions Plaintiffs characterize as "notice requirements" are not  requirements at all. They are elements the State must prove to secure a conviction for criminal trespass under §§30.06 and 30.07. Moreover, written notification is but one of two ways the State may prove the element of notice under either statute. In short, there is no enforcement to be enjoined because there are no "requirements" to be "enforced" against Plaintiffs.

In reality, Plaintiffs seek an order that rewrites two penal statutes by deleting some of the statutory elements of each crime. An injunction against Chief Bacon will not achieve this objective. But even if it could, courts must never rewrite criminal statutes. "[T]he discretion to define criminal offenses and prescribe punishments, resides wholly with the state legislatures." *Schall,* 467 US at 268 n. 18. This discretion extends to the Legislature's authority to define different crimes differently. *Smallwood,* 73 F.3d at 1351; *Perkins,* 794 F.2d at 169.

The majority failed to properly analyze redressability. If the panel does not reconsider and affirm the district court's judgment the Court should do so *en banc*.

### B.    The Church does not have an injury in fact.

Plaintiffs must demonstrate existence of a "concrete and particularized injury" that is "actual or imminent, not 'conjectural or hypothetical.'" *Lujan,* 504 U.S. at 560. The majority found an injury in fact because Plaintiffs "are subject to a statutory scheme that treats varying types of similar speech differently." *Ogg,* 2025 WL 1066187 at *3. This finding is contrary to the undisputed testimony of Chief Bacon and Church Director Rochen that the Police Department treats trespass

complaints in the same manner, whether the property owner posts signs or not. ROA.1463, ROA.1455-ROA.1460.

The majority's reasoning is mistaken. Plaintiffs are not *subject* to the statutory scheme because the statutes do not apply to Plaintiffs. The statutes apply to individuals who are arrested for or charged with criminal trespass. Moreover, the statutes do not establish requirements that any of the Plaintiffs must satisfy. Rather, the statutes specify elements the State must prove to secure convictions for criminal trespass, including notice to the trespass suspect. The majority's conclusion that these criminal statutes cause a concrete First Amendment injury to Plaintiffs—even though Plaintiffs are not accused of violating the statute—is fundamentally mistaken for three basic reasons.

**1.** The statutes cannot cause any concrete and particularized injury to Plaintiffs because Plaintiffs have not been arrested for or charged with criminal trespass. The majority, however, concluded that this does not matter because the statutes, as written, injure Plaintiffs by depriving them of the "deterrent value of criminal laws." *Ogg,* 2025 WL 1066187 at *3.

Deprivation of the "deterrent value" of a criminal statute is not a legally cognizable injury. "[I]n American jurisprudence, at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S.,* 410 U.S. at 619. "The prospect that prosecution . . . will result [in compliance] can, at best, be termed only speculative." *Id.* at 618; *accord, Leeke v. Timmerman* 454 U.S. 83, 86 (1981); *Lefebure,* 15 F.4th at 652; cf., *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195 (1989) (holding the Constitution does "does not, as a general matter, require the government to protect the life, liberty and property of its citizens against invasion by private actors."); *Beltran v. City of El Paso*, 367 F.3d 299, 304 (5th Cir. 2004) (same); *McKinney v. Irving Independent School Dist.,* 309 F.3df 308 (5th Cir. 2002) (same); *McKee v. City of Rockwall*, 877 F.2d 409, 413-14 (5th Cir. 1989) (same).

If more is necessary, Plaintiffs are not even victims of an actual and unprosecuted crime. Plaintiffs are complaining that it might have made it easier for the State to prove that *hypothetical* conduct violates two criminal statutes if the Legislature drafted the statutes differently. This is the very definition of a remote, speculative, and conjectural injury.

More troubling still, granting relief as to Chief Bacon would require a court to rewrite and expand two criminal statutes by judicial fiat, which, of course, a court may not do. *See, Schall,* 467 U.S. at 268 n.4; *Smallwood,* 73 F.3d at 1351l *Perkins,* 794 F.2d at 169.

**2.**    Assuming, *arguendo,* Plaintiffs have a legally cognizable interest in seeing that the State prosecutes other private citizens— which, as a matter of law, Plaintiffs do not have—the signage provisions still cannot injure that interest. Plaintiffs do not need to post the specified signs in order to trigger a criminal violation under either statute. The notice element of either crime may be satisfied by oral notice, not just written notice. "A verbal command or request activates the statute," and if Plaintiffs do not want to convey the verbal command themselves, they can call the police to do it for them. *Ogg,* 2025 WL 1066187 at *7. "Thus, whether Plaintiffs post the prescribed sign, a modified sign, or no sign at all, makes no difference to their right to protection as landowners or occupants of the property." *Id.* The majority's extension of *Davis* to this case "abstracts asymmetry to meaninglessness." *Id.* at *6.

