No. 23-20165

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER, L.L.C.,
doing business as ANTIDOTE COFFEE; PERK YOU LATER, L.L.C.,
*Plaintiffs-Appellants*,

v.

HARRIS COUNTY DISTRICT ATTORNEY KIM OGG; HARRIS COUNTY SHERIFF ED
GONZALEZ; WEBSTER ACTING CHIEF PETE BACON; CHIEF OF HOUSTON POLICE
DEPARTMENT TROY FINNER,
*Defendants-Appellees*.

---

On Appeal from the United States District Court
For the Southern District of Texas (Werlein, J.)

---

## PLAINTIFFS-APPELLANTS' RESPONSE TO PETITIONS FOR REHEARING EN BANC

---

Alla Lefkowitz
Andrew Nellis
Everytown Law
P.O. Box 14780
Washington, D.C. 20044
(202) 545-3257
alefkowitz@everytown.org

Laura Keeley
Everytown Law
450 Lexington Ave.
P.O. Box 4184
New York, NY 10017
(646) 324-8198
lkeeley@everytown.org

Charlotte H. Taylor
 *Counsel of Record*
Jones Day
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3872
ctaylor@jonesday.com

William R. Taylor
Jones Day
717 Texas Street, Suite 3300
Houston, TX 77002
(832) 239-3860
wrtaylor@jonesday.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Plaintiffs-Appellants **Bay Area Unitarian Universalist Church; Drink Houston Better, L.L.C., d/b/a/ Antidote Coffee; Perk You Later, L.L.C.**

2. Defendants-Appellees **Harris County District Attorney Kim Ogg; Harris County Sheriff Ed Gonzalez; Chief of Webster Police Department Pete Bacon; Chief of Houston Police Department Troy Finner (now J. Noe Diaz).**

3. The following law firms and counsel have participated in the case, either in the district court or on appeal:

| **Plaintiff-Appellant** | **Counsel** |
|---|---|
| Bay Area Unitarian Universalist Church; Drink Houston Better, L.L.C., d/b/a Antidote Coffee; Perk You Later, L.L.C | Charlotte H. Taylor Lesley Roe JONES DAY 51 Louisiana Avenue, N.W. Washington, D.C. 20001 |
| | William R. Taylor JONES DAY 717 Texas Street, Suite 3300 Houston, TX 77002 |
| | Alla Lefkowitz Andrew Nellis EVERYTOWN LAW P.O. Box 14780 Washington, D.C. 20044 |
| | Laura Keeley EVERYTOWN LAW 450 Lexington Avenue P.O. Box 4184 New York, NY 10017 |

| **Defendants-Appellees** | **Counsel** |
|---|---|
| Harris County District Attorney Kim Ogg Harris County Sheriff Ed Gonzalez | Heena Kepadia Moustapha Gassama Matthew P. Miller HARRIS COUNTY ATTORNEY'S OFFICE 1019 Congress Plaza, 15th Floor Houston, TX 77002 |
| Chief of Webster Police Department Pete Bacon | William S. Helfand Justin C. Pfeiffer Norman Ray Giles LEWIS BRISBOIS BISGAARD & SMITH 24 Greenway Plaza, Suite 1400 |

Houston, TX 77046

Sean Braun
WILSON ELSER MOSKOWITZ EDELMAN
& DICKER
909 Fannin Street
Suite 3300, Suite 1400
Houston, TX 77098

Chief of Houston Police
Department Troy Finner
(now J. Noe Diaz)

Donald B. Hightower
Melissa Azadeh
Tiffany Sue Bingham
Charles H. Houston, III
CITY OF HOUSTON LEGAL
DEPARTMENT
900 Bagby Street, 4th Floor
Houston, TX 77002

Respectfully Submitted,

*/s/ Charlotte H. Taylor*

Charlotte H. Taylor
*Counsel of Record for Appellants*

# TABLE OF CONTENTS

**Page**

**CERTIFICATE OF INTERESTED PERSONS**.................................................... ii

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................1

ARGUMENT ....................................................................................4

I.    Defendants Do Not Meet This Court's High Standard for Rehearing En Banc.................................................................................4

