No. 23-20165

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER,
L.L.C., DOING BUSINESS AS ANTIDOTE COFFEE; PERK YOU LATER, L.L.C.,
Plaintiffs – Appellants

v.

Harris County District Attorney Kim Ogg; County Sheriff Ed Gonzalez;
Webster Acting Chief Pete Bacon; Chief of Houston Police Department Troy
Finner,
Defendants – Appellees

---

On Appeal from Civil Action Number 4:20-cv-03081, in the United States
District Court for the Southern District of Texas, Houston Division

---

## REPLY IN SUPPORT OF
## PETITION FOR REHEARING EN BANC

---

ARTURO G. MICHEL
City Attorney

SUZANNE R. CHAUVIN
Chief, General Litigation Section

Donald B. Hightower
Senior Assistant City Attorney
SBN: 24062780
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone:  832.393.6429
Facsimile:   832.393.6259
donald.hightower@houstontx.gov

*Attorneys for Defendant-Appellee Chief of
Houston Police Department J. Noe Diaz*

No. 23-20165

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER,
L.L.C., DOING BUSINESS AS ANTIDOTE COFFEE; PERK YOU LATER, L.L.C.,
Plaintiffs – Appellants

v.

HARRIS COUNTY DISTRICT ATTORNEY KIM OGG; COUNTY SHERIFF ED
GONZALEZ; WEBSTER ACTING CHIEF PETE BACON; CHIEF OF HOUSTON
POLICE DEPARTMENT TROY FINNER,
Defendants – Appellees

---

On Appeal from Civil Action Number 4:20-cv-03081, in the United States
District Court for the Southern District of Texas, Houston Division

---

**Certificate of Interested Persons**

---

The undersigned counsel of record certifies that the following listed

persons and entities as described in the fourth sentence of Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that

the judges of this Court may evaluate possible disqualification or recusal. The

judge below was the Honorable Ewing Werlein, Jr.

| | |
|---|---|
| Appellants: | Bay Area Unitarian Universalist Church<br>Drink Houston Better, L.L.C., doing business as Antidote Coffee<br>Perk You Later, L.L.C. |
| Trial and Appellate Counsel for Appellants: | Alla Lefkowitz<br>Andrew Nellis<br>Ryan Gerber<br>Laura Keeley<br>Everytown Law<br>Charlotte H. Taylor<br>Lesley Roe<br>William R. Taylor<br>Jones Day |
| Appellees: | Harris County District Attorney Kim Ogg<br>County Sheriff Ed Gonzalez<br>Webster Acting Chief Pete Bacon<br>Chief of Houston Police Department Troy Finner |
| Trial and Appellate Counsel for Appellees Kim Ogg and Ed Gonzalez: | Heena Kepadia<br>Moustapha Gassama<br>Harris County Attorney's Office |
| Trial and Appellate Counsel for Appellee Pete Bacon: | William S. Helfand<br>Justin C. Pfeiffer<br>Lewis Brisbois Bisgaard & Smith, LLP |
| Trial Counsel for Appellee Troy Finner (now J. Noe Diaz): | Melissa Azadeh<br>City of Houston Legal Department |
| Appellate Counsel for Appellee Troy Finner (now J. Noe Diaz): | Donald B. Hightower<br>City of Houston Legal Department |

*/s / Donald B. Hightower*
Donald B. Hightower

*Attorney for Defendant-Appellee Chief of Houston Police Department J. Noe Diaz*

## Table of Contents

# Contents

Certificate of Interested Persons .......................................................................ii

Table of Contents ...................................................................................... v

Table of Authorities ................................................................................ vi

Summary of the Argument ........................................................................ 1

Argument ................................................................................................ 2

     I.    THE OPINION STILL DIRECTLY CONFLICTS WITH PRIOR SUPREME COURT AND/OR FIFTH CIRCUIT PRECEDENT. ............... 2

          A.    The Opinion Directly Conflicts With and Fatally Undermines existing Well-Settled Standing Jurisprudence, by Relying On Unsupported Speculation That Contradicts Texas Law and the Record Here. .................................................................... 3

          B.    Appellants Fail to Identify Genuine Injury When Texas Law Permits Any Property Owner to Remove Unwanted Guests. ............................................... 8

          C.    The Panel Also Improperly Rewrote and Undermined Long-Standing Free Speech Jurisprudence By Misusing *Davis*— Again—to Find Compelled Speech. ................................................. 10

