No. 23-20165

---

In The United States Court of Appeals
for The Fifth Circuit

---

Bay Area Unitarian Universalist Church; Drink Houston Better,
L.L.C., doing business as Antidote Coffee; Perk You Later, L.L.C.,
Plaintiffs – Appellants

v.

Harris County District Attorney Kim Ogg; County Sheriff Ed Gonzalez;
Webster Acting Chief Pete Bacon; Chief of Houston Police Department Troy
Finner,
Defendants – Appellees

---

On Appeal from Civil Action Number 4:20-cv-03081, in the United States
District Court for the Southern District of Texas, Houston Division

---

**En Banc Brief of Appellee Chief of Houston Police Department J. Noe Diaz**

---

Arturo G. Michel
City Attorney

Suzanne R. Chauvin
Chief, General Litigation Section

Donald B. Hightower
Senior Assistant City Attorney
SBN: 24062780
City of Houston Legal Department
900 Bagby, 4th Floor
Houston, Texas 77002
Telephone: 832.393.6429
Facsimile:  832.393.6259
donald.hightower@houstontx.gov

*Attorneys for Defendant-Appellee Chief of
Houston Police Department J. Noe Diaz*

No. 23-20165

In The United States Court of Appeals
for The Fifth Circuit

Bay Area Unitarian Universalist Church; Drink Houston Better,
L.L.C., doing business as Antidote Coffee; Perk You Later, L.L.C.,
Plaintiffs – Appellants
v.

Harris County District Attorney Kim Ogg; County Sheriff Ed
Gonzalez; Webster Acting Chief Pete Bacon; Chief of Houston
Police Department Troy Finner,
Defendants – Appellees

On Appeal from Civil Action Number 4:20-cv-03081, in the United States
District Court for the Southern District of Texas, Houston Division

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal. The judge below was the Honorable Ewing Werlein, Jr.

| | |
|---|---|
| Appellants: | Bay Area Unitarian Universalist Church<br>Drink Houston Better, L.L.C., doing business as Antidote Coffee<br>Perk You Later, L.L.C. |
| Trial and Appellate Counsel for Appellants: | Alla Lefkowitz<br>Andrew Nellis<br>Ryan Gerber<br>Laura Keeley<br>Everytown Law<br>Charlotte H. Taylor<br>Lesley Roe<br>William R. Taylor<br>Jones Day |
| Appellees: | Harris County District Attorney Kim Ogg<br>County Sheriff Ed Gonzalez<br>Webster Acting Chief Pete Bacon<br>Chief of Houston Police Department Troy Finner (now J. Noe Diaz) |
| Trial and Appellate Counsel for Appellees Kim Ogg and Ed Gonzalez: | Heena Kepadia<br>Moustapha Gassama<br>Harris County Attorney's Office |
| Trial and Appellate Counsel for Appellee Pete Bacon: | William S. Helfand<br>Justin C. Pfeiffer<br>Sean M. Higgins<br>Lewis Brisbois Bisgaard & Smith, LLP |
| Trial Counsel for Appellee Troy Finner: | Melissa Azadeh<br>City of Houston Legal Department |
| Appellate Counsel for Appellee Troy Finner: | Donald B. Hightower<br>City of Houston Legal Department |

_/s / Donald B. Hightower_
Donald B. Hightower

*Attorney for Defendant-Appellee Chief of Houston Police Department J. Noe Diaz*

# Table of Contents

**Page**

Certificate of Interested Persons.....................................................ii

Table of Contents............................................................... v

Table of Authorities ............................................................ vii

Statement of the Case............................................................ 2

      1.   Factual Background........................................................ 2

      2.   Appellants' claims ......................................................... 4

      3.   Motions to Dismiss......................................................... 4

      4.   Houston Police Chief's Motion for Judgment on the Pleadings........................................................... 5

      5.   Court of Appeals' Panel Opinion....................................... 7

Summary of the Argument ......................................................... 8

Argument ....................................................................... 9

   I.   Standard of Review – Judgment on the Pleadings - Rule 12(c)
..................................................................... 9

   II.   The District Court Properly Granted Houston Police Chief's Motion for Judgment on the Pleadings Under Rule 12(c) for lack of standing. ............................................................... 11

         A.   Appellants fail to sufficiently allege any injury-in-fact.
................................................................. 12

             1.   Appellants' purported injury is premised upon a rhetorical fallacy........................................... 14

             2.   Appellants' purported injury is purely "conjectural or hypothetical". ....................... 19

                 a.   No "asymmetrical" treatment .............. 20

b.    No "unconstitutional conditions".........23

c.    No "reputational injury"......................25

B.    Appellants fail to sufficiently allege any injury that is "fairly traceable" to Houston Police Chief. .............29

Prayer for Relief...........................................................................40

Certificate of Service ...................................................................42

Certificate of Compliance ............................................................42

# Table of Authorities

**Page(s)**

**Cases**

*A & R Eng'g & Testing, Inc. v. Scott,*
  72 F.4th 685 (5th Cir. 2023) .......................................................... 12, 14, 19

*Allen v. Wright,*
  468 U.S. 737 (1984) ...........................................................................17, 24

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.,*
  300 F.3d 620 (5th Cir. 2001) ................................................................. 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................... 10

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979) ............................................................................... 14

*Bailey v. Patterson,*
  369 U.S. 31 (1962)..............................................................................17, 24

*Baker v. Carr,*
  369 U.S. 186 (1962) ............................................................................... 12

*Bay Area Unitarian Universalist Church v. Ogg,*
  No. 23-20165, 2025 WL 1066187 (5th Cir. Apr. 9, 2025)................... passim

*Bay Area Unitarian Universalist Church v. Paxton,*
  No. CV H-20-3081, 2022 WL 22869779 (S.D. Tex. Sept. 29, 2022) ............. 2

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................... 10

*Blackburn v. City of Marshall,*
  42 F.3d 925 (5th Cir. 1995) ................................................................... 11

*Book People, Inc. v. Wong,*
  91 F.4th 318, 329–32 (5th Cir. 2024)...................................................... 24

*California v. Texas,*
    141 S. Ct. 2104 (2021) ............................................................... 32

*Cedar Point Nursery v. Hassid,*
    594 U.S. 139, 149–50 (2021) ................................................... 16

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .................................................13, 20, 29, 30

*Davis v. Federal Election Commission,*
    554 U.S. 724 (2008) ...................................................... 21, 22, 23

*Diamond v. Charles,*
    476 U.S. 54, 64, 106 S. Ct. 1697, 1704, 90 L. Ed. 2d 48 (1986) ..........16, 24

*Diamond Alternative Energy, LLC v. EPA,*
    145 S. Ct. 2121 (2025) ...................................................... 38, 39, 40

*Dolan v. City of Tigard,*
    512 U.S. 374, 384, 393 (1994) ................................................. 16

*E.T. v. Paxton,*
    41 F.4th 709 (5th Cir. 2022) ................................................... 29

*Edionwe v. Bailey,*
    860 F.3d 287 (5th Cir. 2017) ............................................... 9, 23

*Flast v. Cohen,*
    392 U.S. 83 (1968) ................................................................ 12

*Free Speech Coalition, Inc. v. Paxton,*
    95 F.4th 263, 267–69 (5th Cir. 2024) .................................... 24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) .............................................................. 12

*General Land Office v. Biden,*
    71 F.4th 264 (5th Cir. 2023) ................................................. 40

*Glass v. Paxton,*
    900 F.3d 233 (5th Cir. 2018) .............................................19, 20

*Gomez v. Galman*,
  18 F.4th 769, 775 (5th Cir. 2021) ............................................................ 11

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ............................................................... 9, 10

