## No. 23-20165

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

BAY AREA UNITARIAN UNIVERSALIST CHURCH; DRINK HOUSTON BETTER, L.L.C.,
doing business as Antidote Coffee; PERK YOU LATER, L.L.C.,
*Plaintiffs-Appellants*

v.

HARRIS COUNTY DISTRICT ATTORNEY KIM OGG; COUNTY SHERIFF ED GONZALEZ;
WEBSTER ACTING CHIEF PETE BACON; CHIEF OF HOUSTON POLICE DEPARTMENT
TROY FINNER,
*Defendants-Appellees.*

On Appeal from the United States District Court for the Southern District of Texas
In Case No. 4:20-cv-3081, The Honorable Ewing Werlein, Jr., Presiding.

## APPELLEES' HARRIS COUNTY DISTRICT ATTORNEY KIM OGG AND
## HARRIS COUNTY SHERIFF ED GONZALEZ EN BANC BRIEF

Eleanor Matheson
Harris County Attorney's Office
Texas State Bar No. 24131490
Federal Bar No. 3854524
1019 Congress, 15th floor
Houston, Texas 77002
[Tel.] (713) 274-5101
[Fax] (713) 755-8924

Moustapha Gassama
Harris County Attorney's Office
Texas State Bar No. 24083058
Federal Bar No. 3588433
1019 Congress, 15th floor
Houston, Texas 77002
[Tel.] (713) 274-5101
[Fax] (713) 755-8924

ATTORNEYS FOR APPELLEES HARRIS COUNTY DISTRICT ATTORNEY KIM OGG AND
HARRIS COUNTY SHERIFF ED GONZALEZ

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

A.    Parties:

*Plaintiffs-Appellants:*          Bay Area Unitarian Universalist
                                  Drink Houston Better, LLC., doing business as
                                  Antidote Coffee
                                  Perk You Later, LLC

*Defendants-Appellees*:           Kim Ogg, Harris County District Attorney
                                  Ed Gonzalez, Harris County Sheriff
                                  Pete Bacon, Webster Chief of Police
                                  Troy Finner, Chief of Houston Police Department

B.    Parties' Attorneys:

*Plaintiffs-Appellants*:          Alla Lefkowitz
                                  Andrew Nellis
                                  Everytown Law
                                  P.O. Box 14780
                                  Washington, D.C. 20044
                                  [Tel.] (202) 545-3257
                                  aleftowitz@everytown.org

                                  Ryan Gerber
                                  Laura Keeley
                                  Everytown Law
                                  450 Lexington Ave.
                                  P.O. Box 4184
                                  New York, NY 10017
                                  [Tel.] (646) 324-8198

rgerber@everytown.org
Charlotte H. Taylor
Counsel of Record
Jones Day
51 Louisiana Ave., NW
Washington, D.C. 20001
[Tel.] (202) 879-3872
ctaylor@jonesday.com

William R. Taylor
Jones Day
717 Texas Street, Suite 3300
Houston, Texas 77002
[Tel.] (832) 239-3860
wrtaylor@jonesday.com

*Defendants-Appellees*:           Harris County District Attorney Kim Ogg and
                                  Harris County Sheriff Ed Gonzalez


Moustapha Gassama
Senior Assistant County Attorney
Moustapha.Gassama@HarrisCountyTX.gov
Eleanor Matheson
Assistant County Attorney
Eleanor.Matheson@HarrisCountyTX.gov
Harris County Attorney's Office
1019 Congress, 15th Floor
Houston, Texas 77002
[Tel.]  (713) 755-5101

Chief of Houston Police Department Troy Finner

Donald B. Hightower
Senior Assistant City Attorney
Donald.Hightower@HoustonTX.gov
City of Houston Legal Department
900 Bagby, 4th Floor

Houston, Texas 77002
[Tel.] (832) 393-6429
Webster Police Chief Pete Bacon

William S. Helfand
Bill.Helfand@LewisBrisbois.com
Sean M. Higgins
Sean.HIggins@LewisBrisbois.com
Lewis Brisbois Bisgaard & Smith, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
[Tel.] (713) 659-6767

DATED:     DEC. 5, 2025        */s/ Moustapha Gassama*
                               MOUSTAPHA GASSAMA

## STATEMENT REGARDING ORAL ARGUMENT

The Court has calendared this case for oral argument on Friday, January 23, 2026, in the En Banc Courtroom at 9:00 a.m.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................II

STATEMENT REGARDING ORAL ARGUMENT ............................................V

TABLE OF CONTENTS...................................................................... VI

TABLE OF AUTHORITIES ............................................................... VII

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE................................................................2

SUMMARY OF THE ARGUMENT .....................................................7

ARGUMENT AND AUTHORITIES.......................................................9

    I.    Appellants have failed to allege an injury-in-fact. .....................................10

      A.No Asymmetric Discriminatory Treatment ................................................10

      B.No Expressive Injury .................................................................12

        1.No compelled speech...............................................................12

        2.No content-based restriction.......................................................14

      C.No injury to associational freedom ..........................................................15

      D.No pocketbook injury ...............................................................16

      E.No injury to right to exclusion ...................................................18

    II.    Appellants fail to show an injury fairly traceable to Harris County Defendants.. .....................................................................................28

    III.    Appellants' requested relief is neither legally permissible nor will it redress the alleged  "injury."...........................................................30

    IV.    The district court properly denied leave to amend..................................32

CONCLUSION ..............................................................................34

CERTIFICATE OF COMPLIANCE.........................................................37

CERTIFICATE OF SERVICE .............................................................38

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Badaracco v. Comm'r*,
   464 U.S. 386 (1984) ........................................................................ 32

*Banks v. Spence*,
   114 F.4th 369 (5th Cir. 2024) ........................................................ 34

*Bay Area Unitarian Universalist Church v. Ogg*,
   No. 23-20165, 2025 WL 1066187 (5th Cir. Apr. 9, 2025) .......................... Passim

Bennett v. Spear,
   520 U.S. 154 (1997) ........................................................................ 30

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000) ........................................................................ 15

*California v. Texas*,
   593 U.S. 659 (2021) .................................................................... 14, 23

*Cedar Point Nursery v. Hassid*,
   594 U.S. 139 (2021) .................................................................... 19, 20

*City of Erie v. Pap's A.M.*,
   529 U.S. 277 (2000) ........................................................................ 14

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .................................................................... 23, 28

County Defendants. *Id*.; *Viera v. Hudman*,
   No. 23-40325, 2024 WL 111353 (5th Cir. Jan. 10, 2024) ................................ 34

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008) .................................................................... 10, 11

*Dep't of Com. v. New York*,
   588 U.S. 752, (2019) ........................................................................ 23

