# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 31, 2026

Lyle W. Cayce
Clerk

———————

No. 23-20165

———————

Bay Area Unitarian Universalist Church; Drink Houston Better, L.L.C., *doing business as* Antidote Coffee; Perk You Later, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Harris County District Attorney Kim Ogg; County Sheriff Ed Gonzalez; Webster Acting Chief Pete Bacon; Chief of Houston Police Department J. Noe Diaz,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3081

———————————————————————

ON PETITION FOR REHEARING EN BANC

Before Elrod, *Chief Judge*, and Jones, Smith, Stewart, Richman, Southwick, Haynes, Graves, Higginson, Willett, Duncan, Engelhardt, Oldham, Wilson, Douglas, and Ramirez, *Circuit Judges*.[*]

———————————————

[*] Judge Ho was recused and did not participate in the decision.

No. 23-20165

Edith Hollan Jones, *Circuit Judge*, joined by Elrod, *Chief Judge*, and Smith, Stewart, Richman, Southwick, Haynes, Willett, Duncan, Engelhardt, Oldham, Wilson, and Ramirez, *Circuit Judges*:[†]

The sole issue in this en banc appeal is whether the plaintiff property owners have Article III standing to sue a district attorney, a sheriff, and two police chiefs for the purpose of invalidating, in part, a Texas statute that criminalizes carrying guns onto premises on which the owners prohibit firearms.[3] For several reasons, they have no standing. The district court's judgment denying relief is AFFIRMED.

## I.

One plaintiff owns a coffee shop in Houston; the other is a Unitarian Universalist church located near Houston in Webster, Texas. The property owners do not want anyone who carries a firearm to enter their premises. Texas lawmakers furthered their goal by enacting laws that criminalize entry on another's property as trespass even if the gun owner has a handgun license, so long as the property owner has given "effective" notice that entry with a handgun is forbidden.[4] Texas Penal Code Section 30.06 applies to those licensed to carry a concealed handgun, and Section 30.07 covers licensees who openly carry holstered handguns. To plaintiffs, however, the

---

[†] Chief Judge Elrod and Judge Willett concur in the judgment and join in all Parts except for Part III-B. Judge Richman concurs only in the judgment because there is no redressability. Judge Southwick concurs in the judgment and joins in Parts III.A and III.C. Judge Haynes concurs only in the judgment. Judge Ramirez concurs in the judgment and joins all Parts, except Part III.B and III.C.

[3] Tex. Penal Code §§ 30.06, 30.07.

[4] The plaintiffs do not challenge a separate statute that prescribes criminal trespass if the person is not carrying a license or, if carrying a license, fails to conceal or holster the handgun. Tex. Penal Code § 30.05 (a), (f).

rub is in the definition of what constitutes effective notice. In materially identical language, both statutes provide that notice may be given orally or by written communication to the armed individual. In the context of Section 30.06, a "written communication" means:

> (A) a card or other document on which is written language identical to the following: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"; or
>
> (B) a sign posted on the property that:
>> (i) includes the language described by Paragraph (A) in both English and Spanish;
>>
>> (ii) appears in contrasting colors with block letters at least one inch in height; and
>>
>> (iii) is displayed in a conspicuous manner clearly visible to the public.

TEX. PENAL CODE § 30.06(c)(3). The open carry provision is nearly identical, with "written communication" being defined as:

> (A) a card or other document on which is written language identical to the following: "Pursuant to Section 30.07, Penal Code (trespass by license holder with an openly carried handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a handgun that is carried openly"; or
>
> (B) a sign posted on the property that:
>> (i) includes the language described by Paragraph (A) in both English and Spanish;

No. 23-20165

> (ii) appears in contrasting colors with block letters at least one inch in height; and
>
> (iii) is displayed in a conspicuous manner clearly visible to the public at each entrance to the property.

Tex. Penal Code § 30.07(c)(3). Aside from slight variations in the text of the signs, the only meaningful difference is that Section 30.07(c)(3)(B)(iii) requires the sign to be clearly visible "at each entrance to the property," while the concealed carry statute does not mention entrances to the property.

Although each plaintiff posted one or both prescribed signs to fend off handgun-carrying individuals, they object to the burdensome, "ugly," and "intimidating" appearance of the required signs. Plaintiffs filed suit in federal court in September 2020. They sought declaratory and injunctive relief, based on alleged violations of the First Amendment, against those portions of the statutes that condition criminal trespass on whether a property owner followed the prescribed language and format of signs denying access to gun owners. The remaining defendants[5] are the Harris County District Attorney and Sheriff and the police chiefs of Houston and Webster. Plaintiffs contend that their "desire to be protected by the law compels them to post signs that they otherwise would not. For Plaintiffs, who would prefer to speak their message in a different, less burdensome and less costly format, this compulsion is an injury."

When initial procedural activities were complete, the district court granted the Houston Police Chief's Rule 12(c) motion to dismiss, *Bay Area Unitarian Universalist Church v. Paxton*, No. CV H-20-3081, 2022 WL

---

[5] Plaintiffs originally joined as defendants, but later dismissed the Texas Attorney General, the head of the Texas Commission on Law Enforcement, and the Harris County Attorney.

4

22869779, at *5 (S.D. Tex. Sept. 29, 2022), the Harris County Defendants' Rule 12(c) motion to dismiss, and the Webster Police Chief's Rule 12(b)(1) motion to dismiss, *Bay Area Unitarian Universalist Church v. Paxton*, No. CV H-20-3081, 2023 WL 2563998, at *7 (S.D. Tex. Mar. 16, 2023).  The district court concluded that the plaintiffs lack Article III standing to sue.  Its reasoning rested primarily on the plaintiffs' lack of Article III "injury" from the existence of the challenged provisions and secondarily on the lack of "traceability" of their alleged injury to any actions by the defendants.  In addition, the court pointed out that "redressability" is lacking because federal courts do not have power to rewrite a state criminal statute as plaintiffs would like it, that is, to rewrite the law to denominate a criminal trespass violation for whatever type of sign they should choose to post.