**3.**    The Church has not even demonstrated that the Webster police have treated them differently based on their decision not to post

statutory signage. To be certain, the signage provisions cannot cause disparate treatment of Plaintiffs because the statutes do not govern whether and how the police respond to trespass complaints. Even so, the undisputed evidence proves the Webster Police Department treats Plaintiffs in the same manner as any other property owner.

The Webster police respond to every call for trespass in the same way—the police go to the property and tell the suspect he or she must leave or face arrest. ROA.1463. The Webster Police promptly responded to each of the ten calls from the Church over the preceding five years. ROA.1455. Church Director Rochen had no complaints about the manner in which the Police responded on any occasion. ROA.1455. And there is no evidence, nor even a suggestion, that the Webster Police declined to make an arrest for criminal trespass because the Church did not display the statutory signage.

Disagreement with the Legislature is not an injury, but disagreement with the Legislature is all there is to this case. The Legislature chose to authorize the presence of statutory signs as an *alternative* method of satisfying the notice element of criminal trespass under §§30.06 and 30.07. The Church may disagree with the

Legislature's decision, but that disagreement does not confer standing to sue Chief Bacon because neither the statute nor Chief Bacon has inflicted a concrete injury on the Church.

The panel erred by finding the Church has an injury sufficient to confer standing. The Court should grant e*n banc* review to correct the error.

**C.    The Church fails to show a traceable injury.**

Assuming there is an injury, standing requires the injury to be fairly traceable to the defendant, and not result from the action of a third party who is not before the court. *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976). The panel should not have reached—and the e*n banc* Court need not reach—traceability because Plaintiffs, as shown, do not have a redressable injury. Yet the majority found traceability because "it is undisputed that Defendants follow the law and apply the heightened notice requirements of §§30.06 and 30.07." *Ogg,* 2025 WL 1066187 at *5.

The majority's circumscribed analysis of traceability is mistaken for the fundamental reason that Chief Bacon does not enforce §§30.06 and 30.07 against Defendants. Neither statute may be enforced against

Plaintiffs. The statutes are criminal statutes that are enforced against trespassers.

Plaintiffs are not complaining and cannot complain about enforcement of the statutes against Plaintiffs. Plaintiffs complain that the *language* of the statutes prevents Chief Bacon and others from enforcing the statutes against *hypothetical* trespassers. Even if, *arguendo,* this were true and could be a cognizable injury to Plaintiffs, any absence of enforcement falls at the feet of the Legislature, which drafted and enacted the statutes, and not at the feet of Chief Bacon. The absence of an injury traceable to Chief Bacon is an additional reason why the Court should grant *en banc* review and set aside the majority's opinion.

## CONCLUSION

Webster Acting Police Chief Pete Bacon requests the Court to grant his petition for *en banc* review, set aside the panel's opinion, and, upon reconsideration, affirm the district court's judgment.

Respectfully submitted,

Lewis Brisbois Bisgaard & Smith, LLP

*/s/ Sean M. Higgins*
William S. Helfand
Sean M. Higgins
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Bill.Helfand@lewisbrisbois.com
Sean.Higgins@lewisbrisbois.com
[Tel.] (713) 659-6767
[Fax] (713) 759-6830
Attorneys for Appellee Webster
Police Chief Pete Bacon

## CERTIFICATE OF SERVICE

In compliance with Federal Rule of Appellate Procedure 25(d)(3) and Fifth Circuit Rule 25.2.5, I hereby certify that on May 27, 2025, I electronically filed and served the foregoing document to all counsel of record through the Court's CM/ECF system.

*/s/ Sean M. Higgins*
Sean M. Higgins

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies this motion complies with the type-volume limitations in Fed. R. App. P. 35(b)(2)(a) and Fifth Circuit Local Rule 35.5, exclusive of the portions exempted by Rule 32(f) and 5th Cir. R. 32.2.7(b)(3), but including the statement required under Fed. R. App. P. 35.5. This motion brief contains 3,586 words. This motion complies with the typeface requirements of Rule 32(a)(5) and 5th Cir. R. 32.1, and the type-style requirements of Rule 32(a)(6) because this motion was prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font size in Century Schoolbook type-style.

*/s/ Sean M. Higgins*
Sean M. Higgins

Case: 23-20165     Document: 142     Page: 30     Date Filed: 05/27/2025

Bay Area Unitarian Universalist Church v. Ogg, Not Reported in Fed. Rptr. (2025)

2025 WL 1066187

Only the Westlaw citation is currently available.

United States Court of Appeals, Fifth Circuit.

BAY AREA UNITARIAN UNIVERSALIST CHURCH;

Drink Houston Better, L.L.C., doing business as Antidote
Coffee; Perk You Later, L.L.C., Plaintiffs—Appellants,

v.

Harris County District Attorney Kim OGG;
County Sheriff Ed Gonzalez; Webster Acting
Chief Pete Bacon; Chief of Houston Police
Department Troy Finner, Defendants—Appellees.