    A.    Defendants identify no conflicting Supreme Court or circuit court precedent. ...................................................................5

    B.    Defendants cite no issue of exceptional importance. ...........................6

II.    The Panel's Analysis Was Correct and Has Been Reaffirmed by Intervening Controlling Decisions. ................................................7

    A.    Defendants' enforcement of Sections 30.06 and 30.07 concretely injures Plaintiffs.........................................................7

    B.    Defendants' contrary arguments are meritless. ...................................8

        1.    Defendants' factual arguments misstate the record. .................9

        2.    The availability of other forms of notice does not alleviate the burdens of §§ 30.06 and 30.07. ...........................10

        3.    Defendants and the dissent overlook multiple additional cognizable injuries. ................................................................11

    C.    Plaintiffs' injury is traceable to Defendants and redressable by a favorable judicial ruling. ...................................................14

    D.    Recent decisions from the Supreme Court and this Court affirm the panel majority's reasoning. .......................................16

CONCLUSION.................................................................................17

CERTIFICATE OF SERVICE .................................................................19

CERTIFICATE OF COMPLIANCE...........................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Bay Area Unitarian Universalist Church v. Ogg,*
No. 23-20165, slip op. (5th Cir. Apr. 9, 2025) ...........................................passim

*Boy Scouts of Am. v. Dale,*
530 U.S. 640 (2000) ....................................................................................13

*City of Erie v. Pap's A.M.,*
529 U.S. 277 (2000) ....................................................................................12

*Davis v. FEC,*
554 U.S. 724 (2008) ..................................................................................5, 11

*Diamond Alt. Energy v. EPA,*
145 S. Ct. 2121 (2025) ...................................................................13, 15, 16

*Gen. Land Office v. Biden,*
71 F.4th 264 (5th Cir. 2023) ........................................................................17

*K.P. v. LeBlanc,*
627 F.3d 115 (5th Cir. 2010) ..................................................................14, 15

*Koontz v. St. Johns River Water Mgmt. Dist.,*
570 U.S. 595 (2013) ....................................................................................13

*McDonald v. Longley,*
4 F.4th 229 (5th Cir. 2021) ......................................................................3, 13

*Meese v. Keene,*
481 U.S. 465 (1987) ....................................................................................13

*Peter Henderson Oil Co. v. City of Port Arthur,*
806 F.2d 1273 (5th Cir. 1987) .....................................................................12

*Reno v. ACLU*,
　521 U.S. 844 (1997)......................................................................11

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
　487 U.S. 781 (1988)......................................................................12

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
　126 U.S. 47 (2006)........................................................................12

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
　989 F.3d 368 (5th Cir. 2021) .......................................................14

*Texas Corn Producers v. EPA*,
　2025 WL 1741481 (5th Cir. June 24, 2025).................................17

*Time Warner Cable v. Hudson*,
　667 F.3d 630 (5th Cir. 2012) ....................................................5, 11

## STATUTES

Tex. Penal Code
　§ 30.05.............................................................................................2
　§ 30.06......................................................................................passim
　§ 30.07......................................................................................passim

## OTHER AUTHORITIES

5th Cir. R. 40.2.............................................................................5, 6

5th Cir. IOP 40 .............................................................................5, 6

Fed. R. App. P. 40(b)(2)...................................................................5

1 William Blackstone, *Commentaries on the Laws of England* 140
　(3d ed. 1884) ...............................................................................3

## INTRODUCTION

Plaintiffs-Appellants Bay Area Unitarian Universalist Church (the "Church") and Drink Houston Better, LLC d/b/a Antidote Coffee, and Perk You Later, LLC (together, "Antidote") respectfully urge that the petitions for rehearing en banc of Defendants-Appellees Webster Chief of Police Pete Bacon ("Webster") and Houston Chief of Police J. Noe Diaz ("Houston") be denied. The panel majority correctly held that Plaintiffs have standing to challenge a statutory scheme that makes it onerous to exclude firearms from Plaintiffs' property.