     II.    THE NEW AUTHORITIES, CITED BY APPELLANTS IN SUPPORT OF THEIR ARGUMENT, FAIL TO SUPPORT THEIR ARGUMENT. ...... 12

Prayer for Relief ...................................................................................... 16

Certificate of Service ................................................................................ 17

Certificate of Compliance ......................................................................... 17

# Table of Authorities

**Page(s)**

## Cases

*Allen v. Wright*,
  468 U.S. 737 (1984) ................................................................... 11

*Bailey v. Patterson*,
  369 U.S. 31 (1962) ..................................................................... 11

*Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, 2025 WL 1066187,
  at *7 (5th Cir. Apr. 9, 2025) ............................................... passim

*Book People, Inc. v. Wong*,
  91 F.4th 318, 329–32 (5th Cir. 2024)......................................... 11

*City of Clinton v. Pilgrim's Pride Corp.*,
  632 F.3d 148 (5th Cir. 2010) .................................................... 12

*Davis v. Federal Election Commission*,
  554 U.S. 724 (2008) ............................................................... 4, 6

*Diamond Alternative Energy v. EPA,*
  476 U.S. at 56 (2024) ........................................................ passim

*Edionwe v. Bailey*,
  860 F.3d 287 (5th Cir. 2017) ...................................................... 7

*Free Speech Coalition, Inc. v. Paxton*,
  95 F.4th 263, 267–69 (5th Cir. 2024)......................................... 11

*General Land Office v. Biden*,
  71 F.4th 264 (5th Cir. 2023) ................................................ 2, 15

*Leeke v. Timmerman*,
  454 U.S. 83 (1981) ..................................................................... 11

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) ................................................................... 11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 560–61 (1992) ................................................................ 4, 12

*Reno v. ACLU*,
  521 U.S. 844, 872 (1997) ............................................................................ 6

*Sure-Tan, Inc. v. NLRB*,
  467 U.S. 883 (1984) .................................................................................. 11

*Texas Corn Producers v. United States Environmental Protection Agency*,
  No. 24-60209, 2025 WL 1741481 (5th Cir. June 24, 2025) .................... 2, 15

**Statutes**

TEX. PEN. CODE § 30.06(b) ..................................................................... 5, 6, 8

TEX. PENAL CODE § 30.007 (b) ............................................................... 5, 6, 8

## Summary of the Argument

Appellants' Response to Appellees' Petition for Rehearing En Banc fails to overcome the fundamental errors in the panel Opinion: its direct contravention of governing precedent and complete lack of factual support in the record. Accordingly, the Court should vacate the Opinion and grant rehearing before the full Court.

Appellants' claim that Houston Police Chief failed to demonstrate a basis for rehearing *en banc* is simply incorrect. First, he demonstrated that the Opinion conflicts with both Supreme Court precedent and *this Court's* precedent on the critical issue of issue of who has standing to sue for alleged governmental restrictions on speech. Because the panel's creation of a newly-broadened test for such standing improperly rewrites this Court's jurisprudence, and is raised often in cases involving government officials, it is critical that this important issue be clearly resolved now.

Second, Appellants fail to correct or support the Opinion's many unsupported but crucial factual assumptions and speculation in their failed attempt to show a redressable injury caused by Houston Police Chief. Such assumptions and speculation are both easily disproven and are wholly without support in the appellate record. They cannot, therefore, save the Opinion. Worse, the panel's reliance upon them, if unremedied, creates in this Circuit the

precedent that almost anyone can easily establish standing to sue even apex government officials with no connection to the incident in question. The potential for abuse of that newly and wrongly-enlarged right alone also warrants review.

Finally, Appellants' attempt to misapply the Supreme Court's opinion in *Diamond Alternative Energy v. EPA*, and this Court's opinions in *Texas Corn Producers v. EPA*, and *General Land Office v. Biden*, also fails. Each is easily distinguishable.

Accordingly, the Court should vacate the Opinion and grant rehearing before the full Court.