*Hale v. King*,
  642 F.3d 492 (5th Cir. 2011) ...............................................................10, 11

*Henderson v. Stalder*,
  287 F.3d 374, 379 (5th Cir.2002) ............................................................ 33

*In re Gee*,
  941 F.3d 153, 164–65 (5th Cir. 2019)....................................................... 19

*Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*,
  601 F.2d 809 (5th Cir. 1979) .................................................................... 30

*Justice v. Hosemann*,
  771 F.3d 285 (5th Cir. 2014) .................................................................... 30

*K.P. v. LeBlanc*,
  627 F.3d 115 (5th Cir. 2010) ..............................................................33, 34

*Kaiser Aetna v. United States*,
  444 U.S. 164, 176, 179–180 (1979) .......................................................... 16

*Leeke v. Timmerman*,
  454 U.S. 83 (1981)............................................................................16, 24

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973)..........................................................................16, 24

*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419, 435 (1982)......................................................................... 16

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................ passim

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923) ................................................................................ 33

*Meese v. Keene*,
    481 U.S. 465 (1987) ................................................................. 28

*Montoya v. FedEx Ground Package Sys., Inc.*,
    614 F.3d 145 (5th Cir. 2010) ................................................. 10

*Nollan v. California Coastal Comm'n*,
    483 U.S. 825, 831 (1987) ........................................................ 16

*Pool v. City of Houston*,
    978 F.3d 307 (5th Cir. 2020) ................................................... 7

*Reno v. ACLU*,
    521 U.S. 844, 872 (1997) ........................................................ 22

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020), *as revised* (Oct. 30, 2020) ............................... 13

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ................................................................. 14

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ................................................... 30

*Sure-Tan, Inc. v. NLRB*,
    467 U.S. 883 (1984) ........................................................ 16, 24

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................ 30, 33

*Taylor v. Books A Million, Inc.*,
    296 F.3d 376 (5th Cir. 2002) ................................................. 10

*Texas Corn Producers v. United States Environmental Protection Agency*, No. 24-60209, 2025 WL 1741481 (5th Cir. June 24, 2025) ................................... 40

*U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
    336 F.3d 375 (5th Cir. 2003) ................................................. 10

*Virginia v. Am. Booksellers Assn., Inc.*,
    484 U.S. 383 (1988) ................................................................. 32

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724, 735 (5th Cir. 2019) ............................................................. 11

*Younger v. Harris*,
  401 U.S. 37 (1971) ...................................................... 14, 16, 24

**Statutes**

Tex. Gov't Code § 411.171 ................................................................. 2

Tex. Penal Code § 30.05 ................................................................. 3, 23

Tex. Penal Code § 30.05(a) .......................................................... 3, 23

Tex. Penal Code § 30.05(b)(2) ........................................................... 3

Tex. Penal Code § 30.06 ........................................................... passim

Texa Tex. Penal Code § 30.06(a) ........................................................ 3

Tex. Pen. Code § 30.06(b) ...................................................... passim

Tex. Penal Code § 30.06(c)(3) ........................................................... 4

Texas Penal Code § 30.06(c)(3)(B)(i)................................................. 26

Texas Penal Code § 30.06(c)(3)(B)(ii)................................................ 26

Texas Penal Code § 30.06(c)(3)(B)(iii)................................................26

Tex. Penal Code § 30.07 ........................................................... passim

Texa Tex. Penal Code § 30.07(a) ........................................................ 3

Tex. Pen. Code § 30.07(b) ...................................................... passim

Tex. Penal Code § 30.07(c)(3) ........................................................... 4

Texas Penal Code § 30.07(c)(3)(B)(i)................................................. 26

Texas Penal Code § 30.07(c)(3)(B)(ii)................................................ 26

Texas Penal Code § 30.07(c)(3)(B)(iii)............................................... 26

Tex. Sess. Law Serv. Ch. 437 (H.B. 910) ........................................... 2

TX CIV ST Art. 4413 (29ee) ........................................................... 2

**Rules**

Federal Rule of Evidence 201 ...................................................... 11

To the Honorable Fifth Circuit Court of Appeals:

This is a lawsuit with no justiciable controversy. Appellants do not have standing to pursue the relief they seek as to Appellee Chief of Houston Police Department J. Noe Diaz ("Houston Police Chief").[1] Appellants Bay Area Unitarian Universalist Church ("Church"); Drink Houston Better, LLC d/b/a Antidote Coffee ("Antidote"); and Perk You Later, LLC (collectively "Appellants") challenge the constitutionality of two Texas criminal trespass statutes—Texas Penal Code sections 30.06 and 30.07 (the "Acts")—which they allege violate their First Amendment rights. Appellants seek a declaratory judgment on the constitutionality of the Acts and an injunction against any enforcement of the Acts by Houston Police Chief—despite failing to allege that Houston Police Chief previously enforced or threatened to enforce the Acts against them or any other property owner. The district court recognized the fruitlessness of Appellants' Complaint and granted Houston Police Chief's Motion for Judgment on the Pleadings.

---

[1] Appellants originally sued Art Acevedo, in his official capacity as Chief of the Houston Police Department. ROA.27, 31. Chief Acevedo resigned as Chief of the Houston Police Department in 2021, and was replaced by Chief Troy Finner, who stepped into Chief Acevedo's role as a party to this litigation. ROA.875. Subsequent to the filing of this appeal, Chief Finner resigned as Chief of the Houston Police Department in May 2024, and was replaced by Chief Diaz, who stepped into Chief Finner's role as a party to this litigation. *See* https://www.houstontx.gov/police/chief/index.htm.

On appeal, a panel of this Court reversed the district court, erroneously holding that Appellants have sufficiently alleged an injury-in-fact that is traceable to Appellees' enforcement of the Acts, demonstrating Appellants' standing to sue. Houston Police Chief, as well as co-Appellees Kim Ogg (as Harris County District Attorney), Ed Gonzalez (as Harris County Sheriff), and Pete Bacon (as Webster Chief of Police) (collectively, the "Appellees"). Appellees' successful Petition for Rehearing En Banc provides this Court with an opportunity to properly apply precedent of this this Circuit and the Supreme Court in affirming the district court's judgment.

## Statement of the Case

### 1.    Factual Background

In 1995, the Texas Legislature passed a law allowing the licensing of persons to carry *concealed* handguns. *Bay Area Unitarian Universalist Church v. Paxton*, No. CV H-20-3081, 2022 WL 22869779, at *1 (S.D. Tex. Sept. 29, 2022) (citing 74th Leg., R.S., Ch. 229, 1995 Tex. Sess. Law Serv. Ch. 229 (to be codified at TX CIV ST Art. 4413 (29ee) (now codified at TEX. GOV'T CODE § 411.171, *et seq*.). In 2015, the Texas Legislature passed a law allowing citizens to *openly* carry handguns in public places. *Id*.; *see* Tex. Sess. Law Serv. Ch. 437 (H.B. 910).

Appellants are property owners who wish to exclude all guns from their church and coffee shop. *See* Appellants' En Banc Brief, p. 7. The Church is a unitarian universalist church located in Webster, Texas. ROA.29. Antidote and Perk You Later are small coffee shops in the Houston/Webster area. ROA.29.

Appellants complain about Texas's criminal trespass statutes under the Texas Penal Code. *See* Appellants' En Banc Brief, pp. 4–5. Texas's general criminal trespass law provides that, "[a] person commits an offense if the person enters or remains on or in property of another … without effective consent" and if the person "(1) had notice[2] that the entry was forbidden" or "(2) received notice to depart but failed to do so." TEX. PENAL CODE § 30.05(a).