*Dolan v. City of Tigard*,
   512 U.S. 374, 114 S. Ct. 2309 (1994) ................................................ 26

*E.T. v. Paxton*,
    41 F.4th 709 (5th Cir. 2022) .............................................................. 32

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ........................................................................... 20

*Free Speech Coal., Inc. v. Paxton*,
    95 F.4th 263 (5th Cir.) ....................................................................... 13

*Freedman v. Maryland*,
    380 U.S. 51 (1965) .............................................................................. 31

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ............................................................................. 9

*Grider v. Cavazos*,
    911 F.2d 1158 (5th Cir. 1990) ............................................................ 31

*Hill v. City of Houston*,
    *789 F.2d 1103 (5th Cir. 1986)* .................................................... 31, 32

In *Book People, Inc. v. Wong*,
    91 F.4th 318 (5th Cir. 2024) .............................................................. 13

*Inclusive Communities Project, Inc. v. Dep't of Treasury*,
    946 F.3d 649 (5th Cir. 2019) ................................................... 9, 30, 31

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
    10 F.4th 422 (5th Cir. 2021) .............................................................. 33

*Kaiser Aetna v. United States*,
    444 U.S. 164 (1979) ........................................................................... 19

*King Ranch, Inc. v. United States*,
    946 F.2d 35 (5th Cir. 1991) ............................................................... 31

*Lefebure v. D'Aquilla*,
    15 F.4th 650 (5th Cir. 2021) ................................................................ 7

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) .............................................................. 7, 17, 21

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ....................................................... 9, 30

*McDonald v. Longley*,
    4 F.4th 229 (5th Cir. 2021) .......................................... 15

*McLaughlin v. Lindemann*,
    853 F.2d 1307 (5th Cir. 1988)...................................... 32

*Meese v. Keene*,
    481 U.S. 465 (1987) ................................................. 24, 25

*Oliver v. Collins*,
    904 F.2d 278 (5th Cir. 1990)....................................... 22, 31

*PruneYard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980) ........................................................ 19

*Raines v. Byrd*,
    521 U.S. 811 (1997) ................................................ 17, 25

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015) ..................................................... 14

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
    487 U.S. 781 (1988) ..................................................... 14

*S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*,
    315 F.3d 533 (5th Cir. 2003)....................................... 33

Schall v. Martin,
    467 U.S. 253 (1984) ..................................................... 31

*Simon v. E. Kentucky Welfare Rts. Org.*,
    426 U.S. 26 (1976) .......................................... 25, 29, 30

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................... 23

*Town of Castle Rock, Colorado v. Gonzales*,
    545 U.S. 748 (2005) ..................................................... 21

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ....................................................................... 23, 24

*United States v. Cox*,
    342 F.2d 167 (5th Cir. 1965)...................................................... 21, 22, 31

*United States v. Texas*,
    599 U.S. 670 (2023) ..................................................................... 16, 17, 18

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) .............................................................................. 29

Statutes

Article I, Section 8 of the Texas Constitution ......................................... 6

Section 30.05.............................................................................................. 3

Section 30.07.............................................................................................. 4

Tex. Pen. Code §§ 30.06(b), 30.07(b*)* ...................................... 11, 12, 28

Tex. Penal Code § 30.05(a)........................................................................ 3

Tex. Penal Code § 30.05(f) ............................................................ 3, 14, 18

Texas Penal Code sections 30.06 and 30.07 ....................................Passim

U.S. Const. amend. I ................................................................................ 15

U.S. Const. art. III, § 2, cl. 1 ................................................................... 24

Rules

Federal Rule of Appellate Procedure 25(d)(3) ....................................... 38

Federal Rule of Appellate Procedure 32(a)(5)–(6) & (7)(B)................................. 37

Fifth Circuit Rule 32.1 & 32.2 .................................................................................. 37

# STATEMENT OF THE ISSUES

The criminal trespass provisions in Texas Penal Code sections 30.06 and 30.07 govern the actions of third-party entrants, without imposing affirmative duties on property owners. The complaint does not allege, nor does the evidentiary record demonstrate, that Appellants have experienced a concrete injury-in-fact resulting from the challenged statutes. Appellants retain full authority to exclude individuals from their premises, irrespective of whether they display the statutory signage. The uncontroverted evidentiary record shows that law enforcement responds to Appellants' trespass complaints in the same manner as those from property owners who post the required signage, indicating that any alleged injury is hypothetical and based on speculative future events. The complaint challenges the legislative framework established by the Texas Legislature, rather than any affirmative action or policy of Harris County. Furthermore, the constitutional authority to modify statutory elements and affirmative defenses rests exclusively with the Texas Legislature; therefore, Appellants' alleged injuries are not redressable by judicial intervention. Did the district court correctly determine that Appellants lack Article III standing to pursue this action against Harris County and that amendment of the complaint would be futile?

.

# STATEMENT OF THE CASE

## A. Legal and Factual Background

***Parties and Nature of the Action.*** Appellants Bay Area Unitarian Universalist Church ("Church"), Drink Houston Better, LLC d/b/a Antidote Coffee ("Antidote"), and Perk You Later, LLC bring this action challenging Texas Penal Code sections 30.06 and 30.07 (the "Acts") against the Harris County Sheriff and Harris County District Attorney (collectively "Harris County Defendants"), the City of Webster Police Chief, and the City of Houston Police Chief. ROA. 55-56. Appellants seek (1) a declaratory judgment that the signage provisions of the Acts are unconstitutional, and (2) an injunction prohibiting these defendants from enforcing what Appellants characterize as "heightened notice requirements." *Id.*

Appellants allege that the signage provisions violate their freedom of speech under both the United States and Texas Constitutions, as well as their rights to due process under the Fifth and Fourteenth Amendments. ROA. 52-55. The Harris County District Attorney prosecutes violations of the Texas Penal Code, including §§ 30.06 and 30.07. The Harris County Sheriff's Office, the Houston Police Department, and the Webster Police Department enforce those statutes within their respective jurisdictions.

***Statutory Framework.*** The statutory framework begins with Texas's General Trespass Law, which provides that "[a] person commits an offense if the person

2

enters or remains on or in property of another ... without effective consent" and if the person "(1) had notice that the entry was forbidden" or "(2) received notice to depart but failed to do so." TEX. PENAL CODE § 30.05(a). Section 30.05 affords property owners multiple means to provide such notice, including oral or written communication, physical enclosures obviously designed to exclude intruders, or signage reasonably likely to come to the attention of the entrant. *See id.* § 30.05(b)(2).