On plaintiffs' appeal to this court, a divided panel held that plaintiffs enjoy Article III standing and accordingly reversed and remanded for litigation on the merits of their complaint.  *Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, 2025 WL 1066187, at *1 (5th Cir. Apr. 9, 2025) (unpublished).  A majority of this court then voted for en banc review, Order Granting Rehearing En Banc, *Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, (Sept. 29, 2025), thus vacating the panel opinion.

## II.

"A Rule 12(c) 'motion for judgment on the pleadings is [ ] reviewed de novo.'" *Hayes v. GStek, Inc.*, 175 F.4th 603, 607 (5th Cir. 2026) (quoting *Wetherbe v. Tex. Tech Univ. Sys.*, 138 F.4th 296, 300 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1492 (2026) (alteration in original)).  "A court will 'evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim.'"  *Id.* (quoting *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010)).  "Where, as here, 'the district court rules on jurisdiction without

resolving factual disputes . . . we consider the allegations in the plaintiff's complaint as true and review whether the district court's application of the law is correct.'" *Di Angelo Publications, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021) (quoting *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021)).  Further, a district court's dismissal under Rule 12(b)(1) is reviewed de novo.  *Id.* at 259-60.  The court also had before it depositions from the church and the Webster Police Chief to consider in evaluating the dismissal motion.

### III.

Federal courts have Article III jurisdiction to hear "[c]ases and [c]ontroversies" only if plaintiffs claim (1) an "injury in fact," (2) that is "fairly traceable" to the defendants' challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S. Ct. 2130, 2136 (1992) (internal quotation marks and citations omitted).  As this court recently recited, standing doctrine should not be too complex.  *United States v. Texas*, 173 F.4th 659, 662 (5th Cir. 2026) (en banc).  A modicum of analysis demonstrates that none of these preconditions are fulfilled.  These plaintiffs have only rank and counter-factual speculation about their "injury," their injury is not caused by or traceable to the defendants, and federal courts may not redress their alleged injury.

Before cataloguing the ways in which plaintiffs' claims are deficient for standing purposes, a few facts need to be pointed out.  The challenged criminal statutes were designed to accommodate property owners' constitutional right to refuse access to gun toters while protecting the rights of licensed gun owners to carry open or concealed firearms.  Criminal trespass thus occurs if the licensed gun owner, despite being warned not to enter a property either orally or in writing with a card or according to the

prescribed signage, enters and refuses to leave. This means, as the testimony showed, that police may arrest and charge as a trespasser under these provisions a person who was told to leave or was warned by the prescribed sign.

A property owner is not, however, compelled by the criminal statutes to post required signage, and may post whatever warning he or she desires, or no printed warning. In these situations, if a licensed gun toter enters the premises, the property owner may orally advise the person to leave, and if he refuses, the police may arrest the trespasser pursuant to the provisions challenged here. To be precise, the licensed gun carrier has a statutory defense to the trespass statute if he has not been advised by the owner's oral or prescribed written communication that guns are forbidden on the property. But even then, the owner is not without recourse to the deterrent effect of criminal law: on summoning law enforcement, the owner may have the police provide the statutory oral warning or may eject the intruder. In each instance, the intruder may be prosecuted for violating the challenged statute or the officer's command.

Confirming what is obvious from the statutes' face, the church administrator stated that when the church has called the Webster police on various occasions, they have always responded to the calls. The Webster Police Chief affirmed that his department responds to trespass and other calls regardless whether the property owner elected to use the statutes' prescribed signage. As to the City of Houston and Harris County defendants, plaintiffs failed to allege any facts that police officers cannot or will not respond to calls about gun-toting trespassers, or that they cannot or will not eject and charge gun-toting trespassers irrespective of compliance with the challenged statutes.

No. 23-20165

Although the parties' briefing has focused on the injury component of Article III standing, the criterion of "traceability" between the defendant law enforcement officials' conduct and the plaintiffs' claimed injuries presents an initial, insuperable obstacle to standing. The lack of "redressability" of plaintiffs' injuries by a federal court's judgment is another plain impediment. Therefore, although each of plaintiffs' theories of injury is dubious, we initially assume arguendo that sufficiently cognizable legal injury exists. *See, e.g.*, *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41, 96 S. Ct. 1917, 1925 (1976); *Jud. Watch, Inc. v. U.S. Senate*, 432 F.3d 359, 360 (D.C. Cir. 2005).

## A. Traceability

For standing analysis, traceability means that a plaintiff must connect the defendants' conduct to claimed constitutional violations. Traceability means, at a minimum, *causation in fact. See, e.g.*, *Dep't of Com. v. New York*, 588 U.S. 752, 768, 139 S. Ct. 2551, 2566 (2019). This concept does not require but-for causation, *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 195 (3d Cir. 2004) (ALITO, J.), but traceability is not demonstrated if the violations arise from another cause or the act of third parties, *Simon*, 426 U.S. at 41–42, 96 S. Ct. at 1926. And allegations and proof of traceability must reveal more than speculation or conjecture that the defendants' actions will violate plaintiffs' rights.

Plaintiffs' briefs acknowledge their basic problem: all of the defendants are mandated to enforce Texas criminal laws as written! Sections 30.06 and 30.07 do not allow charging or prosecuting persons who, as licensed gun owners, enter property of others where no oral warning against their entry has been given nor prescribed signs posted. That does not mean plaintiffs are bereft of protection. Law enforcement may otherwise protect the property owner—just not by means of these statutes—against intruding licensed gun carriers. It is not officers of the law who "cause" the injuries of

which plaintiffs complain, but the terms of the law itself and actors who decide to intrude against the plaintiffs' wishes. *See California v. Texas*, 593 U.S. 659, 675, 141 S. Ct. 2104, 2117 (2021) ("[T]he States also have failed to show how this injury is *directly traceable* to any actual or possible unlawful Government conduct. . . ." (emphasis added)). Plaintiffs' real complaint is about the underinclusiveness of these challenged statutes.