No. 23-20165
|
FILED April 9, 2025

Appeal from the United States District Court for the Southern
District of Texas, USDC No. 4:20-CV-3081

**Attorneys and Law Firms**

Charlotte Taylor (argued), Esq., Alla Lefkowitz, Andrew Lieb
Nellis, Everytown Law, Washington, DC, Lesley Roe, Jones
Day, Washington, DC, Laura Keeley, Everytown Law, New
York, NY, William Roquemore Taylor, Jones Day, Houston,
TX, for Plaintiffs—Appellants.

Moustapha Gassama (argued), Harris County Attorney's
Office, Houston, TX, for Defendants—Appellees Harris
County District Attorney Kim Ogg, County Sheriff Ed
Gonzalez.

William S. Helfand, Lewis, Brisbois, Bisgaard & Smith,
L.L.P., Houston, TX, Justin Carl Pfeiffer, Law Office of Justin
Pfeiffer, P.L.L.C., Houston, TX, for Defendants—Appellee
Webster Acting Chief Pete Bacon.

Donald B. Hightower (argued), Melissa Azadeh, Charles
Hamilton Houston, III, City of Houston Legal Department,
Houston, TX, for Defendants—Appellee Chief of Houston
Police Department Troy Finner.

Before Jones, Dennis, and Douglas, Circuit Judges.

**Opinion**

James L. Dennis, Circuit Judge: [*]

**\*1**  This lawsuit arises from a First Amendment challenge
to Texas Penal Code §§ 30.06 and 30.07, but this appeal
only addresses whether a church and a coffee shop have
standing to press their claims. Because we hold that they do,
we REVERSE the district court's dismissals, VACATE the
district court's order denying leave to amend, and REMAND
for further proceedings.

I

Plaintiffs Bay Area Unitarian Universalist Church (the
"Church") and Antidote Coffee/Perk You Later, LLC
("Antidote") are property owners who wish to exclude all
guns from their church and coffee shop. The Church is
a unitarian universalist church located in Webster, Texas.
Antidote is a small coffee shop in Houston that also serves
alcohol.

Plaintiffs complain about Texas's trespass laws, so we explain
the schema. Under Texas's General Trespass Law, "[a] person
commits an offense if the person enters or remains on or in
property of another ... without effective consent" and if the
person "(1) had notice that the entry was forbidden" or "(2)
received notice to depart but failed to do so." TEX. PENAL
CODE § 30.05(a). Section 30.05 affords property owners
many ways to provide notice, including by oral or written
communication, an enclosure that is obviously designed to
exclude, or a sign that is reasonably likely to come to the
attention of the intruders. See id. § 30.05(b)(2).

In 2003, the Texas legislature carved out an exception to the
General Trespass Law in § 30.05(f). Specifically, § 30.05(f)
states that it is a defense to prosecution for trespassing if
a person is forbidden from entering the property because
entry with a handgun was forbidden without adequate notice.
Id. § 30.05(f). In 2003, this exception applied only to those
who carried a concealed handgun with a permit but was later
expanded to any person openly carrying a handgun "in a
holster." Id. § 30.05(f)(2)(B)(ii). Following these exceptions,
§§ 30.06 and 30.07 were enacted to create trespass crimes for
those exempted under § 30.05(f). Section 30.06 ("Concealed
Carry Trespass Law") covers concealed handgun license
holders and Section 30.07 ("Open Carry Trespass Law")
covers open-carry handgun license holders.

Under the Concealed Carry Trespass Law, a person commits
an offense if the person carries a concealed handgun on the
property of another without consent and receives notice by

Case: 23-20165    Document: 142    Page: 31    Date Filed: 05/27/2025

**Bay Area Unitarian Universalist Church v. Ogg, Not Reported in Fed. Rptr. (2025)**

oral or written communication that the concealed handgun was forbidden. *Id.* § 30.06. "Written communication" means:

(A) a card or other document on which is written language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"; or

(B) a sign posted on the property that:

(i) includes the language described by Paragraph (A) in both English and Spanish;

(ii) appears in contrasting colors with block letters at least one inch in height; and

(iii) is displayed in a conspicuous manner clearly visible to the public.

**\*2** *Id.* § 30.06(c)(3).

The Open Carry Trespass Law defines "written communication" in the same way, except the sign posted on the property also must be "displayed ... at each entrance to the property." *Id.* § 30.07(c). These statutes only encompass handguns. Therefore, if property owners want to exclude other types of guns too, they must post a third sign under the General Trespass Law, § 30.05.

The Church's official policy forbids carrying firearms onto church property. However, the Church currently displays only the open carry signs in English and Spanish in accordance with the Open Carry Trespass Law. The Church alleges with supporting evidence that posting the requisite signs under both §§ 30.06 and 30.07 would (1) degrade the church experience; (2) inhibit guests' safety and obstruct the Church's inclusivity aims; and (3) detract from the Church's religious principles. The signs are displayed at the front and side entrances to the church building, each measure eighteen inches by twenty-four inches, and both cost $118.80.