Defendants ask the full Court to revisit the panel majority's holding but do not come close to satisfying the high bar for rehearing en banc. They identify no holding of the Supreme Court, this Court, or any other court of appeals at odds with the panel majority's reasoning. In fact, the Supreme Court and this Court have both recently issued decisions that confirm Plaintiffs' standing to sue. And Defendants identify no issue of extraordinary importance in the panel's unpublished disposition of a standing dispute.

## BACKGROUND

Texas law imposes onerous signage requirements that particularly burden the speech of property owners, like Plaintiffs, who wish to exclude firearms. If owners wish to post legally adequate notice that firearms are prohibited on their property, they must post three signs with extensive statutorily prescribed language "in

contrasting colors with block letters at least one inch in height," in both English and Spanish, two of which must be posted at every entrance to the property. *See* Tex. Penal Code. §§ 30.05-.07. If property owners wish to post notice that entry is excluded for virtually any other reason, a sign "reasonably likely to come to the attention of intruders" will do. Tex. Penal Code. § 30.05(b)(2)(C).

While Texas law also allows property owners to exclude firearms by providing entrants with oral notice or a card with the required language, *see* Tex. Penal Code §§ 30.06-.07, both Plaintiffs have determined that posting signs is the safest and most practical option to exclude guns from their property, ROA.40, 1212, 1228. They cannot identify entrants carrying concealed firearms to provide individual notice, and it would be exceedingly burdensome to provide individual notice to every visitor. *Id*. Further, individual notice would put Plaintiffs' staff at risk of confrontation with armed or potentially armed persons. *Id*.

Accordingly, both Plaintiffs posted signs in order to effectuate their core property right to exclude and relied on their fellow Texans to honor legally adequate trespass notices. ROA.44-46, 1209-11, 1225-26. But for both Plaintiffs, large, text-heavy signs with detailed references to the Texas Penal Code interfere with the message they would prefer to convey. *Id*. The Church espouses a creed of "non-violence, love, and compassion," and maintains an official policy of prohibiting all weapons. ROA.44-45, 1208-22. Posting "ugly and intimidating" signs compliant

2

with §§ 30.06 and 30.07 detracts from the religious principles it wishes to convey because they invoke guns and violence and obscure the glass doors of the church building—which are "meant to convey the Church's commitment to openness and inclusion." ROA.44-45, 1209-11. Rather than cover its doors with the multiple signs required to exclude all firearms, the Church has opted to post signs (costing $111.80) excluding only *openly* carried firearms, and thus—as a result of the choice Texas imposed—contradicting its official no-weapons policy. *Id.* It has therefore forgone its full "sacred and inviolable" right to exclude, 1 William Blackstone, *Commentaries on the Laws of England* 140 (3d ed. 1884), as well as its associational right to conduct religious services as it chooses, *see McDonald v. Longley*, 4 F.4th 229, 245 (5th Cir. 2021). Antidote wishes to cultivate a family-friendly, welcoming aesthetic but has posted all signs required to fully exercise its right to exclude. This signage covers over 10 square feet of its small storefront, contradicts Antidote's expressive preferences, and has drawn negative commentary from passersby. ROA.46-47, 1225-29, 1269-71. Antidote has needed to replace the signs over the years, at a total cost of approximately $500 from the enactment of §§ 30.06 and 30.07 through 2021. ROA.1227.

Plaintiffs sued officials responsible for enforcing §§ 30.06 and 30.07 seeking declaratory and injunctive relief. Shortly after discovery began, Houston filed a Rule 12(c) Motion arguing that Plaintiffs' Complaint failed to adequately allege

standing.  ROA.626-42.  After discovery closed, the district court granted Houston's

motion.  ROA.870-82.  The Harris County defendants then filed a Rule 12(c) motion,

and Webster moved to dismiss under Rule 12(b)(1).  ROA.954, 1427.  Plaintiffs

cross-moved for summary judgment and sought leave to amend the Complaint to

add facts adduced in discovery.  ROA.896, 972. The district court granted Harris

County's and Webster's motions on standing grounds and denied Plaintiffs' motion

to amend the Complaint.  ROA.2126.  Plaintiffs timely appealed.