## Argument

### I.   THE OPINION STILL DIRECTLY CONFLICTS WITH PRIOR SUPREME COURT AND/OR FIFTH CIRCUIT PRECEDENT.

Appellants Bay Area Unitarian Universalist Church ("Church"); Drink Houston Better, LLC d/b/a Antidote Coffee ("Antidote"); and Perk You Later, LLC (collectively "Appellants") argue that the Petition for Rehearing En Banc, filed by Appellee Chief of Houston Police Department J. Noe Diaz ("Houston Police Chief")[1], failed to identify any conflicting Supreme Court or circuit court

---

[1] Appellants originally sued Art Acevedo, in his official capacity as Chief of the Houston Police Department. ROA.27, 31. Chief Acevedo resigned as Chief of the Houston Police

precedent, as well as any issue of exceptional importance. *See* Plaintiffs-Appellants' Response to Petitions for Rehearing En Banc, pp. 4–6. Appellants are demonstrably wrong.

Houston Police Chief's Petition describes how the panel's Opinion directly conflicts with existing precedent to improperly rewrite the standing doctrine. Consequently, the Opinion should be vacated and the appeal should be given a rehearing by the full court.

### A. The Opinion Directly Conflicts With and Fatally Undermines existing Well-Settled Standing Jurisprudence, by Relying On Unsupported Speculation That Contradicts Texas Law and the Record Here.

To establish standing, among other things, a Texas or federal plaintiff must have

> suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

---

Department in 2021, and was replaced by Chief Finner, who stepped into Chief Acevedo's role as a party to this litigation. ROA.875.

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The panel's radical rewriting of this well-settled test to find standing here warrants review.

First, as Justice Jones explains in her dissent, the panel essentially removes or reduces to "meaninglessness" the essential requirement of concrete, actual injury. *Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, 2025 WL 1066187, at *7 (5th Cir. Apr. 9, 2025) ("BAUUC") (Jones, J., dissenting). Instead, it incorrectly imports and substitutes "asymmetrical injury" from *Davis v. FEC*, 554 U.S. 724, 732 (2008), and improperly applies it for the first time to *asymmetrical circumstances* to find that Appellants received "asymmetrical treatment" under Texas Penal Code, sections 30.06 and 30.07 (the "Acts"). Because the parties and situations start out different, however, use of this new, self-validating test for standing would mean that *there will always be an asymmetrical injury under the panel's test.* The standing doctrine would essentially disappear.

*Davis*, however, which is not a signage case, permits nothing of the kind. In *Davis*, the Supreme Court had to decide whether *two candidates for the same office* had been treated differently. It held that the so-called "Millionaire's Amendment" of the Bipartisan Campaign Reform Act of 2002—which permitted the *opponent* of a candidate who spent over $350,000 of his personal funds to collect triple the normal contribution amount, while the candidate who

spent the personal funds remained subject to the original contribution cap—unconstitutionally forced a candidate "to choose between the First Amendment right to engage in unfettered political speech and subjection to discriminatory fundraising limitations." *Id.*, at 739. The Supreme Court found that such "asymmetrical" regulation "impose[d] a substantial burden on the exercise of the First Amendment right to use personal funds for campaign speech[.]"*Id.*, at 739–740.

Here, the panel's Opinion compared plaintiffs seeking to ban guns from their business premises to hypothetical parties who might one day post signs about matters other than guns. It then openly speculated how those hypothetical parties and plaintiffs would be treated but failed to support either the panel's comparison or its speculative outcome with any evidence or case law. The record contains none and Plaintiffs' response pointed to none. It is little wonder the panel found that Appellants suffer from "asymmetrical" treatment under the Acts,[2] sufficient to constitute an injury for purposes of standing, given that the real and hypothetical parties exist is such disparate circumstances. *See BAUUC*, 2025 WL 1066187, at *3.

---

[2] The Opinion states that "property owners who wish to express a prohibition on firearms are treated differently from property owners who wish to express a prohibition on virtually any other item or entrant." *Id.* (*comparing* TEX. PENAL CODE § 30.06, *with id.* § 30.05(b)(2)(C)).

These obvious factual differences also demonstrate why *Davis* and its progeny have no application in this or any signage case. But there are others. Critically, the Opinion speculates, or simply assumes, that, if Appellants do not post compliant signs, their right to exclude is limited because property rights are protected by the deterrent value of the criminal laws *and those laws and law enforcement are somehow no longer available to plaintiffs*. *Id.*, at \*4 (citing *Reno v. ACLU*, <u>521 U.S. 844, 872</u> (1997)). Again, there is nothing in the record, or in Texas law, that supports this assumption. Instead, both clearly hold the opposite.