Section 30.06 applies to a similar standard to licensed holders of *concealed* handguns, requiring either written or oral notice of denied entry. *See* TEX. PENAL CODE § 30.06(a). Section 30.07 similarly concerns licensed holders of *openly-carried* handguns, also requiring either written or oral notice of denied entry. *See* TEX. PENAL CODE § 30.07(a). Both Sections 30.06 and 30.07 require "written communication" according to specifically defined standards. *See* TEX. PENAL CODE §§ 30.06(C)(3); 30.07(C)(3).

---

[2] Section 30.05 affords property owners many ways to provide notice, including by oral or written communication, an enclosure that is obviously designed to exclude, or a sign that is reasonably likely to come to the attention of the intruders. *See* TEX. PENAL CODE § 30.05(b)(2).

### 2. Appellants' claims

Appellants filed suit on September 2, 2020, against multiple defendants in their official capacities, including Appellees, Ken Paxton (as Attorney General for the State of Texas), Kim Lemaux (as Presiding Officer for the Texas Commission on Law Enforcement), and Vince Ryan (as Harris County Attorney).[3] ROA.30–31. Specifically, Appellants sought declaratory and injunctive relief based upon alleged violations of Article I, Section 8 of the Texas Constitution and the First, Fifth, and Fourteenth Amendments to the Constitution of the United States. ROA.52–55.

### 3. Motions to Dismiss

Each of the Appellees moved to dismiss Appellants' Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. ROA.122–47 (State Officials), 176–87 (Harris County Defendants), 197–211 (Houston Police Chief), 241–67 (Webster). Like the other Defendants, Houston Police Chief argued that the district court lacked subject matter jurisdiction because of Appellants' lack of standing since Appellants do not allege any specific conduct by Houston Police Chief related to the Acts. ROA.197–211.

---

[3] Vince Ryan served as Harris County attorney until 2021, when he was replaced by Christian Dashaun Menefee. Mr. Menefee, in his official capacity, was voluntarily dismissed from the suit on January 3, 2022. ROA.652.

On August 27, 2021, the district court—the Honorable Vanessa Gilmore, presiding—entered an Order ("Judge Gilmore's Order") granting in part, and denying in part the Defendants' various motions to dismiss. ROA.401–28. Specifically, Judge Gilmore's Order dismissed Appellants' due process claims under the Fifth and Fourteenth Amendments, while sustaining Appellants' First Amendment claims (for which Defendants sought dismissal on the basis of standing and ripeness). ROA.17–18, 27–28.

Following the issuance of Judge Gilmore's Order, Defendants Ken Paxton and Kim Lamoux (the "State Officials") filed notices of interlocutory appeal as of right to this Court. ROA.446–48. Appellants promptly dismissed their claims against the State Officials with prejudice. ROA.456–57.

### 4. Houston Police Chief's Motion for Judgment on the Pleadings

On December 23, 2021, Houston Police Chief filed a Rule 12(c) motion for judgment on the pleadings arguing that Appellants lacked standing to pursue claims against him. ROA.626–41.

On September 29, 2022, the district court—the Honorable Ewing Werlien, Jr.,[4] presiding—entered a Corrected Memorandum and Order[5] ("Judge

---

[4] After Judge Gilmore's retirement, the case was assigned to Judge Werlein. ROA.618.
[5] The District Court issued a Corrected Memorandum & Order to correct an error in the original Memorandum and Order, which did not include the full caption of the case. ROA.857–69 (original Memorandum & Order), 870–82 (Corrected Memorandum & Order). No other changes were made to the original Memorandum and Order. ROA.871.

Werlein's Houston Order") granting Houston Police Chief's motion and dismissing all of Appellants' claims against him. ROA.870–82. In so doing, the district court stated that Appellants failed to meet their burden to allege injury in fact connected to Houston Police Chief. ROA.878–81. Specifically, the district court stated that Appellants' claims are based on hypothetical scenarios of what law enforcement and prosecutors may do in various situations. ROA.881. Judge Werlein concluded, "nothing in the statutes themselves compel Appellants to provide the statutory notice to exclude patrons with handguns or suggest that police protection will only be afforded to those who provide statutory notice." ROA.879–80. The district court also noted Appellants have not "pled facts to show that their decision to post the §§ 30.06 and 30.07 signs was in any way coerced or compelled." ROA.880. Rather, "Plaintiffs have failed to meet their burden to allege a plausible set of facts establishing 'a concrete and particularized,' and 'actual or imminent,' injury for which the" police chiefs are responsible. ROA.881.

On November 1, 2022, Appellants and each of the remaining Defendants filed dispositive motions. ROA.954–63, 1427–52.

On March 16, 2023, the district court entered an Order denying Appellants' Motion for Summary Judgment and granting each of the dispositive

motions filed by the remaining Defendants ("Judge Werlein's Final Order").
ROA.2126–48. This appeal then followed.

### 5.    Court of Appeals' Panel Opinion

On appeal, a panel of this Court reversed and remanded the district court's judgment, finding Appellants had Article III standing to seek declaratory and injunctive relief against Appellee Houston Police Chief based upon alleged violations of the First Amendments to the Constitution of the United States. The panel held that Appellants had sufficiently alleged with supporting evidence (1) an injury-in-fact that is both traceable to Defendants' enforcement of sections 30.06 and 30.07 and redressable by a favorable judicial decision. *See Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, 2025 WL 1066187, at *6 (5th Cir. Apr. 9, 2025) (the "panel Opinion").

Circuit Judge Edith H. Jones attached a dissenting opinion in which she pointedly denied the existence of an asymmetrical injury; denied the possibility of adverse effects on Appellants resulting from their failure to post conforming signage; denied the existence of compelled speech; and disputed Appellants' other theories of injury. *See id.*, pp. 6–8.

Houston Police Chief, along with the other Appellees, filed a Petition for Rehearing En Banc that was granted by this Court.

## Summary of the Argument

The people of Texas—acting through their elected representatives—have legalized both the open and concealed carrying of handguns. This is the law of Texas. Appellants do not like this reality, and seek to circumvent Texas law on their own terms. Both the Texas common law and the Texas Penal Code protect Appellants' ability to deny the otherwise lawful possession of handguns on their property. However, Appellants ask this Court for relief beyond that already provided by the common law and the Texas Legislature.

The fundamental failure of Appellants' argument is their repeated—and mistaken—claim that the Acts require them to post prescribed signage in order to deny entry to unwanted gun-possessing patrons. This assertion is patently false. Under both the common law and the Acts, Appellants are always permitted to exercise their rights as property owners to exclude unwanted persons, whether or not they post the specified signage. He Acts allow Appellants to exclude gun-possessing patrons without the posting of signs of any kind as long as they provide oral notification of their policies. Likewise, Appellants can always call local law enforcement to assist if trespassers refuse to leave the premises. The only thing that the Penal Code does restrict is *law enforcement's ability to prosecute* gun-possessing trespassers—something to which Appellants undeniably have *no right* whatsoever. Appellants erroneously

conflate the Texas Penal Code's creation of a criminal offense *against third-party gun-possessing trespassers* with some imagined violation of Appellant's rights.

Appellants don't like guns, and don't want guns on their property. The Acts *do not* restrict or otherwise affect Appellants' rights to deny gun-possessing trespassers in any way.

Accordingly, the district court's judgment should be affirmed.

## Argument

### I. Standard of Review – Judgment on the Pleadings - Rule 12(c)

A district court's grant of a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), is reviewed *de novo. Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017).

A Rule 12(c) motion is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). The standard for deciding a Rule 12(c) motion is identical to that of Rule 12(b)(6). *Id*. at 313 n.8. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face only "when

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

"When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citation omitted). However, courts are not bound to accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statement," or legal conclusions couched as factual assertions. *Iqbal*, 556 US at 678; *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) ("Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim"). Thus, dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 624 (5th Cir. 2001) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)); *see also Hale*, 642 F.3d at 499.