In 2003, the Texas Legislature enacted an exception to the General Trespass Law, establishing that it constitutes a defense to prosecution for trespassing if a person is forbidden from entering property because entry with a handgun was prohibited without adequate notice. TEX. PENAL CODE § 30.05(f). Initially, this exception applied only to those who carried a concealed handgun pursuant to a license but was subsequently expanded to encompass any person openly carrying a handgun "in a holster." *Id.* § 30.05(f)(2)(b)(ii).

To address these statutory exemptions, the Legislature enacted §§ 30.06 and 30.07, creating distinct trespass offenses for those exempted under § 30.05(f).*See* TEX. PENAL CODE §§ 30.06; 30.07. These provisions balance property owners' rights to exclude with the rights of licensed handgun carriers. Section 30.06 (the "Concealed Carry Trespass Law") governs concealed handgun license holders,

while Section 30.07 (the "Open Carry Trespass Law") governs open-carry handgun license holders.

Under the Concealed Carry Trespass Law, a person commits an offense if the person carries a concealed handgun on the property of another without consent and receives notice by oral or written communication that entry with a concealed handgun is forbidden. *See id.* § 30.06(b). Section 30.06 defines "written communication" as either a card or document containing statutorily prescribed language notifying concealed handgun license holders that they may not enter the property with a concealed handgun, or alternatively, a sign posted on the property that includes this same language in both English and Spanish, appears in contrasting colors with block letters at least one inch in height, and is displayed conspicuously and clearly visible to the public. *Id.* § 30.06(c)(3).

The Open Carry Trespass Law adopts an identical definition of "written communication," with the sole distinction that signage must be "displayed ... at each entrance to the property." *Id.* § 30.07(c). Notably, both statutes permit property owners to provide notice through oral communication, thereby eliminating any requirement to post signage.

***Appellants' Implementation and Alleged Harms.*** The Church maintains a policy prohibiting carrying firearms onto church property. Currently, the Church voluntarily displays the open-carry signs in English and Spanish in accordance with

the Open Carry Trespass Law. The Church alleges that posting the requisite signs under both §§ 30.06 and 30.07 would (1) degrade the worship experience; (2) undermine the Church's inclusivity aims and guests' sense of safety; and (3) conflict with the Church's religious principles. ROA. 44-45 ¶¶ 61, 64; ROA. 1209.

Antidote objects to firearms on its property, asserting that their presence creates an unsafe environment for its patrons. Since 2016, Antidote has voluntarily posted both sets of signs provided for by §§ 30.06 and 30.07, incurring $260 in costs. Antidote alleges that the signage detracts from its desired "neighborhood coffee shop" aesthetic. ROA. 1226.

Appellants allege that compliance with the signage provisions compels them to convey a government-scripted message and forces them to choose between excluding firearms and preserving their desired expressive and associational identity. They further contend that providing individualized oral notice is impractical, costly, and potentially dangerous. ROA. 40, 45 ¶ 45, 68. However, the statutes do not mandate signage; property owners retain the option to provide oral notice or to post no signs at all.

## B. Course of Proceedings and Disposition of the Case

Appellants Bay Area Unitarian Universalist Church ("Church"); Drink Houston Better, L.L.C., doing business as Antidote Coffee ("Antidote"); and Perk You Later, L.L.C. (collectively "Appellants") filed this lawsuit in September 2020

seeking declaratory and injunctive relief based upon alleged violations of Article I, Section 8 of the Texas Constitution and the First, Fifth, and Fourteenth Amendments to the Constitution of the United States. ROA.52–55.

On September 29, 2022, the District Court—the Honorable Ewing Werlein, Jr., presiding—granted the Houston Police Chief's Rule 12(c) motion for judgment on the pleadings, dismissing all claims against him for lack of standing. ROA.870–82. The Court held that Appellants failed to allege injury in fact connected to the Houston Police Chief, concluding that "nothing in the statutes themselves compel Appellants to provide the statutory notice" and that Appellants had not "pled facts to show that their decision to post the §§ 30.06 and 30.07 signs was in any way coerced or compelled." ROA.878–80.

The remaining Defendants moved to dismiss for lack of standing. The District Court granted the motions, dismissed the case without prejudice for lack of jurisdiction, denied leave to amend as futile, and entered final judgment.

On appeal, a divided panel reversed, concluding that Appellants possessed Article III standing based upon an alleged First Amendment injury that was traceable to enforcement of §§ 30.06 and 30.07 and redressable by judicial relief. *See Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, 2025 WL 1066187, at *6 (5th Cir. Apr. 9, 2025).

Circuit Judge Edith H. Jones dissented, rejecting Appellants' theories of injury. *See id.*, pp. 6–8. She observed that Appellants—who have not been charged with criminal trespass—lack standing because they possess no cognizable interest in "the deterrent value of criminal laws." *Id.* at \*4. Judge Jones concluded that the majority departed from Supreme Court and Fifth Circuit standing precedent. *See*, e.g., *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Lefebure v. D'Aquilla*, 15 F.4th 650, 652 (5th Cir. 2021).

This Court subsequently vacated the panel decision and granted rehearing en banc.

## SUMMARY OF THE ARGUMENT

Plaintiffs lack Article III standing to challenge The Acts, which establish notice requirements for firearm-specific criminal trespass. These statutes impose no obligations on property owners, compel no speech, and impair no constitutional right. Plaintiffs retain full authority to exclude firearm carriers through oral notice and ordinary trespass law, and law enforcement responds to trespass calls regardless of whether statutory signage is posted.

Plaintiffs' alleged injuries are not cognizable under Article III. The statutes do not compel speech, restrict expression, force association, require admission of unwanted persons, or prevent their removal. Any costs incurred in posting signage were voluntary and arose without threat of enforcement. Moreover, online criticism

of Plaintiffs' chosen signage consists of protected statements and opinions, not actionable reputational harm.

Even assuming cognizable injury, causation and traceability fail independently. Plaintiffs' theory rests on speculative assumptions regarding how unnamed third-party "auditors" might behave—precisely the attenuated causation the Supreme Court has consistently rejected. Anecdotal internet postings cannot establish the predictable causal chain Article III requires. ROA.1231-33, ROA.2217. Moreover, none of Plaintiffs' alleged injuries is fairly traceable to Harris County Defendants, which has neither refused aid nor threatened enforcement against Plaintiffs.ROA.1231-33.

Redressability is likewise absent. Police response practices remain unchanged regardless of signage, and federal courts lack authority to rewrite Texas's criminal trespass statutes. No judicial relief could remedy Plaintiffs' alleged harms. Ultimately, dissatisfaction with the Legislature's policy judgment does not present a justiciable case or controversy.