Contrary to the usual case in which traceability exists, the law here does not coerce plaintiffs' conduct. Nothing prohibited by these criminal statutes can be enforced by the defendants against the plaintiffs. *Cf. id.* at 670, 141 S. Ct. at 2114 (Article III standing cases "have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future." (emphasis in original; citing cases)). If plaintiffs choose to promote enforcement of these criminal trespass provisions by purchasing and displaying the prescribed signage or by giving oral notice, that is their choice, wholly unaffected by law enforcement's conduct. But if the property owners decline to adopt the law's requirements, those choices do not "cause" law enforcement to "violate" plaintiffs' constitutional rights. Law enforcement officers instead protect the property owners by answering their call, ordering the gun carrier to leave, and charging and prosecuting any violations that may ensue from those procedures. In such situations, the actions of third parties, not law enforcement, may "cause" a violation of plaintiffs' rights to exclude. That chain of causation cannot "be traced to the . . . defendant[s]." *Simon*, 426 U.S. at 41, 96 S. Ct. at 1926.

Plaintiffs' theory of traceability thus depends on the effect of the law or the conduct of others and is wholly speculative. Plaintiffs state that their alleged injuries "flow from the challenged statutes' immunization of license holders from criminal trespass liability (unless Plaintiffs post the prescribed signs)." It is false to suggest that gun carriers are "immunized" from

liability, it is speculative to imply that law enforcement will decline to protect these property owners, and it is speculative to "predict[]" that if the owners do not post the designated signs, some licensed gun carriers will enter their property. Like other property owners in Texas, the plaintiffs may eject any unwanted visitor from their property. As previously noted, there is no support in the record, in evidence or factual allegations, for the proposition that law enforcement, including any of the named defendants, will fail to aid these plaintiffs when they seek official assistance to remove gun carriers. Regarding their fears that licensed gun owners will deliberately enter their property in the absence of the required signs, they even concede, "[t]o be sure, *some* license holders might trespass on Plaintiffs' property no matter what the statutory language." So, what is more "predictable"? To acknowledge the alternative possibilities is to show that plaintiffs are engaged in conjecture. Traceability for standing purposes must be based on more than speculation about the defendants' conduct or that of third parties. *Simon*, 426 U.S. at 41–45, 96 S. Ct. at 1926–27.

In any event, it has long been understood that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 1149 (1973). And the Supreme Court has added that the same concerns denying individuals the right to coerce law enforcement also prevent their "effort to compel the State to enact a code in accord with [their] interests." *Diamond v. Charles*, 476 U.S. 54, 65, 106 S. Ct. 1697, 1705 (1986). It isn't just what the defendants allegedly don't do here that annoys the plaintiffs, but what the law doesn't do. Either way, their claims fail.

The lack of "traceability" may be illustrated by simple analogies. A property owner may believe that the 30 mph speed limit on his quiet residential street creates hazardous driving conditions that may result in collisions on his property or physical danger. But law enforcement does not

"cause" a "violation" of the property owner's rights by not ticketing drivers going 28 mph. Nor does law enforcement "cause" an illegal nuisance to arise if one landowner's nocturnal lighting brightly illuminates the neighbor's backyard but remains below the local code's maximum prescribed lumens. Likewise in this case, the defendants' actions or inaction are in no way traceable to the plaintiffs' alleged First Amendment harms.

## B. Redressability

Even if there were plausible injuries to the plaintiffs, and even if the injuries were somehow traceable to the defendants' conduct, still, as the district court explained, it is beyond the power of federal courts to redress the injuries. Redressability requires that it be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561, 112 S. Ct. at 2136 (quoting *Simon*, 426 U.S. at 38, 43, 96 S. Ct. at 1924, 1926). First, because the statutes do not coerce the plaintiffs into engaging in the complained-of conduct, the defendants cannot be compelled to do or forgo anything in relation to the plaintiffs. Nor, because citizens have no cognizable legal interest in the arrest or prosecution of another, can the defendants be compelled to prosecute trespassers. *Linda R.S.*, 410 U.S. at 619, 93 S. Ct. at 1149. Injunctions run against defendants, not statutes. As a result, the plaintiffs' failure to explain what an injunction could possibly order the defendants to do is fatal to their case. The court cannot order the defendants to re-write the statute. Furthermore, the court cannot order the defendants to arrest and prosecute people carrying guns in a manner permitted by the plain text of the statute.

Second, elementary principles of federalism and the separation of powers forbid rewriting statutes. "[T]he discretion to delimit the categories of crimes justifying detention, like the discretion to define criminal offenses and prescribe punishments, resides wholly with the state legislatures."

No. 23-20165

*Schall v. Martin*, 467 U.S. 253, 268 n.18, 104 S. Ct. 2403, 2412 (1984). Federal courts are not super legislatures. Nor may courts revise a statute because judges "deem its effects susceptible of improvement." *Badaracco v. Comm'r*, 464 U.S. 386, 398, 104 S. Ct. 756, 764 (1984). Indeed, as the district court recognized, "[t]he law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 1146–47 (2013) (citing cases).

A final practical caution renders plaintiffs' idea of redressability—enjoining enforcement of the heightened notice requirements—practically unwise. Even if a court were to do so, these criminal trespass provisions would be left with an undefined, ambiguous reference to "written communication." Tex. Penal Code §§ 30.06(b), 30.07(b). Licensed gun owners, if charged under the mangled provisions, would have a field day defending against the vagueness of this term, and property owners would have less security about their rights to exclude.

## C. Injury

Multiple theories of "injury" are posited by the plaintiffs to advance their First Amendment claim that the statutorily designed posters communicating "effective notice" to licensed gun carriers are too big, too bold, and too unwelcoming. Plaintiffs want these criminal trespass provisions to apply to whatever posters they choose; they disdain giving oral notice or cards provided by the statutes; and they claim that the First Amendment secures this "right." Up to now, we have assumed arguendo that at least one claimed form of "injury" exists. All the theories, however, are at least doubtful.

To fulfill the "injury" prong of Article III standing, a plaintiff must plead and eventually prove that he "suffered 'an invasion of a legally

protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136). The district court rejected each of plaintiffs' theories. The following summaries paraphrase or add briefly to the district court's reasoning. *Bay Area Unitarian Universalist Church*, 2022 WL 22869779, at *2–5; *Bay Area Unitarian Universalist Church*, 2023 WL 2563998, at *3–7.