Antidote objects to guns being on its property because it believes the presence of guns creates an unsafe environment for its guests, which include children and pets. Prior to 2016, Antidote displayed a pictograph sign of a gun enclosed in a red circle with a red diagonal line through it, which measured three inches by three inches and cost $0. Since 2016, to comply with the signage requirements, Antidote has posted both sets of signs required by §§ 30.06 and

30.07, accruing $260 in costs to do so. The signs cover a large portion of the windowpane next to the front door —measuring, altogether, approximately ten square feet— and frustrate Antidote's desired "neighborhood coffee shop" aesthetic.

## II

In 2020, Plaintiffs filed this lawsuit for declaratory and injunctive relief against the District Attorney and County Sheriff for Harris County (collectively the "Harris County Defendants"); the Chief of the Webster Police Department; and the Chief of the Houston Police Department. Plaintiffs asserted First Amendment speech and association claims. [1] Plaintiffs also brought a parallel Texas Constitution § 8 claim. The Harris County District Attorney prosecutes violations of Texas Law, including §§ 30.06 and 30.07. Likewise, the Harris County Sheriff's Office, the Webster Police Department, and the Houston Police Department enforce §§ 30.06 and 30.07 as written in their respective jurisdictions. Officers and prosecutors employed by Defendants are specifically trained on the nuances of the signage requirements under §§ 30.05, 30.06, and 30.07.

**\*3** Relevant to this appeal, the Houston Police Chief filed a Rule 12(c) motion for judgment on the pleadings, arguing that Plaintiffs lacked Article III standing. The district court granted the Houston Police Chief's Rule 12(c) motion, ruling that Plaintiffs failed to allege facts establishing an injury. Following that ruling, Plaintiffs filed a motion for leave to file an amended complaint to incorporate evidence unearthed during discovery. Meanwhile, the Harris County Defendants filed a Rule 12(c) motion for judgment on the pleadings also on the ground that Plaintiffs lacked standing, and the Webster Police Chief filed a Rule 12(b)(1) motion to dismiss for the same reason. The district court granted the 12(c) and 12(b)(1) motions, dismissed Plaintiffs' claims without prejudice for lack of standing, denied Plaintiffs' motion for leave to file an amended complaint as futile, and entered final judgment. Plaintiffs timely appealed.

## III

A district court's Rule 12(b)(1) dismissal is reviewed de novo. [2] *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013). A "district court ... has

Case: 23-20165     Document: 142     Page: 32     Date Filed: 05/27/2025

Bay Area Unitarian Universalist Church v. Ogg, Not Reported in Fed. Rptr. (2025)

the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981).

The district court based its review of the Houston Police Chief's motion to dismiss on the complaint, and its review of the Webster Police Chief's and Harris County Defendants' motions on the complaint supplemented by undisputed facts evidenced in the record. In neither of the district court's two rulings on standing did it resolve factual disputes. "Where, as here, 'the district court rules on jurisdiction without resolving factual disputes ... we consider the allegations in the plaintiff's complaint as true and review whether the district court's application of the law is correct.' " *Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021) (quoting *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271–72 (5th Cir. 2021)).

The denial of leave to amend as futile is reviewed de novo. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir. 2021).

IV

A

The requirement that a plaintiff have standing is an essential Article III restriction. *Davis v. FEC*, 554 U.S. 724, 732 (2008). To have standing, a plaintiff must establish they (1) suffer an injury; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by a favorable ruling. *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 635 (5th Cir. 2012).

*1. Injury*

First, we find Plaintiffs suffer an ongoing injury because they are subject to a statutory scheme that treats varying types of similar speech differently.[3] *Davis*, 554 U.S. at 734–35 (recognizing that "asymmetrical" treatment in the First Amendment context is alone sufficient to constitute Article III injury); *see also Time Warner Cable, Inc.*, 667 F.3d at 636 (holding in the First Amendment context that "[d]iscriminatory treatment at the hands of the government is

an injury long recognized as judicially cognizable" (quoting *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 218 (5th Cir. 2008))). Specifically, property owners who wish to express a prohibition on firearms are treated differently from property owners who wish to express a prohibition on virtually any other item or entrant. *Compare, e.g.*, TEX. PENAL CODE § 30.06 (providing that property owners who exercise their right to exclude firearms can vindicate their property rights by posting a sign with language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"), *with id.* § 30.05(b)(2)(C) (providing that property owners who exercise their right to exclude for other legally permissible reasons —such as not wearing shoes—can vindicate their property rights simply by posting a sign that is "reasonably likely to come to the attention of intruders"); *see also* ROA.28 n.1 ("[Sections 30.06 and 30.07 were intentionally designed to be] cumbersome so as to discourage businesses from prohibiting entry to customers carrying guns."). Plaintiffs allege this asymmetrical scheme limits their ability to exercise their First Amendment rights to communicate their desire to exclude firearms relative to other property owners who desire to exclude other items via signage. *Davis*, 596 U.S. at 298 ("For standing purposes, we accept as valid the merits of [Plaintiffs]' legal claims, so we must assume that the [Texas statutory scheme] unconstitutionally burdens speech.").