A panel of this Court reversed, finding that "Plaintiffs suffer an ongoing injury

because they are subject to a statutory scheme that treats varying types of similar

speech differently," and that Plaintiffs' injury "fairly traces to the Defendants'

enforcement of §§ 30.06 and 30.07" and is "redressable by a favorable judicial

decision."  *Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, slip op.

at 7, 10 (5th Cir. Apr. 9, 2025).  Judge Jones dissented and would have affirmed the

district court's holding that Plaintiffs lack an Article III injury.  *Id.* at 13-18.

## ARGUMENT

### I.  DEFENDANTS DO NOT MEET THIS COURT'S HIGH STANDARD FOR REHEARING EN BANC.

Rehearing en banc is appropriate only where a panel decision conflicts with a

decision of this Court, an authoritative decision of another court of appeals, or the

Supreme Court, or where the proceeding involves "questions of exceptional

importance."  Fed. R. App. P. 40(b)(2)(A)-(D).  This Court's rules emphasize that

these standards are "rigid" and that petitions for rehearing are "not favored" and "extraordinary in nature."  5th Cir. R. 40.2; 5th Cir. IOP 40.  Houston's and Webster's petitions do not remotely satisfy this stringent standard.

### A.    Defendants identify no conflicting Supreme Court or circuit court precedent.

Across nearly forty pages of combined argument, neither Webster nor Houston identifies any precedent of the Supreme Court, Fifth Circuit, or any other court of appeals that contradicts the panel's holding.  At most, Defendants attempt to distinguish some—but not all—of the cases relied upon by the majority, but "alleged errors in … the application of correct precedent" are generally not matters for "rehearing en banc." 5th Cir. IOP 40.

For example, although Defendants (wrongly) argue that the panel majority misapplied *Davis v. FEC*, 554 U.S. 724 (2008), Defendants do not distinguish other controlling caselaw.  The panel majority also relied on *Time Warner Cable v. Hudson*, which held in the First Amendment context that "[d]iscriminatory treatment at the hands of the government is an injury long recognized as judicially cognizable." 667 F.3d 630, 636 (5th Cir. 2012) (citation omitted); *see Ogg*, slip op. at 7, 11.  The challenged statute in *Time Warner* "target[ed] plaintiffs for exclusion from [a] benefit"—a statewide license—"provided to similarly situated speakers."  667 F.3d at 637.  Similarly here, Plaintiffs are targeted and treated less favorably than property

owners who wish to exclude for any reason other than gun possession.  *See Ogg*, slip op. at 7-8.  Defendants offer no theory to distinguish *Time Warner*.

The only supposedly controlling precedent Defendants identify as contradicting the panel majority is a string of cases holding that a plaintiff has no right to another person's criminal prosecution.  *See* Webster Pet. at x, 12 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973); *Lefebure v. D'Aquilla*, 15 F.4th 650 (5th Cir. 2021)); Houston Pet. at 9-10 (similar).  But even the panel dissent recognized that Plaintiffs do not rely on that theory.  *See Ogg*, slip op. at 17 (Jones, J., dissenting).

### B.     Defendants cite no issue of exceptional importance.

Defendants also offer no explanation why this case presents any issue of "exceptional public importance" sufficient to justify the "serious call on limited judicial resources" that petitions for rehearing en banc entail.  *See* 5th Cir. IOP 40; 5th Cir. R. 40.2.1.  The unpublished decision goes only to standing.  *See Ogg*, slip op. at 11-12 ("We caution that this appeal does not reach the merits of Plaintiffs' claims, and we express no opinion on them.").  And much of Defendants' dispute with the panel majority involves the interpretation of the factual record.  These fact arguments fail on their own terms, *see infra* Section II.B, but in any case "alleged errors in the facts of the case" generally are not matters for en banc reconsideration.  5th Cir. IOP 40.