As Justice Jones points out, under Texas law and the record here, local police will still show up if plaintiffs call them to exclude persons carrying guns. *Id.*, at \*7. Indeed, the evidence shows that Webster police have shown up ten times when called for this purpose over the years. *Id.* Critically, the Webster Police Chief himself testified that his department's *response is no different* when the trespass call is to a location that posts the requisite sign and one that does not. *Id.* Texas statutes on trespass also make no distinction even if such a trespasser has been only verbally warned. *See* TEX. PEN. CODE §§ 30.06(b), 30.07(b).  The evidence and Texas law thus support Justice Jones' conclusion that, "whether Plaintiffs post the prescribed sign, a modified sign, or no sign at

all, makes no difference to their right to protection as landowners or occupants of the property." *BAUUC*, 2025 WL 1066187, at *7.

Appellants are, therefore, not "worse off" than the hypothetical sign posters on which the panel relies. This puts the Opinion—and its reasoning—at odds with existing jurisprudence, including the Supreme Court's decision in *Davis*, and the record here.

This is also true despite the panel's misplaced reliance on *K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010), for the notion that Appellants' alleged injuries are fairly traceable to the Houston Police Chief. *See BAUUC*, 2025 WL 1066187, at 10. *K.P.* concerned decisions by a Louisiana state compensation fund's oversight board to deny coverage to otherwise qualifying physician's claims. *See* 627 F.3d at 119–20. Here, the record shows that neither Houston Police Chief—nor any of his predecessors—is empowered to decide whether to deny full protection under law to any Appellant.

Neither the cited authorities nor the appellate record supports a holding that Appellants' alleged injuries are fairly traceable to the Houston Police Chief. Accordingly, the Opinion should be withdrawn and rehearing granted by the full Court.

**B.    Appellants Fail to Identify Genuine Injury When Texas Law Permits Any Property Owner to Remove Unwanted Guests.**

Appellants' Response—like the Opinion they seek to support—relies upon the repeated application of false presumptions for injuries allegedly traceable to Houston Police Chief.

For example, Appellants assert that Plaintiff-Appellant Bay Area Unitarian Universalist Church (the "Church")—having elected not post signage confirming with Texas Penal Code Section 30.06 (concerning concealed-carry firearms)—"has therefore forgone its full 'sacred and inviolable' right to exclude, as well as its associational right to conduct religious services as it chooses." Response, at 3 (quotations omitted). Appellants further argue that, "[t]he statutes therefore impose a coercive choice between the full exercise of owners' property rights and the full exercise of owners' free speech rights." Response, at 7. However, as demonstrated above, there is *nothing* in either Appellants' Response or Texas law to support this assertion.

In their Response, Appellants argue that Houston Police Chief (and Co-Appellee Webster Acting Police Chief Bacon) have misstated the deposition testimony of Sharlene Rochen, the administrator of Appellant Bay Area Unitarian Universalist Church, who testified as to having no complaints about the police response to their requests for assistance. *See* Response, at 9. Appellants argue that Rochen's testimony is irrelevant because, "none of these calls

8

involved armed trespassers[.]" *Id.*, p. 9. Part of Rochen's testimony concerned a call to the Webster Police Department concerning a homeless woman that entered the church. ROA.1457–60. While the homeless woman did not, in fact, possess a firearm at the time, Rochen still testified as follows:

```
 4        Q     If she had a firearm, would you have called
 5   the police?
 6        A     Yes.
```

…

```
18        Q     Okay.  If someone had a gun on the premises of
19   your church, would you call the police?
20        A     I would, yes.
21        Q     And the police would -- would show up?
22        A     I would hope.
23        Q     You don't have any reason to believe they
24   would not?
25        A     No, I don't.
```

ROA.1460. This testimony dispels any notion that the Church felt police officers would respond differently to calls for assistance, despite the absence of compliant signage.

Additionally, neither the Opinion, nor Appellants' Response provides any support from the record for the assertion that "when police do arrive, … [they]

sit on their hands in the absence of compliant signage[.]" Opinion, at 9, n. 4.[3]

In the absence of proof to support this assertion, Appellants direct the Court to an incident report involving an unrelated, third-party establishment where Webster Police officers noted that complaint signage was present. *See* Response, at 10 (citing ROA.1425). Notably, this report was not created by Houston Police Chief or his officers. ROA.1425. Moreover, nothing in the cited record indicates that the responding officers decided whether to act or "sit on their hands" based upon the complaint signage. *See id*. Accordingly, this argument fails.