In evaluating whether a plaintiff's complaint survives a motion for judgment on the pleadings, this Court is limited to reviewing: "(1) the facts set

forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)).

## II. The District Court Properly Granted Houston Police Chief's Motion for Judgment on the Pleadings Under Rule 12(c) for lack of standing.

Appellants' constitutional claims are fundamentally and fatally flawed as alleged against Houston Police Chief. Appellants have not plead—nor can they demonstrate—any act, or threat to act, by Houston Police Chief to enforce the Acts *against Appellants*. Consequently, Appellants cannot demonstrate an injury in fact, the first element of the fundamental requirement of standing. Nor have Appellants sufficiently pleaded that their alleged injury is *properly traceable* to Houston Police Chief. Thus, the district court properly determined that Appellants lack the standing necessary to support the district court's subject matter jurisdiction.

To satisfy the Article III case-or-controversy requirement, plaintiffs must have standing to sue "at the time the action commence[d]." *A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 689 (5th Cir. 2023) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000)). "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete

adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.'" *Flast v. Cohen*, 392 U.S. 83, 99 (1968) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). To meet the constitutional standing requirements, (1) the plaintiff must have suffered an "injury in fact," defined as an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the challenged action of the defendant; and (3) it must be likely, not merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

## A. Appellants fail to sufficiently allege any injury-in-fact.

Appellants' Complaint alleges two claims[6] concerning purported First Amendment violations. ROA.32–55. However, the Complaint is fundamentally flawed in that it fails to sufficiently allege facts demonstrating standing, in accordance with the Federal Rules of Civil Procedure. Because the Complaint fails to establish Appellants' standing to sue Houston Police Chief, the district

---

[6] Appellants' original claims alleging violations of the Fifth and Fourteenth Amendments to the Constitution of the United States, as well as the Texas Constitution, were dismissed by Judge Gilmore in her Order. ROA.428.

court was correct in dismissing Appellants' constitutional claims.

This Court has held that a "plaintiff has suffered an injury in fact if he (1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is arguably ... proscribed by [the policy in question], and (3) the threat of future enforcement of the [challenged policies] is substantial." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330–31 (5th Cir. 2020), *as revised* (Oct. 30, 2020) (citation and internal quotation marks omitted).

An allegation of future injury may suffice for Article III if the threatened injury is certainly impending, imminent, or there is a substantial risk that the harm will occur. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415–16 n.5 (2013). Alleging that a future injury is merely "possible" is not enough, *Id.* at 409, because imminence "cannot be stretched beyond its purpose[, to ensure] that the alleged injury is not too speculative for Article III." *Lujan*, 504 U.S. at 560–61.

A plaintiff bringing a pre-enforcement challenge to a criminal statute must "demonstrate a realistic danger of sustaining a direct injury [from its enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). And plaintiffs who allege an intent to engage in proscribed conduct affected by a constitutional interest do not need to "expose [themselves] to actual arrest or prosecution" before they may challenge the law. *Id.* (citing *Steffel v.*

*Thompson*, 415 U.S. 452, 459 (1974)). But a plaintiff fails to allege a case or controversy when they do not allege that they have ever been threatened with prosecution or that prosecution is likely. *Younger v. Harris*, 401 U.S. 37, 42 (1971).

As the district court correctly held, "[Appellants] have failed to meet their burden to allege a plausible set of facts establishing 'a concrete and particularized,' and 'actual or imminent,' injury in fact for which the Houston [Police] Chief is responsible." ROA.881. Consequently, Appellants failed to allege sufficient fact to satisfy the injury-in-fact element of standing, and the district court's judgment should be affirmed. *See A & R Eng'g*, 72 F.4th at 690; *Glass*, 900 F.3d at 239; *In re Gee*, 941 F.3d at 164–65.

### 1. Appellants' purported injury is premised upon a rhetorical fallacy.

Appellants' underlying premise—as expressed in their Complaint—is fatally flawed. Appellants' fundamental desire is that they "want to be able to call the police to remove individuals who enter the property carrying a gun despite [their] no-guns signs." ROA.47. There is nothing in the Acts that expressly prevents this from happening. *See* TEX. PENAL CODE §§ 30.06–.07. Under Texas's general trespass laws, Appellants may exclude whomever they wish, and those persons are subject to prosecution for trespass. *See id.*, § 30.05. The only thing denied by the Acts is the ability to prosecute possessors of

handguns who remain on the property—against the owner's wishes—in the absence of the required oral or written notice. *See id.*, §§ 30.06–.07. Appellants' arguments that the Acts somehow deny their ability to deny admission to gun-possessing trespassers are entirely without merit.

Appellants agree that the signage provisions serve a valid interest but want to secure the prosecution of others under the statutes with different, less conspicuous signs. But the Acts also allow for oral notice of the property owner's wishes to gun owners. *See* TEX. PEN. CODE §§ 30.06(b), 30.07(b). The panel Opinion claimed that this option creates dangerous circumstances for Appellants' employees while also limiting Appellants' "expression preferences." *Ogg*, 2025 WL 1066187, at *4. But as Judge Jones pointed out during oral argument, nothing prevents Appellants' employees from calling law enforcement—either HPD or the Webster Police Department—and asking the responding officers to deliver the oral notice specified by the Penal Code. Thus, Appellants are not "worse off."

Ultimately, Appellants' complaint boils down to an issue faced by every property owner that opens its premises to the public—how to remove unwanted guests. As the Supreme Court has observed, "[t]he right to exclude is 'one of the most treasured' rights of property ownership." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149–50 (2021) (quoting *Loretto v. Teleprompter Manhattan CATV*

*Corp.*, 458 U.S. 419, 435 (1982)). The right to exclude is "universally held to be a fundamental element of the property right," and is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Id.* (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 179–180 (1979)); *see Dolan v. City of Tigard*, 512 U.S. 374, 384, 393 (1994); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831 (1987). But there is nothing in the Acts—or any part of Texas law—that prevents this from happening. *See* Tex. Penal Code §§ 30.06-.07.

Appellants argue that, without the threat of prosecution, they are injured by the loss of the "deterrent effect" provided by the Acts. *See* Appellants' En Banc Brief, pp. 14–15, 17, 33. But "[a] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64, 106 S. Ct. 1697, 1704, 90 L. Ed. 2d 48 (1986) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981); *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984); *Younger*, 401 U.S. at 42; *Bailey v. Patterson*, 369 U.S. 31, 33 (1962). *Cf. Allen v. Wright*, 468 U.S. 737, 754 (1984) ("[An] asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."). Consequently, any failure to prosecute a handgun possessor under the

Acts resulting from Appellants' conduct can never qualify as a lost "benefit" that would create standing. *See id.*

Like the plaintiff in *Diamond*, Appellants' "attempt to maintain the litigation is, then, simply an effort to compel the State to enact a code in accord with [Appellants'] interests." *Id.* at 64-65. Because Appellants challenged only the allegedly "heightened" speech requirements to satisfy alternative notice that could support the hypothetical criminal prosecution of another and voluntarily dismissed the only party against whom such a claim might lie (the State Officials), the District Court lacked subject matter jurisdiction over the case. *See id.*

Appellants also rely upon *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997)—a case concerning enforcement of the Communications Decency Act, aimed at protecting minors from the transmission of materials considered obscene or indecent. *See* Appellants' En Banc Brief, pp. 31, 33. While *Reno* involved a similar First Amendment challenge, the relevant issue was the purported overbreadth of the CDA. *See Reno*, 521 U.S. at 880. Standing was not an issue considered by the Supreme Court in its opinion. *See id.*, *generally*. This is especially relevant to the *Reno* opinion's application to the case at bar where the panel cites *Reno* as authority for its finding of "asymmetrical treatment" injury. *See Ogg*, 2025 WL 1066187, at *4. Specifically, the Opinion asserts that

Appellants, who choose not to post the statutorily-complaint signage are "injured" by the resulting loss of criminal prosecution of gun-possessing trespassers, because—as the Opinion states–"property rights are protected by the deterrent value of the criminal laws." *Id.* (citing *Reno*, at 872). Specifically, the Opinion relies upon the *Reno* holding as authority for the proposition that "deterrence flows from criminal sanctions". But *Reno* provides no such authority or reasoning.