Finally, the district court correctly dismissed Appellants' claims against Harris County Defendants and properly denied leave to amend. Appellants failed to allege—much less demonstrate—any act or threat of enforcement, thereby defeating standing for lack of injury in fact. Their professed fear rests entirely on the possibility that the Harris County Defendants may decline to arrest or prosecute third parties—

an interest not legally cognizable. Because the proposed amended complaint cures none of these defects, Appellants lack standing. Accordingly, the judgment should be affirmed.

## ARGUMENT AND AUTHORITIES

Article III standing requires (1) an injury in fact to the plaintiff, (2) that is fairly traceable to the defendant's challenged action, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. Additionally, redressability requires a showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a final decision*." Inclusive Communities Project, Inc. v. Dep't of Treasury,* 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

Plaintiffs have failed to satisfy these requirements. Their allegations do not establish a "concrete and particularized" and "actual or imminent" injury in fact for which the Harris County Defendants are responsible. Instead, Plaintiffs' claims rest entirely on conjecture and speculation regarding what actions the police and prosecutors might or might not take under various hypothetical scenarios. Such speculative allegations fall short of the "irreducible constitutional minimum of standing" established by the Supreme Court. *Lujan,* 504 U.S. at 560.

9

Beyond these fundamental deficiencies, all of Plaintiffs' asserted injury theories are without merit. Most notably, the majority opinion fails to cite any case law, scholarly authority, or other precedent supporting its finding of "asymmetrical injury" under these circumstances. This unprecedented theory lacks foundation in established standing doctrine and constitutes an impermissible expansion of Article III jurisdiction.

## I. Appellants have failed to allege an injury-in-fact.

### A. No asymmetric discriminatory treatment

Plaintiffs contend, and the majority concurred, that Texas Penal Code §§ 30.06 and 30.07 subject them to "asymmetric treatment" compared to property owners who seek to exclude non-firearm-related items or conduct. *Ogg,* 2025 WL 1066187, at *7. Plaintiffs assert that they suffer a continuing injury predicated upon a statutory scheme that purportedly treats comparable forms of speech disparately. *Id*. *3. This position misconstrues both the statutory text and the Supreme Court's reasoning in *Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008).

In *Davis*, the Supreme Court examined "asymmetrical limits" on campaign contributions and held that such restrictions infringed upon a candidate's First Amendment rights. 554 U.S. at 737–38. The Court observed that the statute compelled candidates to elect between engaging in political speech and submitting to discriminatory fundraising limitations. This statutory framework imposed a

tangible competitive disadvantage: candidates were constrained either to restrict their political speech or to permit their opponents to benefit from elevated contribution limits. The cognizable injury derived from this compulsory choice between exercising a constitutional right and sustaining a competitive disadvantage in the electoral arena. *Id.*

No analogous compulsory choice exists in the instant case. Plaintiffs confront neither a competitive burden nor any disadvantage relative to other speakers, nor do they face any obligation to engage in or refrain from expressive activity. *Ogg*, 2025 WL 1066187, at *7. Plaintiffs retain plenary discretion to post any sign or none whatsoever, and receive identical police protection irrespective of their choice. In the absence of such a compelled election, Plaintiffs cannot establish the competitive injury requisite under Davis.

Moreover, the purported asymmetry is illusory. As Justice Jones observed, Plaintiffs' signs and other statutorily prescribed signs concern entirely different subjects. *Ogg*, 2025 WL 1066187, at *6-7 (Jones, J., dissenting). The comparison is therefore inapt; the signs constitute an "apples and oranges" comparison, as there exists no content symmetry resulting from the Legislature's differing approaches. *Id.*

Fundamentally, §§ 30.06 and 30.07 regulate *licensed handgun carriers,* not property owners. *See* TEX. PEN. CODE §§ 30.06(b), 30.07(b*)*. The statutory notice requirement informs *license holders* of the circumstances under which their entry

constitutes criminal trespass. *Id*. The Legislature's differentiation between firearm-related and non-firearm trespass does not impose a comparative burden upon property owners. Plaintiffs' analogy conflates categorically distinct forms of regulated conduct. Because the statutes address separate classes of trespassers and distinct criminal offenses, the alleged "asymmetry" lacks merit.

The record establishes that Plaintiffs receive identical police protection irrespective of whether signage is posted. Consequently, Plaintiffs' assertion of asymmetric treatment fails to demonstrate a concrete injury.

## B. No expressive Injury

### 1. No compelled speech

Plaintiffs concede that their objective is to communicate a "no guns" message, and the statutory notice accomplishes this purpose. ROA. 44, 46, 121. Their sole objection pertains to the format—specifically, the size, lettering, or visual presentation. The First Amendment, however, does not confer a right to any particular aesthetic presentation. As Judge Jones observed, Plaintiffs' objection is "purely aesthetic." *Ogg*, 2025 WL 1066187, at *7 (Jones, J., dissenting). Governmental regulation of warning formats for functional purposes—including building safety codes, fire-exit signage, and alcohol-service warnings—does not implicate First Amendment expressive rights.

Sections 30.06 and 30.07 establish standards for providing legal notice to licensed handgun carriers, delineating the circumstances under which carrying a firearm constitutes criminal trespass. The State's requirement for standardized statutory language operates as a condition precedent to legal consequences, not as an expressive mandate. This approach is analogous to provisions that establish legal effect rather than regulate the substantive content or modality of private speech.

The absence of both compulsion and penalty distinguishes this case from true compelled-speech cases. As Judge Jones observes, "this fact pattern is completely distinct from actual state-mandated speech cases. Here, not only is nothing 'compelled,' but there is no penalty attached to Plaintiffs' refusals to post the statutory language." Ogg, 2025 WL 1066187, at *8 (Jones, J., dissenting). This distinction is dispositive. In *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 267–69 (5th Cir.), *cert. granted,* 144 S. Ct. 2714 (2024), and *aff'd,* 606 U.S. 461 (2025), pornographic websites were mandated to display "health warnings" on their webpages or incur a monetary penalty. In *Book People, Inc. v. Wong*, 91 F.4th 318, 329–32 (5th Cir. 2024), booksellers were required to provide warnings of sexual content on books sold to Texas schools or be foreclosed from selling such books. In both instances, noncompliance resulted in concrete sanctions—monetary penalties or exclusion from commerce.

In the instant case, by contrast, the government neither compels speech nor penalizes its absence. While the government may not mandate that private individuals speak or adopt a particular mode of expression, *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 790–91 (1988), the Texas Penal Code imposes no such mandate. Sections 30.05(f), 30.06, and 30.07 do not obligate Plaintiffs to engage in speech. Plaintiffs may display "no-guns" signs in any format, express opposition to firearms in any manner, or remain silent. These provisions merely delineate the requirements for legal notice regarding criminal trespass by licensed gun holders and do not impose an expressive mandate upon property owners. *See California v. Texas*, 593 U.S. 659, 666 (2021) (unenforced "commands" impose no injury).