First, plaintiffs claim an "asymmetrical injury" from being "compelled" to erect prescribed signs while property owners seeking to thwart other types of trespass need not post the same types of signs. Plaintiffs' reliance on *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 128 S. Ct. 2759 (2008), is wholly misplaced. The plaintiff in that case suffered potential liability for FEC violations if he failed to comply with regulations that his electoral opponent did not have to satisfy. *Id.* at 728–31, 128 S. Ct. at 2765–67. These plaintiffs are under no such threat, and their comparison with other trespass laws draws a false analogy to entirely different circumstances.

Second, plaintiffs use the rubric of "unconstitutional conditions" to assert that unless they provide the unconstitutionally prescribed signage, they will be denied enforcement of criminal trespass laws against licensed gun carriers. Setting aside the nuances of this theory,[6] their conclusion has already been shown to be unfounded and conjectural. And to repeat,

---

[6] "Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to [the right]." *Dolan v. City of Tigard*, 512 U.S. 374, 385, 114 S. Ct. 2309, 2317 (1994). This court has observed that the doctrine has not been treated "as an absolute prohibition." *See Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 437 n.4 (5th Cir. 2014) (en banc).

No. 23-20165

plaintiffs in any event lack a cognizable legal interest in the prosecution of others. *See Linda R.S.*, 410 U.S. at 619, 93 S. Ct. at 1149.

Moreover, their claimed First Amendment injuries falter under scrutiny. There is no "compelled" speech,[7] because they are not compelled to post the prescribed signs in order to eject licensed gun carriers from their premises. They may invoke the challenged provisions by cards or oral notice, or they may summon the police to provide notice and enforce the trespassers' removal. Their claim of monetary "injury" arising from printing the prescribed signage is dubious, because after all, they'd rather invest in some other signs that would presumably cost money to print.[8] Their claim of "reputational harm," based on a few adverse customer reviews, utterly fails to bear a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—namely, the reputational harm associated with the tort of defamation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432, 141 S. Ct. 2190, 2208 (2021) (quoting *Spokeo*, 578 U. S. at 341, 136 S. Ct. at 1549).

---------------------------------

[7] What makes this claim of compulsion additionally legally suspect is that plaintiffs *agree* with the statutes' purpose; they just disagree with the aesthetics of the prescribed signage. The usual compelled speech claim deals with the speaker's unwillingness to further the message, not the medium. *See, e.g.*, *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642, 63 S. Ct. 1178, 1187 (1943).

[8] *See also United States v. Texas*, 599 U.S. 670, 676, 143 S. Ct. 1964, 1970 (2023) ("[m]onetary costs are of course an injury," but "the alleged injury must be legally and judicially cognizable" (quoting *Raines v. Byrd*, 521 U.S. 811, 819, 117 S. Ct. 2312, 2317 (1997))). More important, the statutes regulate licensed gun carriers, not the plaintiffs. Thus, "for standing purposes, the absence of coercive power over the plaintiff makes a difference: When 'a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed' to establish standing." *Id.* at 678, 143 S. Ct. at 1971 (quoting *Lujan*, 504 U.S. at 562, 112 S. Ct. at 2137).

No. 23-20165

Plaintiffs', and the dissents', final redoubt is their inherent right as property owners to exclude unwanted persons from their property. They allege a deprivation of this right through the loss of the "deterrent value" of these criminal trespass statutes. But they are free to exclude at their will. The statutes do not mandate their acceptance of licensed gun carriers, and prescribed signage is no precondition to their giving out cards or oral notice or calling the police. The facts here are completely distinguishable from the cases cited by the Plaintiffs regarding government regulations that forced a property owner to allow access to the property.[9] As for the dissent, the Supreme Court recently reiterated that "opening up private property to the general public implies a 'license to all persons to enter,' meaning that 'no person is a trespasser by merely entering therein' unless the property owner has given 'due notice' that such a person is banned." *Wolford v. Lopez*, 225 L. Ed. 2d 494, 508 (2026) (quoting *Commonwealth v. Power*, 48 Mass. 596, 602 (1844)). Texas's legislature opted to provide "due notice" of the criminal trespass law to prevent the law from becoming a trap for constitutionally protected licensed gun carriers. Nothing about ensuring that law abiding citizens have notice before being subject to criminal sanctions threatens property rights.

IV.

Because these plaintiffs failed to sustain their burden of proving constitutional standing, the district court's judgment is AFFIRMED.

---

[9] *Compare Cedar Point Nursery v. Hassid*, 594 U.S. 139, 162, 141 S. Ct. 2063, 2080 (2021) (a regulation requiring union organizing activity on private property violated the Takings Clause); *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 82–85, 100 S. Ct. 2035, 2041–43 (1980) (upholding a California constitutional provision allowing handbill solicitors on private shopping center property).

No. 23-20165

Don R. Willett, *Circuit Judge*, joined by Elrod, *Chief Judge*, concurring in part and in the judgment:

Article III standing requires three things: injury in fact, causation, and redressability.[1] I agree that all three are lacking. I part ways with the majority's redressability analysis, however. The majority rejects redressability because relief should not issue. But that is not the question: redressability asks whether the requested relief, *if granted*, would remedy the plaintiffs' injury; it does not ask whether relief should be granted.[2]

I would find redressability lacking for a different reason. Plaintiffs seek to enjoin enforcement of the written-notice requirements. Injunctions, however, run against parties, not statutes.[3] Plaintiffs have not explained what an injunction would require Defendants to do, and they disclaim the one thing—arresting and prosecuting trespasses even where written notice is lacking—that could remedy their alleged injuries. Plaintiffs also seek a declaration that the written-notice requirements are unconstitutional. But they have shown neither that "future litigation is likely to happen" nor "that the declaration's preclusive effect will likely help [them] in that litigation."[4] On the contrary, because the defendants in future (hypothetical) trespass prosecutions are not parties to *this* case, any declaration in this case would

———————————————

[1] *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

[2] *See* 15 Moore's Federal Practice § 101.42 (3d ed. 2026) ("Redressability does not require that the plaintiff actually be entitled to the relief sought; it is enough that the requested relief, if granted, would redress the plaintiff's injury.").