**\*4** Defendants counter that Plaintiffs' asymmetrical treatment injury is self-inflicted because they are not *required* to post compliant signage—*i.e.*, Plaintiffs are not subject to prosecution if they choose to post non-conforming signs, and the Texas statutory scheme contemplates that Plaintiffs can alternatively give oral notice that guns are forbidden. Defendants' argument is too clever by half. While it is true that "standing cannot be conferred by a self-inflicted injury," *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018), it is equally true that an injury is not self-inflicted when a plaintiff faces a dilemma, the horns of which entail different harms. *See, e.g., Evers v. Dwyer*, 358 U.S. 202, 203–04 (1958) (per curiam); *Book People, Inc. v. Wong*, 91 F.4th 318, 331– 32 (5th Cir. 2024) (finding an injury not self-inflicted when a plaintiff "will be harmed if they comply with [the law] and harmed if they don't").

Either choice here results in harm. If Plaintiffs do post compliant signs, they suffer an "asymmetrical treatment"

Case: 23-20165    Document: 142    Page: 33    Date Filed: 05/27/2025

Bay Area Unitarian Universalist Church v. Ogg, Not Reported in Fed. Rptr. (2025)

injury. If Plaintiffs do not post compliant signs, their right to exclude is limited because property rights are protected by the deterrent value of the criminal laws. [4] *See Reno v. ACLU*, 521 U.S. 844, 872 (1997) (recognizing that deterrence flows from criminal sanctions); *see also* ROA.41 ¶ 49 (noting that if a business's sign does not precisely comply with §§ 30.06 and 30.07, some individuals take that opportunity to bring guns onto properties because they face no criminal consequence for doing so). Oral notice is an inadequate alternative to signage according to Plaintiffs' allegations and record evidence because, *inter alia*, (1) oral notice is impractical, *see* ROA.40 ¶ 42; ROA.1212 ¶ 14 ("For one thing, there is no way for our greeters or anyone else at the Church to know whether someone is carrying a concealed handgun[.]"); (2) oral notice limits Plaintiffs' expressive preferences, *see* ROA.1212 at ¶¶ 15–16; and (3) oral notice can lead to danger for guests and employees, ROA.40 ¶ 42 ("Giving individual notice ... risks physical confrontation."); ROA.1259 (discussing an incident where a person with a gun was asked to leave the Antidote coffee shop; person "came back with a sword"). *See also Skyline Wesleyan Church v. Calif. Dep't of Managed Health Care*, 968 F.3d 738, 748–49 (9th Cir. 2020) (rejecting an argument that an injury was "self-inflicted" when resorting to alternatives would lead the plaintiff to be "worse off than it had been before the" challenged conduct). Thus, whichever path Plaintiffs choose—to post the compliant signage or to not—harm lies ahead, which means their injuries are not "self-inflicted."

 **\*5** Nor does it matter that §§ 30.06 and 30.07 are directly enforced against trespassers rather than the Plaintiffs. A plaintiff challenging the constitutionality of a statute need not face the threat of direct enforcement to have standing; they need only show that their rights are adversely affected by operation of the challenged laws, which, here, is the entire basis of Plaintiffs' lawsuit. *See generally Gange Lumber Co. v. Rowley*, 326 U.S. 295 (1945) (holding that to challenge the constitutionality of a statute, a plaintiff must show that the alleged unconstitutional feature of the statute injured him, and so operates as to deprive him of a constitutional right). Plaintiffs' asymmetrical treatment injury is therefore cognizable.

### *2. Traceability*

Second, Plaintiffs' asymmetrical treatment injury fairly traces to the Defendants' enforcement of §§ 30.06 and 30.07. When an injury flows from an allegedly unconstitutional law, the individuals charged with the enforcement of that law are at least part of the cause of the injuries, satisfying the minimal traceability requirement. *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010). As noted, it is undisputed that Defendants follow the law and apply the heightened notice requirements of §§ 30.06 and 30.07. *K.P.* dictates that Defendants' enforcement of §§ 30.06 and 30.07 is at least a cause of Plaintiffs' asymmetrical treatment injury. *Id.*

### *3. Redressability*

Third, Plaintiffs' asymmetrical treatment injury is redressable by a favorable judicial decision. Plaintiffs seek a declaration that the heightened notice requirements imposed by §§ 30.06(c)(3) and 30.07(c)(3) are unconstitutional and an injunction against their enforcement. If this relief is granted, Plaintiffs can provide "notice" as that word is defined in § 30.05(b)—the General Trespass Law—rather than as defined in §§ 30.06 and 30.07. The relief would remove the asymmetrical treatment at the hands of the government as Plaintiffs would be on equal footing with property owners who exclude other items via the less burdensome § 30.05 compliant signage. *See, e.g., Heckler v. Mathews*, 465 U.S. 728, 738–39 (1984) (equal treatment is a remedy).