II.   **THE PANEL'S ANALYSIS WAS CORRECT AND HAS BEEN REAFFIRMED BY INTERVENING CONTROLLING DECISIONS.**

Defendants (and the dissent) principally contend that because police come when called and will remove any trespassers carrying firearms who have been asked to leave, Plaintiffs can still enjoy their right to exclude even if they do not post compliant signs.   Ergo, Defendants argue, there is no compelled speech and Plaintiffs suffer no injury (nor is there causation or redressability).   Webster Pet. at 3-4, 6-11, 13-16; Houston Pet. at 9-11, 13-14, 17-19; *see also Ogg*, slip op. at 14-15 (Jones, J., dissenting).   That contradicts common sense, the record, and standing principles recently reaffirmed by the Supreme Court and this Court.

A.   **Defendants' enforcement of Sections 30.06 and 30.07 concretely injures Plaintiffs.**

The crux of Plaintiffs' injury is the choice imposed on them by §§ 30.06 and 30.07.   If property owners post the government-scripted signs at the entrances to their property as those statutes require, then entrants are on notice at the outset that if they bring a firearm onto the property, they have committed a trespass.   But if property owners do not post conforming signs, then entrants know they can bring their firearms onto the property without committing a criminal violation. *See, e.g.*, ROA.41 & n.7, ROA.1233 (online post stating "I walked right past a sign yesterday that said 'No firearms allowed.'   I thought it was cute").   The statutes therefore impose a coercive choice between the full exercise of owners' property rights and

7

the full exercise of owners' free speech rights. That is the point: the scheme was intentionally designed to be cumbersome "so as to discourage businesses from prohibiting entry to customers carrying guns," *Ogg*, slip op. at 7-8 (quoting ROA.28 n.1), ROA.1214. When a property owner who objects to the signs' expressive elements posts them anyway in order to exclude firearms, that is a direct consequence of law enforcement's application of the statutory scheme.

Imagine Texas required churches to write "HOUSE OF GOD, NO PETS ALLOWED" on their doors in two-inch-high, red letters if they want to use signage to exclude animals. Animal-rights activists begin entering churches mid-sermon with dogs, targeting churches displaying small "No pets" signs. Police come when called, but absent compliant signs, they cannot arrest or prosecute activists unless they refuse to leave *after* receiving oral notice, and thus the non-compliant signs have no deterrent value. As a matter of common sense, any church wishing to end these disruptions would put the government-scripted red lettering on its doors. And that would constitute an injury—a burden on its expression—caused by police enforcement of the law as written. Alternatively, churches could accept the disruptions, but that would burden their property and associational rights. Plaintiffs face the same Hobson's choice under §§ 30.06 and 30.07.

**B.    Defendants' contrary arguments are meritless.**

Defendants contest this common-sense premise, but their arguments all fail.

### 1.     Defendants' factual arguments misstate the record.

Defendants (echoing the dissent) argue that Plaintiffs are not compelled to post compliant signage because the absence of such signs supposedly has "no effect" on the how police respond to armed trespassers.  Webster Pet. 3; Houston Pet. 13-14 (quoting *Ogg*, slip op. at 14 (Jones, J., dissenting)).  Even assuming this factual dispute could be a valid basis for rehearing en banc, Defendants mischaracterize the record.

Defendants (and the dissent) rely on deposition testimony from Charlene Rochen, a Church employee deposed in her personal capacity (not as a 30(b)(6) witness).  Webster foregrounds Ms. Rochen's testimony that she "called the Webster Police on ten different occasions" and "had absolutely no complaints about or criticisms of the Police response."  Webster Pet. 4; *see also Ogg*, slip op. at 14 (Jones, J., dissenting) (similar).  But none of these calls involved armed trespassers, so this testimony reveals nothing about enforcement of §§ 30.06 and 30.07.  *See* ROA.1455-60.