Neither the Opinion, nor Appellants' mischaracterizations of the record, demonstrate the existence of an injury capable of supporting the panel's holding, and rehearing is warranted.

**C.    The Panel Also Improperly Rewrote and Undermined Long-Standing Free Speech Jurisprudence By Misusing *Davis*— Again—to Find Compelled Speech.**

Houston Police Chief's Petition also demonstrates that the panel's Opinion improperly loosens and rewrites the standards for "compel[led] speech" under the Texas Penal Code. *See BAUUC*, 2025 WL 1066187, at *3. As Justice Jones observed in her dissent, on this record and under Texas law, "not only is

---

[3] The Opinion fails to include any citation to the appellate record to support this assertion. *See BAUUC*, 2025 WL 1066187, at *9, n. 4.

nothing 'compelled,' there is no penalty attached to Appellants' refusals to post the statutory language." *Id.*, at *6–8 (Jones, J., dissenting) (citing *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 267–69 (5th Cir. 2024)) (plaintiff pornographic websites had standing to bring a First Amendment challenge to a Texas law requiring the websites to display "health warnings" on their webpages or pay a fine); *Book People, Inc. v. Wong*, 91 F.4th 318, 329–32 (5th Cir. 2024) (booksellers had standing to bring a First Amendment challenge to a Texas law requiring warnings of sexual content on books sold to Texas schools—or they couldn't sell the books)). The only possible difference between the treatment of offending gun owners under Acts and Texas common law relates to the possible prosecution for criminal trespass—in which Appellants have no legally recognized interest. *See Diamond*, 476 U.S. at 56 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981); *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984); *Younger v. Harris*, 401 U.S. 37, 42 (1971); *Bailey v. Patterson*, 369 U.S. 31, 33 (1962); *see also Allen v. Wright*, 468 U.S. 737, 754 (1984) ("[An] asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.").

Again, the Opinion is at odds with the standing jurisprudence of both the Supreme Court and this court. Accordingly, the Opinion should be withdrawn and rehearing granted by the full Court.

## II.   THE NEW AUTHORITIES, CITED BY APPELLANTS IN SUPPORT OF THEIR ARGUMENT, FAIL TO SUPPORT THEIR ARGUMENT.

Appellants' Response relies upon several recent cases, including the Supreme Court's holding in *Diamond Alternative Energy, LLC v. EPA*.[4] *See* Response, pp. 16–17. Because each of these cases is easily distinguishable, this argument fails.

In *Diamond Alternative Energy*, the Supreme Court held that fuel producers had standing to challenge the EPA's approval of California regulations requiring automakers to produce more electric vehicles and fewer gasoline-powered vehicles. 145 S.Ct. at 2135–38. In analyzing the redressability of the plaintiff's alleged injury, the Supreme Court observed that:

> When a plaintiff is the "object" of a government regulation, there should "ordinarily" be "little question" that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries.

*Id.*, 145 S. Ct. at 2134 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). But,

---

[4] 145 S. Ct. 2121 (2025).

> When the plaintiff is not the object of a government regulation, however, causation and redressability often depend on how regulated third parties not before the court will act in response to the government regulation or judicial relief. ***Courts must distinguish the "predictable" from the "speculative" effects of government action or judicial relief on third parties***. With respect to causation (and redressability), a court must conclude that " 'third parties will likely react' " to the government regulation (or judicial relief) " 'in predictable ways' " that will likely cause (or redress) the plaintiff's injury.

*Id.*, 145 S. Ct. at 2134 (internal citations omitted) (emphasis added). The Court went further to explain that, "[w]hen third party behavior is predictable, commonsense inferences may be drawn." *Id*. In that case, the Supreme Court provided that "commonsense economic principles" could be applied to "record evidence" that supported the fuel producers' argument for standing.[5] *See id*.