In *Reno*, Justice Stevens considered how the "vagueness" of the CDA created an "obvious chilling effect on free speech" based upon the opprobrium and stigma of a criminal conviction" as well as the "potential penalties of up to two years in prison for each violation. *Reno*, at 872. But the CDA, unlike the Penal Code sections at issue in the case at bar, was to be enforced against the ACLU's clients—not third parties against whom the ACLU would prefer to see prosecuted. *See id.* Again, Appellants confuse the Texas Penal Code's treatment of *third parties* with some imagined injury to Appellants. *Reno* provides no support for such logical gymnastics.

As the district court correctly held, "[Appellants] have failed to meet their burden to allege a plausible set of facts establishing 'a concrete and particularized,' and 'actual or imminent,' injury in fact for which the Houston [Police] Chief is responsible." ROA.881. Consequently, Appellants failed to

satisfy the injury-in-fact element of standing, and the District Court's judgment should have been affirmed. *See A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023); *In re Gee*, 941 F.3d 153, 164–65 (5th Cir. 2019); *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018).

### 2. Appellants' purported injury is purely "conjectural or hypothetical".

Even under the proper standard of review—accepting as true the well-pled factual allegations in the complaint and construing them in a light most favorable to Appellants—the Complaint still fails to properly allege injury-in-fact. The very most that Appellants have alleged is that they *might* be required to call upon the Houston Police Department.[7] Appellants did not allege that they *were* denied police protection or imminently *could be*, or that they are *required* to post any signage at all. This Court has previously held that Article III require more than theoretical possibilities. *See In re Gee*, 941 F.3d at 164–65. In such a "chain of contingencies" each "link" must be "certainly impending" to confer standing. *See Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018) (citing *Clapper*, 568 U.S. at 410–14).[8]

---

[7] In the words of the District Court, "Plaintiffs' claims are based on conjectural and hypothetical imaginings of what the police *might do* or *might not do* and what the prosecutors *might do* and *might not do* under various scenarios." ROA.881 (emphasis added).

[8] Appellants also rely upon the arguments and evidence asserted in response to the District Court's dismissals of all claims against Co-Appellees District Attorney Kim Ogg, Sheriff Ed Gonzalez, and Chief Pete Bacon. *See* Appellants' Opening Brief, p. 50. But Appellants' evidence, and the arguments asserted premised upon such evidence, were provided to the

### a. No "asymmetrical" treatment

While not discussed in the district court, Appellants argue to this Court that sections 30.06 and 30.07 of the Texas Penal Code create "asymmetrical treatment" for property owners who wish to keep firearms off their property since they "must comply with burdensome signage requirements[.]" Appellants' En Banc Brief, p. 19. Appellants argue that this "treatment inherent in the statutes is patent." *Id.*

The panel's Opinion found that "[Appellants] suffer an ongoing injury because they are subject to a statutory scheme that treats varying types of similar speech differently." *Ogg*, 2025 WL 1066187, at *7. However, the panel's subsequent analysis of Appellants' "treatment" under the statutory scheme is completely at odds with the evidence provided to the Court.

As Judge Jones explained in her dissent, the panel essentially removed or reduced to "meaninglessness" the essential requirement of concrete, actual injury. *See Ogg*, 2025 WL 1066187, at *7 (Jones, J., dissenting). Instead, it incorrectly imports and substitutes "asymmetrical injury" from *Davis v. FEC*, 554 U.S. 724, 732 (2008), and improperly applies it for the first time to *asymmetrical circumstances* to find that Appellants received "asymmetrical treatment" under

District Court after it had already granted judgment in favor of Houston Police Chief, and so have no application in this Court's consideration of that Order.

Texas Penal Code, sections 30.06 and 30.07 (the "Acts"). Because the parties and situations start out different, however, use of this new, self-validating test for standing would mean that *there will always be an asymmetrical injury under the panel's test.* The standing doctrine would essentially disappear.

In *Davis*, the Supreme Court had to decide whether *two candidates for the same office* had been treated differently. It held that the so-called "Millionaire's Amendment" of the Bipartisan Campaign Reform Act of 2002—which permitted the *opponent* of a candidate who spent over $350,000 of his personal funds to collect triple the normal contribution amount, while the candidate who spent the personal funds remained subject to the original contribution cap— unconstitutionally forced a candidate "to choose between the First Amendment right to engage in unfettered political speech and subjection to discriminatory fundraising limitations." *Id.*, at 739. The Supreme Court found that such "asymmetrical" regulation "impose[d] a substantial burden on the exercise of the First Amendment right to use personal funds for campaign speech[.]"*Id.*, at 739–740.

At Appellants' urging, the panel's Opinion compared plaintiffs seeking to ban guns from their business premises to hypothetical parties who *might one day post signs* about matters other than guns. *See Ogg*, 2025 WL 1066187, at *3. It then openly speculated how those hypothetical parties and plaintiffs would be

treated but failed to support either the panel's comparison or its speculative outcome with any evidence or case law. *See id.*, at *4. The record contains none and Appellants have pointed to none. *See* Appellants' En Banc Brief, pp. 19–21.

These obvious factual differences also demonstrate why *Davis* and its progeny have no application in this or any signage case. But there are others. Appellants speculate, or simply assume, that, if they do not post compliant signs, their right to exclude is limited because property rights are protected by the deterrent value of the criminal laws and those laws and law enforcement are somehow no longer available to them. *See id.*, pp. 19–21. Again, there is nothing in the record, or in Texas law, that supports this assumption. Instead, both clearly hold the opposite.

As Judge Jones indicated in her dissent, under Texas law and the record here, local police will still show up if plaintiffs call them to exclude persons carrying guns. *Id.*, at *7. Indeed, the evidence shows that Webster police have shown up ten times when called for this purpose over the years. *Id.* Critically, the Webster Police Chief himself testified that his department's *response is no different* when the trespass call is to a location that posts the requisite sign and one that does not. *Id.* Texas statutes on trespass also make no distinction even if such a trespasser has been only verbally warned. *See* TEX. PEN. CODE §§ 30.06(b), 30.07(b). The evidence and Texas law thus support Justice Jones'

conclusion that, "whether Plaintiffs post the prescribed sign, a modified sign, or no sign at all, makes no difference to their right to protection as landowners or occupants of the property." *Ogg*, 2025 WL 1066187, at *7.

Appellants are, therefore, not "worse off" than the hypothetical sign posters on which the panel relies. Appellants' argument—and its reasoning— are at odds with existing jurisprudence and the record here.

### b. No "unconstitutional conditions"

Appellants also argue that the Texas Penal Code creates a scenario of "compelled speech" by Appellants. But this is simply not the case.