### 2. No content-based restriction

Plaintiffs' reliance upon *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015), and *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000), is misplaced. In *Reed*, the Supreme Court held that content-based restrictions on speech, including those regulating the display of temporary, political, or ideological signs predicated upon their message—are constitutionally impermissible. 576 U.S. at 159–61. The challenged ordinance imposed differential restrictions predicated solely upon the sign's communicative content. Texas law, by contrast, imposes no content-based

restrictions; Plaintiffs retain unfettered discretion to communicate their message in any manner they choose. The statutes proscribe no form of expression whatsoever. Plaintiffs merely seek to have their preferred signage accorded legal effect for purposes of criminal trespass—a prerogative not secured by the First Amendment.

Plaintiffs labor under no obligation to display any signage, endorse any governmental message, or engage in speech whatsoever. In the absence of either compelled speech or restrictions upon expression, Plaintiffs' First Amendment claim fails as a matter of law.

### C. No injury to associational freedom

Although the United States Constitution does not explicitly reference the freedom of association, this right is implicit in the freedoms protected by the First Amendment. *See* U.S. Const. amend. I; *McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021). The Supreme Court has recognized that the right to engage in activities protected by the First Amendment necessarily encompasses a corresponding right to associate with others for political, social, economic, educational, religious, and cultural purposes. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000). Government actions that unconstitutionally burden this freedom may take various forms.

Plaintiffs have not alleged an injury cognizable under established legal standards. They contend that the statutory signs are aesthetically objectionable,

leading the Church to refrain from posting them, and argue that absent the required signage, the Church cannot disassociate itself from firearms. ROA.54-55 ¶¶ 114-123. This reasoning presupposes that failure to post the statutory notice impairs the Church's right to exclude firearms and effectively compels the Church to permit firearms on its premises. However, the absence of a criminal prosecution mechanism does not extinguish the right to exclude. Sections 30.06 and 30.07 neither mandate the posting of signs nor prevent Plaintiffs from expressing their views on firearms, non-violence, or inclusivity. The Penal Code imposes no restrictions on the Church's ability to display signage of any size, design, or wording to convey its religious or moral message.

This argument fails on its own terms. It depends entirely upon the assertion that the absence of statutory notice diminishes the Church's right to exclude firearms. Even setting aside the statutes' provision for oral notice, the absence of a firearm-specific criminal penalty does not result in forfeiture of the right to exclude. Any alleged inability to disassociate from firearms results from Plaintiffs' own choices, not from any legal restriction imposed by the State.

### D. No pocketbook injury

Plaintiffs contend that the financial costs associated with posting statutory signage constitute a cognizable injury. ROA.16. However, *United States v. Texas*,

599 U.S. 670 (2023), establishes that monetary expenditures alone are insufficient to confer Article III standing unless the alleged injury is "legally and judicially cognizable." *Id.* at 676 (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). Where the government elects *not* to arrest or prosecute, it does not exercise coercive power over an individual's liberty or property and thus does not infringe upon interests that courts are called upon to protect. *Id.* at 678.

To be legally cognizable, an injury must fall within a category of disputes "traditionally thought to be capable of resolution through the judicial process." *Raines*, 521 U.S. at 819. The Supreme Court in *Texas* held that a plaintiff lacks standing when the alleged injury derives from disagreement with how the government structures or enforces criminal law—particularly when the plaintiff "is neither prosecuted nor threatened with prosecution." 599 U.S. at 676 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

This principle applies here. Plaintiffs emphasize the voluntary expenses incurred in posting large-format statutory signs. ROA.42. However, they are not legally obligated to bear these costs or to post any signage, nor do they face prosecution or the threat thereof for failure to do so. Accordingly, the harm they allege falls squarely within the category of non-cognizable injuries identified in *Texas*: efforts to obtain federal judicial review of governmental decisions regarding criminal enforcement.

When "a plaintiff 's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed" to establish standing. *Texas*, 599 U.S. at 678. Sections 30.05(f), 30.06, and 30.07 do not impose financial obligations on property owners; these statutes regulate license holders, not Plaintiffs. Plaintiffs can exclude firearm carriers through oral notice at no cost. Any expenses incurred for signage were voluntary, not legally compelled. Under *Texas*, self-imposed costs do not constitute judicially cognizable injuries simply because Plaintiffs would prefer a different trespass enforcement regime.

Just as the states in *Texas* lacked standing to challenge federal enforcement priorities because they suffered no legally cognizable injury, Plaintiffs here lack standing because their alleged monetary costs arise from policy disagreement, not from any governmental mandate. Article III jurisdiction does not extend to challenges to the State's criminal-trespass scheme when the plaintiff "is neither prosecuted nor threatened with prosecution." *Texas*, 599 U.S. at 676.

Therefore, even if Plaintiffs incurred minor expenses, those costs do not satisfy Article III because they are neither compelled by law nor traceable to any legal requirement, and are not the type of injury federal courts traditionally adjudicate. Plaintiffs' alleged "pocketbook injury" is neither legally cognizable nor constitutionally sufficient.

**E.  No injury to right to exclusion**

Plaintiffs next assert that absent statutory signage, they lose access to the "deterrent effect" of criminal liability for licensed handgun carriers. ROA.935 . The record forecloses any such injury.

The Church administrator testified unequivocally that Webster Police have responded every time she has called, usually within minutes. ROA.69. The Webster Chief of Police further confirmed that the department responds identically to all trespass calls, regardless of whether property owners post statutory signs. ROA. 1462-63. This undisputed evidence demonstrates that Plaintiffs retain full access to law enforcement protection without posting any signage.

Despite this uncontroverted record evidence, Plaintiffs nevertheless contend that the absence of arrests is tantamount to an invitation for trespassers. This theory fails for three independent reasons.

First, Plaintiffs' theory is irreconcilable with established property-rights doctrine. Nothing in §§ 30.05(f), 30.06, or 30.07 compels property owners to admit firearm carriers or restricts their ability to remove them. The Supreme Court has emphasized that the right to exclude is violated only when the government requires owners to admit unwanted persons or prevents their removal. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 150–53 (2021); *Kaiser Aetna v. United States*, 444 U.S. 164, 179–80 (1979); *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 82–84 (1980).

Here, the statutes do neither. Property owners retain unfettered authority to exclude any armed individual at their sole discretion at any time.

Pursuant to §§ 30.06(b) and 30.07(b), failure to depart after oral notice alone constitutes a criminal offense. Law enforcement responds irrespective of signage, as confirmed by the uncontroverted record. ROA.1462-63. Accordingly, Plaintiffs maintain full control over their premises—precisely the right protected in *Cedar Point* and *PruneYard*.