[3] *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (mem.).

[4] *Wells v. Johnson*, 150 F.4th 289, 302 (4th Cir. 2025).

have no preclusive effect in those ones—and thus would be "little more than an advisory opinion."[5]

_____

[5] *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023).

No. 23-20165

Stephen A. Higginson, *Circuit Judge*, dissenting:

As Justice Cardozo artfully expressed, the law requires us to reconcile opposites: "[C]ompeting values each have merit yet still oppose each other, and must somehow be brought together so that as much as possible of the good in each can be protected and preserved." Appellate Judicial Opinions 235 (Robert A. Leflar ed., 1974). This case asked us to harmonize conflicting fundamental rights—liberty and property—to the best of our ability. Instead, the majority chose justiciability. As a result, Texas, accommodated by our court, has, once again, passed a law sheltered from review that merits litigation may have proven unconstitutional. *Cf. Whole Women's Health v. Jackson*, 595 U.S. 30, 59 (2021) (Roberts, C.J., concurring in judgment in part and dissenting in part). And, once again, I dissent.

*     *     *

The majority relegates injury to the end of its standing analysis and the right to exclude to the end of that discussion. But the tension between property owners' rights and gun owners' rights should be front and center in this case, as it was in the Supreme Court's recent opinion in *Wolford v. Lopez*. *See* 146 S. Ct. 2032 (2026).

There, the Court considered the inverse of the Texas statutes at issue in this case. The Court held that a Hawaii law requiring a property owner's express consent for someone to lawfully carry a firearm on their premises violated the Second Amendment. *Id.* at 2040–41. Valid consent entailed only "clear and conspicuous signage" at a building's entrance or elsewhere "on the premises," without any specific language or size demands. Haw. Rev. Stat. § 134-9.5 (2023). Even with that minimal requirement—akin to

No. 23-20165

Texas's general trespass law in § 30.05[1] and much more flexible than §§ 30.06 and 30.07[2]—JUSTICE ALITO, writing for the Court, acknowledged the burden that notice put on a property owner:

> Some proprietors who do not themselves object to entry by carry-permit holders may be reluctant to post a sign welcoming such individuals for fear of alienating other customers. So under Hawaii's new default rule, a proprietor in this category may only be willing to consent discreetly to the entry of permit holders who make the effort to inquire.

*Wolford*, 146 S. Ct. at 2047.

---

[1] TEX. PENAL CODE § 30.05(b)(2)(C) ("'Notice' means . . . a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden.").

[2] A Texas proprietor seeking to keep out all firearms must post three distinct, large signs. Two for licensed handguns, prescribed by §§ 30.06 and 30.07, and another for other firearms under § 30.05(c). *See* TEX. PENAL CODE § 30.06(c)(3)(B) ("'Written communication' means . . . a sign posted on the property that: (i) includes the language[, 'Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun,'] in both English and Spanish; (ii) appears in contrasting colors with block letters at least one inch in height; and (iii) is displayed in a conspicuous manner clearly visible to the public."); *id.* § 30.07(c)(3)(B) ("'Written communication' means . . . a sign posted on the property that: (i) includes the language[, 'Pursuant to Section 30.07, Penal Code (trespass by license holder with an openly carried handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a handgun that is carried openly,'] in both English and Spanish; (ii) appears in contrasting colors with block letters at least one inch in height; and (iii) is displayed in a conspicuous manner clearly visible to the public at each entrance to the property."); *id.* § 30.05(c) ("A person may provide notice that firearms are prohibited on the property by posting a sign at each entrance to the property that: (1) includes language that is identical to or substantially similar to the following: 'Pursuant to Section 30.05, Penal Code (criminal trespass), a person may not enter this property with a firearm'; (2) includes [that language] in both English and Spanish; (3) appears in contrasting colors with block letters at least one inch in height; and (4) is displayed in a conspicuous manner clearly visible to the public.").

No. 23-20165

Like the proprietors mentioned in *Wolford*, Plaintiffs are not homeowners. They are a coffee shop and a church, where the public has implied consent to enter. *See, e.g.*, *id.* at 2045. But that doesn't mean they give up the right to exclude unwanted patrons or congregants. It is criminal trespass for someone to enter Plaintiffs' property with a handgun if, and only if, Plaintiffs give the handgun carrier statutorily mandated notice. As JUDGE DOUGLAS explains in more detail in her principal dissent, which I gratefully join, Plaintiffs have suffered an injury in being forced to deploy that specific speech to exclude handgun carriers from their property. Apart from its First Amendment impact, that requirement limits Plaintiffs' fundamental right to exclude, creating a cognizable injury-in-fact. These alternative routes to standing only reinforce the conclusion that this case should be tested on the merits.[3]

It is well-established that the right to exclude is pre-constitutional, foundational to property rights, and vital to individual rights. As JUSTICE SCALIA put it in *Florida v. Jardines*, this principle was "undoubtedly familiar" to "'every American statesman' at the time of the Founding." 569 U.S. 1, 7 (2013) (quoting *Boyd v. United States*, 116 U.S. 616, 626 (1886)). Both English and American law hold "the property of every man so sacred, that no man can set his foot upon his neighbour's close without his leave." *Id.* at 8 (quoting *Entick v. Carrington* (1765) 95 Eng. Rep. 807, 817; 2 Wils.

_____

[3] The majority asserts that Plaintiffs have "only rank and counter-factual speculation about their 'injury.'" But the record shows that Plaintiffs have been injured in several distinct ways: (1) the infringement on the right to exclude others from their property discussed here, (2) the asymmetrical treatment discussed in JUDGE DOUGLAS's opinion, (3) the classic pocketbook injury of costs incurred to purchase required signs, and (4) the reputational injury and negative impact on the church's mission. This was intentional. *See* Complaint at 2 & n.1 (ROA.28) ("[T]he Texas state land commissioner who drafted these requirements admits that he 'intentionally made the sign's language cumbersome' to discourage businesses from prohibiting entry to customers carrying guns.").