* * *

At bottom, Plaintiffs have alleged with supporting evidence (1) an injury-in-fact that is both (2) traceable to Defendants' enforcement of §§ 30.06 and 30.07 and (3) redressable by a favorable judicial decision. They have established their Article III standing to press their First Amendment claims. *Time Warner Cable, Inc.*, 667 F.3d at 635. The parties (and the district court) treat Plaintiffs' First Amendment and Texas Constitution § 8 claims as coterminous. Because "we analyze [the] First Amendment and § 8 claims together[ ] [and] apply[ ] federal law," *Crampton v. Weizenbaum*, 757 F. App'x 357, 369 n.9 (5th Cir. 2018) (per curiam), Plaintiffs also have standing to press their Texas Constitution § 8 claim. [5]

 **\*6** We caution that this appeal does not reach the merits of Plaintiffs' claims, and we express no opinion on them. *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."). [6]

Case: 23-20165     Document: 142     Page: 34     Date Filed: 05/27/2025

Bay Area Unitarian Universalist Church v. Ogg, Not Reported in Fed. Rptr. (2025)

B

Finally, the district court denied as futile Plaintiffs' motion for leave to file an amended complaint because it ruled Plaintiffs lacked standing. Given our disposition, we vacate the denial of leave to amend. *See Jim S. Adler, P.C.*, 10 F.4th at 430.

V

For the foregoing reasons, we REVERSE the district court's dismissals, VACATE the district court's order denying leave to amend, and REMAND for further proceedings not inconsistent with this opinion.

Edith H. Jones, Circuit Judge, dissenting:
The majority opinion relies primarily on one "injury" pled by the plaintiffs: an "asymmetric treatment" injury allegedly founded on *Davis v. Federal Election Com'n*, 554 U.S. 724, 128 S. Ct. 2759 (2008). That "injury" does not exist, and *Davis* is wholly inapposite. Moreover, all of the plaintiffs' other injury theories are equally unfounded. I would affirm the district court's judgment, which found that plaintiffs lack Art. III standing to sue.

1. Asymmetrical injury. Plaintiffs claim to suffer an "ongoing injury because they are subject to a statutory scheme that treats varying types of similar speech differently." The majority opinion agrees with the "asymmetrical injury" theory because plaintiffs are supposed to post a certain size and type of poster on their property to repel gun-carrying patrons, TEX. PENAL CODE § 30.06, while any attention-drawing sign may be used by landowners for other types of discouraged entry. TEX. PENAL CODE § 30.05(b)(2)(C). "Asymmetrical" implies the opposite of something "symmetrical." But plaintiffs' signs and other statutorily prescribed signs cover entirely different subjects. Dissimilar signs are apples and oranges, because there is no content symmetry arising from the legislature's differing choices. Plaintiffs' factual underpinning for this "injury" makes no sense.

Legally, *Davis* has nothing to do with signage outside entities open to the public. *Davis*'s recognition of " 'asymmetrical' treatment" in the First Amendment context was based on the comparative status of two candidates for the same public office. The campaign finance law expressly disadvantaged a self-financed candidate, because his opponent was allowed to receive far more individual contributions and party expenditures up to the self-financed amount. *See* Bipartisan Campaign Reform Act (BCRA), § 319(a); *Davis*, 554 U.S. at 729, 128 S. Ct. at 2766. The Federal Election Commission (FEC) argued that, because the opponent had not yet qualified for or taken advantage of the asymmetrical limits, the self-financed plaintiff Davis lacked standing to challenge the provision. *Id.* at 734, 128 S. Ct. at 2769. Recognizing this prescribed disparity in campaign finance limits, the Supreme Court held that Davis had standing to challenge the provision's "asymmetrical contribution scheme." *Id.* at 735, 128 S. Ct. at 2679.

**\*7** In *Davis*, the "asymmetry" affected direct adversaries. The consequences of plaintiff Davis's decisions were either (1) limit your protected right to political speech, or (2) be directly disadvantaged if you don't. The majority opinion here abstracts asymmetry to meaninglessness, in stating that the challenged no-guns signage scheme "limits [Plaintiffs'] ability to exercise their First Amendment rights to communicate their desire to exclude firearms relative to other property owners who desire to exclude other items via signage." Here, there is no direct prospective injury or consequence to the plaintiffs as there was in *Davis*: posting a less obtrusive sign on the premises for other reasons (e.g., no shirt, no shoes, no service, or No Dogs) causes no comparative injury vis a vis the no-guns posters.