In fact, as the panel majority recognized, the record indicates that "when police do arrive, … [they] sit on their hands in the absence of compliant signage or oral notice … coupled with a subsequent refusal to leave."  *Ogg*, slip op. at 9 n.4.  Houston asserts that "there is nothing in the record to support" this statement.  Houston Pet. 13 (emphasis omitted).  But evidence shows that when police were

called to a restaurant after a patron revealed that he was carrying a concealed handgun, responding officers noted whether the restaurant had compliant signage. ROA.1425. Chief Bacon himself testified, "In the absence of a 30.06 sign, I do not believe that the officers would have the right to remove the gentleman from the premises, unless [the restaurant], again, insisted." ROA.1167-68.[1]

### 2. The availability of other forms of notice does not alleviate the burdens of §§ 30.06 and 30.07.

Relatedly, Defendants argue that the law does not harm property owners, because even if they do not post conforming signs, they can always call law enforcement to deliver oral notice. *See* Houston Pet. 9; Webster Pet. 13. But that does not solve the Hobson's choice the Texas scheme imposes. Calling the police on every person who enters with a handgun is plainly more burdensome and impractical than posting a no-guns sign—as Plaintiffs alleged, record evidence supports, and the panel majority recognized. *See* ROA.40, 1212, 1228; *Ogg*, slip op. at 9. Defendants' argument also ignores that, as the panel majority explained, Plaintiffs' "right to exclude is already injured by the time the police come." *Ogg*, slip op. at 8 n.4. That is, Plaintiffs are injured because, if they do not post compliant signage, they are denied "[t]he inherent deterrent value flowing from the criminal

---

[1] Sealed portions of the record include additional evidence that the type of signage posted by property owners affects police officers' conduct. *See* ROA.2215-16.

law and the attendant threat of penalties." *Id.* at 8-9 & n.4 (citing *Reno v. ACLU*, 521 U.S. 844, 872 (1997)).

Attempting to suggest that the panel majority's reliance on *Reno v. ACLU* is inappropriate, Houston highlights that *Reno* involved the merits of a First Amendment claim rather than standing and notes the differences between the relief sought by the ACLU in *Reno* and by Plaintiffs in the instant case. *See* Houston Pet. 11-12. But neither facet of *Reno* diminishes the Supreme Court's commonsense (and indisputable) observation that the criminal law has a "deterrent effect," *Reno*, 521 U.S. at 872, which is all that is relevant here. Indeed, the existence of such a deterrent effect is borne out by the record in this case. *See supra* Section II.A.[2]

### 3. Defendants and the dissent overlook multiple additional cognizable injuries.

The panel majority correctly found that the trespass scheme works a First Amendment injury because it treats varying types of similar speech differently. *See, e.g.*, *Davis*, 554 U.S. at 734-35; *Time Warner*, 667 F.3d at 636. Defendants and the dissent dispute the applicability of *Davis* but fail to meaningfully engage with Plaintiffs' multiple other arguments regarding injury. The Court sitting en banc must find that *none* of these injuries are valid in order to reverse the panel on this question.

---

[2] Houston concedes that the challenged statutes "restrict law enforcement's ability to prosecute gun-possessing trespassers." Houston Pet. 6. Plaintiffs' compliance with the statutes is thus required for Plaintiffs to enjoy the law's deterrent effect.

***Unconstitutional condition.*** Where, as here, the government makes the exercise of constitutional rights dependent upon the sacrifice of other rights, interests, or privileges, the scheme constitutes an unconstitutional condition and works an immediate injury—even before any choice is made. *See, e.g.*, *Peter Henderson Oil Co. v. City of Port Arthur*, 806 F.2d 1273, 1274-75 (5th Cir. 1987); *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 126 U.S. 47, 52 n.2 (2006).