Here, Appellants assert that, "[i]f it was 'predictable' in *Diamond Alternative Energy* that emissions standards and an electric-vehicle mandate would cause automakers to produce fewer gasoline-powered vehicles, in turn leading to fewer gasoline sales, in turn harming gasoline producers—then surely it is predictable that gun-carrying Texans will follow Texas law in determining

---

[5] As the Court observed, fuel producers make money by selling fuel, so a decrease in purchases of gasoline and other liquid fuels hurts their bottom line. *See id*. "As for causation, ... [t]he regulations likely cause fuel producers' monetary injuries because the regulations likely cause a decrease in purchases of gasoline. *Id*. The Court later opined that while "it may not be certain, but it is at least 'predictable' that invalidating the California regulations would likely result in the fuel producers ultimately selling more gasoline and other liquid fuels." *Id*. at 2135, 2025 WL 1716141 at *13.

which establishments they may enter with guns." Response, at p. 16 (citing *Diamond Alternative Energy,* at 2134 (citation omitted)). However, this argument ignores the speculative nature of Appellants' presumptions, while also overlooking obvious differences between *Diamond Alternative Energy* and the case at bar.

Here, the Acts do not regulate business—they create unique criminal offenses applicable to two special classes of people who carry firearms: those who carry openly, and those who do so in a concealed fashion. *See* Tex. Penal Code §§ 30.06–.07. But these criminal offenses operate alongside *existing* Texas property law that permits property owners to expel or remove unwanted guests for any reason. *See id.*, § 30.05. Moreover, there is nothing in the record to establish that gun owners will necessarily act in "predictable ways" that would allow for similar "commonsense inferences" to be drawn in support of Appellants' arguments. Maybe some gun owners will respect signs with any design or content. Maybe some gun owners will not. Such circumstances are rife with the speculation that precludes the inferences allowed in *Diamond Alternative Energy*.

The only truly predictable response is from law enforcement. There is nothing in the appellate record to support any inference that Houston Police Chief, or his officers, *will not respond* to service calls from any of the Appellants

within its jurisdiction. Thus, the *Diamond Alternative Energy* holding has no application.

Moreover, as described above, the Opinion fails to include "record evidence" in its analysis. Assertions such as "property owners who wish to express a prohibition on firearms are treated differently from [other] property owners who wish to express [another] prohibition" or that police officers will "sit on their hands" are relied upon without any citation to the record. *See BAUUC*, 2025 WL 1066187, at 3, 9, n. 4.

In *Texas Corn Producers v. United States Environmental Protection Agency*, No. 24-60209, 2025 WL 1741481 (5th Cir. June 24, 2025),[6] and *General Land Office v. Biden*, 71 F.4th 264 (5th Cir. 2023),[7] this Court applied the *Diamond Alternative Energy* reasoning in similar regulatory circumstances with the same outcomes. However, those cases—like *Diamond Alternative Energy*—involve more reliable, straight-forward scenarios that better allow for the type of "commonsense inferences" allowed by the Supreme Court. This appeal concerns substantially

---

[6] This Court held that petitioners "have met their burden of showing that third parties"—the automakers—"will likely react in predictable ways to the [CAFÉ standards]" that will decrease demand for gasoline, thereby injuring petitioners. *See* 2025 WL 1741481, at *7–8.

[7] This Court held that the State of Texas sufficiently alleged a causal connection between Department of Homeland Security's (DHS) failure to comply with the statutory mandate to build more miles of wall along the United States-Mexico border and damage to the State from increased illegal immigration, in the form of increased healthcare, education, and other costs, as required for Texas to have Article III standing. *See* 71 F.4th at 273.

more speculative variables, and so is distinguishable from those cases. Accordingly, Appellants' argument fails.

## Prayer for Relief

For the foregoing reasons, Appellee/Petitioner Chief of Houston Police Department J. Noe Diaz asks that this Court grant rehearing en banc, issue a new opinion affirming the decision of the District Court, enter a take nothing judgment/dismissal in favor of the Houston Police Chief, and award to him such other relief as to which this Court finds it entitled.

Respectfully submitted,

ARTURO G. MICHEL
City Attorney
SUZANNE R. CHAUVIN
Chief, General Litigation Section

By:    /s / Donald B. Hightower
        Donald B. Hightower
        Senior Assistant City Attorney
        SBN: 24062780
        donald.hightower@houstontx.gov
        CITY OF HOUSTON LEGAL DEPARTMENT
        900 Bagby, 4th Floor
        Houston, Texas 77002
        Telephone:   832.393.6429
        Facsimile:    832.393.6259

*Attorneys for Defendant-Appellee Chief of Houston
Police Department J. Noe Diaz*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on July 18, 2025 on all counsel of record:

/s/ Donald B. Hightower
Donald B. Hightower

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(g)(1) and 27(d)(2)(a) in that it contains 2,923 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Calisto MT 14 point font.

/s/ Donald B. Hightower
Donald B. Hightower