Curiously, Appellants again rely upon *Davis v. Federal Election Commission*, discussed above. *See* Appellants' En Banc Brief, pp. 19–20. But *Davis*—which concerned asymmetrical contribution limits imposed against the plaintiff candidate—has no application to the case at bar, where Sections 30.05 and 30.06 of the Texas Penal Code would only be enforced against criminal trespassers— *not Appellants*. As Judge Jones points out in her dissent, "this fact pattern is completely distinct from actual state-mandated speech cases. Here, not only is nothing 'compelled,' but there is no penalty attached to Plaintiffs' refusals to post the statutory language." *Ogg*, 2025 WL 1066187, at *6–8 (Jones, J., dissenting) (citing *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 267–69 (5th Cir. 2024) (plaintiff pornographic websites had standing to bring a First

Amendment challenge to a Texas law requiring the websites to display "health warnings" on their webpages or pay a fine); *Book People, Inc. v. Wong*, 91 F.4th 318, 329–32 (5th Cir. 2024) (booksellers had standing to bring a First Amendment challenge to a Texas law requiring warnings of sexual content on books sold to Texas schools—or they couldn't sell the books)). The only possible difference between the treatment of offending gun owners under Acts and Texas common law relates to the possible prosecution for criminal trespass—in which Appellants have no legally recognized interest. *See Diamond*, 476 U.S. at 56 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Leeke v. Timmerman*, 454 U.S. 83 (1981); *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984); *Younger v. Harris*, 401 U.S. 37, 42 (1971); *Bailey v. Patterson*, 369 U.S. 31, 33 (1962); *see also Allen v. Wright*, 468 U.S. 737, 754 (1984) ("[An] asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.").

Appellants argue that the Acts are constitutionally violative because they create expressive injury, pocketbook injury. *See* Appellants' En Banc Brief, pp. 22–25. Both arguments fails as they rely upon the oft-repeated fallacy—refuted above—that property must use state-mandated signage to deny gun-possessing patrons' entry onto their property. *See supra*, pp. 15–19.

Appellants argue that the Acts cause them "expressive injury" since the statutes deny them the ability to express that "guns are not permitted on their premises in a different, less obtrusive fashion[.]" Appellants' En Banc Brief, p. 23. But the cited statutes make no such restriction. *See* TEX. PEN. CODE §§ 30.06, 30.07. Contrary to Appellants' argument, they can post any sign of any type that they choose, provided that they provide their oral notice. They may also call upon local law enforcement to assist with the removal of unwanted patrons.

Appellants argue that the Acts cause them "tangible pocketbook damage" based upon the requirement for posting "prescribed signage." Appellants' En Banc Brief, p. 24. But, as described above, Appellants are not required by statute to spend even one dollar on signage in order to give gun-possessing patrons notice of their policies. *See* TEX. PEN. CODE §§ 30.06, 30.07. Appellants can give oral notice to qualify under the criminal trespass statute or simply exercise their rights as premises owners to ask such patrons to leave. *See id.*, §§ 30.06(b), 30.07(b). Appellants cite no authority requiring expenditures of any kind to deny entry to gun-possessing patrons, because no such authority exists. Accordingly, this argument fails.

### c.    No "reputational injury"

Perhaps Appellants' most curious claim is that the Acts have caused them to suffer "reputational injury." *See* Appellants' En Banc Brief, p. 25–26.

Appellants argue that the signage required under the Penal Code represents a "Scarlet Letter" that "attract[s] the opprobrium" or "ill will of members of the public." *Id*., at 25, 39.

Appellants are suspiciously silent about what it is exactly about such signs that would generate this "opprobrium" or "ill will". *See id*., at 25, 39. Is it the statutory requirement that such signage be posted in both English and Spanish? *See* TEXAS PENAL CODE §§ 30.06(c)(3)(B)(i); 30.07(c)(3)(B)(i). Is it the requirement that the notice appear in "contrasting colors with block letters at least one inch in height"? *See* TEXAS PENAL CODE §§ 30.06(c)(3)(B)(ii); 30.07(c)(3)(B)(ii). Is the public upset by the requirements that such notices must be displayed "in a conspicuous manner clearly visible to the public"? *See* TEXAS PENAL CODE §§ 30.06(c)(3)(B)(iii); 30.07(c)(3)(B)(iii). The answer is more likely that any possible public "opprobrium" or "ill will" is generated by Appellants' expression of an opinion that is a minority view in the State of Texas.

Similarly, Appellants assert, "[t]he signs have [] caused [Appellant] Antidote to receive negative online reviews." Appellants' En Banc Brief, p. 25 (citing ROA.1777 (one-star rating from Google user who explained the low rating by stating: "The coffee shop posts 30.06 and 30.07 signage.")). But the cited Google rating indicates that the statutory scheme actually works in Appellants' favor. Appellant Antidote—who admits to posting complaint

signage—complains that a past patron will not return having seen Antidote's sign. Brief, p. 25. This would indicate that Appellant Antidote's signage is having the desired effect by turning away gun-possessing patrons.

Appellants "reputation damage" argument reveals that Appellants don't really want "free speech"—they want free speech *without social consequences*. Appellants' First Amendment rights do not protect them from bad Google reviews. Moreover, in a state such as Texas where public opinion—especially as demonstrated through the actions of their elected representatives—favors both open and concealed carrying of handguns, Appellants' public dissemination of their anti-gun views are likely to draw disfavoring and even perhaps hostile responses. This is neither the fault of Houston Police Chief nor the Texas Penal Code. Any resulting "chill" to Appellants' rights of free speech is a response of the marketplace to unpopular opinions. Appellants cite no authority demonstrating their right to protection from negative reviews, because no such authority exists.

Rather, Appellants rely upon *Meese v. Keene*, 481 U.S. 465 (1987) to support their argument that they "have suffered and will suffer reputational harm for seeking to exclude handguns under sections 30.06 and 30.07." Appellants' En Banc Brief, p. 26. But *Meese* concerned a California State Senator who wished to publicly show three Canadian films designated as "political

propaganda" by the Department of Justice under the Foreign Agents Registration Act of 1938. *See Meese*, 481 U.S. at 468. The complainant sued the Attorney General arguing that the FARA had an unlawful "chilling effect" on his free speech rights by designating the films he chose to screen as "political propaganda" causing him a cognizable injury.[9] *See id.*, at 473. While the Supreme Court held that the claimant has standing to sue, it ultimately ruled that the relevant statute's use of the term "political propaganda" did not rise to the level of a violation of the complainant's First Amendment rights. *See id.*, at 484–85.

Here—as demonstrated by their evidence—the reputational injury that Appellants' allege is not caused by the Texas Penal Code, but by their announced decision to bar handguns on their property. Neither the cited authorities nor the appellate record supports a holding that finds Appellants have suffered an injury-in-fact. Accordingly, the district court's judgment should be affirmed.

---

[9] "The [District Court] found that the Act 'puts the plaintiff to the Hobson's choice of foregoing the use of the three Canadian films for the exposition of his own views or suffering an injury to his reputation.'" *Meese*, 481 U.S. at 475.

**B.     Appellants fail to sufficiently allege any injury that is "fairly traceable" to Houston Police Chief.**

Appellants also failed to allege sufficient facts demonstrating that any purported injury was properly traceable to Houston Police Chief.

Article III also requires Appellants to show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *E.T. v. Paxton*, 41 F.4th 709, 718 (5th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560 (internal quotation omitted)). Thus, Appellants must show a causal connection between the Houston Police Chief's enforcement of the Acts and their purported injury—here, being forced to post purportedly offensive signs or suffer the presence of patrons possessing handguns. *See id.* Traceability is particularly difficult to show where the proffered chain of causation turns on the government's speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases. *See Clapper*, 568 U.S. at 412–14.