Second, Plaintiffs' causation theory fails. Plaintiffs rely on internet forums as evidence of predictable behavior by third-party "auditors." ROA.983; ROA.1233-1238. This argument fails at the threshold. Article III requires that "the plaintiff must show a predictable chain of events leading from the government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the plaintiff." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024). The chain of causation here is too attenuated. Plaintiffs' theory rests on the speculative assumption that eliminating the statutory notice requirements would prevent targeting by third-party "auditors." However, the statutes merely define what constitutes *effective notice* for purposes of criminal prosecution; they neither compel anyone to post signage nor invite targeting of those who do. If anything, removing a clear statutory standard would invite *more* challenges from individuals who scrutinize signage to test its legal sufficiency. A

regime based on Plaintiffs' preferred aesthetic signage would create uncertainty, rendering enforcement of the trespass protections Plaintiffs seek more difficult.

Third, Plaintiffs' attempt to distinguish their asserted "deterrent effect" from an impermissible interest in prosecution is unavailing. ROA.935. Plaintiffs are property owners who have not been charged with, arrested for, or accused of criminal trespass. Notwithstanding the absence of any direct governmental action against them, the majority concluded that Plaintiffs suffer a concrete injury sufficient to confer standing because the criminal offense elements adopted by the Legislature purportedly deprive Plaintiffs of "the deterrent value of criminal laws." *Bay Area Unitarian Universalist Church*, 2025 WL 1066187, at *3, *4 (5th Cir. Apr. 9, 2025). This conclusion conflicts with established precedent.

Deprivation of the "deterrent value" of a criminal statute is not a legally cognizable injury. The Supreme Court has consistently held that private parties possess no legally cognizable interest in the prosecution of others or in compelling the government to adopt a specific enforcement regime. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 767–68 (2005). This principle reflects a bedrock principle of criminal law: prosecutors possess discretion in determining which cases to pursue and whether to file charges against a particular person accused of a crime. *See, e.g.*, *United States v. Cox*, 342 F.2d 167, 191 (5th Cir. 1965) ("The district attorney has absolute control

over criminal prosecutions, and can dismiss or refuse to prosecute, any of them at his discretion."). Plaintiffs have no right to compel the criminal prosecution of any individual, nor are they injured by the State's decision not to prosecute. *See id.*; *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990).

Plaintiffs' asserted interest in the "deterrent effect" of criminal prosecutions is inseparable from—and indeed indistinguishable from—an interest in the prosecution of third parties. Any deterrent effect flows exclusively from the arrest and prosecution of third-party offenders—conduct in which Plaintiffs possess no cognizable interest. Reframing this impermissible interest as concern for "deterrence" does not alter its fundamental nature; deterrence represents merely the anticipated consequence of prosecution. Because the injury alleged by Plaintiffs depends entirely upon the State's prosecution of third parties, it fails to satisfy the injury-in-fact requirement for Article III standing.

Finally, Plaintiffs' attempt to repackage policy disagreement as constitutional injury fails. Plaintiffs do not allege impairment of their right to exclude; rather, they contest the Legislature's choice to impose firearm-specific criminal penalties only after property owners provide standardized notice. The alleged injury is not that Plaintiffs are deprived of the ability to exclude firearm carriers—they retain that authority in full—but rather that the Legislature did not enact their preferred firearms-related trespass statute. As the Supreme Court has emphasized, "[i]t would

require far stronger evidence... to support their counterintuitive theory of standing, which rests on a 'highly attenuated chain of possibilities.'" *California v. Texas*, 593 U.S. 659, 678 (2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11 (2013)); *Dep't of Com. v. New York*, 588 U.S. 752, 768, (2019) (finding standing where plaintiffs relied not only on "the predictable effect of Government action on the decisions of third parties" but also on comprehensive studies, rather than mere "speculation"). Plaintiffs' disagreement with the scope of criminal penalties is a policy objection—not an Article III injury.

### F. No reputational harm

Plaintiffs contend that online criticism of their signage constitutes a cognizable reputational injury, characterizing the statutory signs as a "Scarlet Letter." ROA.932. The doctrine of standing derives from the Article III case-or-controversy requirement, which in turn is grounded in historical practice. Accordingly, courts must consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

Reputational harm qualifies as a concrete injury for Article III standing when it bears a substantial resemblance to traditionally actionable harm, most notably defamation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425, 432 (2021). While the requisite analogy need not constitute "an exact duplicate" in American history and

tradition, not all modern interpretations of reputational harm satisfy Article III's requirements, and courts may not "loosen Article III based on contemporary, evolving beliefs" regarding which claims warrant adjudication in federal court. *Id.*; U.S. Const. art. III, § 2, cl. 1.

Appellants do not dispute that the online reviews do not constitute defamation. Instead, they erroneously rely upon *Meese v. Keene*, 481 U.S. 465 (1987), to satisfy TransUnion's narrow exception for reputational harm. *Meese* is inapposite. *That case involve*d the Department of Justice's designation of certain films as "political propaganda"—a government-imposed stigmatizing label that directly impacted the plaintiff's reputation when he engaged in protected expression. The Court found a cognizable reputational injury because "the risk of injury to appellee's reputation [was] traced to the DOJ's application of the term 'political propaganda.'" *Id.* at 473–76. Critically, the injury resulted from governmental speech itself, not from public reactions to the plaintiff's conduct.

Here, by stark contrast, Texas has imposed no derogatory or stigmatizing label upon Appellants. Any reputational effects stem entirely from Appellants' voluntary display of signage and the independent reactions of private individuals. The referenced comments (ROA.1777; ROA.1780) reflect private customer reactions to Appellants' chosen signage, not any conduct by Appellees. This distinction is dispositive. Article III categorically precludes standing when the alleged injury

"results from the independent action of some third party not before the court." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 42 (1976). Because the statutes neither compel Appellants to post signage nor restrict alternative expressive signage, the claimed reputational harms are self-inflicted and not fairly traceable to Appellees or to enforcement of the Penal Code.

Absent a government-imposed stigma, *Meese* is inapplicable. The alleged injury arises not from any governmental designation but from private criticism of Appellants' own voluntary expression—a harm fundamentally distinct from that recognized in *Meese* and insufficient to satisfy Article III's injury-in-fact requirement. *Meese*, 481 U.S. 465. Moreover, reputational consequences arising from a plaintiff's own expressive choices do not constitute harm "traditionally thought suitable for judicial resolution." *Raines*, 521 U.S. at 819.