20

K.B. 275, 291); *see also Cedar Point Nursery v. Hassid*, 594 U.S. 139, 150 (2021) ("'[T]he right to exclude is 'universally held to be a fundamental element of the property right' . . . .'" (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979))). More broadly, "[t]he Founders recognized that the protection of private property is indispensable to the promotion of individual freedom." *Cedar Point Nursery*, 594 U.S. at 147. And the Supreme Court has recently emphasized that "protection of property rights is 'necessary to preserve freedom.'" *Id.* (quoting *Murr v. Wisconsin*, 582 U.S. 383, 394 (2017)).

Requiring Plaintiffs to use three specific signs with mandated language, formatting, and sizes to keep persons carrying firearms off their property imposes an unnecessary burden on Plaintiffs' fundamental right to exclude. As Texas's general trespass statute indicates, smaller, simpler signs are also sufficient to protect property owners' and gun owners' rights.[4] *See* Tex. Penal Code § 30.05(b)–(c). Thus, Plaintiffs have suffered a cognizable injury.

Next, Plaintiffs must show that their injury is traceable to Defendants' conduct. The right to exclude depends on state trespass laws for its meaning and effect, so Defendants' enforcement of Texas's criminal trespass laws traces to Plaintiffs' injury. *Cf.* Brief of Professors of Property Law as Amici Curiae Supporting Respondent, *Wolford v. Lopez*, 146 S. Ct. 2032 (2026) (No. 24-1046), 2025 WL 3772572, at 9–11 (collecting sources). The record shows that when §§ 30.06 and 30.07 signs are not posted, handgun carriers

---

[4] To be clear, this injury would hold with any onerous, ultra-specific signage requirement imposed on property owners. It is not Second Amendment specific; it is property ownership specific. For example, a property owner in Hawaii who wanted to permit individuals to bring guns onto their property and was subject to a similarly burdensome statutory scheme would have suffered an injury in fact on this logic.

are undeterred from entering, ROA.41, 1233, and without appropriate signage, law enforcement will not arrest a handgun carrier for trespass on those grounds, ROA.1167–68, 1425.  Thus, the injury to Plaintiffs' right to exclude is causally connected to Defendants' enforcement of the challenged statutes.  *See Gen. Land Off. v. Biden*, 71 F.4th 264, 272 (5th Cir. 2023) (a plaintiff "need[] only" allege facts showing the defendants' "conduct is a cause-in-fact of the injury" asserted); *cf. Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995) (EASTERBROOK, J.) ("A person aggrieved by the application of a legal rule does not sue the rule *maker* . . . .  He sues the person whose acts hurt him.").

Finally, Plaintiffs' requested relief would redress their injury. Plaintiffs seek a declaration that §§ 30.06 and 30.07's heightened notice requirements are unconstitutional and an injunction against Defendants' enforcement of those requirements.  Declaring state laws unconstitutional and enjoining their enforcement are two judicial functions well within our authority.  *See, e.g.*, *Dept' of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 431–33 (5th Cir. 2014) (en banc).  Doing so here would remedy Plaintiffs' injury because Plaintiffs would be free to exclude handgun carriers from their property through more traditional, less intrusive, unchallenged means.

Accordingly, I would hold that Plaintiffs have Article III standing and, crucially, I would let this case proceed to merits litigation and judicial resolution.

DANA M. DOUGLAS, *Circuit Judge*, joined by GRAVES and HIGGINSON, *Circuit Judges*, dissenting:

I respectfully dissent for the reasons stated in JUDGE DENNIS's panel opinion. *Bay Area Unitarian Universalist Church v. Ogg*, No. 23-20165, 2025 WL 1066187 (5th Cir. Apr. 9, 2025). Adhering to the panel opinion's holding that Plaintiffs have Article III standing to press their First Amendment claims, Part I of this dissent demonstrates the analytical errors in the majority opinion's injury analysis. I write further to address two primary errors in the majority opinion's analysis: its mischaracterization of traceability as purely speculative and its inexplicable assertion that the judiciary would transgress its constitutional delimitations by accommodating Plaintiffs' desired method of redress.

I

Texas's general trespass law allows property owners to exclude any person by providing notice through flexible means, including any sign "reasonably likely to come to the attention of intruders." TEX. PENAL CODE § 30.05(b)(2)(C). But Section 30.05 does not protect property owners who wish to exclude licensed handgun carriers on account of their firearms. A statutory exception, Section 30.05(f), provides a defense to prosecution when the carrier was excluded solely because of a handgun without adequate notice as defined in Sections 30.06 and 30.07. Those statutes are therefore the exclusive mechanism by which property owners can invoke the criminal trespass law's protection against licensed handgun carriers. And they demand far more than Section 30.05's generic signage requirement: the property owner must post signs bearing specific statutory language, in English and Spanish, in contrasting colors, in block letters at least one inch in height, displayed conspicuously—and, for open carry, at

every entrance.[1]

That scheme is the source of Plaintiffs' injury. Property owners who wish to exclude dogs, solicitors, or shirtless patrons need only post any attention-getting sign. Property owners who wish to exclude licensed handgun carriers must speak the State's words, in the State's format, at their own expense. Before 2016, Antidote Coffee communicated its no-firearms policy with a three-inch pictograph that cost virtually nothing. To comply with Sections 30.06 and 30.07, it now displays signs covering approximately ten square feet of its front window, at a cost of $260. The Church displays open-carry signs measuring eighteen inches by twenty-four inches but declined to add the concealed-carry signs because the combined display would obstruct its mission of inclusivity.

The majority opinion dismisses this injury as speculative or self-inflicted. It is neither. Both the Supreme Court and this court have held that asymmetric regulatory treatment of speech is a cognizable injury regardless of whether the plaintiff suffers any additional, more tangible harm. *Davis v. FEC*, 554 U.S. 724, 734–35 (2008); *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012) (observing that "discriminatory treatment at the hands of the government is an injury long recognized as judicially cognizable" and is "recognizable for standing irrespective of whether the plaintiff will sustain an actual or more palpable injury as a result of the

---

[1] Under the Concealed Carry Trespass Law, "written communication" means a card or document bearing language identical to: "Pursuant to Section 30.06, Penal Code (trespass by license holder with a concealed handgun), a person licensed under Subchapter H, Chapter 411, Government Code (handgun licensing law), may not enter this property with a concealed handgun"; or a sign that includes that language in both English and Spanish, appears in contrasting colors with block letters at least one inch in height, and is displayed conspicuously. Tex. Penal Code § 30.06(c)(3). The Open Carry Trespass Law contains a nearly verbatim definition, with the additional requirement that the sign be displayed at each entrance to the property. *See id.* § 30.07(c)(3).

unequal treatment" (citation modified)).  The injury exists by operation of the statutory scheme.  It does not depend on whether any handgun carrier appears at Plaintiffs' doors.