In any event, the majority opinion cites no cases, articles or anything that supports their illogical finding of "asymmetrical injury" in this situation. I now turn to plaintiffs' other theories of injury.

2. Adverse effect of failure to post signs. The record shows, as a matter of fact and on the face of the statute, that even if the Plaintiffs refuse to post the statutory wording on their signs, the police will still come when they call. The Plaintiffs are not deprived of access to law enforcement to help them exclude trespassers carrying guns. Importantly, the Church's administrator, Sharlene Rochen, testified that the Webster Police Department has always responded when she calls. Over the last five years, she called the police ten times and they always responded within nine minutes. Likewise, Webster PD Chief Bacon affirmed that the Department investigates and responds to trespass and other calls in the same manner regardless whether the property owner elects to use the Acts' written signage option.

Case: 23-20165     Document: 142     Page: 35     Date Filed: 05/27/2025

Bay Area Unitarian Universalist Church v. Ogg, Not Reported in Fed. Rptr. (2025)

What is true as a matter of proof for the Church, which was dismissed based on factual development in Defendant Chief Bacon's motion to dismiss, is also true for the coffee shop Plaintiffs whose case was dismissed on pleadings alone pursuant to Rule 12(c). On its face, the statute states that a trespasser is anyone carrying a gun who refuses to leave the premises after being verbally warned. TEX. PENAL CODE §§ 30.06(b), 30.07(b). That means that if the coffee shop or the Church sees someone trespass under those circumstances, either Plaintiff may call the police—which they'd have to do for official protection—and the police would arrive to eject the person. No posters need be published to accomplish the person's ouster, nor posters that exactly conform to the statutory warning. A verbal command or request activates the statute. *See id.* Thus, whether Plaintiffs post the prescribed sign, a modified sign, or no sign at all, makes no difference to their right to protection as landowners or occupants of the property. They are not injured. Nor are they subject to a dilemma about whether to comply with the prescribed signage.

3. Compelled speech. There is no "compelled speech" for two reasons. First, Plaintiffs aren't saying they disagree with the "message" on the posters, they simply contend that the posters are so big as to be "unwelcoming" or "non-inclusive." One wonders, "unwelcoming" to whom? To patrons who don't carry guns, or only to those who might do so? Plaintiffs can't be "injured" if the regulation-size posters deter the gun carriers, which is the effect they say they want. But they claim injury from disagreements spawned by Second Amendment supporters who quarrel with them about the signs. Would such people be less quarrelsome if the no-carry signs were pretty little pistols with a red slash inside a red circle? Who knows? It is not the content of the signs that "injures" Plaintiffs, but the appearance of the signs that reflects the Plaintiffs' own views. Plaintiffs cannot suffer a First Amendment "injury" by posting their own views at their places of worship/business. Their objection to the prescribed signage is thus purely aesthetic. To this extent, it is like an objection to any aesthetically-based zoning ordinance, but it is not a "free speech" objection.

**\*8** Second, as to "compelled speech," this fact pattern is completely distinct from actual state-mandated speech cases. Here, not only is nothing "compelled," but there is no penalty attached to Plaintiffs' refusals to post the statutory language. *Cf. Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 267–69 (5th Cir. 2024) (plaintiff pornographic websites had

standing to bring a First Amendment challenge to a Texas law requiring the websites to display "health warnings" on their webpages or pay a fine); *see also Book People, Inc. v. Wong*, 91 F.4th 318, 329–32 (5th Cir. 2024) (booksellers had standing to bring a First Amendment challenge to a Texas law requiring warnings of sexual content on books sold to Texas schools—or they couldn't sell the books).

A more comparable case is *California v. Texas*, 593 U.S. 659, 666, 141 S. Ct. 2104, 2112 (2021) (no standing by individual plaintiffs to challenge the minimum "commanded" essential coverage requirement of the Affordable Care Act, which Congress had reduced to zero). In other words, no harm, no foul for standing purposes. Here, if the Plaintiffs fail to post any or non-compliant signage, they allege they are deprived of the "deterrent value" of the criminal law. But as noted above, the Plaintiffs can still order anyone off their property and call the police to enforce the law. If any would-be trespassers remain undeterred, their audacity is not attributable to the Texas statute or to any actions taken by Defendants to enforce it.

4. Other theories of injury. Plaintiffs seemed to back off the idea that injury would result if the Defendants not only fail to enforce, but also fail to prosecute gun-carrying trespassers. These Plaintiffs have no constitutional right to force the criminal prosecution of others. In any event, the statute offers a complete defense to a trespassing charge if the trespasser voluntarily leaves the premises.