***Injury to free speech.*** The dissent discounts Plaintiffs' injury because "Plaintiffs aren't saying they disagree with the 'message' on the posters." *Ogg*, slip op. at 15 (Jones, J., dissenting). But agreement with the *message* one is compelled to display does not negate a First Amendment injury where the government prescribes the *manner* of speech. "[T]he government, even with the purest of motives, may not substitute its judgment as to *how* best to speak for that of speakers and listeners." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 791 (1988) (emphasis added). And the difference between one's desired manner of expression and the government-mandated manner need not be vast for an injury to exist. *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (desire to dance nude, rather than in a G-string, is expressive interest triggering First Amendment scrutiny).

***Monetary injury.*** The Church has paid $111.80 to display statutorily required no-guns signage, and Antidote has paid approximately $500.00. ROA. 1209, 1227. This monetary injury, standing alone, is sufficient to establish Plaintiffs' injury for

standing purposes. *See Diamond Alt. Energy v. EPA*, 145 S. Ct. 2121, 2135 (2025) ("Even 'one dollar' of additional revenue … would satisfy the redressability component of Article III standing." (citation omitted)).

*The Church's property interests*. The Church opted not to post concealed-carry signs, or to provide individual notice to entrants, out of concern that doing so would jeopardize the Church's safety, accessibility, and messages of non-violence and inclusivity. *See* ROA.1209-12; *Meese v. Keene*, 481 U.S. 465, 475 (1987) ("[T]he need to take … affirmative steps to avoid the risk of harm to [one's] reputation constitutes a cognizable injury."). The Church is thus holding its property open to those carrying concealed handguns contrary to its wishes. This compelled sacrifice of a property right "is a constitutionally cognizable injury." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013).

*The Church's associational freedom.* The Church wants to exclude firearms for expressive and associational reasons, but has forgone its right to exclude concealed firearms. ROA.1209-11, 1215. The Texas scheme thus harms the Church's freedom of association. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 650 (2000); *McDonald*, 4 F.4th at 245 ("For groups that engage in expressive association, the '[f]reedom of association … plainly presupposes a freedom not to associate.'" (citations omitted; alterations in original)).

13

***Antidote's reputational harm.*** Where a law or regulation leads to stigmatization of a plaintiff's business, threatening to decrease sales, this is sufficient to establish standing. *See Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 378 (5th Cir. 2021). Here, the negative publicity Antidote has received specifically references Antidote's §§ 30.06 and 30.07 signs and indicates that some patrons will take their business elsewhere. *See* ROA.1777 (one-star Google review of Antidote stating "The coffee shop posts 30.06 and 30.07 signage."); ROA.1780 (texas3006.com "Wall of Shame" post commenting "I guess I have to go somewhere else for coffee."); ROA.41 (alleging that signs serve as "Scarlet Letter"). That suffices to show injury.

### C. Plaintiffs' injury is traceable to Defendants and redressable by a favorable judicial ruling.

There is also no flaw in the panel majority's traceability and redressability analysis. Plaintiffs allege that their First Amendment, property, and associational rights are impaired by state statutes enforced by Defendants. Defendants are therefore a cause of Plaintiffs' injury, which establishes traceability. *Ogg*, slip op. at 10. Plaintiffs need not show that Defendants are the sole, or even the proximate, cause of Plaintiffs' injury to establish traceability. *See K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010).

"[C]ausation and redressability" are "flip sides of the same coin," and the "redressability requirement generally serves" only to "ensure that there is a sufficient

'relationship between the "judicial relief requested" and the "injury" suffered.'"

*Diamond Alt. Energy*, 145 S. Ct. at 2133 (citations omitted).  That standard is easily

satisfied here.  Plaintiffs seek a declaration that the heightened notice requirements

of §§ 30.06(c) and 30.07(c) are unconstitutional and an injunction against their

enforcement.  This would place Plaintiffs on equal footing with property owners

who seek to exclude persons for any reason other than gun possession, and

redressability is thus satisfied.  *Ogg*, slip op. at 10-11 (citing *Heckler v. Mathews*,

465 U.S. 728, 738-39 (1984)).

Article III does not require Plaintiffs to establish that a favorable decision will

provide complete redress.  *See K.P.*, 627 F.3d at 123 (citing *Larson v. Valente*, 456

U.S. 228, 243 n.15 (1982)).  It is enough that at least some law-abiding gun owners

are deterred from entering private property where there is legally effective signage

but are undeterred where the signage is unenforceable.  As the panel majority

observes, "[t]he record (and common sense) bears out that the law will have its

intended effect: handgun owners will carry handguns where legally permissible and

not where criminally prohibited.  *See, e.g.*, ROA.41 & n.7, ROA.1233; ROA.1269-

70 (passerby challenged sufficiency of Antidote's signs).  Nothing more is required

to establish standing and proceed to the merits.