Appellants failed to allege sufficient facts concerning any concrete or particularized injury caused by Houston Police Chief—specifically through his purported enforcement of the Acts. The gravamen of Appellants' complaint is that *the Acts* are unconstitutional—not any action by Houston Police Chief. It cannot be ignored that Appellants' thirty-page Complaint mentions Houston

Police Chief *only twice*—once in the case caption, and again in the "Parties" section where Houston Police Chief is simply identified as a Defendant "responsible for enforcing criminal violations of the Acts in the City of Houston." ROA.31. Appellants fail to allege anything else about Houston Police Chief. Furthermore, Appellants do not (and cannot) allege that Houston Police Chief has taken any action to enforce the Acts against Appellants. ROA.30–55.

To establish standing to seek *prospective* injunctive relief, *Appellants* had the burden to allege facts demonstrating that the "threatened injury is 'certainly impending'" or that there is a "'*substantial risk' that the harm will occur*." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 414, n.5); *Lujan*, 504 U.S. at 565 n.2; *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019); *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014) (quoting *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 815 (5th Cir. 1979))). But Appellants alleged only that they "want to be able to call the police to remove individuals who enter the property carrying a gun despite [their] no-guns signs." ROA.47. Appellants *fail to allege* that Houston Police Chief took any action or made any threat to enforce the Acts against them. Further, Appellants plead *no facts* that Houston Police Chief chilled or otherwise impacted their freedom of speech. ROA.30–55.

It was exactly this failure which the district court highlighted in granting

Houston Police Chief's Motion:

> Plaintiffs contend in their opposition brief that they must either use the government-scripted speech on their signage or forfeit police protection. … [but] Plaintiffs' Complaint fails to allege any facts suggesting that Plaintiffs must forego police protection if they choose not to provide the statutory notice--i.e., an "oral or written communication" that entry by a license holder with a concealed or holstered handgun is forbidden. Absent from the Complaint are any allegations that without the statutory notice Plaintiffs could not call the police to remove individuals carrying handguns or allegations that the police have not removed or would not remove individuals with handguns, if requested.

ROA.878–79. The district court also reviewed the four paragraphs of

Appellants' Complaint that feature the word "police," observing that *none of*

*them* use the phrase "*police power*" or allege that Appellants must forfeit police

protection to exercise their right to remain silent. ROA.879. On this basis the

district court concluded that Appellants failed to allege *any facts* capable of

demonstrating the denial of any government benefit as a result of the exercise of

such rights. ROA.879. In concluding that Appellants had wholly failed to satisfy

the requirement to demonstrate standing, the district court stated, "Plaintiffs'

claims are based on conjectural and hypothetical imaginings of what the police

*might do* or *might not do* … under various scenarios." ROA.881 (emphasis

added).

On appeal, Appellants argue that the district court erred in its conclusion because "[t]he complaint pleaded all facts necessary to establish standing[.]" Appellants' Opening Brief, p. 49. However, Appellants fail to direct this Court to *any specific allegations* concerning the Houston Police Chief's enforcement, or threatened enforcement, of the Acts. *See id*. Appellants assert having "alleged that the Houston Police Department *enforces* the challenged statutes in the City of Houston." *Id*. (emphasis added). But Appellants are wrong. The Complaint merely identifies the Houston Police Chief as *responsible for enforcing* criminal violations of the Acts in [] Houston." ROA.31. As the Supreme Court has observed, "our cases have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened enforcement, whether today or in the future." *California v. Texas*, 141 S. Ct. 2104, 2114 (2021) (citing *Babbitt*, 442 U.S. at 298 ("A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement"); *Virginia v. Am. Booksellers Assn., Inc.*, 484 U.S. 383, 392 (1988) (requiring "threatened or actual injury resulting from the putatively illegal action" (internal quotation marks omitted)). In the absence of contemporary enforcement, a plaintiff claiming standing must show that the likelihood of future enforcement is "substantial." *Driehaus*, 573 U.S. at 164; *see also Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the

power [of Article III courts] must be able to show … that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement").

The panel Opinion devoted just four sentences to its conclusion that, "[Appellees'] enforcement of [Texas Penal Code] §§ 30.06 and 30.07 is at least a cause of Plaintiffs' asymmetrical treatment injury." Op. at 10. In reaching this conclusion, the panel relied entirely upon this Court's Opinion in *K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010). *See* Op. at 10.

*K.P.* concerned a suit brought by physicians enrolled in Louisiana's Patient's Compensation Fund (the "Compensation Fund") to challenge the constitutionality of a Louisiana statute defining the tort liability of physicians who perform abortions. *See K.P.*, 627 F.3d at 119–20. The physicians sued the Compensation Fund's oversight board, after the board cited the Louisiana statute as its basis for denying Fund coverage to the physician's claims. *See id*. In addressing the physicians' standing, this Court held that "being denied these and other protections of the Med-Mal Act is a "direct pecuniary injury" that generally is sufficient to establish injury-in-fact. *Id*., at 122 (citing *Henderson v. Stalder*, 287 F.3d 374, 379 (5th Cir.2002)). The Court went on to hold that, since the Compensation Fund's oversight board "can unilaterally preclude the Plaintiffs from claiming the benefits" of the Med-Mal Act, members of the

oversight board "significantly contributed to the Plaintiffs' alleged injuries …
[and] satified the requirement of traceability." *Id.*, at 123. In his concurrence,
Judge Dennis—the author of the panel's Opinion in this appeal—reviewed the
injuries alleged by the K.P. plaintiffs, before concluding that, "the injuries are
obviously directly caused by the Board's decisions, and could be redressed by an
injunction requiring the Board to treat abortion-related malpractice claims the
same way it treats other malpractice claims." *Id.*, at 127 (Dennis, J., concurring).

The *K.P.* holding and concurrence are not remotely analogous to the facts
before the Court in this appeal. Here, Appellants seek only prospective relief.
Most importantly, neither Chief Diaz—nor any of his predecessors—has or will
make a decision that will deny the full protection under law to any of the
Appellants.

Appellants' argument—like the panel Opinion—relies upon the repeated
application of false presumptions for injuries allegedly traceable to Houston
Police Chief.

For example, Appellants assert that the Church—having elected not post
signage confirming with Texas Penal Code Section 30.06 (concerning
concealed-carry firearms)—stands to lose its "sacred and inviolable" right to
exclude unwanted visitors from its property. Appellants' En Banc Brief, pp.1–2.
Appellants further argue that the Acts impose a "coercive choice" between the

full exercise of owners' property rights and the full exercise of owners' free speech rights. *Id.*, at 17. However, as demonstrated above, there is *nothing* in either Appellants' Complaint or Texas law to support this assertion.

Neither Appellants nor the panel Opinion provides any support from the record for the assertion that "when police do arrive, … [they] sit on their hands in the absence of compliant signage[.]" Opinion, at 9, n. 4.[10]

Appellants mistakenly rely upon testimony and documents concerning a 2017 Webster Police Department service call to a Cheddar's restaurant. *See* Appellants' En Banc Brief, pp. 28–29 (citing ROA.1425–26, 1166–68). These documents are notable because they directly refute the premise underlying Appellants' argument. These documents demonstrate that a patron carrying a *concealed* handgun entered the restaurant, which denied *open-carried* handguns while displaying the signage described by Section 30.07. ROA.1425. Apparently at some point the patron's shirt rose up, revealing the patron's previously concealed handgun. ROA.1425. Someone called the Webster Police Department, who noted that "management" advised the patron "to be mindful of not having his pistol visible." ROA.1425. This example illustrates how Sections 30.06 and 30.07 are intended to work. Here, the patron understood that

---

[10] The Opinion fails to include any citation to the appellate record to support this assertion. *See Ogg*, 2025 WL 1066187, at *9, n. 4.

he needed to keep his handgun concealed. ROA.1425. Had he refused, the restaurant management could have asked the responded police officers to remove the patron, or even deliver the oral notice required under Section 30.07—regardless of the signage posted. This example does not support Appellants' argument —it disproves it.