Plaintiffs further assume, without evidentiary support, that the aesthetic nature of the statutory signage—rather than its substantive message—occasions the alleged reputational injury. ROA.41 ¶ 49; ROA.932; ROA.1777. Yet even accepting this premise, the implications would be untenable. If public criticism of one's own voluntarily posted message were sufficient to establish standing, virtually any business receiving negative reviews of its signage could invoke federal jurisdiction to challenge the underlying regulatory scheme. Such an expansive conception of

standing would fundamentally contravene Article III's limitations upon federal judicial power.

In sum, the challenged statutes impose no stigma, labels, or compelled messages, nor do they restrict alternative speech. The purported reputational harms originate entirely from Plaintiffs' voluntary conduct and private third-party reactions. Accordingly, Plaintiffs have failed to demonstrate a cognizable reputational injury fairly traceable to Appellees under Article III.

## II. No Unconstitutional Condition

The unconstitutional-conditions doctrine applies only when the government denies or threatens to deny a governmental benefit unless the claimant relinquishes a constitutional right. *Dolan v. City of Tigard,* 512 U.S. 374, 385, 114 S. Ct. 2309, 2317 (1994). This doctrine is fundamentally inapplicable to the instant matter for two dispositive reasons: the Texas statutes neither mandate speech nor condition any benefit upon its exercise, and the alleged burdens derive entirely from Appellants' voluntary choices rather than governmental compulsion.

First, the statutory scheme imposes no mandate. Appellants' purported "dilemma"—that they must either (1) post State-mandated signage, thereby purportedly incurring burdens related to speech, finances, and reputation, or (2) abstain from posting such signage and allegedly forfeit their right to exclude—rests upon a fundamental mischaracterization of the statutory scheme. ROA. 52; ROA.

297. This binary construction is illusory. The statutes mandate nothing. As the dissent correctly observed, Appellants "have given up no right," "are not compelled to post any sign," and "are deprived of no benefit." *Ogg*, 2025 WL 1066187, at *6-8.

Appellants retain plenary authority to exclude firearm carriers through oral notice at no cost. The statutory signage provisions merely delineate an alternative mechanism for providing notice for purposes of criminal liability; they neither compel speech nor condition any benefit upon waiving constitutional rights. Critically, the statutory framework operates permissively rather than coercively. Appellants' effort to manufacture coercion by recharacterizing these optional notice provisions as compulsory finds no support in either the language or the structure of the Penal Code. Because the statutes impose neither mandatory messaging nor penalties for silence, and do not restrict exclusion authority, no unconstitutional condition exists.

Second, the alleged burdens are self-inflicted and therefore cannot satisfy Article III's injury-in-fact requirement. Appellants cannot establish injury by asserting they must "elect" between two undesirable outcomes when both alleged burdens result from their own voluntary decisions rather than governmental coercion. The statutes impose no "benefit" contingent upon relinquishing a constitutional right; they merely provide an optional mechanism for establishing

notice. Texas neither requires the posting of statutory signage nor penalizes its absence. Appellants possess unfettered authority to exclude firearm carriers through oral notice alone, and failure to comply with such oral notice to depart constitutes criminal trespass under Texas Penal Code §§ 30.06(b) and 30.07(b).

Article III standing requires a concrete, non-self-inflicted injury caused by the defendant. *Clapper*, 568 U.S. at 416. The purported burdens, such as posting signage Appellants find aesthetically displeasing or forgoing enhanced criminal penalties, stem entirely from Appellants' strategic choices regarding the manner in which they exercise their exclusion rights, not from any governmental coercion or restriction. The causal chain runs exclusively through Appellants' voluntary decisions, not through state action. Because the Penal Code imposes no choice between constitutional rights, the unconstitutional-conditions doctrine provides no basis for standing.

## II. Appellants fail to show an injury fairly traceable to Harris County Defendants.

Even assuming Plaintiffs suffered an injury-in-fact from choosing between posting "unwelcoming" signage and losing the deterrent effect of criminal prosecution, this injury fails the traceability requirement. The injury is not traceable to any conduct by the Harris County District Attorney or Sheriff, but rather to the statutory framework enacted by the Texas Legislature. Plaintiffs "do not allege that

any Defendant has ever enforced, attempted to enforce, or threatened to enforce" sections 30.06 or 30.07 against them. ROA.2127. This absence of enforcement action is fatal.

The applicable legal standard is well established. The traceability element of Article III standing requires that a federal court act only to redress injury that can be fairly traced to the defendant's challenged action, rather than injury resulting from the independent action of a third party not before the court. *Simon*, 426 U.S. at 43. Although an injury may satisfy the traceability requirement even if indirect, a plaintiff "must show that he himself is injured by the challenged action of the defendant," even when the causal chain is indirect. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977).Indirect injuries "may make it substantially more difficult" to establish standing. *Simon*, 426 U.S. at 38.

Here, neither have the Harris County Defendants taken any challenged action against Plaintiffs. Indeed, Plaintiffs do not—and cannot—allege that the Harris County Defendants have ever enforced sections 30.06 or 30.07 against them. Instead, Plaintiffs' theory depends entirely upon a speculative chain: that third parties would be deterred from trespassing with firearms if Plaintiffs could post their preferred signs, and those signs would provide sufficient notice to support prosecution under Texas law. This attenuated causation—dependent on independent decisions by multiple third parties not before the court—fails the traceability

requirement. The Harris County Defendants enforce the challenged statutes only against third-party trespassers, not against Plaintiffs as property owners. Any harm Plaintiffs suffer results from third-party trespassers' choices and the Texas Legislature's statutory scheme, not from Sheriff Gonzalez or District Attorney Ogg.

## III. Appellants' requested relief is neither legally permissible nor will it redress the alleged "injury."

Plaintiffs also fail to satisfy the third element of Article III standing: redressability. Redressability requires that it be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S 38, 43). To satisfy redressability, Appellants must show "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Inclusive Communities Project, Incorporated*, 946 F.3d at 655 (quotations omitted). Plaintiffs cannot satisfy this requirement because a favorable decision would not alter the Harris County Defendants' treatment of them.

This failure stems from multiple, independent defects. First, any injury Plaintiffs might suffer would be "the result of the independent action of some third party not before the court," not the result of any action by the Harris County Defendants. Bennett v. Spear, 520 U.S. 154, 167 (1997). As the district court observed, "the local actors have no control over the state statutory scheme, and any

potential enforcement of the statutes would be against third parties, not either of the Plaintiffs." ROA.2137. Second, there is no evidence that Sheriff Gonzalez will refuse to respond to Plaintiffs' trespass calls. Third, Plaintiffs lack any legal interest in the District Attorney's prosecution of third parties. *See Cox,* 342 F.2d at 191; *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990). For these reasons, an injunction against enforcement of the statutes cannot alter any action by the Harris County Defendants affecting Plaintiffs' legal interests. *Inclusive Communities Project,* 946 F.3d at 655.