Nor is the injury self-inflicted.  Despite the majority opinion's indication to the contrary, the law does coerce Plaintiffs' conduct and is therefore traceable to the Defendants.  True, Sections 30.06 and 30.07 do not *require* Plaintiffs to post anything, but they *must* post the statutory signage if they wish to exercise their right to exclude licensed handgun carriers with the support of the criminal law.[2]  And as the panel opinion correctly observed, "an injury is not self-inflicted when a plaintiff faces a dilemma, the horns of which entail different harms."  *Bay Area Unitarian Universalist Church*, 2025 WL 1066187, at *4 (first citing *Evers v. Dwyer*, 358 U.S. 202, 203–04 (1958) (per curiam); and then citing *Book People, Inc. v. Wong*, 91 F.4th 318, 331–32 (5th Cir. 2024) (finding an injury not self-inflicted when a plaintiff "will be harmed if they comply with [the law] and harmed if they don't")).[3]

---

[2] The Texas statutory scheme contemplates two alternative methods by which proprietors may invoke their right to exclude—by giving oral notice or providing cards with the statutorily mandated language—but Plaintiffs have cited multiple concerns that demonstrate the inadequacy of these methods. *See* Tex. Penal Code §§ 30.06, 30.07. For example, the statutory alternatives are unworkable because church greeters and Antidote coffee shop employees may not know which of their patrons may be carrying a firearm, *Bay Area Unitarian Universalist Church*, 2025 WL 1066187, at *4. And providing oral notice or cards to every patron is no solution because, among other reasons, this type of engagement may prove dangerous. *See id.* (citing ROA.1259 (describing an occasion when a patron carrying a gun was asked to leave Antidote but returned with "a sword")).

[3] In *Evers v. Dwyer*, the plaintiff could have avoided the injury inflicted by segregation by not using public transit. 358 U.S. at 203–04. So too, here. Plaintiffs could forgo the protection of the criminal trespass law by declining to post the required signage. But the right to exclude is "one of the most treasured" rights of property ownership. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149–50 (2021) (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)). "States may not adopt property-law rules that violate constitutional rights," including "the freedom of speech." *Wolford v. Lopez*, 609 U.S. ___, ___ n.13, 2026 WL 1825723, at *11 n.13 (U.S. June 25, 2026) (first

No. 23-20165

## II

The majority opinion concludes that Plaintiffs' injury is caused by the independent actions of would-be trespassers, *i.e.*, by private handgun carriers who may or may not enter Plaintiffs' property, and that any causal chain connecting Plaintiffs' injury to Defendants' conduct is too attenuated to satisfy Article III traceability. That view fails for two reasons.

First, the asymmetric-treatment injury does not depend on any trespasser's conduct. It exists because the statutory scheme imposes different signage requirements on property owners depending on the category of entrants they wish to exclude. That differential burden is created by the statutes themselves, and it is given practical force by Defendants' enforcement of those statutes. No third party's independent decision is needed to complete the causal chain. The question is whether the plaintiff is "himself the object of the government action or inaction he challenges." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). Here, Plaintiffs are the ones on whom the signage requirements operate. It is Plaintiffs who must decide whether to comply and bear the cost and whose expressive choices are constrained.[4] When an injury flows from an allegedly unconstitutional law,

_____

citing *Reed v. Town of Gilbert*, 576 U.S. 155, 159 (2015); and then citing *City of Ladue v. Gilleo*, 512 U.S. 43, 45 (1994)). The existence of an alternative means of exclusion does not negate the asymmetric treatment. Plaintiffs who wish to exclude gun carriers are still treated differently from those who wish to exclude any other category of entrant.

[4] The Supreme Court has long recognized that plaintiffs may be "objects" of government regulation even when the statute does not facially target them. *E.g,. Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 114–15 (2025) (holding that plaintiff fuel producers "might be considered an object of the California regulations because the regulations explicitly seek to restrict the use of gasoline and other liquid fuels in automobiles"); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535–36 (1925) (holding that schools had standing to sue the State to challenge a law that restricted parents' right to send their children to private school even though the directly regulated parties were parents, not schools); *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 422 (1942) (holding that broadcasting network had

26

"the individuals charged with the enforcement of that law are at least part of the cause of the injuries, satisfying the minimal traceability requirement." *Bay Area Unitarian Universalist Church*, 2025 WL 1066187, at *5 (citing *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010)). It is undisputed that Defendants enforce Sections 30.06 and 30.07 in their respective jurisdictions.[5]

Second, the injury's deterrent-value dimension—meaning that without compliant signage, licensed carriers face no criminal consequence for entering and so some will—does not rest on speculation about the independent decisions of absent third parties. It rests on the "predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). "Courts must distinguish the 'predictable' from the 'speculative' effects of government action or judicial relief on third parties." *Diamond Alt. Energy, LLC*, 606 U.S. at 112–14 (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024)). The core purpose of criminal trespass law is to deter unauthorized entry. The record confirms that the law has its intended effect: individuals bring guns

_____

standing to sue FCC to challenge regulation denying license to broadcasting stations even though the directly regulated parties were broadcasting stations, not the broadcasting network).