The Plaintiffs also contend that they have acceded to an "unconstitutional condition" by posting the signs. But the doctrine of "unconstitutional conditions" provides that "the government may not require a person to give up a constitutional right ... in exchange for a discretionary benefit." *Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S. Ct. 2309, 2317 (1994). As explained above, the Plaintiffs have given up no right, they are not forced to post any sign or any compliant sign, and they are deprived of no benefit.

Finally, the Plaintiffs argue they have suffered reputational harm, because third parties have posted negative Google reviews drawing attention to their posting of the signs. But to constitute an injury in fact, reputational harm must "bear[ ] a 'close relationship' to ... the reputational harm associated with the tort of defamation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432, 141 S. Ct. 2190, 2209 (2021). Here, the alleged Google reviews wholly fail to line up with the common law of defamation: the Google reviews state true facts and perhaps

Case: 23-20165     Document: 142     Page: 36     Date Filed: 05/27/2025

Bay Area Unitarian Universalist Church v. Ogg, Not Reported in Fed. Rptr. (2025)

matters of opinion. But even if bad reviews constitute an injury in fact, it is traceable only to the third party posts on Google, not to the Defendants.

For these reasons, I see no way in which the Plaintiffs are actually injured by the existence of the statutory language that prescribes the contents and form in which notices may be posted to warn gun carriers against trespass. Plaintiffs lack standing, and the district court's judgment should be affirmed. I respectfully dissent.

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 1066187

---

## Footnotes

\*     This opinion is not designated for publication. See 5th Cir. R. 47.5.

1     Plaintiffs brought a federal due process claim too, which the district court dismissed for lack of standing. Plaintiffs only mention the due process claim once on appeal. It is forfeited due to inadequate briefing. *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021); *see also Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 349 (5th Cir. 2024) ("[S]tanding is not dispensed in gross; rather plaintiffs must demonstrate standing for each claim that they press ....").

2     We treat the Webster Police Chief's and the Harris County Defendants' Rule 12(c) motions attacking standing as Rule 12(b)(1) motions. 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 & n.23 (3d ed. 2020) ("[I]f a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the [Rule 12(c)] motion as if it had been brought under Rule 12(b)(1).").

3     We therefore do not reach Plaintiffs' alternative injury theories, and we express no opinion on the dissenting opinion's analysis of them. *See post*, at 5–6.

4     The dissenting opinion makes much of the fact that police come when called regardless of whether compliant signage is posted. *Post*, at 2–3. But this ignores that the right to exclude is already injured by the time the police come. The inherent deterrent value flowing from the criminal law and the attendant threat of penalties protects the right to exclude from the get-go. The record (and common sense) bears out that the law will have its intended effect: handgun owners will carry handguns where legally permissible and not where criminally prohibited. *See, e.g.*, ROA.41 ¶ 49 & n.7 (person posted online "I walked right past a sign yesterday that said 'No firearms allowed.' I thought it was cute."); ROA.1250–64, 1269–70 (passerby challenged sufficiency of Antidote's signs to exclude handguns); ROA.2216–18 ¶¶ 42–44 (alleging that people bring guns onto properties lacking compliant signage "because they face no criminal consequences for doing so"). What's more, even when police do arrive, the right to exclude continues to be deprived for a period because the record also shows that police sit on their hands in the absence of compliant signage or oral notice to a trespasser coupled with a subsequent refusal to leave. As to the dissent's concern about traceability, for the reasons just stated, it is predictable that handgun owners will be affected by Defendants' strict enforcement of the allegedly unconstitutional signage requirements, so Plaintiffs' "theory of standing ... does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019); *post*, at 4 (arguing a trespasser's "audacity is not attributable to the Texas statute or to" the Defendants).

5     Defendants raise two additional justiciability issues, and one merits argument. *First*, Defendants re-urge their standing arguments to say that Plaintiffs' claims are not ripe because they have not alleged any injury traceable to Defendants. For the reasons already stated, we disagree. *Second*, the Houston Police Chief

claims the *Ex Parte Young* exception to sovereign immunity does not apply to him because he is a city official, "not a state official or an arm of the state." That's a non-starter because Eleventh Amendment immunity "does not extend" to cities in the first place. *Bd. of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 369 (2001). And *third*, the Houston Police Chief argues that "a municipality such as Houston is not subject to suit" unless Plaintiffs allege a "policy or custom." This is an attack on the merits of Plaintiffs' claims, which the district court did not reach. Neither do we. *Magnolia Island Plantation, L.L.C. v. Whittington,* 29 F.4th 246, 252 (5th Cir. 2022) ("As a well-established general rule, this court 'will not reach the merits of an issue not considered by the district court.' " (quoting *Baker v. Bell,* 630 F.2d 1046, 1055 (5th Cir. 1980))).

6   *But see post*, at 3–4 (the dissenting opinion first arguing that there is no "compelled speech" and then arguing that Plaintiffs' unconstitutional condition theory fails).

---

**End of Document**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.