15

**D.     Recent decisions from the Supreme Court and this Court affirm the panel majority's reasoning.**

Texas has told property owners what signs they must post to exclude firearms, and it has told gun owners what signs they must actually obey.  The property owners, relying on the deterrent effect of the criminal law—in other words, presuming gun owners are law-abiding—have posted the required signage in order to exercise their right to exclude.  Plaintiffs' injuries were thus not self-inflicted: Plaintiffs were compelled to post the required signage, because they would predictably have their property rights violated by armed trespassers if they did not.  Plaintiffs have standing to challenge Texas's signage requirements.

The Supreme Court's recent decision in *Diamond Alternative Energy, LLC v. EPA* emphasizes that "[c]ourts should not 'make standing law more complicated than it needs to be.'"  145 S. Ct. at 2141-42 (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020)).  Plaintiffs may rely on "commonsense inferences" and the "predictable" behavior of third parties not before the court to establish standing.  *Id*. at 2136.  If it was "predictable" in *Diamond Alternative Energy* that emissions standards and an electric-vehicle mandate would cause automakers to produce fewer gasoline-powered vehicles, in turn leading to fewer gasoline sales, in turn harming gasoline producers—then surely it is predictable that gun-carrying Texans will follow Texas law in determining which establishments they may enter with guns. *See id.* at 2134 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)).

16

This Court has repeatedly held the same, including two weeks ago in *Texas Corn Producers v. EPA*, when this Court followed *Diamond Alternative Energy* and explained that "probable economic injury resulting from governmental actions that alter competitive conditions" is sufficient to confer standing.  2025 WL 1741481, at *4 (5th Cir. June 24, 2025) (citation omitted); *see also Gen. Land Office v. Biden*, 71 F.4th 264, 273 (5th Cir. 2023) (Texas had standing to challenge federal decision not to fund border wall because "[i]n the absence of longer walls, at least some illegal aliens who otherwise would have been prevented from entering Texas will seek driver's licenses, education, and healthcare from Texas" (citing *Dep't of Com.*, 588 U.S. at 768)).  These holdings confirm that the panel decision was correct.

## CONCLUSION

The Court should deny Defendants' petitions for en banc rehearing.

July 9, 2025

Respectfully submitted,

Alla Lefkowitz
Andrew Nellis
EVERYTOWN LAW
P.O. Box 14780
Washington, D.C. 20044
(646) 324-8365
alefkowitz@everytown.org

Laura Keeley
EVERYTOWN LAW
450 Lexington Ave.
P.O. Box 4148
New York, NY 10017
(646) 324-8198
lkeeley@everytown.org

*/s/ Charlotte H. Taylor*
Charlotte H. Taylor
 *Counsel of Record*
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3872
ctaylor@jonesday.com

William R. Taylor
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
(832) 239-3939
wrtaylor@jonesday.com

*Counsel for Plaintiffs-Appellants.*

## CERTIFICATE OF SERVICE

I certify that on July 9, 2025, I served a copy of the foregoing on all counsel of record by CM/ECF and email.


*/s/ Charlotte H. Taylor*
Charlotte H. Taylor
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) & (7)(B), and Fifth Circuit Rule 32.1 & 32.2.  The brief contains 3,900 words and was prepared using Microsoft Word and produced in Times New Roman 14-point font.

Dated:  July 9, 2025

*/s/ Charlotte H. Taylor*
Charlotte H.Taylor
*Counsel for Plaintiffs-Appellants*