Ultimately, Appellants wholly failed to allege *any facts* concerning the following:

- Officers of the Houston Police Department *cannot respond* to Appellants' calls concerning gun-possessing trespassers;

- Officers of the Houston Police Department *will not respond* to Appellants' calls concerning gun-possessing trespassers;

- Officers of the Houston Police Department *cannot remove* unwanted gun-possessing trespassers; or

- Officers of the Houston Police Department *will not remove* unwanted gun-possessing trespassers.

ROA.27–55. So there is no arguable basis upon which to trace their alleged injuries to Houston Police Chief.

Appellants' argument relies upon the Supreme Court's holding in *Diamond Alternative Energy, LLC v. EPA*.[11] *See* Appellants' En Banc Brief, pp. 31–32. In *Diamond Alternative Energy*, the Supreme Court held that fuel producers had standing to challenge the EPA's approval of California regulations requiring

---

[11] 145 S. Ct. 2121 (2025).

automakers to produce more electric vehicles and fewer gasoline-powered vehicles. 145 S.Ct. at 2135–38. In analyzing the redressability of the plaintiff's alleged injury, the Supreme Court observed that:

> When a plaintiff is the "object" of a government regulation, there should "ordinarily" be "little question" that the regulation causes injury to the plaintiff and that invalidating the regulation would redress the plaintiff's injuries.

*Id.*, 145 S. Ct. at 2134 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). But,

> When the plaintiff is not the object of a government regulation, however, causation and redressability often depend on how regulated third parties not before the court will act in response to the government regulation or judicial relief. ***Courts must distinguish the "predictable" from the "speculative" effects of government action or judicial relief on third parties***. With respect to causation (and redressability), a court must conclude that " 'third parties will likely react' " to the government regulation (or judicial relief) " 'in predictable ways' " that will likely cause (or redress) the plaintiff's injury.

*Id.*, 145 S. Ct. at 2134 (internal citations omitted) (emphasis added). The Court went further to explain that, "[w]hen third party behavior is predictable, commonsense inferences may be drawn." *Id.* In that case, the Supreme Court provided that "commonsense economic principles" could be applied to "record evidence" that supported the fuel producers' argument for standing.[12] *See id.*

---

[12] As the Court observed, fuel producers make money by selling fuel, so a decrease in purchases of gasoline and other liquid fuels hurts their bottom line. *See Diamond Alternative Energy,* 145 S.Ct. at 2134. "As for causation, ... [t]he regulations likely cause fuel producers' monetary injuries because the regulations likely cause a decrease in purchases of gasoline. *Id.*

Here, Appellants assert that, "[i]f it was 'predictable' in *Diamond Alternative Energy* that emissions standards and an electric-vehicle mandate would cause automakers to produce fewer gasoline-powered vehicles, in turn leading to fewer gasoline sales, in turn harming gasoline producers—then surely it is predictable that gun-carrying Texans will follow Texas law in determining which establishments they may enter with guns." Appellants' En Banc Brief, pp. 31–32 (citing *Diamond Alternative Energy,* at 2136 (citation omitted)). However, this argument ignores the speculative nature of Appellants' presumptions, while also overlooking obvious differences between *Diamond Alternative Energy* and the case at bar.

Here, the Acts do not regulate business—they create unique criminal offenses applicable to two special classes of people who carry firearms: those who carry openly, and those who do so in a concealed fashion. *See* TEX. PENAL CODE §§ 30.06–.07. But these criminal offenses operate alongside *existing* Texas property law that permits property owners to expel or remove unwanted guests for any reason. *See id.*, § 30.05. Moreover, there is nothing in the record to establish that gun owners will necessarily act in "predictable ways" that would

---

The Court later opined that while "it may not be certain, but it is at least 'predictable' that invalidating the California regulations would likely result in the fuel producers ultimately selling more gasoline and other liquid fuels." *Id*. at 2135, 2025 WL 1716141 at *13.

allow for similar "commonsense inferences" to be drawn in support of Appellants' arguments. Maybe some gun owners will respect signs with any design or content.[13] Maybe some gun owners will not. Such circumstances are rife with the speculation that precludes the inferences allowed in *Diamond Alternative Energy*.

Even the panel Opinion failed to include allegations or "record evidence" in its analysis. Assertions such as "property owners who wish to express a prohibition on firearms are treated differently from [other] property owners who wish to express [another] prohibition" or that police officers will "sit on their hands" are relied upon without any citation to the record. *See Ogg*, 2025 WL 1066187, at 3, 9, n. 4.

Appellants also rely upon *Texas Corn Producers v. United States Environmental Protection Agency*, No. 24-60209, 2025 WL 1741481 (5th Cir. June 24, 2025),[14] and *General Land Office v. Biden*, 71 F.4th 264 (5th Cir. 2023),[15] in

---

[13] As demonstrated by the patron that posted the negative Google review for Antidote. *See* Appellants' En Banc Brief, p. 8 (citing ROA.1777).

[14] This Court held that petitioners "have met their burden of showing that third parties"—the automakers—"will likely react in predictable ways to the [CAFÉ standards]" that will decrease demand for gasoline, thereby injuring petitioners. *See Texas Corn Producers,* 2025 WL 1741481, at *7–8.

[15] This Court held that the State of Texas sufficiently alleged a causal connection between Department of Homeland Security's (DHS) failure to comply with the statutory mandate to build more miles of wall along the United States-Mexico border and damage to the State from increased illegal immigration, in the form of increased healthcare, education, and other costs, as required for Texas to have Article III standing. *See* 71 F.4th at 273.

which this Court applied the *Diamond Alternative Energy* reasoning in similar regulatory circumstances with the same outcomes. However, those cases—like *Diamond Alternative Energy*—involve more reliable, straight-forward scenarios that better allow for the type of "commonsense inferences" allowed by the Supreme Court. This appeal concerns substantially more speculative variables, and so is distinguishable from those cases. Accordingly, Appellants' argument fails.

As stated above, Appellants failed to allege facts demonstrating a plausible injury that is sufficiently traceable to Houston Police Chief when they failed to allege *any facts* beyond Houston Police Chief's mere responsibility "for enforcing criminal violations of the Acts in [] Houston." ROA.31.

Consequently, Appellants lacked standing to assert their claims against Houston Police Chief, and the District Court properly granted his Motion for Judgment on the Pleadings.

### Prayer for Relief

For the foregoing reasons, Appellee Chief of Houston Police Department J. Noe Diaz asks that this Court affirm the judgment of the District Court, and grant all other relief to which he may be entitled.

Respectfully submitted,

ARTURO G. MICHEL
City Attorney
BRIAN AMIS
Interim Chief, General Litigation Section

By:   _/s / Donald B. Hightower_
       Donald B. Hightower
       Senior Assistant City Attorney
       SBN: 24062780
       donald.hightower@houstontx.gov
       CITY OF HOUSTON LEGAL DEPARTMENT
       900 Bagby, 4th Floor
       Houston, Texas 77002
       Telephone:   832.393.6429
       Facsimile:     832.393.6259

*Attorneys for Defendant-Appellee Chief of Houston
Police Department J. Noe Diaz*

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on December 5, 2025 on all counsel of record:

*/s/ Donald B. Hightower*
Donald B. Hightower

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(g)(1) and 27(d)(2)(a) in that it contains 8,844 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Calisto MT 14 point font.

*/s/ Donald B. Hightower*
Donald B. Hightower