Beyond this standing defect, Plaintiffs' requested relief is legally impermissible. Courts cannot rewrite statutes at parties' request. *See King Ranch, Inc. v. United States*, 946 F.2d 35, 37 (5th Cir. 1991) ("This Court cannot rewrite Congressional legislation to cover a situation that Congress may not have foreseen. Absent some ambiguity in the statute, we must apply it as written."). When a statute is unambiguous, courts must "resist the temptation to cure inartfully drafted legislation by indulging in 'judicial legislation.'" *Grider v. Cavazos*, 911 F.2d 1158, 1163 (5th Cir. 1990). This principle reflects fundamental separation of powers: "The discretion to delimit the categories of crimes justifying detention, like the discretion to define criminal offenses and prescribe punishments, resides wholly with the state legislatures." Schall v. Martin, 467 U.S. 253, 268 n.18 (1984); *See Hill v. City of*

*Houston*, 789 F.2d 1103, 1112 (5th Cir. 1986), *aff'd*, 482 U.S. 451 (1987); *Freedman v. Maryland*, 380 U.S. 51, 60–61 (1965).

Here, Plaintiffs do not argue that sections of the Acts are ambiguous, and the statutory text is unambiguous on its face. The Texas Legislature weighed the rights of property owners against the rights of gun owners and enacted clear legislation reflecting its policy judgment. Granting Plaintiffs' requested relief would therefore require this Court to sit "as a 'super' state legislature" and improperly "impos[e] [its] own narrowing construction onto the [statute]." *Hill*, 789 F.2d at 1112; *see also Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."); *McLaughlin v. Lindemann*, 853 F.2d 1307, 1310 (5th Cir. 1988).

Moreover, how gun owners would respond to Plaintiffs' preferred signs if sections 30.06 and 30.07 were enjoined is wholly speculative. *See E.T. v. Paxton*, 41 F.4th 709, 720–21 (5th Cir. 2022) (holding that plaintiffs failed to establish standing where they relied "wholly on speculation about the unfettered choices made by actors not before [the court]"). This further confirms that Plaintiffs' alleged injuries are not redressable by this or any court. For all these reasons, the district court correctly dismissed this action for lack of standing.

## IV. The district court properly denied leave to amend.

The district court correctly denied Plaintiffs' untimely motion to amend for two independent reasons. Plaintiffs failed to show good cause for the delay, and the proposed amended complaint was futile because it failed to establish standing to sue the Harris County Defendants. ROA.2146-2147.

The district court entered an agreed scheduling order on December 7, 2021, which set December 15, 2021, as the deadline to amend pleadings. ROA.616-17. Plaintiffs filed their Motion to Modify Scheduling Order and for Leave to Amend Complaint on October 31, 2022, nearly eleven months after the deadline expired, "two months after discovery closed, and on the literal eve of the deadline to file motions." ROA.896–910; ROA.2131. Despite this significant delay, Plaintiffs' proposed first amended complaint did not include any new allegations against the Harris County Defendants.

The district court denied Plaintiffs' untimely motion for leave in its Final Order on March 16, 2023. ROA.2126–2151. The court determined that Plaintiffs' proposed amended complaint "would add nothing of material substance to alter" its analysis that "Plaintiffs lack standing to proceed." ROA.2146.

A denial of a motion for leave to amend based on futility is reviewed de novo. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir. 2021). When evaluating an untimely motion for leave, courts consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2)

33

the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003). "The good cause standard *requires* the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Banks v. Spence*, 114 F.4th 369, 371 (5th Cir. 2024), *cert. denied sub nom. Holston Banks v. Spence*, 145 S. Ct. 1082 (2025) (emphasis in original). "Failure to meet that threshold is a sufficient reason to affirm the denial of the motion to amend." *Id*.

The district court correctly denied leave to amend because Plaintiffs failed to satisfy multiple requirements. First, Plaintiffs did not adequately explain the failure to timely move for leave to amend. *See id.*. Second, the proposed amended complaint did not incorporate any new evidence. Third, the proposed amendment failed to establish Plaintiffs' standing to sue the Harris County Defendants. *Id.*; *Viera v. Hudman*, No. 23-40325, 2024 WL 111353, at *1 (5th Cir. Jan. 10, 2024) (per curiam) (affirming denial of leave to amend where neither the original nor the proposed amended complaint contained plausible allegations of particularized injury). For these reasons, this Court should affirm the district court's Final Order denying Plaintiffs' untimely motion for leave to amend.

**CONCLUSION**

For the foreging reasons, Harris County Defendants ask that this Court affirm the judgment of the District Court and grant all other relief to which they may be entitled.

DATED:     DEC. 5, 2025          RESPECTFULLY SUBMITTED,

**CHRISTIAN D. MENEFEE**
HARRIS COUNTY ATTORNEY

**JONATHAN G.C. FOMBONNE**
DEPUTY COUNTY ATTORNEY AND FIRST
ASSISTANT

**SARAH J. UTLEY**
MANAGING COUNSEL,
AFFIRMATIVE AND ENVIRONMENTAL

**CHRISTOPHER GARZA**
DIVISION DIRECTOR
AFFIRMATIVE & SPECIAL LITIGATION
DIVISION

*/s/ Moustapha Gassama*
**MOUSTAPHA GASSAMA**
*Counsel of Record*
Assistant County Attorney
Moustapha.Gassama@harriscountytx.gov
**ELEANOR MATHESON**
Assistant County Attorney
Eleanor.Matheson@harriscountytx.gov
**OFFICE OF THE HARRIS COUNTY
ATTORNEY**

1019 Congress Plaza, 15th Floor
Houston, Texas 77002
[Tel.] (713) 274-5101
[Fax] (713) 755-8924

ATTORNEYS FOR APPELLEES KIM OGG, DISTRICT ATTORNEY FOR HARRIS COUNTY,
IN HER OFFICIAL CAPACITY, AND ED GONZALEZ, COUNTY SHERIFF FOR HARRIS
COUNTY, IN HIS OFFICIAL CAPACITY

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) & (7)(B), and Fifth Circuit Rule 32.1 & 32.2. The brief contains 7437 words and was prepared using Microsoft Word and produced in Times New Roman 14-point font .

DATED: DEC. 5, 2025

/s/ Moustapha Gassama
MOUSTAPHA GASSAMA

## CERTIFICATE OF SERVICE

In compliance with Federal Rule of Appellate Procedure 25(d)(3) and Fifth Circuit Rule 25.2.5, I hereby certify that on December 5, 2025, I electronically filed and served the foregoing document to all counsel of record through the Court's CM/ECF system.

DATED: DEC. 5, 2025

*/s/ Moustapha Gassama*
MOUSTAPHA GASSAMA