[5] The majority opinion emphasizes that police respond to trespass calls regardless of signage. That observation, while true in the narrowest sense, obscures the critical point. The record shows that law enforcement can enforce the trespass statutes against licensed firearm carriers only when appropriate signage is posted or oral notice is given. For example, when the Webster Police Department responded to a call at a local restaurant regarding an armed patron, it found Section 30.07 signage posted. The armed patron was informed that he must ensure his firearm was concealed at all times because the establishment posted Section 30.07 signage prohibiting open carry. Defendant Chief Bacon testified that, absent Section 30.06 signage, officers would lack authority to arrest a person carrying a concealed firearm unless the restaurant insisted the armed person leave. In other words, absent compliance with the state-dictated signage or oral notice, law enforcement cannot require an unwanted armed patron to leave.

onto properties lacking compliant signage "because they face no criminal consequence for doing so." *Bay Area Unitarian Universalist Church*, 2025 WL 1066187, at *4. That is as predictable a consequence of the statutory scheme as one is likely to find. Tracing an injury to a defendant's conduct, moreover, is not the same as identifying its proximate cause. *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997). Article III requires only the former. *See Dept't of Com.*, 588 U.S. at 768 (observing that traceability "requires no more than *de facto* causality" (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (SCALIA, J.))).

The connection between Defendants' enforcement of the statutory scheme and Plaintiffs' injury is direct. Defendants enforce a signage regime that treats Plaintiffs' exclusion-related speech more onerously than everyone else's. That enforcement creates the asymmetry. A judicial declaration striking the heightened signage requirements eliminates it. No speculation about third-party behavior is required.

Further, the majority opinion insists that Plaintiffs' claim relies on the desire to prosecute would-be trespassers. The Supreme Court has clearly expressed that plaintiffs "lack[] a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).[6] But that principle does not reach this case. Plaintiffs

---

[6] In *Linda R.S. v. Richard D.*, the mother of a child born out of wedlock brought an equal protection challenge to the discriminatory application of a criminal child-support statute that was enforced against fathers of "legitimate" children but not fathers of children born out of wedlock. 410 U.S. at 615. The Supreme Court held that the mother lacked standing because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* at 619. She could not establish causation or redressability because there was no direct nexus between nonprosecution and her injury: missed support payments. Prosecution would result only in jailing the father, not in securing support. *Id.* at 618–19. Without any asserted interest in or injury related to a criminal prosecution here, *Linda R.S.* cannot guide the court's hand in this case.

do not seek prosecution of anyone. Their lawsuit does not arise from the failure to prosecute or arrest a trespasser, and no trespasser need ever be prosecuted or arrested for their injury to exist or their requested relief to take effect.[7] Their injury is the asymmetric regulatory treatment imposed by the signage requirements. Striking those requirements does not require, direct, or compel any prosecution. Instead, it returns Plaintiffs to the Section 30.05 baseline and allows them to exclude handgun carriers with the signage of their own choosing—a simple pictograph, a brief notice, anything reasonably likely to attract attention—just as they may do for every other class of trespasser under Texas law. That remedy is sufficient. *See Heckler v. Mathews*, 465 U.S. 728, 738–40 (1984) (holding that discriminatory treatment by the Government suffices for Article III injury).

## III

The majority opinion's criticism of the redressability of Plaintiffs' claims is perhaps the most confounding. The judiciary is charged with checking the powers exercised by its co-equal branches of the government. *See Illinois v. Krull*, 480 U.S. 340, 352 (1987) ("[T]he greatest deterrent to the enactment of unconstitutional statutes by a legislature is the power of the courts to invalidate such statutes."). Yet the majority opinion inexplicably

---

[7] The majority opinion also invokes *United States v. Texas*, 599 U.S. 670 (2023). There, the Court held that states lacked standing to challenge federal immigration enforcement guidelines because they sought to compel the Executive Branch to "alter its arrest policy so as to make more arrests." *Id.* at 674. The Court reaffirmed *Linda R.S.*'s holding but was careful to leave open the possibility of standing in other circumstances, including cases involving "legally cognizable injuries redressable by a federal court," *id.* at 681–82, and challenges implicating "more than simply the Executive's traditional enforcement discretion," *id.* at 683. A First Amendment challenge to a regulatory scheme that imposes asymmetric speech burdens falls squarely within these exceptions. Plaintiffs do not ask this court to order more arrests. They ask it to declare that a regulatory scheme burdening their speech is unconstitutional.

seeks to limit this vital judicial purpose by refusing to recognize our court's authority to declare unlawful legislation that exceeds constitutional bounds.

The majority opinion finds that Plaintiffs' requested relief—a declaration that the heightened notice requirements imposed by Sections 30.06(c)(3) and 30.07(c)(3) are unconstitutional and an injunction barring their enforcement—would not be an appropriate remedy.  Not so.  The remedy Plaintiffs seek would not require a judicial rewriting of the statute but merely a declaration of unenforceability of the unconstitutional notice requirements.  The majority opinion cites no authority indicating that courts are unable to declare statutes unconstitutional or enjoin enforcement of unconstitutional statutes, because it cannot.  *See Rhode Island v. Massachusetts*, 37 U.S. 657, 693 (1838) ("[A]ll acts of either, [a state or the federal government,] violating the constitution, are void.  And it is the constitutional province and duty of the Court to declare such acts void, whenever the question of their constitutionality comes before it.").

While the majority opinion cautions that reverting to the "undefined, ambiguous reference to 'written communication'" would lead to vagueness challenges, Texas's general trespass law does not prescribe a specific style of "written communication."  *See* Tex. Penal Code § 30.05 (defining "notice" as, among other possibilities, "written communication" or "a sign . . . reasonably likely to come to the attention of intruders, indicating that entry is forbidden").  Yet, it has not suffered from the vagueness challenges the majority opinion insists would ensue if the same wording were applied in the context of Sections 30.06 and 30.07.

A plaintiff need not show that a favorable decision will relieve every injury; it is enough that it relieves a discrete one. *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).  Invalidating the signage requirements redresses the asymmetric burden.  That is sufficient.

IV

Whether Plaintiffs should prevail in striking portions of Sections 30.06 and 30.07 is a question for another day. But Plaintiffs have shown their entitlement to a forum in which to press that argument. The logic of the majority opinion's reasoning cannot be applied to the facts of this case. If asymmetric regulatory treatment of speech is not a cognizable injury when the government directs formal enforcement at third parties, then a broad category of discriminatory regulatory schemes will be immunized from judicial review. Because that result finds no support in the principles underlying Article III, I respectfully dissent.